1  DAVID L. NEALE (SBN 141225)
   JULIET Y. OH (SBN 211414)
2  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email: dln@lnbrb.com, jyo@lnbrb.com

6  Attorneys for Chapter 11 Debtor and
7  Debtor in Possession

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11             SAN FERNANDO VALLEY DIVISION

12

13  In re                              ) Case No. 1:09-bk-14214-GM
14                                     )
    ROOSEVELT LOFTS, LLC, a Delaware   ) Chapter 11
15  limited liability company,         )
                                       )
16              Debtor.                ) **CHAPTER   11   PLAN   OF**
                                       ) **REORGANIZATION**
17                                     )
                                       )
18                                     ) Hearing:
                                       ) Date:   [To be set]
19                                     ) Time:   [To be set]
                                       ) Place:  Courtroom "303"
20                                     )         21041 Burbank Boulevard
                                       )         Woodland Hills, California
21                                     )
                                       )
22  _____)

23          Roosevelt Lofts, LLC, a Delaware limited liability company (the "Debtor"), the debtor

24  and debtor in possession in the above-captioned chapter 11 bankruptcy case, commenced its

25  chapter 11 bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 *et*

26  *seq.* (as amended, the "Bankruptcy Code") on April 13, 2009 (the "Petition Date"). The Debtor

27

28

                                      1

1  continues to manage its financial affairs and operate its bankruptcy estate as a debtor in
2  possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3        Chapter 11 allows the debtor, and, under some circumstances, creditors and other parties
4  in interest, to propose a plan. A plan may provide for the debtor to reorganize by continuing to
5  operate, to liquidate by selling the assets of its estate, or a combination of both.

6        The Debtor is the proponent of this "Chapter 11 Plan of Reorganization" (the "Plan").
7  This Plan is a plan of reorganization which has been proposed by the Debtor. The effective date
8  of this Plan (the "Effective Date") will be the first business day which is at least eleven days
9  following the date of entry of the Court order confirming this Plan (the "Plan Confirmation
10 Order") when and provided that all of the following conditions to the effectiveness of this Plan
11 have been satisfied or waived by the Debtor: (a) there shall not be any stay in effect with respect
12 to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any
13 appeal or rehearing; and (c) this Plan and all documents, instruments and agreements to be
14 executed in connection with this Plan shall have been executed and delivered by all parties to
15 such documents, instruments and agreements. The Debtor following the Effective Date shall be
16 referred to as the "Reorganized Debtor." Any defined terms which are not defined in this Plan
17 shall have the same definitions as such terms have in the Debtor's Disclosure Statement which
18 describes this Plan.

19                                              I.

20              **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

21  **A.    General Overview**

22        As required by the Bankruptcy Code, the Plan classifies claims and interests in various
23 classes according to their right to priority. The Plan states whether each class of claims or
24 interests is impaired or unimpaired. The Plan provides the treatment each class will receive. A
25 claim or interest is classified in a particular class only to the extent that it falls within the
26 description of that class. To the extent that part of a claim or interest falls within a different class
27 description, the claim or interest is classified in that different class.

28

2

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO DISTRIBUTION WILL BE MADE TO A HOLDER ON ACCOUNT OF A CLAIM OR INTEREST THAT IS NOT ALLOWED.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code or the Amended Bankruptcy Code (as applicable). Therefore, the Debtor has not placed the following claims in classes:

**1.    Administrative Claims**

Administrative claims are claims for costs or expenses of administering the Debtor's chapter 11 case which are entitled to priority under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all allowed administrative claims be paid on the Effective Date, unless a particular holder of an allowed administrative claim agrees to a different treatment.

The following chart lists all of the Debtor's known administrative claims, in the amounts the Debtor estimate will be unpaid on the Effective Date, and their treatment under the Plan.

| **Name** | **Amount Owed** | **Treatment** |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date. |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the Effective Date. |
| Levene, Neale, Bender, Rankin & Brill L.L.P., bankruptcy counsel for the Debtor | $250,000 (est.) in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses pursuant to a final order. |
| Landsberg Margulies LLP, counsel to the Official Committee of Unsecured Creditors (the "Committee") | $30,000 (est.) | Paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses pursuant to a final order. |

| Name | Amount Owed | Treatment |
|---|---|---|
| Milbank Holding Corp. ("Milbank") | $500,000 (est.) | To be assigned to Roosevelt Lofts, Inc. ("RLI") and thereafter converted to equity upon confirmation of the Plan as a component of the new value contributed by RLI in exchange for new equity interests in the Reorganized Debtor. |
| **TOTAL** | **$780,000 (est.)** | |

The administrative claim amounts set forth above represent only the Debtor's best estimate as to the amount of allowed administrative claims in the Debtor's case, based upon information provided by the administrative claimants and information in the possession or control of the Debtor. The actual amount of allowed administrative claims may be higher or lower.

Bankruptcy Court Approval of Professional Fees Required

Before they may be paid, the Bankruptcy Court must approve and allow all unpaid fees and expenses of professionals employed at the expense of the Debtor's bankruptcy estate. For all professional fees and expenses, the professional in question must file and serve a properly noticed final fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by a final order of the Bankruptcy Court will be paid under the Plan.

By voting to accept the Plan, Creditors are not acknowledging the validity of, or consenting to the amount of, the allowed administrative claim of any professional employed at the expense of the Debtor's bankruptcy estate, and creditors are not waiving any of their rights to object to the allowance of any of the administrative claims asserted by such professionals.

### 2. Priority Tax Claims

Except to the extent the holder of a particular claim has agreed to different treatment, the Bankruptcy Code requires that the holder of an allowed priority tax claim receive on account of such claim either (i) payment in full on the Effective Date, or (ii) regular installment payments in cash (x) of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such

claim; (y) over a period ending not later than five (5) years after the commencement of a Debtor's case; and (z) in a manner not less favorable than the most favored non-priority unsecured claim provided for under the Plan.

The chart below indicates all priority tax claims which were either scheduled by the Debtor as undisputed, liquidated, and non-contingent or asserted by the taxing agencies in filed proofs of claim, and the treatment of such allowed priority tax claims under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| United States Treasury, Internal Revenue Service | $0 | Paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such claim by a final order. |
| California Franchise Tax Board | $4,535.34 | Paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such claim by a final order. |
| City of Los Angeles Office of Finance | $11,542.63 | Paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such claim by a final order. |
| Total | $16,077.97 | |

## C. Classified Claims and Interests

### 1. Classes of Secured Claims

The following chart lists all of the secured claims which were either scheduled by the Debtor as undisputed, liquidated and non-contingent or asserted by the creditor in filed proofs of claim, and the treatment of such allowed secured claims under the Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1-A | Secured claim of: Los Angeles County Treasurer and Tax Collector | N | N<br><br>Not impaired; not entitled to | Paid in full on the later of (1) the Effective Date, (2) the date the Court allows such claim by a final order, or (3) the date(s) by which |

5

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | Collateral: Real property located at 727 West 7th Street in Los Angeles, California (the "Building") Priority of Security Interest: First priority (statutory) Collateral value: Approx. $110,000,000, subject to completion of the final valuation of the Building Amount of Claim: $726,000 (est.) | | vote on the Plan. | the claim is due and payable. |
| 1-B | Secured Claim of: Bank of America, N.A., individually and as agent for a group of lenders (the "Bank") Collateral: The Building, all fixtures located in the Building, and all rents and revenue derived from the sale of units, and use and/or lease of the Building (collectively, the "Bank Collateral") Priority of Security Interest: Disputed | N | Y | Upon the Effective Date, the Reorganized Debtor shall deliver to the Bank a new note (the "Restructured Note"), subject to the terms and conditions generally described herein. To the extent inconsistent herewith, the Debtor's existing loan from the Bank (the "Existing Loan") shall be modified as set forth below. The principal terms and conditions of the Restructured Note, as reflected in the projections attached hereto as Exhibit "1," are: (1) The Restructured Note shall mature and all unpaid principal and accrued but unpaid interest shall be |

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|----------------|-----------|
| | Collateral value: Approx. $110,000,000, subject to completion of the final valuation of the Building<br><br>Amount of Claim: $80,000,000 (est.) | | | fully due and payable on the thirtieth (30th) month following the Effective Date (the "New Maturity Date").<br><br>(2) The Restructured Note shall bear interest at a per annum rate equal to the prevailing 3-month London Interbank Offering Rate ("LIBOR"), plus a margin of three hundred (300) basis points.<br><br>(3) All interest, late fees, attorneys' fees and other costs due and payable as of the Effective Date on the Existing Loan shall be added to the principal balance of the Restructured Note and paid in accordance with the terms thereof. To the extent the Bank has accrued interest on the Existing Loan at the default rate of interest provided for under the Existing Loan documents through and including the Effective Date, the amount due and payable from and after the Effective Date on the Restructured Note shall be based upon the amount of principal, interest and other charges accrued at the non-default rates provided for under the Existing Loan Documents.<br><br>(4) Interest on the outstanding principal balance of the Restructured |

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | | | | Note shall be due and payable on the fifteenth $(15^{th})$ day of each month following the Effective Date, commencing in the month which is the second $(2^{nd})$ month following the Effective Date through and including the New Maturity Date.

(5) The Restructured Note shall be secured by a security interest in and lien upon the Bank Collateral, all to the same extent and with the same priority as was the case with respect to the Bank's security interest in and lien upon the Bank Collateral prior to the Petition Date.

(6) The Bank shall be deemed to have consented to the sale of individual units at the Building at the release prices set forth in the Existing Loan documents, and the Reorganized Debtor shall be permitted to convey title to each unit sold to a third party purchaser free and clear of the Bank's lien and security interest

The treatment described in the Plan shall be in full settlement and satisfaction of the Bank's Class 1-B claim. |

8

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1-C | **Alleged Secured Claims of:** Holders of mechanic's liens<br><br>**Collateral:** The Building and all fixtures located in the Building<br><br>**Priority of Security Interest:** Disputed<br><br>**Collateral value:** Approx. $110,000,000, subject to completion of the final valuation of the Building<br><br>**Aggregate Amount of Class 1-C Allowed Secured Claims:** $8,900,000 (est.) (disputed)[1] | N | Y | To the extent there are any Class 1-C claims and any such claims are determined by a final order of the Court to be allowed secured claims, each such Class 1-C claim will be deemed to have been placed in a separate subclass within Class 1-C, and each such Class 1-C claim will be paid in cash, beginning one (1) year following the Effective Date, but in any event by the later of (i) two (2) years following the Effective Date, or (ii) the date upon which the Court enters a final order determining the allowed amount, if any, of such claim.<br><br>Interest shall accrue on all Class 1-C allowed claims at the rate of 2.5% per annum until such allowed Class 1-C claims are satisfied and paid.<br><br>The treatment of holders of allowed Class 1-C claims described in the Plan shall be in full settlement and |

[1] Prior to the Petition Date, V.G.I. Corporation ("VGI") recorded a mechanic's lien against the Building for the sum of $2,575,569.55, and is therefore included herein as an alleged holder of a Class 1-C claim. The Debtor disputes the validity and amount of VGI's asserted claim.

Prior to the Petition Date, the Debtor and the Bank entered into an agreement to establish a litigation reserve account (with $1.5 million) to indemnify the Bank in connection with litigation commenced by VGI against the Debtor and others. Any funds remaining in the litigation reserve account upon the resolution of the litigation is to be returned to the Debtor. Based on the cash available in the foregoing litigation reserve account, and the amounts proposed to be paid to holders of Class 1-C allowed claims, as reflected in Exhibit "1" hereto, holders of allowed Class 1-C claims will be paid in full, with interest, through the Plan.

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | | | | satisfaction of all allowed Class 1-C claims. |

## 2. Classes of Priority Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. Allowed priority claims are entitled to treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all of the priority claims which were either scheduled by the Debtor as undisputed, liquidated and non-contingent or asserted by the creditor in filed proofs of claim, and the treatment of such allowed priority claims under the Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Allowed Priority Claims against the Debtor<br><br>Estimated Amount of Priority Claims: $0 | N | N<br><br>Not impaired; not entitled to vote on the Plan. | To the extent there are any allowed priority claims, the holder of each such Class 2 claim will be paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such claim by a final order. |

## 3. Classes of Allowed Unsecured Claims

The following chart describes the Plan's treatment of the classes containing the Debtor's allowed unsecured claims:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 3 | All General Unsecured Claims, other than the General Unsecured Claim of Milbank<br><br>Aggregate Amount of Class 3 Allowed General Unsecured Claims: $4,300,000 (est.) | Y<br><br>Impaired; Allowed claims in this class are entitled to vote on the Plan. | Holders of Class 3 allowed claims will be paid in full, with interest, from cash generated from the leasing and sales of units in the Building, in accordance with the projections set forth in Exhibit "1" hereto.<br><br>Interest shall accrue on all Class 3 allowed claims at the rate of 1.5% per annum until such Class 3 claims are satisfied and paid.<br><br>The treatment of holders of Class 3 allowed claims described in the Plan shall be in full settlement and satisfaction of all Class 3 allowed claims. |
| 4 | All General Unsecured Claims of Milbank<br><br>Aggregate Amount of Class 4 Allowed General Unsecured Claims: $5,100,000 (est.) | Y<br><br>Impaired; Allowed claims in this class are entitled to vote on the Plan. | On the Effective Date, in full and final satisfaction of Milbank's allowed Class 4 Claim, Milbank shall assign its allowed Class 4 claim to RLI, and RLI shall thereafter waive any right to recovery on account of such Claim, and shall instead be entitled to receive an equity interest in the Reorganized Debtor, subject to the other terms and conditions of the Plan. |

### 4.    Classes of Interest Holders

Interest holders are the entities that hold an ownership interest (*i.e.*, equity interest) in the Debtor. The following chart describes the Plan's treatment of the classes of interests:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Equity interests in the Debtor | Y<br><br>Impaired; holders of Class | On the Effective Date, all Class 5 interests will be deemed canceled and extinguished. Holders of |

11

| | | 5 interests are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code. | Class 5 interests will not receive any distribution or retain any property under the Plan on account of their interests. |
|---|---|---|---|

### D. Means of Effectuating the Plan and Implementation of the Plan

#### 1. Funding for the Plan

The Plan will be funded with cash from: (i) in addition to the waiver of Milbank's allowed administrative claim and allowed Class 4 claim by RLI, new equity contributions from RLI totaling up to $3.5 million over the duration of the Plan, with $1.5 million of the foregoing amount to be contributed on or before the Effective Date (collectively, the "New Equity Contribution"), (ii) rent revenue generated by the leasing of commercial units in the Building, (ii) rent revenue generated by the short-term leasing of up to seventy five (75) residential units in the Building, and (iii) proceeds generated by the sales of residential units in the Building, as provided in Exhibit "1" hereto.

#### 2. Composition of the Reorganized Debtor and Post-Confirmation Management

In consideration of the New Equity Contribution, RLI shall receive on the Effective Date 100% of the equity interests in the Reorganized Debtor, free and clear of all liens and adverse claims.

Following the Effective Date, the Debtor shall be referred to as the "Reorganized Debtor." RLI will continue to act as the Managing Member of the Reorganized Debtor, and will have the authority to make all decisions on behalf of the Reorganized Debtor that are required in order to effectuate the terms of this Plan.

12

**3. Disbursing Agent**

The Reorganized Debtor shall act as the disbursing agent (the "Disbursing Agent") for purposes of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

**4. Objections to Claims**

The Debtor or the Reorganized Debtor, as the case may be, and any party in interest may review all claims filed or deemed filed and may object to or seek subordination of any claim filed or scheduled in this case. The deadline to file objections to claims shall be 180 days after the Effective Date. As provided by Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. The Court shall retain jurisdiction over the Debtor, the Reorganized Debtor and this case to resolve such objections to claims following the confirmation of the Plan, if necessary.

Nothing contained in the Plan shall constitute a waiver or release by the Debtor of any rights of setoff or recoupment, or of any defense, it may have with respect to any claim. The Disbursing Agent will withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors ("Disputed Claims") of any particular class as if such claims were allowed in full.

**5. Interest Pending Allowance of Claims**

Except as specifically provided for in the Plan, in the order confirming the Plan, or in some other order of the Court, interest shall not accrue on claims and no holder of a claim shall be entitled to interest accruing on or after the Petition Date on any claim.

To the extent the Debtor or any other party in interest objects to the allowance of any claim, nothing in the Plan or herein shall be deemed to imply or create for the holders of any Disputed Claims any entitlement to receive interest upon the allowed amount of any such

13

Disputed Claims as a result, *inter alia*, of the delay in payment of such claims.

## 6. Distributions to be Made Pursuant to the Plan

Distributions to be made by the Reorganized Debtor on the Effective Date on account of any claim shall be made on the Effective Date or as promptly thereafter as practicable. Distributions to be made by the Disbursing Agent under the Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole election of the Disbursing Agent.

Except as otherwise agreed to by the Disbursing Agent in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address.

Checks issued by the Reorganized Debtor or the Disbursing Agent to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Reorganized Debtor by the holder of the allowed claim to whom such check originally was issued, prior to the expiration of the Claiming Period. After such date, (i) the holder of any such claim who has failed to make a timely request for reissuance of such a voided check or such claim and (ii) the unclaimed property held on account of such voided check or such claim shall revest in the Reorganized Debtor free and clear of all claims and interests.

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

## 7. Exculpations and Releases

To the maximum extent permitted by law, none of the Debtor, the Debtor's estate, nor any of their employees, agents, representatives, or the professionals employed or retained by any of them, whether or not by Bankruptcy Court order (each, an "Indemnified Person"), shall have

or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein. Each Indemnified Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

The Debtor and the Debtor's estate will be deemed to be forever released and discharged from all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever in connection with or related to the Debtor and the Debtor's estate, or the Plan (other than the rights of the Debtor to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforseen, then existing or thereafter a rising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Debtor's estate, or the Plan, and that may be asserted by or on behalf of the Debtor or its bankruptcy Estate.

## 8. Injunctions

**THE CONFIRMATION ORDER SHALL ENJOIN THE PROSECUTION, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF ACTION, LIABILITY OR INTEREST RELEASED, DISCHARGED OR TERMINATED PURSUANT TO THE PLAN.**

**EXCEPT AS PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AS OF THE EFFECTIVE DATE, ALL ENTITIES THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM OR OTHER DEBT OR LIABILITY THAT IS DISCHARGED OR AN INTEREST OR OTHER RIGHT OF AN EQUITY SECURITY**

HOLDER THAT IS TERMINATED PURSUANT TO THE TERMS OF THE PLAN ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, OR THEIR PROPERTY ON ACCOUNT OF ANY SUCH DISCHARGED CLAIMS, DEBTS OR LIABILITIES OR TERMINATED INTERESTS OR RIGHTS: (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (III) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTOR; AND (V) COMMENCING OR CONTINUING ANY ACTION IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN.

BY ACCEPTING DISTRIBUTION PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST RECEIVING DISTRIBUTIONS PURSUANT TO THE PLAN WILL BE DEEMED TO HAVE SPECIFICALLY CONSENTED TO THE INJUNCTIONS SET FORTH IN THIS SECTION.

    E.        Other Provisions of the Plan

          1.        Executory Contracts and Unexpired Leases

          a)        Assumptions

In the ordinary course of business, the Debtor is a party to a number of commercial and residential real property leases for units in the Building. A schedule of leases to be assumed under the Plan is attached to the Disclosure Statement as Exhibit "___". On the Effective Date, the Debtor intends to assume all such lease agreements. Based on the Debtor's books and records, the Debtor is not in default of any of the foregoing agreements and, therefore, no cure

payments are due and owing to parties to such lease agreements.

**b)      Rejections**

**To the extent that leases or contracts, other than the ones discussed above, exist, on the Effective Date, such executory contracts and unexpired leases shall be deemed rejected. The Confirmation Order shall constitute an Order approving the Debtor's rejection of all such executory contracts and unexpired leases.**

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE 30 DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER. Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.**

**2.      Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of its rates.

**3.      Retention of Jurisdiction**

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

a.      To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

b.      To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, the Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

c.      To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate.

d.      To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation,

17

1 execution, performance, and consummation of the Plan, the Confirmation Order, and all matters

2 referred to in the Plan, the Confirmation Order, and to determine all matters that may be pending

3 before the Court in this case on or before the Effective Date with respect to any person or entity

4 related thereto;

5       e. To determine (to the extent necessary) any and all applications for allowance of

6 compensation and reimbursement of expenses of professionals for the period on or before the

7 Effective Date;

8       f. To determine any request for payment of administrative expenses;

9       g. To determine all applications, motions, adversary proceedings, contested matters,

10 and any other litigated matters instituted during the pendency of this case whether before, on, or

11 after the Effective Date;

12       h. To determine such other matters and for such other purposes as may be provided

13 in the Confirmation Order.

14       i. To modify the Plan under Section 1127 of the Bankruptcy Code in order to

15 remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan

16 so as to carry out its intent and purpose;

17       j. Except as otherwise provided in the Plan or the Confirmation Order, to issue

18 injunctions to take such other actions or make such other orders as may be necessary or

19 appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or

20 implementation by any person or entity of the Plan or the Confirmation Order;

21       k. To issue such orders in aid of consummation of the Plan or the Confirmation

22 Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person

23 or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

24       l. To enter a final decree closing this Case.

25

26

27

28

18

1

### 4. Nonconsensual Confirmation

2      To the extent necessary, the Debtor requests the Court to confirm this Plan under Section

3  1129(b) of the Bankruptcy Code.

4                                          **II.**

5                        **EFFECT OF CONFIRMATION OF PLAN**

6      **A.    Discharge**

7      The Plan provides that upon completion of payments from the Effective Date in

8  accordance with the projections attached hereto and to the Disclosure Statement, the Debtor shall

9  be discharged of liabilities for debts incurred before confirmation of the Plan, to the extent

10 provided in 11 U.S.C. § 1141.

11     Confirmation shall bind the Debtor, all creditors, and other parties in interest to the

12 provisions of the Plan whether or not the claim of such creditor is impaired under the Plan and

13 whether or not such creditor has accepted the Plan.

14     **B.    Revesting of Property in the Reorganized Debtor**

15     Except as provided elsewhere herein, the confirmation of the Plan revests all of the

16 property of the estate in the Reorganized Debtor.

17     In addition, on the Effective Date, all of the claims against and/or interests in third parties

18 that constitute property of the estate shall be revested in the Reorganized Debtor. Following the

19 Effective Date, the Reorganized Debtor shall have absolute authority to prosecute, waive, adjust

20 or settle any claims without the need for approval by the Court. Following the Effective Date,

21 the Reorganized Debtor shall have the authority to employ such professionals as he deems

22 necessary to prosecute or defend such claims asserted without the need for Court approval.

23     **C.    Default**

24     Except as otherwise provided herein or in the Confirmation Order, in the event that the

25 Reorganized Debtor or the Disbursing Agent shall default in the performance of any of its

26 obligations under the Plan and shall not have cured such a default within thirty (30) days after

27 receipt of written notice of default from the creditor to whom the performance is due, then the

28

entity or individual to whom the performance is due may pursue such remedies as are available at law or in equity. An event of default occurring with respect to one claim shall not be any event of default with respect to any other claim.

### D. Modification of Plan

The Debtor may withdraw or modify the Plan at any time before confirmation. The Court may require a new disclosure statement and/or re-voting on the Plan if the Debtor modifies the Plan before confirmation. Modification of the Plan shall be in accordance, and the Plan as modified shall comply, with the requirements of Section 1127 of the Bankruptcy Code.

### E. Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the Plan, the Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report must be served on the Office of the United States Trustee, the 20 largest unsecured creditors and any secured creditors and priority unsecured creditors entitled to receive distributions under the Plan. Further status reports shall be filed every 120 days and served on the same entities.

### F. Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the Debtor's case under § 1112(b) after the Plan is confirmed if there is a default in performing the Plan. If the Court orders the Debtor's case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that the Court did not previously authorize relief from stay during the Debtor's case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**G.     Post-Confirmation U.S. Trustee Fees**

The Debtor shall be responsible for timely payment of all fees incurred after the Effective Date pursuant to 28 U.S.C. Section 1930(a)(6).

**H.     Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Debtor or other party as the Court shall designate in the order confirming the Plan, shall file a motion with the Court to obtain a final decree to close the Case.

Dated:  August 31, 2009                    ROOSEVELT LOFTS, LLC

                                           By:
                                              M. AARON YASHOUAFAR
                                              President, Roosevelt Lofts, Inc.,
                                              Manager of Debtor, Roosevelt Lofts, LLC

Submitted By:
DAVID L. NEALE
JULIET Y. OH
LEVENE, NEALE, BENDER, RANKIN
        & BRILL L.L.P.
Attorneys for Debtor and Debtor in Possession

EXHIBIT "1"

| Activity Assumptions | Jan-10 Month 1 | Feb-10 Month 2 | Mar-10 Month 3 | Apr-10 Month 4 | May-10 Month 5 | Jun-10 Month 6 | Jul-10 Month 7 | Aug-10 Month 8 | Sep-10 Month 9 | Oct-10 Month 10 | Nov-10 Month 11 | Dec-10 Month 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Units Available | 222 | 210 | 205 | 199 | 193 | 187 | 150 | 137 | 124 | 113 | 102 | 91 |
| Units Leased/mo | 12 | 5 | 6 | 6 | 6 | 7 | 7 | 6 | 5 | 5 | 5 | 4 |
| Units Sold/mo | 0 | 0 | 0 | 0 | 0 | 30 | 6 | 6 | 6 | 6 | 6 | 6 |
| Total Leased Units | 12 | 17 | 23 | 29 | 35 | 42 | 49 | 56 | 61 | 66 | 71 | 75 |
| Total Sold Units | 0 | 0 | 0 | 0 | 0 | 30 | 36 | 42 | 48 | 54 | 60 | 66 |
| Units Remaing | 210 | 205 | 199 | 193 | 187 | 150 | 137 | 124 | 113 | 102 | 91 | 81 |
| Accumulated Sales | 0 | 0 | 0 | 0 | 0 | 12,750,000 | 15,750,000 | 18,900,000 | 22,050,000 | 25,200,000 | 28,350,000 | 31,500,000 |
| Average Rent/unit | 2,100 | 2,100 | 2,125 | 2,150 | 2,150 | 2,150 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| Average Sale/unit | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 500,000 | 525,000 | 525,000 | 525,000 | 525,000 | 525,000 |
| Average Parking Rate | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 |
| **Financing** | | | | | | | | | | | | |
| Extg Bank Group's Loan | 80,000,000 | 80,000,000 | 80,000,000 | 80,000,000 | 80,000,000 | 80,000,000 | 71,192,701 | 69,241,411 | 67,354,941 | 65,457,338 | 62,933,378 | 60,389,731 |
| Interest Rate | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% |
| **New Equity** | | | | | | | | | | | | |
| Accumulated Cash Contribution | 1,500,000 | 1,581,467 | 1,930,767 | 2,266,892 | 2,950,042 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 |
| Debt Conversion | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 |
| Total equity Contribution | 7,050,000 | 7,131,467 | 7,480,767 | 7,816,892 | 8,500,042 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 |
| **Rental Income** | | | | | | | | | | | | |
| Commercial | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 |
| Residential | 25,200 | 35,700 | 48,875 | 62,350 | 75,250 | 90,300 | 107,800 | 123,200 | 134,200 | 145,200 | 156,200 | 165,000 |
| Parking | 10,000 | 10,000 | 10,000 | 12,000 | 12,000 | 12,000 | 15,000 | 10,000 | 10,000 | 17,500 | 17,500 | 17,500 |
| Total Rental Income | 63,200 | 73,700 | 86,875 | 102,350 | 115,250 | 130,300 | 150,800 | 161,200 | 172,200 | 190,700 | 201,700 | 210,500 |
| **Sales Proceeds** | | | | | | | | | | | | |
| Gross Sale | 0 | 0 | 0 | 0 | 0 | 12,750,000 | 3,000,000 | 3,150,000 | 3,150,000 | 3,150,000 | 3,150,000 | 3,150,000 |
| Sales Cost | 0 | 0 | 0 | 0 | 0 | 765,000 | 180,000 | 189,000 | 189,000 | 189,000 | 189,000 | 189,000 |
| Net Sales Proceed | 0 | 0 | 0 | 0 | 0 | 11,985,000 | 2,820,000 | 2,961,000 | 2,961,000 | 2,961,000 | 2,961,000 | 2,961,000 |
| **Operating Expenses** | | | | | | | | | | | | |
| Property Tax | | | | 362,500 | | | | | | | | 302,481 |
| HOA Fees | 116,667 | 116,667 | 116,667 | 116,667 | 116,667 | 100,901 | 97,748 | 94,595 | 91,441 | 88,288 | 85,135 | 81,982 |
| Leasing/Sales | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Marketing | 5,000 | 50,000 | 50,000 | 50,000 | 50,000 | 15,000 | 15,000 | 15,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Parking Expense | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| Total Operating Exp. | 144,667 | 189,667 | 189,667 | 552,167 | 189,667 | 138,901 | 135,748 | 132,595 | 134,441 | 131,288 | 128,135 | 427,463 |
| Net Proceeds from Operation | (81,467) | (115,967) | (102,792) | (449,817) | (74,417) | 11,976,399 | 2,835,052 | 2,989,605 | 2,998,759 | 3,020,412 | 3,034,565 | 2,744,037 |
| **Interest Expense** | | | | | | | | | | | | |
| Extg Bank Group Loan | 0 | 233,333 | 233,333 | 233,333 | 233,333 | 233,333 | 233,333 | 207,645 | 201,954 | 196,452 | 190,917 | 183,556 |
| Total Interest Expense | 0 | 233,333 | 233,333 | 233,333 | 233,333 | 233,333 | 233,333 | 207,645 | 201,954 | 196,452 | 190,917 | 183,556 |
| Monthly Net Cash Flow after Interest | (81,467) | (349,300) | (336,125) | (683,150) | (307,750) | 11,743,066 | 2,601,719 | 2,781,960 | 2,796,804 | 2,823,960 | 2,843,648 | 2,560,481 |
| Pymt to Holders of Valid Mechanic's Liens w/interested@ 2.5% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pymt to Unsecured Creditors w/interested @ 1.5% | 0 | 0 | 0 | 0 | 0 | 2,935,766 | 650,430 | 695,490 | 699,201 | 0 | 0 | 0 |
| Pymt for Completion of Construction | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 200,000 | 200,000 | 0 | 0 | 0 |
| Payment for Retail T.I. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 300,000 | 300,000 | 500,000 |
| Extg Bank's Group Loan | 0 | 0 | 0 | 0 | 0 | 8,807,299 | 1,951,289 | 1,886,470 | 1,897,603 | 2,523,960 | 2,543,648 | 2,060,481 |
| Total Cash Flow After all Disbursement | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| Activity Assumptions | Jan-11 Month 13 | Feb-11 Month 14 | Mar-11 Month 15 | Apr-11 Month 16 | May-11 Month 17 | Jun-11 Month 18 | Jul-11 Month 19 | Aug-11 Month 20 | Sep-11 Month 21 | Oct-11 Month 22 | Nov-11 Month 23 | Dec-11 Month 24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Units Available | 81 | 75 | 69 | 63 | 57 | 51 | 45 | 39 | 33 | 27 | 21 | 15 |
| Units Leased/mo | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Units Sold/mo | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| Total Leased Units | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 |
| Total Sold Units | 72 | 78 | 84 | 90 | 96 | 102 | 108 | 114 | 120 | 126 | 132 | 138 |
| Units Remaining | 75 | 69 | 63 | 57 | 51 | 45 | 39 | 33 | 27 | 21 | 15 | 9 |
| | | | | | | | | | | | | |
| Accumulated Sales | 34,800,000 | 38,100,000 | 41,400,000 | 44,850,000 | 48,300,000 | 51,750,000 | 55,350,000 | 58,950,000 | 62,550,000 | 66,300,000 | 70,050,000 | 73,800,000 |
| Average Rent/unit | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| Average Sale/unit | 550,000 | 550,000 | 550,000 | 575,000 | 575,000 | 575,000 | 600,000 | 600,000 | 600,000 | 625,000 | 625,000 | 625,000 |
| Average Parking Rate | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 |
| **Financing** | | | | | | | | | | | | |
| Extg Bank Group's Loan | 58,329,249 | 55,583,318 | 52,840,078 | 50,086,276 | 47,431,215 | 44,527,577 | 41,613,634 | 38,559,987 | 35,495,307 | 32,419,200 | 29,204,736 | 25,978,782 |
| Interest Rate | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% |
| **New Equity** | | | | | | | | | | | | |
| Accumulated Cash Contribution | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 |
| Debt Conversion | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 |
| Total equity Contribution | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 |
| **Rental Income** | | | | | | | | | | | | |
| Commercial | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 |
| Residential | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 |
| Parking | 21,000 | 21,000 | 23,000 | 23,000 | 23,000 | 23,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Total Rental Income | 248,000 | 248,000 | 250,000 | 250,000 | 250,000 | 250,000 | 252,000 | 252,000 | 252,000 | 252,000 | 252,000 | 252,000 |
| **Sales Proceeds** | | | | | | | | | | | | |
| Gross Sale | 3,300,000 | 3,300,000 | 3,300,000 | 3,450,000 | 3,450,000 | 3,450,000 | 3,600,000 | 3,600,000 | 3,600,000 | 3,750,000 | 3,750,000 | 3,750,000 |
| Sales Cost | 198,000 | 198,000 | 198,000 | 207,000 | 207,000 | 207,000 | 216,000 | 216,000 | 216,000 | 225,000 | 225,000 | 225,000 |
| Net Sales Proceed | 3,102,000 | 3,102,000 | 3,102,000 | 3,243,000 | 3,243,000 | 3,243,000 | 3,384,000 | 3,384,000 | 3,384,000 | 3,525,000 | 3,525,000 | 3,525,000 |
| **Operating Expenses** | | | | | | | | | | | | |
| Property Tax | | | | 264,438 | | | | | | | | 188,351 |
| HOA Fees | 78,829 | 75,676 | 72,523 | 69,369 | 66,216 | 63,063 | 59,910 | 56,757 | 53,604 | 50,450 | 47,297 | 44,144 |
| Leasing/Sales | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Marketing | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Parking Expense | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 |
| Total Operating Exp. | 122,829 | 119,676 | 116,523 | 377,807 | 110,216 | 107,063 | 103,910 | 100,757 | 97,604 | 94,450 | 91,297 | 276,495 |
| | | | | | | | | | | | | |
| Net Proceeds from Operation | 3,227,171 | 3,230,324 | 3,233,477 | 3,115,193 | 3,382,784 | 3,385,937 | 3,532,090 | 3,535,243 | 3,538,396 | 3,682,550 | 3,685,703 | 3,500,505 |
| **Interest Expense** | | | | | | | | | | | | |
| Extg Bank Group Loan | 176,137 | 182,279 | 173,698 | 165,125 | 156,520 | 148,223 | 139,149 | 130,043 | 120,500 | 110,923 | 101,310 | 91,265 |
| | | | | | | | | | | | | |
| Total Interest Expense | 176,137 | 182,279 | 173,698 | 165,125 | 156,520 | 148,223 | 139,149 | 130,043 | 120,500 | 110,923 | 101,310 | 91,265 |
| | | | | | | | | | | | | |
| Monthly Net Cash Flow after Interest | 3,051,034 | 3,048,045 | 3,059,780 | 2,950,068 | 3,226,264 | 3,237,714 | 3,392,941 | 3,405,201 | 3,417,896 | 3,571,627 | 3,584,393 | 3,409,240 |
| | | | | | | | | | | | | |
| Pymt to Holders of Valid Mechanic's Liens w/interested@ 2.5% | 305,103 | 304,805 | 305,978 | 295,007 | 322,626 | 323,771 | 339,294 | 340,520 | 341,790 | 357,163 | 358,439 | 340,924 |
| Pymt to Unsecured Creditors w/interested @ 1.5% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pymt for Completion of Construction | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Payment for Retail T.I. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Extg Bank's Group Loan | 2,745,931 | 2,743,241 | 2,753,802 | 2,655,061 | 2,903,638 | 2,913,943 | 3,053,647 | 3,064,681 | 3,076,107 | 3,214,464 | 3,225,953 | 3,068,316 |
| | | | | | | | | | | | | |
| Total Cash Flow After all Disbursement | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| Activity Assumptions | Jan-12 Month 25 | Feb-12 Month 26 | Mar-12 Month 27 | Apr-12 Month 28 | May-12 Month 29 | Jun-12 Month 30 | Jul-12 Month 31 | Aug-12 Month 32 | Sep-12 Month 33 | Oct-12 Month 34 | Nov-12 Month 35 | Dec-12 Month 36 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Units Available | 9 | 13 | 17 | 21 | 28 | 35 | 18 | 20 | 23 | 17 | 11 | 5 | |
| Units Leased/mo | (10) | (10) | (10) | (10) | (10) | (8) | (8) | (9) | (9) | 0 | 0 | 0 | |
| Units Sold/mo | 6 | 6 | 6 | 3 | 3 | 25 | 6 | 6 | 6 | 6 | 6 | 5 | |
| Total Leased Units | 65 | 55 | 45 | 35 | 25 | 17 | 9 | 0 | 0 | 0 | 0 | 0 | |
| Total Sold Units | 144 | 150 | 156 | 159 | 162 | 187 | 193 | 199 | 205 | 211 | 217 | 222 | |
| Units Remaining | 13 | 17 | 21 | 28 | 35 | 18 | 20 | 23 | 17 | 11 | 5 | 0 | |
| | | | | | | | | | | | | | |
| Accumulated Sales | 77,550,000 | 81,300,000 | 85,050,000 | 87,000,000 | 88,950,000 | 104,575,000 | 108,625,000 | 112,675,000 | 116,725,000 | 120,925,000 | 125,125,000 | 128,625,000 | 128,625,000 |
| Average Rent/unit | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 |
| Average Sale/unit | 625,000 | 625,000 | 625,000 | 650,000 | 650,000 | 625,000 | 675,000 | 675,000 | 675,000 | 700,000 | 700,000 | 700,000 | 700,000 |
| Average Parking Rate | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 |
| **Financing** | | | | | | | | | | | | | |
| Extg Bank Group's Loan | 22,910,467 | 20,029,306 | 17,087,828 | 14,186,114 | 12,807,903 | 11,311,562 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | |
| Interest Rate | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | |
| **New Equity** | | | | | | | | | | | | | |
| Accumulated Cash Contribution | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 |
| Debt Conversion | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 |
| Total equity Contribution | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 |
| **Rental Income** | | | | | | | | | | | | | |
| Commercial | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 1,848,000 |
| Residential | 144,625 | 122,375 | 100,125 | 77,875 | 55,625 | 37,825 | 20,025 | 0 | 0 | 0 | 0 | 0 | 3,707,750 |
| Parking | 25,000 | 25,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 27,500 | 27,500 | 27,500 | 750,000 |
| **Total Rental Income** | 233,625 | 211,375 | 190,125 | 167,875 | 145,625 | 127,825 | 110,025 | 90,000 | 90,000 | 91,500 | 91,500 | 91,500 | 6,305,750 |
| **Sales Proceeds** | | | | | | | | | | | | | |
| Gross Sale | 3,750,000 | 3,750,000 | 3,750,000 | 1,950,000 | 1,950,000 | 15,625,000 | 4,050,000 | 4,050,000 | 4,050,000 | 4,200,000 | 4,200,000 | 3,500,000 | 128,625,000 |
| Sales Cost | 225,000 | 225,000 | 225,000 | 117,000 | 117,000 | 937,500 | 243,000 | 243,000 | 243,000 | 252,000 | 252,000 | 210,000 | 7,717,500 |
| **Net Sales Proceed** | 3,525,000 | 3,525,000 | 3,525,000 | 1,833,000 | 1,833,000 | 14,687,500 | 3,807,000 | 3,807,000 | 3,807,000 | 3,948,000 | 3,948,000 | 3,290,000 | 120,907,500 |
| **Operating Expenses** | | | | | | | | | | | | | |
| Property Tax | | | | 155,064 | | | | | | | | | 1,328,034 |
| HOA Fees | 40,991 | 37,838 | 34,685 | 33,108 | 31,532 | 18,393 | 15,240 | 12,087 | 8,934 | 5,781 | 2,628 | 55,200 | 2,202,477 |
| Leasing/Sales | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 0 | 540,000 |
| Marketing | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 25,000 | 25,000 | 20,000 | 20,000 | 15,000 | 850,000 |
| Parking Expense | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 324,000 |
| **Total Operating Exp.** | 75,991 | 72,838 | 109,685 | 263,172 | 106,532 | 53,393 | 50,240 | 62,087 | 58,934 | 50,781 | 47,628 | 80,200 | 5,244,511 |
| **Net Proceeds from Operation** | 3,682,634 | 3,663,537 | 3,605,440 | 1,737,703 | 1,872,093 | 14,761,932 | 3,866,785 | 3,834,913 | 3,838,066 | 3,988,719 | 3,991,872 | 3,301,300 | |
| **Interest Expense** | | | | | | | | | | | | | |
| Exstg Bank Group Loan | 81,184 | 76,368 | 66,764 | 56,959 | 47,287 | 42,693 | 37,705 | 0 | 0 | 0 | 0 | 0 | 4,484,655 |
| **Total Interest Expense** | 81,184 | 76,368 | 66,764 | 56,959 | 47,287 | 42,693 | 37,705 | 0 | 0 | 0 | 0 | 0 | |
| **Monthly Net Cash Flow after Interest** | 3,601,450 | 3,587,169 | 3,538,676 | 1,680,744 | 1,824,806 | 14,719,239 | 3,829,080 | 3,834,913 | 3,838,066 | 3,988,719 | 3,991,872 | 3,301,300 | |
| Pymt to Holders of Valid Mechanic's Liens w/interest@2.5% | 360,145 | 358,717 | 353,868 | 168,074 | 182,481 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,358,705 |
| Pymt to Unsecured Creditors w/interested @ 1.5% | 360,145 | 286,974 | 283,094 | 134,460 | 145,985 | 1,703,838 | 1,505,505 | 0 | 0 | 0 | 0 | 0 | 4,420,000 |
| Pymt for Completion of Construction | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,980,887 |
| Payment for Recall T.I. | | | | | | | | | | | | | 1,500,000 |
| Exstg Bank's Group Loan | 2,881,160 | 2,941,479 | 2,901,714 | 1,378,210 | 1,496,341 | 11,311,562 | 0 | 0 | 0 | 0 | 0 | 0 | 80,000,000 |
| **Total Cash Flow After all Disbursement** | 0 | 0 | 0 | 0 | 0 | 0 | 2,323,574 | 3,834,913 | 3,838,066 | 3,988,719 | 3,991,872 | 3,301,300 | 22,982,283 |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Ste. 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as

## CHAPTER 11 PLAN OF REORGANIZATION

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 31, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
- Helen R Frazer    hfrazer@aalrr.com
- Varand Gourjian    vg@gourjianlaw.com, lala@gourjianlaw.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Herbert Hayden    herbert@ntlg.us
- Ian Landsberg    ilandsberg@lm-lawyers.com
- David L. Neale    dln@lnbrb.com
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Bruce D Rudman    bdr@agrlaw.net
- William D Schuster    bills@allieschuster.org
- Daniel H Slate    dslate@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;marcycarman@tilemlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Marc Weinberg    marcweinberg@att.net
- Aimee Y Wong    aywong@mckennalong.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____, **2009** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                     **F 9013-3.1**

| In re: | Chapter 11 |
| ROOSEVELT LOFTS, LLC | 1:09-bk-14214-GM |
| Debtor(s). | |

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 31, 2009** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**By attorney service**
Hon. Geraldine Mund
United States Bankruptcy Court
21041 Burbank Blvd.
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 31, 2009 | Jason Klassi | /s/ Jason Klassi |
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                       **F 9013-3.1**