DANIEL H. SLATE (SBN: 78173)
ALEXANDRA KAZHOKIN (SBN: 245051)
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email: dslate@buchalter.com
Email: akazhokin@buchalter.com

Attorneys for Bank of America, N.A., individually and as
Administrative Agent for a Group of Lenders

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re<br><br>ROOSEVELT LOFTS, LLC, a Delaware limited liability company,<br><br>    Debtor. | Case No. 1:09-bk-14214-GM<br><br>Chapter 11<br><br>**BANK GROUP'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION REGARDING RESIDENTIAL LEASES; DECLARATION OF DANIEL H. SLATE**<br><br>Date: September 2, 2009<br>Time: 10:00 a.m.<br>Place: Courtroom "303"<br>    21041 Burbank Boulevard<br>    Woodland Hills, California |

Bank of America, N.A., individually and as agent for a group of lenders (the "Bank Group"),[1] in opposition to the "Debtor's Emergency Motion for Entry of an Order, to the Extent Necessary, pursuant to 11 U.S.C. § 363(b)(1) Authorizing Debtor to Enter into Residential Leases" (the "Motion to Lease Units") filed by Roosevelt Lofts, LLC, debtor and debtor in

---

[1] The Bank Group consists of Bank of America, N.A., Manufacturers Bank, a California banking corporation, United Commercial Bank, a California banking corporation, and East West Bank, a California banking corporation.

possession (the "Debtor"), respectfully files this opposition to the Motion to Lease Units, and represents:

**Introduction**

The Bank Group holds a valid, perfected senior security interest in the real and personal property of the Debtor commonly known as the "Roosevelt Building," including, without limitation, an absolute assignment of all rents, issues and profits generated from operation of the Roosevelt Building. The security interest is evidenced by two deeds of trust (the "Deeds of Trust") imposing a lien over the collateral. The security interest was granted to secure repayment of an obligation of approximately $80 million (the "Bank Debt") owed by the Debtor to the Bank Group. The Bank Debt matured on its terms on March 9, 2009. As of March 23, 2009, the Debtor owed the Bank Group approximately $79.4 million as a result of the Bank Debt.

The Debtor commenced this chapter 11 bankruptcy case on April 13, 2009, in response to a motion for the appointment of a state court receiver. The Roosevelt Building contains approximately 220 residential units, and the Debtor had been working to develop the building as a condominium conversion. In fact, in May, 2009, the Debtor filed two motions to sell units in the building (collectively, the "Motions to Sell") with respect to approximately 20 units.[2] The Court continued the hearing on the Motions to Sell, now on calendar for September 16.

The Debtor has now filed the Motion to Lease Units.[3] The Bank Group agrees with the Debtor that a short-term leasing program of the residential units in the Roosevelt Building may be beneficial to the estate as it will generate cash to pay operating expenses and debt service. The Bank Group supports a leasing program for the residential units, but only if program is internally rational and based on market data.

In the Motion to Lease Units, the Debtor wants the court to be left with the impression

---

[2] The number of units affected by the Motions to Sell is not clear. At first, the Debtor sought authority to sell 18 of the 222 units. In the second of the two Motions to sell, the Debtor added two more units. But then, a number of the so-called "buyers" opposed the Motions to Sell, and recently, the Debtor has settled with several of those individuals.
[3] The Roosevelt Building also has significant retail space which, with the consent of the Bank Group, has been leased.

BANK GROUP'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION REGARDING RESIDENTIAL LEASES

BN 4325398v1

that the Bank Group was nonresponsive. As in all communications, there are two sides. The Bank Group has tried to "get comfortable" with the pricing of the various units but has been stymied in its requests for information from the Debtor. The discomfort is in two respects.

First, the Bank Group has asked the Debtor for information related to the market for comparable units so as to be assured that the rent schedule proposed by the Debtor fits the market. The Debtor has not provided such market-based information.

Second, the Bank Group has asked the Debtor to explain some rational basis for the wide pricing discrepancies. The lease schedule proposed by the Debtor does not hang together. It does not appear to be rational. The Bank Group has again asked repeatedly for some understanding of the wide variances on a per square foot basis between rents in different units, but the Debtor has not been forthcoming.

### 1. There is no evidence to show that the rent schedule proposed by the Debtor is consistent with the market for comparable units.

As recently as early last week, representatives of the Bank Group asked the Debtor's representatives for information to support the Debtor's bald assertion that the rents proposed by the Debtor were reflective of market rents. This was not the first time the Bank Group had asked for the information, but the Debtor's response was the same: no such information was provided. The declaration of Mr. Yashouafar in support of the Motion to Lease Units does include the obligatory conclusion that the Debtor "believes" the rental rates are "reflective of current market conditions." The belief is not backed up with any factual support, and analysis of the schedule demonstrates the questionable validity of that "belief."

Even if the Debtor's proposed rent schedule were market based, and the Bank Group does not agree, presumably Mr. Yashouafar refers to the "market" rents column of the schedule attached as Exhibit "A" and not the minimum. Certainly there is no basis to support renting units at the "minimums," some of which are 10% below the Debtor's determined "market" but others are 30% or 40% below the Debtor's "market." For example, unit 718 has a Debtor-determined "market" rent of $3487 per month, yet in the Motion to Lease Units, the Debtor seeks authority to

3

BANK GROUP'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION REGARDING RESIDENTIAL LEASES

BN 4325398v1

lease that unit for a little as $2100 per month, a discount of **40%** off the "market." And this is not an isolated example, unit 806 has a "market" rent of $4027 per month, and the Debtor seeks authority to lease that unit for as little as $2250 per month, a discount of more than **44%** off the Debtor-determined "market." And there are other examples: according to the Debtor the "market" rent for unit 314 is $3,394 per month, yet the Debtor proposes to rent this unit for $2,100 per month, a discount of approximately **38%** off the "market." Not all the units are subject to deep discounting. Indeed, one unit, 732, has a "market" rent of $1939, and a "minimum" rent of $2000, an unexplained premium over the market. The point is: there is no factual basis to support the Debtor's "belief." The Bank Group has asked, but has not been provided any market data to support either the rents proposed as "market" or the rents proposed as "minimum."

The anomalies in the Debtor's rent schedules do not end there, however.

### 2. The rents proposed by the Debtor appear to be internally irrational.

Analyzed on a per square foot basis, the rents proposed by the Debtor are "all over the board." While recognizing that larger units tend to rent for less on a per square foot basis, there is no rationale for the wide variations in the Debtor's proposed rent schedule. For instance, the Debtor proposes to lease unit 312, a 785 square foot, one-bedroom unit with 1.5 bathroom for $2,000 per month, which results in a rental rate of approximately **$2.55** per square foot. However, the Debtor proposes to rent unit 510, a 1,093 square foot, one-bedroom unit with two bathrooms, at the exact same rent, $2000 per month. Unit 510 would be rented for approximately **$1.83** per square foot, a discount, on a per square foot basis, of **28%**.

One question the Bank Group has asked is: why would anyone rent unit 312, and live in 785 feet when, for the same rent, you could have unit 510, and have an apartment that is almost half again larger. The Debtor has not answered that question. No rational prospective tenant would prefer to lease unit 307 (732 square feet) for $2000 instead of renting unit 314 (1,619 square feet) for $2100. The tenant would get 887 more feet for only $100 more per month.

The wide variation on a per square foot basis is clear even in a comparison of units on the same floor. On the eighth floor, the rental rates would range from **$1.28** to **$2.48** per square foot

4

(comparing unit 806 with 1,755 square feet and a proposed rental rate of $2,250 per month, or $1.28 per square foot, with unit 824 with 807 square feet and a proposed rental rate of $2,000 per month, or $2.48 per square foot). The result is a **94%** variation between the per square foot rents between the two units on the same floor. The rent schedule makes no sense.

As the Debtor admits in the Motion to Lease Units, in order to determine whether a certain transaction is in the ordinary course of business, courts look to similarly situated businesses to determine "whether the transaction at issue is one that would normally be entered into by similar businesses." In addition, courts review the transaction "from the perspective of creditors, asking whether the transaction is one that creditors would reasonably expect the debtor … to enter into." Motion to Lease Units, pp. 13-14. It is hard to imagine that owners of other apartment buildings will lease units based on the rent structure that is in no way related to the square footage of the units and does not depend on the rental fair market value of the units. Moreover, even though the Bank Group does not object to the Debtor entering into one-year residential leases, the Bank Group, or any other creditor, is hardly expected to have contemplated that the Debtor would enter into residential leases not supported by economic sense or reasonable business judgment.

**WHEREFORE**, for the reasons set forth above, this Court should deny the Residential Leases Motion and grant any other and further relief that the Court deems necessary and appropriate.

DATED: September 1, 2009

BUCHALTER NEMER
A Professional Corporation

By: /s/ Daniel H. Slate
DANIEL H. SLATE
ALEXANDRA KAZHOKIN
Attorneys for Bank of America, N.A.,
individually and as Agent for a
Group of Lenders

## **Declaration of Daniel H. Slate**

I, Daniel H. Slate, declare as follows:

1. I am an attorney at law, duly licensed to practice before this Court. I am a shareholder of the law firm of Buchalter Nemer, a Professional Corporation, attorneys for Bank of America, N.A., individually and as Administrative Agent for a Group of Lenders. The matters set forth in this declaration are made upon my personal knowledge and upon judicially noticeable facts apparent from the Court's file in the above-captioned bankruptcy case of Roosevelt Lofts, LLC (the "Debtor").

2. Over the last several months, I have spoken on a number of occasions with counsel for the Debtor with respect to the terms and conditions related to the rent schedule. On several of those occasions, and as recently as August 24, when I met with Mr. Neale personally, I raised the same two points I had raised in earlier communications: (i) data to verify that the rents scheduled were, in fact, reflective of the market; and (ii) information to help the Bank Group understand the wide disparity among the scheduled rents with respect to different units in the Roosevelt Building. In that meeting, Mr. Neale confirmed that we had asked for that information before, but he said that the Debtor group was hesitant to provide it. At the end of that meeting, I was left with the understanding that he would try to get the Debtor to provide information on these two areas.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of September, 2009, at Los Angeles, California.

                                                  /s/ Daniel H. Slate
                                                  Daniel H. Slate, Esq.

# EXHIBIT A

# THE ROOSEVELT RESIDENCES - RENTAL RATES

| Unit | Bed | Bath | Levels | Total SF | Market $/Mo. | Minimum $/Mo. |
|------|-----|------|--------|----------|--------------|---------------|
| 301 | 1.0 | 1.5 | 2 | 1,179 | $2,947.50 | $2,000.00 |
| 302 | 1.0 | 1.0 | 1 | 1,363 | $2,957.50 | $2,000.00 |
| 303 | 1.0 | 1.5 | 2 | 1,042 | $2,605.00 | $2,000.00 |
| 304 | 1.0 | 1.5 | 2 | 1,024 | $2,560.00 | $2,000.00 |
| 305 | 1.0 | 1.5 | 2 | 1,037 | $2,592.50 | $2,000.00 |
| 307 | 1.0 | 1.0 | 1 | 732 | $1,939.80 | $2,000.00 |
| 309 | 1.0 | 1.5 | 1 | 839 | $2,223.35 | $2,000.00 |
| 310 | 1.0 | 1.5 | 1 | 814 | $2,157.10 | $2,000.00 |
| 312 | 1.0 | 1.5 | 1 | 785 | $2,080.25 | $2,000.00 |
| 313 | 1.0 | 1.5 | 1 | 804 | $2,130.60 | $2,000.00 |
| 314 | 1.0 | 1.5 | 1 | 1,619 | $3,394.20 | $2,100.00 |
| 407 | 1.0 | 1.0 | 1 | 970 | $2,570.50 | $2,000.00 |
| 409 | 1.0 | 1.0 | 1 | 884 | $2,342.60 | $2,000.00 |
| 410 | 1.0 | 2.0 | 1 | 1,096 | $2,740.00 | $2,000.00 |
| 411 | 2.0 | 1.5 | 1 | 1,265 | $3,036.00 | $2,100.00 |
| 412 | 1.0 | 1.0 | 1 | 913 | $2,419.45 | $2,000.00 |
| 413 | 1.0 | 1.0 | 1 | 931 | $2,467.15 | $2,000.00 |
| 414 | 1.0 | 1.0 | 1 | 943 | $2,498.95 | $2,000.00 |
| 415 | 1.0 | 1.0 | 1 | 863 | $2,286.95 | $2,000.00 |
| 416 | 1.0 | 1.0 | 1 | 932 | $2,469.80 | $2,000.00 |
| 417 | 2.0 | 1.5 | 1 | 1,310 | $3,144.00 | $2,100.00 |
| 419 | 1.0 | 1.0 | 1 | 795 | $2,106.75 | $2,000.00 |
| 420 | 1.0 | 1.0 | 1 | 922 | $2,443.30 | $2,000.00 |
| 423 | 1.0 | 1.0 | 1 | 910 | $2,411.50 | $2,000.00 |
| 425 | 1.0 | 2.0 | 1 | 1,219 | $2,925.60 | $2,100.00 |
| 426 | 1.0 | 1.0 | 1 | 1,125 | $2,812.50 | $2,000.00 |
| 501 | 1.0 | 1.0 | 2 | 940 | $2,491.00 | $2,000.00 |
| 502 | 2.0 | 1.5 | 2 | 1,498 | $3,595.20 | $2,100.00 |
| 503 | 1.0 | 1.0 | 2 | 1,328 | $3,187.20 | $2,100.00 |
| 504 | 1.0 | 1.0 | 2 | 1,355 | $3,252.00 | $2,100.00 |
| 505 | 1.0 | 1.0 | 2 | 1,290 | $3,096.00 | $2,100.00 |
| 506 | 1.0 | 1.0 | 1 | 863 | $2,286.95 | $2,000.00 |
| 507 | 1.0 | 1.0 | 1 | 928 | $2,459.20 | $2,000.00 |
| 508 | 1.0 | 1.0 | 1 | 940 | $2,491.00 | $2,000.00 |
| 509 | 1.0 | 1.0 | 1 | 893 | $2,366.45 | $2,000.00 |
| 510 | 1.0 | 2.0 | 1 | 1,093 | $2,732.50 | $2,000.00 |
| 511 | 2.0 | 1.5 | 1 | 1,332 | $3,196.80 | $2,100.00 |
| 512 | 1.0 | 1.0 | 1 | 918 | $2,432.70 | $2,000.00 |
| 513 | 1.0 | 1.0 | 1 | 934 | $2,475.10 | $2,000.00 |
| 514 | 1.0 | 1.0 | 1 | 942 | $2,496.30 | $2,000.00 |
| 515 | 1.0 | 1.0 | 1 | 1,030 | $2,427.40 | $2,000.00 |
| 516 | 1.0 | 1.0 | 1 | 1,012 | $2,530.00 | $2,000.00 |
| 517 | 2.0 | 1.5 | 2 | 1,399 | $3,357.60 | $2,100.00 |
| 518 | 2.0 | 2.0 | 2 | 1,453 | $3,487.20 | $2,100.00 |
| 519 | 2.0 | 2.0 | 2 | 1,532 | $3,515.94 | $2,250.00 |
| 520 | 1.0 | 1.0 | 1 | 875 | $2,318.75 | $2,000.00 |
| 521 | 1.0 | 1.0 | 2 | 1,092 | $2,730.00 | $2,000.00 |
| 522 | 1.0 | 1.0 | 1 | 868 | $2,300.20 | $2,000.00 |
| 523 | 1.0 | 1.0 | 1 | 930 | $2,464.50 | $2,000.00 |
| 524 | 1.0 | 1.0 | 1 | 802 | $2,125.30 | $2,000.00 |
| 525 | 1.0 | 2.0 | 1 | 1,217 | $2,920.80 | $2,100.00 |

*Confidential and Privileged Communication*   July 13, 2009

Exhibit A Page 000007

## THE ROOSEVELT RESIDENCES - RENTAL RATES

| Unit | Bed | Bath | Levels | Total SF | Market $/Mo. | Minimum $/Mo. |
|---|---|---|---|---|---|---|
| 526 | 1.0 | 1.0 | 1 | 1,110 | $2,775.00 | $2,000.00 |
| 606 | 1.0 | 1.5 | 1 | 1,143 | $2,857.50 | $2,000.00 |
| 607 | 1.0 | 1.0 | 1 | 874 | $2,316.10 | $2,000.00 |
| 608 | 1.0 | 1.0 | 1 | 924 | $2,448.60 | $2,000.00 |
| 609 | 1.0 | 1.0 | 1 | 885 | $2,345.25 | $2,000.00 |
| 610 | 1.0 | 2.0 | 1 | 1,090 | $2,725.00 | $2,000.00 |
| 611 | 2.0 | 1.5 | 1 | 1,332 | $3,196.80 | $2,100.00 |
| 612 | 1.0 | 1.0 | 1 | 921 | $2,440.65 | $2,000.00 |
| 613 | 1.0 | 1.0 | 1 | 947 | $2,509.55 | $2,000.00 |
| 614 | 1.0 | 1.0 | 1 | 938 | $2,485.70 | $2,000.00 |
| 615 | 1.0 | 1.0 | 1 | 894 | $2,369.10 | $2,000.00 |
| 616 | 1.0 | 1.0 | 1 | 1,248 | $2,995.20 | $2,100.00 |
| 622 | 1.0 | 1.0 | 1 | 875 | $2,318.75 | $2,000.00 |
| 623 | 1.0 | 1.0 | 1 | 931 | $2,467.15 | $2,000.00 |
| 624 | 1.0 | 1.0 | 1 | 808 | $2,141.20 | $2,000.00 |
| 625 | 1.0 | 2.0 | 1 | 1,226 | $2,942.40 | $2,100.00 |
| 626 | 1.0 | 1.0 | 1 | 1,110 | $2,775.00 | $2,000.00 |
| 701 | 1.0 | 1.0 | 2 | 940 | $2,491.00 | $2,000.00 |
| 702 | 1.0 | 1.0 | 2 | 1,462 | $3,508.80 | $2,100.00 |
| 703 | 1.0 | 1.5 | 2 | 1,362 | $3,268.80 | $2,100.00 |
| 704 | 1.0 | 1.5 | 2 | 1,366 | $3,278.40 | $2,100.00 |
| 705 | 1.0 | 1.5 | 2 | 1,288 | $3,091.20 | $2,100.00 |
| 706 | 1.0 | 1.0 | 1 | 888 | $2,353.20 | $2,000.00 |
| 707 | 1.0 | 1.0 | 1 | 950 | $2,517.50 | $2,000.00 |
| 708 | 1.0 | 1.0 | 1 | 919 | $2,435.35 | $2,000.00 |
| 709 | 1.0 | 1.0 | 1 | 910 | $2,411.50 | $2,000.00 |
| 710 | 1.0 | 2.0 | 1 | 1,120 | $2,800.00 | $2,000.00 |
| 711 | 1.0 | 1.5 | 1 | 1,332 | $3,196.80 | $2,100.00 |
| 712 | 1.0 | 1.0 | 1 | 944 | $2,501.60 | $2,000.00 |
| 713 | 1.0 | 1.0 | 1 | 958 | $2,538.70 | $2,000.00 |
| 714 | 1.0 | 1.0 | 1 | 950 | $2,517.50 | $2,000.00 |
| 715 | 1.0 | 1.0 | 1 | 1,030 | $2,427.40 | $2,000.00 |
| 716 | 1.0 | 1.0 | 1 | 1,012 | $2,530.00 | $2,000.00 |
| 717 | 2.0 | 1.5 | 2 | 1,399 | $3,357.60 | $2,100.00 |
| 718 | 2.0 | 2.0 | 2 | 1,453 | $3,487.20 | $2,100.00 |
| 719 | 2.0 | 2.0 | 2 | 1,532 | $3,515.94 | $2,250.00 |
| 720 | 1.0 | 1.0 | 1 | 875 | $2,318.75 | $2,000.00 |
| 721 | 1.0 | 1.0 | 2 | 1,092 | $2,730.00 | $2,000.00 |
| 722 | 1.0 | 1.0 | 1 | 868 | $2,300.20 | $2,000.00 |
| 723 | 1.0 | 1.0 | 1 | 930 | $2,464.50 | $2,000.00 |
| 724 | 1.0 | 1.0 | 1 | 808 | $2,141.20 | $2,000.00 |
| 725 | 1.0 | 2.0 | 1 | 1,217 | $2,920.80 | $2,100.00 |
| 726 | 1.0 | 1.0 | 1 | 1,115 | $2,787.50 | $2,000.00 |
| 806 | 1.0 | 1.0 | 1 | 1,755 | $4,027.73 | $2,250.00 |
| 808 | 1.0 | 1.0 | 1 | 932 | $2,469.80 | $2,000.00 |
| 809 | 1.0 | 1.0 | 1 | 945 | $2,504.25 | $2,000.00 |
| 810 | 1.0 | 2.0 | 1 | 1,305 | $3,132.00 | $2,100.00 |
| 811 | 2.0 | 1.5 | 1 | 1,332 | $3,196.80 | $2,100.00 |
| 812 | 1.0 | 1.0 | 1 | 944 | $2,501.60 | $2,000.00 |
| 813 | 1.0 | 1.0 | 1 | 956 | $2,533.40 | $2,000.00 |
| 814 | 1.0 | 1.0 | 1 | 951 | $2,520.15 | $2,000.00 |

Exhibit A Page 000008

## THE ROOSEVELT RESIDENCES - RENTAL RATES

| Unit | Bed | Bath | Levels | Total SF | Market $/Mo. | Minimum $/Mo. |
|------|-----|------|--------|----------|--------------|---------------|
| 815  | 1.0 | 1.0  | 1      | 883      | $2,339.95    | $2,000.00     |
| 816  | 1.0 | 1.5  | 1      | 1,248    | $2,995.20    | $2,100.00     |
| 822  | 1.0 | 1.0  | 1      | 864      | $2,289.60    | $2,000.00     |
| 823  | 1.0 | 1.0  | 1      | 931      | $2,467.15    | $2,000.00     |
| 824  | 1.0 | 1.0  | 1      | 807      | $2,138.55    | $2,000.00     |
| 825  | 1.0 | 2.0  | 1      | 1,226    | $2,942.40    | $2,100.00     |
| 826  | 1.0 | 1.0  | 1      | 1,110    | $2,775.00    | $2,000.00     |

*Confidential and Privileged Communication*

Exhibit A Page 000009