DANIEL H. SLATE (SBN: 78173)
ALEXANDRA KAZHOKIN (SBN: 245051)
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email: dslate@buchalter.com
Email: akazhokin@buchalter.com

Attorneys for Bank of America, N.A., individually and as
Administrative Agent for a Group of Lenders

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>ROOSEVELT LOFTS, LLC, a Delaware limited liability company,<br><br>Debtor. | Case No. 1:09-bk-14214-GM<br><br>Chapter 11<br><br>**BANK GROUP'S MOTION TO DISMISS OR CONVERT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DANIEL H. SLATE**<br><br>Date: December 15, 2009<br>Time: 10:00 a.m.<br>Place: Courtroom "303"<br>      21041 Burbank Boulevard<br>      Woodland Hills, California |

# TABLE OF CONTENTS

**Page**

1.  If There Is Cause For Conversion Or Dismissal, The Court Must Dismiss Or Convert The Case Unless It Determines That Unusual Circumstances Exist Establishing That Dismissal Or Conversion Would Not Be In The Best Interests Of Creditors And The Estate ........................................................................................... 3

2.  The Court Should Dismiss Or Convert This Case Because The Debtor Has Failed To File A Disclosure Statement And To Confirm Its Plan Of Reorganization Within A Reasonable Time ........................................................................................... 4

3.  The Court Should Dismiss This Case Because The August Plan Cannot Be Confirmed. ........................................................................................... 6

4.  This Bankruptcy Case Should Be Dismissed Because The Roosevelt Building Continues To Substantially Decrease In Value And There Is No Reasonable Likelihood Of The Debtor's Rehabilitation ........................................................................................... 8

    a.  After The Commencement Of The Case, There Has Been Substantialdiminution Of The Estate ........................................................................................... 8

    b.  The Debtor Has No Reasonable Likelihood Of Rehabilitation ........................................................................................... 9

5.  The Bankruptcy Case Should Be Dismissed Because The Debtor Has Not Filed A Monthly Operating Report Since June 2009. ........................................................................................... 10

6.  Dismissal Or Conversion Is In The Best Interests Of The Creditors And The Estate Because Continuing This Chapter 11 Case Will Neither Preserve A Viable Business Nor Maximize The Creditors' Return ........................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.),
  749 F.2d 146 (2d Cir. 1984) ........................................................................ 5

Bank of America Nat'l Trust & Sav. Ass'n v. 203 North LaSalle Street P'ship,
  526 U.S. 434 (1999) ................................................................................. 12

Clarkson v. Cooke Sales and Serv. Co. (In re Clarkson),
  767 F.2d 417 (8th Cir. 1985) ............................................................... 6, 7, 12

Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture),
  936 F.2d 814 (5th Cir. 1991) ..................................................................... 13

In re Citi-Toledo Partners,
  170 B.R. 602 (Bankr. N.D. Ohio 1994) ..................................................... 4, 8

In re Consolidated Pioneer Mortgage Entities,
  248 B.R. 368 (9th Cir. BAP 2000) .............................................................. 4

In re Continental Holdings, Inc.,
  170 B.R. 919 (Bankr. N.D. Ohio 1994) ...................................................... 10

In re Gonic Realty Trust,
  909 F.2d 624 (1st Cir. 1990) .................................................................... 12

In re Great American Pyramid Joint Venture,
  144 B.R. 780 (Bankr. W.D. Tenn. 1992) .............................................. passim

In re Kors, Inc.,
  13 B.R. 676 (Bankr. D. Vt. 1981) ................................................................ 9

In re Schriock Const. Inc.,
  167 B.R. 569 (Bankr. D.N.D. 1994) ............................................................. 8

In re Tornheim,
  181 B.R. at 164 (Bankr. S.D. N.Y. 1995) ................................................. 5, 10

In re Wiersma, 324 B.R. 92 (9th Cir. BAP 2005) ........................................... 3, 4

In re Windsor on the River Associates, Ltd.,
  7 F.3d 127 (8th Cir. 1993) .......................................................................... 6

In re Woodbrook Assocs.,
  19 F.3d 312 (7th Cir. 1994) ................................................................. 3, 5, 6

Johnston v. Jem Dev. Co. (In re Johnston),
  149 B.R. 158 (9th Cir. BAP 1992) ............................................................... 9

Katchen v. Landy,
  382 U.S. 323, 328-29 (1966) ...................................................................... 4

Quarles v. United States Trustee,
  194 B.R. 94 (W.D. Va. 1996) ..................................................................... 5

SEC v. United States Realty & Improvement Co.,
  310 U.S. 434 (1940) ................................................................................. 7

Stage I Land Co. v. United States,
  71 B.R. 225 (D. Minn. 1986) .................................................................... 12

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

Tennessee Publishing Co. v. American Nat'l Bank,
    299 U.S. 18 (1936) ............................................................................................. 7

Toibb v. Radloff,
    501 U.S. 157 (1991) ........................................................................................... 6

United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood
    Forest Assocs., Ltd.),
    808 F.2d 363 (5th Cir. 1987) ......................................................................... 10, 12

**Statutes**

11 U.S.C. § 362(d)(3) ............................................................................................ 2

11 U.S.C. § 1109(b) ............................................................................................... 3

11 U.S.C. § 1112(b) ........................................................................................ passim

11 U.S.C. § 1112(b)(4)(A) ................................................................................... 4, 8

11 U.S.C. § 1112(b)(4)(F) ........................................................................................ 4

11 U.S.C. § 1112(b)(4)(J) ........................................................................................ 4

11 U.S.C. § 1129(a) ................................................................................................ 6

11 U.S.C. § 1129(a)(7) ............................................................................................ 8

11 U.S.C. § 1129(a)(11) ........................................................................................... 6

11 U.S.C. § 1129 .................................................................................................... 6

**Rules**

Bankruptcy Rule 1001 ............................................................................................. 4

**Other Authorities**

H.R. No. 95-595, 95th Cong., 1st Sess. 405-06 (1977),
    *reprinted in* 1978 U.S.C.C.A.N. 6362 ........................................................... 4, 12

Mathew Bender & Co., Inc., 7-1112 Collier on Bankruptcy, ¶ 1112.04 (2009) ............ 5, 6, 10

1       Bank of America, N.A., individually and as agent for a group of lenders (the "Bank

2    Group"),[1] moves this Court to dismiss this chapter 11 bankruptcy case or, in the alternative, to

3    convert the case to one under chapter 7.

4                             **Introduction**

5       The Bank Group holds a valid, perfected senior security interest in the real and personal

6    property of the Debtor commonly known as the "Roosevelt Building," including, without

7    limitation, an absolute assignment of all rents, issues and profits generated from operation of the

8    Roosevelt Building.  The security interest is evidenced by two deeds of trust (the "Deeds of

9    Trust") imposing a lien over the collateral.  The security interest was granted to secure repayment

10   of an obligation of approximately $80 million (the "Bank Debt") owed by the Debtor to the Bank

11   Group.  The Bank Debt matured on its terms on March 9, 2009.  As of March 23, 2009, the

12   Debtor owed the Bank Group approximately $79.4 million as a result of the Bank Debt.

13       **The Debtor's financial status and the proposed plan of reorganization.**

14       The Debtor commenced this chapter 11 bankruptcy case on April 13, 2009, in response to

15   a motion for the appointment of a state court receiver.  The Roosevelt Building contains

16   approximately 220 residential units, and the Debtor's attempts to develop the building as a

17   condominium conversion has proven to be unsuccessful.  Although the Debtor has been trying to

18   both rent and sell the residential units, since the commencement of this case, the Debtor's

19   expenses have greatly exceeded its income.  In May 2009, the Debtor's receipts were $57,345.72,

20   while its expenses amounted to $126,181.01.  See Debtor's Monthly Operating Report for May

21   2009 attached as Exhibit 1 to the Declaration of Daniel H. Slate (the "Slate Declaration").

22   Similarly, in June 2009, the Debtor's revenue was $26,911.80, while its expenses totaled

23   $71,990.83.  See Debtor's Monthly Operating Report for June 2009[2] attached as Exhibit 1 to the

24   Slate Declaration.  The Debtor has not filed an operating report since June.

25       On August 31, 2009, in order to avoid the imposition of the single asset real estate

26

27   [1]  The Bank Group consists of Bank of America, N.A., Manufacturers Bank, a California banking corporation,
United Commercial Bank, a California banking corporation, and East West Bank, a California banking corporation.

28   [2]  The Debtor has not filed an operating report since June, and is now four months in arrears.  The June operating
report is the most current.

1  provisions of section 362(d)(3), the Debtor filed a plan of reorganization (the "August Plan").

2  According to the August Plan, the Debtor is to fund the plan with cash from, among other

3  sources, rent revenue generated by the short-term leasing of a number of residential units in the

4  Roosevelt Building and with proceeds from the sales of the residential units in the Roosevelt

5  Building. See the August Plan, attached as Exhibit 2 to the Slate Declaration. The Debtor has not

6  sought confirmation of the August Plan, nor even filed a draft disclosure statement. In fact, since

7  the filing of the August Plan, the Debtor has done little, if anything, to move this case forward

8  toward reorganization.

9       The Court should dismiss or convert this bankruptcy case because (1) the Debtor has

10  failed to prosecute this case within a reasonable time; (2) the August Plan cannot be confirmed on

11  a number of legal and factual grounds; (3) the estate continues to substantially decline in value

12  and the Debtor has no reasonable likelihood of rehabilitation; (4) the Debtor has breached its

13  fiduciary duty to the Bank Group and other creditors by failing to file monthly operating reports

14  with the United States Trustee; and (5) dismissal or conversion is in the best interests of the

15  creditors and the estate because continuing this chapter 11 case will neither preserve a viable

16  business nor maximize the creditors' return.

17  **The Debtor is at risk of losing the right to use the alleyway for ingress and egress
    from the valet exit of the Roosevelt Building, which will jeopardize the Debtor's**

18  **ability to use the Roosevelt Building as a residential apartment building and will
    decrease its value.**

19

20       The Roosevelt Building has a right of way easement for "street and alleyway" purposes

21  that gives the right to the Roosevelt Building's owners to use the alleyway between the buildings

22  at 700 and 770 Wilshire Boulevard for ingress and egress from the valet exit of the Roosevelt

23  Building. The alleyway is being used for the valet parking and there is no other parking option

24  for the Roosevelt Building. The easement is collateral for the Bank Debt and essential to the use

25  of the Roosevelt Building as a residential apartment building.

26       The alleyway is owned jointly by the owners of the two Wilshire Boulevard buildings

27  (collectively, the "Adjacent Landowners"). In September 2007, the Adjacent Landowners filed a

28

1    lawsuit in the Superior Court of California, County of Los Angeles, case # BC 377008,[3] seeking,

2    among other things, to enjoin the use of the easement.  The lawsuit was hotly litigated and went

3    to a jury in March 2009.  The jury determined that the use of the alleyway by the Roosevelt

4    Building "overburdened" the easement.  The State Court was left with the issue of appropriate

5    injunctive relief as that is equitable in nature and beyond the authority of a jury.  Before the State

6    Court judge could rule on any equitable relief, the Debtor commenced this chapter 11 case and

7    the automatic stay was imposed.

8         In light of the jury verdict, the State Court may limit use of the alleyway or set conditions

9    on such use, or may enjoin any use of the alleyway by the owners of the Roosevelt Building.  Any

10   ruling short of authorizing unlimited use of the alleyway will materially and detrimentally affect

11   the value of the Roosevelt Building and impose additional costs to redesign vehicular traffic, will

12   increase long-term operational costs and require further disclosures to a potential buyer.  A

13   judgment limiting use of the alleyway in any way is likely also to require modification of the

14   approved condominium plan and will require further approval from the City.

15
     **1.    If there is cause for conversion or dismissal, the Court must dismiss or convert
16          the case unless it determines that unusual circumstances exist establishing that
            dismissal or conversion would not be in the best interests of creditors and the
17          estate.**

18        Any party in interest may move to dismiss a chapter 11 case.[4]  If "cause" for dismissal or

19   conversion is shown, the court <u>must</u> dismiss or convert the case unless the court determines that

20   unusual circumstances exist establishing that dismissal or conversion would not be in the best

21   interests of creditors and the estate.  11 U.S.C. § 1112(b); <u>see also</u> <u>In re Wiersma</u>, 324 B.R. 92,

22   114 (9th Cir. BAP 2005), *over'd on other grounds by* <u>In re Wiersma</u>, 483 F.3d 933 (9th Cir.

23   2007).  The party seeking conversion or dismissal must demonstrate the existence of cause by a

24   preponderance of the evidence.  See <u>In re Woodbrook Assocs.</u>, 19 F.3d 312, 317 (7th Cir. 1994)

25   ("Where a motion to dismiss for cause is opposed, the movant bears the burden of proving by a

26   preponderance of the evidence that cause exists for dismissal of the debtor's bankruptcy case");

27   _____
     [3] For reasons that remain baffling, the Debtor failed to disclose this litigation in the statement of financial affairs it
28   filed May 15, 2009, just a few weeks after the several week jury trial.
     [4] A party in interest includes a creditor.  11 U.S.C. § 1109(b).

1    <u>In re Citi-Toledo Partners</u>, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) (same).

2         Among the most important grounds for dismissal or conversion are:

3         (1)    "failure to file a disclosure statement, or to file or confirm a plan, within the time

4    fixed by this title or by order of the court;"

5         (2)    "substantial or continuing loss to or diminution of the estate and the absence of a

6    reasonable likelihood of rehabilitation;" and

7         (3)    "unexcused failure to satisfy timely any filing or reporting requirement established

8    by this title or by any rule applicable to a case under this chapter."

9         11 U.S.C. § 1112(b)(4)(A), (F) & (J).

10        Although section 1112(b) lists examples of cause, the list is not exhaustive and the Court

11   may convert or dismiss a case for reasons that are not specifically enumerated in the section,

12   provided that these reasons are sufficient to demonstrate the existence of cause. <u>See</u> <u>In re</u>

13   <u>Wiersma</u>, <i>supra</i>, 324 B.R. at 114 (holding that the list of causes in section 1112(b) is non-

14   exclusive); <u>In re Consolidated Pioneer Mortgage Entities</u>, 248 B.R. 368, 375 (9th Cir. BAP 2000)

15   ("The enumerated causes are not exhaustive, and the court will be able to consider other factors as

16   they arise, and to use its equitable powers to reach an appropriate result in individual cases"),

17   <i>citing to</i> H.R. No. 95-595, 95th Cong., 1st Sess. 405-06 (1977), <i>reprinted in</i> 1978 U.S.C.C.A.N.

18   6362. The Court must also consider what is in the best interests of the creditors and the estate. <u>In</u>

19   <u>re Consolidated Pioneer Mortgage Entities</u>, <i>supra</i>, 248 B.R. at 375.

20        **2.    The Court should dismiss or convert this case because the Debtor has failed to
           file a disclosure statement and to confirm its plan of reorganization within a
21         reasonable time**.

22        As the Supreme Court has noted, "a chief purpose of the bankruptcy laws is to secure a

23   prompt and effectual administration and settlement of the estate of all bankrupts." <u>Katchen v.</u>

24   <u>Landy</u>, 382 U.S. 323, 328-29 (1966) (citation omitted); <u>see also</u> Bankr. R. 1001 (rules to be

25   construed "to secure the just, speedy, and inexpensive determination of every case and

26   proceeding"). Chapter 11 was designed to make "business reorganization a quicker, more

27   efficient procedure ... ." H.R. Rep. No. 595, 95th Cong., 1st Sess. 5 (1977); <u>In re Great American</u>

28   <u>Pyramid Joint Venture</u>, 144 B.R. 780, 789 (Bankr. W.D. Tenn. 1992) ("Every case should move

1   to a conclusion at the earliest time and with the least expense which are consistent with the

2   interest of justice"). As one court explained:

3           A Chapter 11 case can be dismissed at any time. Creditors need not wait
            until a debtor proposes a plan or until the debtor's exclusive right to file a
4           plan has expired. ... Creditors, likewise, need not incur the added time and
5           expense of a confirmation hearing on a plan they believe cannot be
            effectuated. ... The very purpose of § 1112(b) is to cut short this plan and
6           confirmation process where it is pointless.
7
8       In re Woodbrook Assocs., 19 F.3d 312, 317 (7th Cir. 1994) (citations omitted).

9           The debtor must confirm a plan of reorganization within a reasonable period of time. See

10  Mathew Bender & Co., Inc., 7-1112 Collier on Bankruptcy, ¶ 1112.04 (2009). "While the

11  complexity and nature of the case often dictate its pace, a debtor cannot wallow in chapter 11."

12  In re Tornheim, *supra*, 181 B.R. at 165. The debtor must prosecute its case to a prompt and

13  successful conclusion through confirmation of a plan. Id. "If it appears that a debtor has engaged

14  in unreasonable delay that is prejudicial to creditors, this may justify a finding of cause to convert

15  or dismiss the case regardless of whether the specific instance is not enumerated in ... section

16  1112(b)." Mathew Bender & Co., Inc., 7-1112 Collier on Bankruptcy, ¶ 1112.04 (2009); A.

17  Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.), 749 F.2d 146, 151

18  (2d Cir. 1984) (the test of section 1112(b) is whether a debtor can reorganize within a

19  "reasonable" amount of time); Quarles v. United States Trustee, 194 B.R. 94, 97 (W.D. Va. 1996)

20  (the debtor is entitled only to a "reasonable" period of time and must demonstrate a "reasonable"

21  prospect of reorganization).

22          In this case, the Debtor filed the August Plan, but in the last two and a half months, has

23  done nothing to move this case forward toward reorganization. The Debtor has not sought

24  confirmation, nor even filed a proposed disclosure statement. The Court should not allow the

25  Debtor to just sit and prolong this case for an indefinite period of time at the expense of creditors.

26  Because the Debtor has failed to confirm the plan within a reasonable period of time, the Court

27  should dismiss or convert this case.

28

**3.     The Court should dismiss this case because the August Plan cannot be confirmed**.

Conversion or dismissal is warranted in this case because the Debtor has no reasonable prospect of satisfying the plan confirmation standards enumerated in section 1129 of the Bankruptcy Code. "[T]he court may dismiss or convert a chapter 11 case if the court determines that it is unreasonable to expect that a plan can be confirmed in the chapter 11 case." In re Great Am. Pyramid Joint Venture, *supra*, 144 B.R. at 791. See, e.g., Toibb v. Radloff, 501 U.S. 157, 165 (1991) ("the Code gives bankruptcy courts substantial discretion to dismiss a Chapter 11 case in which the debtor files an untenable plan of reorganization"); In re Windsor on the River Associates, Ltd., 7 F.3d 127, 133 (8th Cir. 1993) ("A federal court sitting in bankruptcy is free to dismiss a Chapter 11 case where the debtor cannot propose a confirmable plan"). "Certainly the ability to confirm a plan is a most significant consideration in the chapter 11 context … ." Mathew Bender & Co., Inc., 7-1112 Collier on Bankruptcy, ¶ 1112.04 (2009). Creditors should not be forced to incur the added time and expense of a confirmation hearing on a plan they believe cannot be effectuated. In re Woodbrook Assocs., *supra*, 19 F.3d at 316-17.

Among other things, section 1129(a) of the Bankruptcy Code requires that, in order to be confirmed, the plan must be feasible. 11 U.S.C. § 1129(a)(11). The feasibility test contemplates "the probability of actual performance of the provisions of the plan. Sincerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." Clarkson v. Cooke Sales and Serv. Co. (In re Clarkson), 767 F.2d 417, 420 (8th Cir. 1985). "Pertinent factors to be considered include the business's earning power, the sufficiency of the capital structure, economic conditions, managerial efficiency, and whether the same management will continue to operate the company." Id. If it becomes reasonably apparent that the debtor's business is too unstable to support a consistent payment stream under a plan, or is otherwise inadequate to support a reasonable plan, the court may conclude that the debtor lacks the ability to survive the confirmation process, and, accordingly, that cause exists to convert or dismiss the case. See Toibb v. Radloff, *supra*, 501 U.S. at 165; SEC v. United States Realty &

1   Improvement Co., 310 U.S. 434, 457 (1940) (if the debtor cannot formulate a feasible plan, the

2   court should terminate the reorganization); Clarkson v. Cooke Sales and Serv. Co. (In re

3   Clarkson), supra, 767 F.2d at 419-20 (8th Cir. 1985) (dismissal warranted where, among other

4   things, the funding of the plan from the debtor's business was too uncertain).

5        The August Plan is not be feasible.  According to the August Plan, the Debtor is to fund

6   the plan with cash from, among other sources, rent revenue generated by the short-term leasing of

7   a number of residential units in the Roosevelt Building and ultimately with proceeds from the

8   sales of the residential units in the Roosevelt Building.  There is no evidence to show that such

9   sources will generate funds sufficient to fund the August Plan.  In fact, based upon the Debtor's

10  operating reports, the current operations of the Debtor do not even generate funds sufficient to

11  pay current operating costs, much less generate excess cash with which to fund a reorganization.

12       Further, the Debtor does not account for the fact that it may lose its right of way easement

13  for "street and alleyway" purposes that gives the right to the Roosevelt Building's occupants to

14  use the alleyway between the buildings at 700 and 770 Wilshire Boulevard for ingress and egress

15  from the valet exit of the Roosevelt Building.  The easement is essential to the use of the

16  Roosevelt Building as a residential apartment building as the alleyway is being used for the valet

17  parking and there is no other parking option for the Roosevelt Building.  Any State Court ruling

18  short of authorizing unlimited use of the alleyway will materially and detrimentally affect the

19  value of the Roosevelt Building and impose additional costs to redesign vehicular traffic, will

20  increase long-term operational costs and require further disclosures to a potential buyer.  A

21  judgment limiting use of the alleyway in any way is likely also to require modification of the

22  approved condominium plan and will require further approval from the City.  As a result, even if

23  the Debtor were to be investing its best efforts, the Debtor may not be able to realize cash flows

24  needed to fund its plan.  As noted by the Supreme Court, "[h]owever honest in its efforts the

25  debtor may be, and however sincere its motives, the District Court is not bound to clog its docket

26  with visionary or impractical schemes for resuscitation."  Tennessee Publishing Co. v. American

27  Nat'l Bank, 299 U.S. 18, 22 (1936).

28       In addition, as there is no disclosure statement, the August Plan provides no liquidation

1   analysis. Section 1129(a)(7) states the rule that, subject to certain qualifications, creditors under a

2   plan of reorganization must have either accepted the plan or must receive under the plan more

3   than they would receive if the estate were liquidated under the provisions of chapter 7. <u>See</u> 11

4   U.S.C. § 1129(a)(7). If the debtor cannot meet this standard, it may be pointless to proceed with

5   the reorganization process. Because the Debtor here has not provided any liquidation analysis,

6   neither the Court nor creditors may evaluate whether liquidation in chapter 11 would be

7   advantageous by comparing the costs and benefits of liquidation in chapter 7 versus chapter 11.

8   Under the circumstances, the failure to confirm a plan shows both unreasonable, prejudicial delay

9   and an inability to effectuate a plan, requiring conversion or dismissal.

10  **4.      This bankruptcy case should be dismissed because the Roosevelt Building
            continues to substantially decrease in value and there is no reasonable
11          likelihood of the Debtor's rehabilitation.**

12          If the debtor continues to suffer a diminution in the value of its assets, and has no

13  reasonable prospect for rehabilitation, cause exists to convert or dismiss the case. 11 U.S.C. §

14  1112(b)(4)(A). Section 1112(b) contemplates a "twofold" inquiry into (1) whether there has been

15  a continuing diminution of the estate and (2) absence of a reasonable likelihood of rehabilitation.

16  <u>See</u> e.g., <u>In re Citi-Toledo Partners</u>, *supra*, 170 B.R. at 606.

17

18          **a.      After the commencement of the case, there has been substantial
                    diminution of the estate.**

19          If the estate has sustained a substantial loss following the commencement of the case, or

20  the debtor is operating with a sustained negative cash flow after the commencement of the case,

21  these facts are sufficient to justify a finding of "substantial or continuing loss to ... the estate." <u>In</u>

22  <u>re Schriock Const. Inc.</u>, , 167 B.R. 569, 575 (Bankr. D.N.D. 1994) ("This element can be satisfied

23  by demonstrating that the debtor incurred continuing losses or maintained a negative cash flow

24  position after the entry of the order for relief"). Even if a debtor has a positive cash flow as it

25  attempts to reorganize, section 1112(b)(4)(A) directs the court to consider whether the debtor is

26  suffering a loss by reason of actual depreciation in the value of the debtor's assets. <u>See</u> <u>In re Citi-</u>

27  <u>Toledo Partners</u>, *supra*, 170 B.R. at 606; <u>In re Kors, Inc.</u>, 13 B.R. 676, 680-81 (Bankr. D. Vt.

28  1981) (rapid depreciation in value of machinery that jeopardized creditors, coupled with lack of a

1   reasonable likelihood of rehabilitation, found to constitute cause).

2   After the commencement of this case, there has been substantial diminution of the estate.

3   First, according to the Debtor's monthly operating reports, the Debtor's expenses far exceed its

4   revenue. Second, the Roosevelt Building itself continues to decline in value. The Debtor is but

5   one of many owners of high density residential properties in Downtown Los Angeles that have

6   filed bankruptcy this year. For instance, Meruelo Maddux Properties, Inc. and its 50-some odd

7   subsidiaries each filed a chapter 11 voluntary petition in March 2009.[5] The downtown Los

8   Angeles residential real estate market has not shown any signs of improvement, and real estate

9   continues to substantially decline in value.

10  **b.    The Debtor has no reasonable likelihood of rehabilitation.**

11  In this case, the Debtor's business prospects do not justify continuance of the

12  reorganization efforts. "Rehabilitate" has been known to mean "to put back in good condition;

13  reestablish a firm, sound basis." In re Great American Pyramid Joint Venture, *supra*, 144 B.R. at

14  790. The court must determine whether the causes of the debtor's continuing losses can be

15  corrected. Id. "While a debtor should have a fair opportunity to reorganize, such opportunity

16  must be balanced against protection of creditors' interest." Id. "Understandably, competing and

17  countervailing interests must be considered and balanced." Id. "When visionary schemes for

18  rehabilitation entail significant risk to creditors without any reasonable probability that the debtor

19  can successfully rehabilitate, conversion or dismissal is generally in order." Id.

20  As discussed above, the future of the Roosevelt Building is uncertain. It may lose its

21  easement for ingress and egress from the valet exit of the building, which will materially and

22  detrimentally affect the value of the Roosevelt Building and impose additional costs to redesign

23  vehicular traffic, will increase long-term operational costs and require further disclosures to a

24  potential buyer. As a result, the Debtor may not have sufficient income to fund its plan. See

25  Johnston v. Jem Dev. Co. (In re Johnston), 149 B.R. 158, 162 (9th Cir. BAP 1992) (a debtor

26  lacked sufficient income to fund a plan); In re Continental Holdings, Inc., 170 B.R. 919, 931

27

28

[5] The Bank Group respectfully requests this Court to take judicial notice of the fact of the bankruptcy filing in the Meruelo case, bankruptcy case # 1:09-bk-13356-KT.

1    (Bankr. N.D. Ohio 1994) (a debtor lacked a reasonable likelihood of rehabilitation where the

2    debtor lacked reasonably certain source of income).

3          Furthermore, "the passage of time without demonstrable progress is often telling of the

4    debtor's prospects, and, as a general rule: 'Creditors are entitled to a prompt determination of

5    efficacy.'" Mathew Bender & Co., Inc., 7-1112 Collier on Bankruptcy, ¶ 1112.04 (2009), *citing*

6    *to* United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (*In re* Timbers of Inwood

7    Forest Assocs., Ltd.), 808 F.2d 363, 374 (5th Cir. 1987) (concurring opinion).  The Debtor has

8    been struggling in bankruptcy since April.  Not only did the Debtor fail to pursue confirmation of

9    August Plan, but the plan relies on the totally speculative (and groundless) presumption that the

10   Debtor would succeed in renting and selling the residential units.  Furthermore, there is no reason

11   to believe that the proposed sale of the residential units would generate enough funds to pay

12   creditors.  Thus, there is no reasonable prospect for reversing the Debtor's loss and of revitalizing

13   the Debtor as a viable business enterprise.  As the Roosevelt Building continues to substantially

14   decline in value and there is no reasonable likelihood of the Debtor's rehabilitation, the Court

15   should dismiss this case.

16        **5.      The bankruptcy case should be dismissed because the Debtor has not filed a
                    monthly operating report since June 2009.**

17

18        Courts have found cause for dismissal or conversion to exist as a result of the debtor's

19   failure to file monthly operating reports or other essential financial documentation.  See In re

20   Tornheim, *supra*, 181 B.R. at 164 (Bankr. S.D. N.Y. 1995) (a debtor's failure to file monthly

21   operating reports as required by the Office of the United States Trustee may constitute cause for

22   dismissal); In re Great American Pyramid Joint Venture, *supra*, 144 B.R. at 790 (a debtor's

23   failure to file monthly operating reports may be "cause" for conversion or dismissal).

24        As the Tornheim court explained, "[t]he filing of the petition gives rise to a fiduciary

25   relationship between the debtor and his or her creditors, and the law imposes the same obligations

26   on the individual and corporate chapter 11 debtor." In re Tornheim, *supra*, 181 B.R. at 164.  To

27   reap the benefit of chapter 11, the debtor must pay the price of disclosure; it needs to provide

28   financial and other relevant information to the creditors to inform them and the Court about the

1   progress and status of the case.  Id.

2   　　　　　Neither the court nor creditors should have to coerce or implore a debtor
3   　　　　　into fulfilling the obligations imposed upon it.  Quite to the contrary, when
    　　　　　a debtor seeks protection from its creditors, it is constrained to observe
4   　　　　　both the letter and the spirit of the orders granting it protection and
5   　　　　　allowing it to operate unless and until it seeks and obtains a modification of
    　　　　　those orders.  Timely and accurate financial disclosure is the life blood of
6   　　　　　the Chapter 11 process.  Monthly operating reports are much more than
7   　　　　　busy work imposed upon a Chapter 11 debtor for no reason other than to
8   　　　　　require it to do something.  They are the means by which creditors can
    　　　　　monitor a debtor's post-petition operations.  As such, their filing is very
9   　　　　　high on the list of fiduciary obligations imposed upon a debtor in
10  　　　　　possession.

11  　　　　　Id. (internal citations omitted).

12  "Refusal or inability to provide financial disclosure sounds the death knell of a chapter 11

13  case."  Id.  "The failure to file monthly operating statements required by the Trustee's operating

14  guidelines, whether based on inability to do so or otherwise, undermines the Chapter 11 process

15  and constitutes cause for dismissal or conversion of the Chapter 11 proceedings."  Id. (internal

16  quotation marks omitted).

17  　　　　Under the United States Trustee's Guidelines, the debtor must submit the monthly

18  operating reports to the United States Trustee each month, whether or not any financial activity

19  has occurred.  *Notice of Financial Reporting Requirements for Chapter 11 Debtors in Possession*,

20  United States Trustee, Central District of California.  The Debtor has not filed a monthly

21  operating report since the report for June 2009.  As a result, the Debtor has been keeping its

22  creditors, the United States Trustee, and this Court "in the dark" with respect to its financial

23  condition and status of the case for more than three months.  Such breach of the Debtor's

24  fiduciary obligations alone justifies conversion or dismissal of this case.

25  　　　**6.　　　Dismissal or conversion is in the best interests of the creditors and the estate
    　　　　　　　because continuing this chapter 11 case will neither preserve a viable business
26  　　　　　　　nor maximize the creditors' return.**

27  　　　Reorganization is not a Holy Grail to be pursued at any length, and the preservation of

28  business enterprises must not be at the expense of creditors.  United Sav. Ass'n of Tex. v.

1   Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.), 808 F.2d

2   363, 374 (5th Cir. 1987) (concurring opinion); In re Gonic Realty Trust, 909 F.2d 624, 626-27

3   (1st Cir. 1990) ("The court [in exercising its discretion under section 1112(b)] must exercise its

4   sound judgment in reaching a determination and must ascertain that the decision is in the best

5   interests of creditors"); Clarkson v. Cooke Sales and Serv. Co. (In re Clarkson), *supra*, 767 F.2d

6   at 420 (dismissal warranted, among other things, to protect creditors from erosion of their

7   position).  The Supreme Court has observed that chapter 11 embraces the "two recognized

8   policies [of] preserving going concerns and maximizing property available to satisfy creditors."

9   Bank of America Nat'l Trust & Sav. Ass'n v. 203 North LaSalle Street P'ship, 526 U.S. 434, 453

10  (1999).

11         As the House Report states:

12                The purpose of a business reorganization case, unlike a liquidation case, is
                  to restructure a business's finances so that it may continue to operate,
13                provide its employees with jobs, pay its creditors, and produce a return for
14                its stockholders.  The premise of a business reorganization is that assets
                  that are used for production in the industry for which they were designed
15                are more valuable than those same assets sold for scrap.

16         H. Rep. No. 595, 95th Cong. 1st Sess. 220 (1977).

17         Chapter 11 is not a panacea for every debtor in distress.  See In re Great American

18  Pyramid Joint Venture, *supra*, 144 B.R. at 789 ("Not surprisingly, all troubled businesses cannot

19  be rehabilitated or successfully reorganized under chapter 11, which chapter is clearly not a

20  panacea for all problems"); Stage I Land Co. v. United States, 71 B.R. 225, 231 (D. Minn. 1986)

21  ("The stated purpose of Chapter 11 of the Bankruptcy Code is the rehabilitation of a viable

22  business.  Absent a reasonable possibility of an effective reorganization, a case should be

23  dismissed at its outset for cause").

24         As the future of the Roosevelt Building is highly uncertain considering the current

25  downturn in the real estate market and the likelihood of it losing the essential easement for the

26  right of way, continuing this chapter 11 case will likely neither preserve a viable business nor

27  maximize the creditors' return.  There has been no progress in the Debtor's reorganization efforts

28

1    within the past few months, and deferring liquidation would likely prejudice creditors by further

2    delay in payments.  Neither the Bank Group nor other creditors should bear the delays and costs

3    of the chapter 11 reorganization process under the circumstances.  See Humble Place Joint

4    Venture v. Fory (In re Humble Place Joint Venture), 936 F.2d 814, 818 (5th Cir. 1991) (relief

5    granted where the risk to secured creditors of a continuing Chapter 11 case outweighed the

6    benefit).

7          Therefore, the Court should dismiss or convert this bankruptcy case because (1) the

8    Debtor has failed to prosecute this case within a reasonable time; (2) the August Plan cannot be

9    confirmed; (3) the estate continues to substantially decline in value and the Debtor has no

10   reasonable likelihood of rehabilitation; (4) the Debtor has breached its fiduciary duty to the Bank

11   Group and other creditors by its failure to file monthly operating reports with the United States

12   Trustee; and (5) dismissal or conversion are in the best interests of the creditors and the estate

13   because continuing this chapter 11 case will neither preserve a viable business nor maximize the

14   creditors' return.

15

16   DATED:  November 24, 2009              BUCHALTER NEMER
                                            A Professional Corporation
17

18

19                                         By:_____/s/ Daniel H. Slate_____
                                                  DANIEL H. SLATE
20                                                ALEXANDRA KAZHOKIN
                                                  Attorneys for Bank of America, N.A.,
21                                                individually and as Agent for a
                                                  Group of Lenders
22

23

24

25

26

27

28

## DECLARATION OF DANIEL H. SLATE

I, Daniel H. Slate, declare as follows:

1.       I am an attorney at law, duly licensed to practice before this Court. I am a shareholder of the law firm of Buchalter Nemer, a Professional Corporation, attorneys for Bank of America, N.A., individually and as agent for a group of lenders (the "Bank Group")[6]. The matters set forth in this declaration are made upon my personal knowledge and upon judicially noticeable facts apparent from the Court's file in the above-captioned bankruptcy case of Roosevelt Lofts, LLC (the "Debtor").

2.       The Bank Group holds a valid, perfected senior security interest in the real and personal property of the Debtor commonly known as the "Roosevelt Building," including, without limitation, an absolute assignment of all rents, issues and profits generated from operation of the Roosevelt Building. The security interest is evidenced by two deeds of trust (the "Deeds of Trust") imposing a lien over the collateral. The security interest was granted to secure repayment of an obligation of approximately $80 million (the "Bank Debt") owed by the Debtor to the Bank Group. The Bank Debt matured on its terms on March 9, 2009. As of March 23, 2009, the Debtor owed the Bank Group approximately $79.4 million as a result of the Bank Debt.

3.       The Debtor commenced this chapter 11 bankruptcy case on April 13, 2009, in response to a motion for the appointment of a state court receiver.

4.       The Roosevelt Building contains approximately 220 residential units, and the Debtor's attempts to develop the building as a condominium conversion has proven to be unsuccessful. Although the Debtor has been trying to both rent and sell the residential units, since the commencement of this case, the Debtor's expenses have greatly exceeded its income. In May 2009, the Debtor's receipts were $57,345.72, while its expenses amounted to $126,181.01. See Debtor's Monthly Operating Report for May 2009 attached as Exhibit 1 to this Declaration.

5.       Similarly, in June 2009, the Debtor's revenue was $26,911.80, while its expenses

---

[6] The Bank Group consists of Bank of America, N.A., Manufacturers Bank, a California banking corporation, United Commercial Bank, a California banking corporation, and East West Bank, a California banking corporation.

1    totaled $71,990.83. See Debtor's Monthly Operating Report for June 2009[7] attached as Exhibit 1

2    to this Declaration. I am informed and believe that the Debtor has not filed an operating report

3    since June.

4        6.        On August 31, 2009, in order to avoid the imposition of the single asset real estate

5    provisions of section 362(d)(3), the Debtor filed a plan of reorganization (the "August Plan").

6    According to the August Plan, the Debtor is to fund the plan with cash from, among other

7    sources, rent revenue generated by the short-term leasing of a number of residential units in the

8    Roosevelt Building and with proceeds from the sales of the residential units in the Roosevelt

9    Building. See the August Plan attached as Exhibit 2 to this Declaration.

10       7.        The Debtor has not sought confirmation of the August Plan, nor even filed a draft

11   disclosure statement. In fact, since the filing of the August Plan, the Debtor has done little, if

12   anything, to move this case forward toward reorganization.

13       8.        The Roosevelt Building has a right of way easement for "street and alleyway"

14   purposes that gives the right to the Roosevelt Building's owners to use the alleyway between the

15   buildings at 700 and 770 Wilshire Boulevard for ingress and egress from the valet exit of the

16   Roosevelt Building. The alleyway is being used for the valet parking and there is no other

17   parking option for the Roosevelt Building. The easement is collateral for the Bank Debt and

18   essential to the use of the Roosevelt Building as a residential apartment building.

19       9.        The alleyway is owned jointly by the owners of the two Wilshire Boulevard

20   buildings (collectively, the "Adjacent Landowners"). In September 2007, the Adjacent

21   Landowners filed a lawsuit in the Superior Court of California, County of Los Angeles, case #

22   BC 377008,[8] seeking, among other things, to enjoin the use of the easement. The lawsuit was

23   hotly litigated and went to a jury in March 2009. The jury determined that the use of the

24   alleyway by the Roosevelt Building "overburdened" the easement. The State Court was left with

25   the issue of appropriate injunctive relief as that is equitable in nature and beyond the authority of

26

27   [7] I am informed and believe that the Debtor has not filed an operating report since June, and is now four months in
     arrears. The June operating report is the most current.

28   [8] For reasons that remain baffling, the Debtor failed to disclose this litigation in the statement of financial affairs it
     filed May 15, 2009, just a few weeks after the several week jury trial.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 4827584v1                                                    16

1    a jury.  Before the State Court judge could rule on any equitable relief, the Debtor commenced

2    this chapter 11 case and the automatic stay was imposed.

3          10.      In light of the jury verdict, the State Court may limit use of the alleyway or set

4    conditions on such use, or may enjoin any use of the alleyway by the owners of the Roosevelt

5    Building.  Any ruling short of authorizing unlimited use of the alleyway will materially and

6    detrimentally affect the value of the Roosevelt Building and impose additional costs to redesign

7    vehicular traffic, will increase long-term operational costs and require further disclosures to a

8    potential buyer.  A judgment limiting use of the alleyway in any way is likely also to require

9    modification of the approved condominium plan and will require further approval from the City.

10          11.      In addition, I am informed and believe that the Roosevelt Building continues to

11    decline in value.  The Debtor is but one of many owners of high density residential properties in

12    Downtown Los Angeles that have filed bankruptcy this year.  For instance, Meruelo Maddux

13    Properties, Inc. and its 50-some odd subsidiaries each filed a chapter 11 voluntary petition in

14    March 2009.  The downtown Los Angeles residential real estate market has not shown any signs

15    of improvement, and real estate continues to substantially decline in value.

16          I declare under penalty of perjury under the laws of the United States of America that the

17    foregoing is true and correct.

18          Executed this 24th day of November 2009, at Los Angeles, California.

19

20                              /s/ Daniel H. Slate

21                              Daniel H. Slate, Esq.

22

23

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 4827584v1                              17

# EXHIBIT 1

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
CENTRAL DISTRICT OF CALIFORNIA

| In Re: | | CHAPTER 11 (BUSINESS) | |
|---|---|---|---|
| Roosevelt Lofts, LLC | | | |
| 16661 Ventura Blvd, Suite 600 | | Case Number: | 1:09-BK-14214 |
| Encino, CA 91436 | | Operating Report Number: | 2 |
| | Debtor(s). | For the Month Ending: | 5/31/2009 |

## I. CASH RECEIPTS AND DISBURSEMENTS
## A. (GENERAL ACCOUNT*)

1.  TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS          5,991.21

2.  LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL
ACCOUNT REPORTS

3.  BEGINNING BALANCE:                                            5,991.21

4.  RECEIPTS DURING CURRENT PERIOD:
    Accounts Receivable - Post-filing
    Accounts Receivable - Pre-filing
    General Sales

| | | | |
|---|---|---|---|
| Other (Specify) | Monthly Rent | 57,304.72 | |
| **Other (Specify) | Monlthly Parking | 41.00 | |

    TOTAL RECEIPTS THIS PERIOD:                                  57,345.72

5.  BALANCE:                                                     63,336.93

6.  LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
    Transfers to Other DIP Accounts (from page 2)         0.00
    Disbursements (from page 2)                            0.00

    TOTAL DISBURSEMENTS THIS PERIOD:***                         0.00

7.  ENDING BALANCE:                                              63,336.93

8.  General Account Number(s):                    210092560

| | |
|---|---|
| | Roosevelt Lofts, LLC, Debtor in Possession of Case# 1:09-BK-14214 |
| Depository Name & Location: | City National Bank -Los Angeles Regional Center |
| | 525 S Flower St, Suite 110, LA CA 90071 |

*   All receipts must be deposited into the general account.

**  Include receipts from the sale of any real or personal property out of the ordinary course of business; attach an exhibit
specifying what was sold, to whom, terms, and date of Court Order or Report of Sale.

Exhibit 1 Page 000018  (Bank of America N.A)

*** Although the Debtor has not made any disbursements from its Debtor in Possession account. Debtor has incurred expenses, some of which have been paid by, or paid from advances made by, the Debtor's affiliates including Milbank Holding Corp. These expenses are set forth in an exhibit attached hereto.

Page 1 of 16

Exhibit 1 Page 000019  (Bank of America N.A)

# Roosevelt Lofts, LLC

## As of May 31, 2009

| Type | Date | Num | Name | Original Amount |
|------|------|-----|------|-----------------|
| Check | 05/01/2009 | 8783 | JEFFREY F. SAX | 500.00 |
| Check | 05/01/2009 | 8785 | Urban Builders Inc. | 4,500.00 |
| Check | 05/01/2009 | 8789 | MILBANK REAL ESTATE SERVICE(ROOSEV | 10,750.00 |
| Check | 05/04/2009 | 8790 | Urban Builders Inc. | 3,000.00 |
| Check | 05/04/2009 | 8793 | ROBERT GROSSMAN | 1,299.60 |
| Check | 05/04/2009 | 8797 | MWW GROUP, INC. | 5,000.00 |
| Check | 05/04/2009 | 8798 | MILBANK REAL ESTATE SERVICE(ROOSEV | 7,000.00 |
| Check | 05/05/2009 | 8802 | Urban Builders Inc. | 3,000.00 |
| Check | 05/05/2009 | 8803 | SECRETARY OF STATE | 25.00 |
| Check | 05/06/2009 | 8805 | Urban Builders Inc. | 4,000.00 |
| Check | 05/06/2009 | 8806 | SRM LABOR MANAGEMENT | 4,004.00 |
| Check | 05/06/2009 | 8807 | SRM LABOR MANAGEMENT | 9,020.00 |
| Check | 05/07/2009 | 8820 | CITICARDS | 695.31 |
| Check | 05/08/2009 | 8827 | Urban Builders Inc. | 4,000.00 |
| Check | 05/08/2009 | 8828 | CHASE CARD SERVICES | 1,000.00 |
| Check | 05/11/2009 | 8829 | Urban Builders Inc. | 4,000.00 |
| Check | 05/11/2009 | 8830 | DEANNA PIRICS | 58.13 |
| Check | 05/11/2009 | 8832 | FULL CIRCLE CONSULTING GROUP | 3,000.00 |
| Check | 05/11/2009 | 8833 | Urban Builders Inc. | 5,000.00 |
| Check | 05/11/2009 | 8834 | MWW GROUP, INC. | 50.25 |
| Check | 05/11/2009 | 8836 | Urban Builders Inc. | 1,000.00 |
| Check | 05/12/2009 | 8840 | CARLITOS DIRECTO | 426.08 |
| Check | 05/12/2009 | 8840 | CARLITOS DIRECTO | 79.51 |
| Check | 05/12/2009 | 8840 | CARLITOS DIRECTO | 429.11 |
| Check | 05/14/2009 | 8849 | Urban Builders Inc. | 5,000.00 |
| Check | 05/15/2009 | 8853 | Urban Builders Inc. | 2,500.00 |
| Check | 05/15/2009 | 8856 | MILBANK REAL ESTATE SERVICE(ROOSEV | 12,750.00 |
| Check | 05/18/2009 | 8859 | BANK OF AMERICA | 164.54 |
| Check | 05/18/2009 | 8859 | BANK OF AMERICA | 68.89 |
| Check | 05/18/2009 | 8859 | BANK OF AMERICA | 67.60 |
| Check | 05/19/2009 | 8860 | SPRINT | 531.90 |
| Check | 05/19/2009 | 8861 | SPRINT | 521.09 |
| Check | 05/19/2009 | 8865 | PLANT REPUBLIC | 100.00 |
| Check | 05/20/2009 | 8868 | CITY OF LOS ANGELES | 242.00 |
| Check | 05/20/2009 | 8869 | CITY OF LOS ANGELES | 242.00 |
| Check | 05/20/2009 | 8878 | SRM LABOR MANAGEMENT | 8,614.00 |
| Check | 05/21/2009 | 8879 | Urban Builders Inc. | 5,000.00 |
| Check | 05/21/2009 | 8880 | SRM LABOR MANAGEMENT | 6,742.00 |
| Check | 05/22/2009 | 8884 | H & S DISPOSAL, INC. | 300.00 |
| Check | 05/22/2009 | 8886 | Roosevelt Lofts, LLC,Debtor in Possession | 1,000.00 |
| Check | 05/26/2009 | 8888 | Urban Builders Inc. | 500.00 |
| Check | 05/27/2009 | 8890 | Urban Builders Inc. | 2,500.00 |
| Check | 05/27/2009 | 8892 | HT CONSULTANT | 7,500.00 |
| Total | | | | 126,181.01 |

Exhibit 1 Page 000020  (Bank of America N.A)

## TOTAL DISBURSEMENTS FROM GENERAL ACCOUNT FOR CURRENT PERIOD

| Date mm/dd/yyyy | Check Number | Payee or DIP account | Purpose | *Amount Transfered | **Amount Disbursed | Amount |
|---|---|---|---|---|---|---|
| | | | None | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| TOTAL DISBURSEMENTS THIS PERIOD: | | | | 0.00 | 0.00 | $0.00 |

* Fill in amounts in this column if they are TRANSFERS to another DIP account (e.g. Payroll or Tax); the "amount" column will be filled in for you.
** Fill in amounts in this column if they are DISBURSEMENTS to outside payees; the "amount" column will be filled in for you.

Page 2 of 16

Exhibit 1 Page 000021  (Bank of America N.A)

## GENERAL ACCOUNT
## BANK RECONCILIATION

Bank statement Date: __N/A_____          Balance on Statement:       __$63,336.93__

Plus deposits in transit (a):

|  | Deposit Date | Deposit Amount |
|---|---|---|
|  | _____ | _____ |
|  | _____ | _____ |
|  | _____ | _____ |
|  | _____ | _____ |
|  | _____ | _____ |

TOTAL DEPOSITS IN TRANSIT                                          | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

TOTAL OUTSTANDING CHECKS:                                         | 0.00 |

Bank statement Adjustments:                                       _____
Explanation of Adjustments- _____

ADJUSTED BANK BALANCE:                                            | $63,336.93 |

* It is acceptable to replace this form with a similar form          **Page 3 of 16**
** Please attach a detailed explanation of any bank statement adjustment

Exhibit 1 Page 000022  (Bank of America N.A)

## I. ┌ SUMMARY SCHEDULE OF CASH

**ENDING BALANCES FOR THE PERIOD:**

(Provide a copy of monthly account statements for each of the below)

|  |  |  |
|---|---|---|
| | General Account: | 63,336.93 |
| | Payroll Account: | |
| | Tax Account: | |
| *Other Accounts: | Parking income for April (on hand) | 1,639.50 |
| | Parking income for May (on hand) | 549.00 |
| *Other Monies: | | |
| | **Petty Cash (from below): | 0.00 |

**TOTAL CASH AVAILABLE:** 65,525.43

**Petty Cash Transactions:**

| Date | Purpose | Amount |
|------|---------|--------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**TOTAL PETTY CASH TRANSACTIONS:** 0.00

\* Specify the Type of holding (e.g. CD, Savings Account, Investment Security), and the depository name, location & account#
\*\* Attach Exhibit Itemizing all petty cash transactions

Exhibit 1 Page 000023  (Bank of America N.A)

### IV. AGING OF ACCOUNTS PAYABLE AND RECEIVABLE

| | *Accounts Payable Post-Petition | Accounts Receivable | |
|---|---|---|---|
| | | Pre-Petition | Post-Petition |
| 30 days or less | | | |
| 31 - 60 days | | | |
| 61 - 90 days | | | |
| 91 - 120 days | | | |
| Over 120 days | | | |
| TOTAL: | 0.00 | 0.00 | 0.00 |

### V. INSURANCE COVERAGE

| | Name of Carrier | Amount of Coverage | Policy Expiration Date | Premium Paid Through (Date) |
|---|---|---|---|---|
| General Liability | Firemans Fund | $1M and $2M Agg | 6/30/2009 | 6/30/2009 |
| Worker's Compensation | The Hardford | $1M and $2M Agg | 2/28/2010 | 6/30/2009 |
| Casualty | Affiliated FM Ins | Total $244,469,300 | 6/30/2009 | 6/30/2009 |
| Vehicle | N/A | | | |
| Others: | | | | |

### VI. UNITED STATES TRUSTEE QUARTERLY FEES
### (TOTAL PAYMENTS)

| Quarterly Period Ending (Date) | Total Disbursements | Quarterly Fees | Date Paid | Amount Paid | Quarterly Fees Still Owing |
|---|---|---|---|---|---|
| 30-Jun-2009 | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | 0.00 | | | 0.00 | 0.00 |

* Post-Petition Accounts Payable SHOULD NOT include professionals' fees and expenses which have been incurred but not yet awarded by the court.  Post-Petition
Accounts Payable SHOULD include professionals' fees and expenses authorized by Court Order but which remain unpaid as of the close of the period report

Exhibit 1 Page 000024  (Bank of America N.A)

## XI. QUESTIONNAIRE

|  | No | Yes |
|---|---|---|
| 1. Has the debtor-in-possession made any payments on its pre-petition unsecured debt, except as have been authorized by the court? If "Yes", explain below: | X | ___ |

_____

|  | No | Yes |
|---|---|---|
| 2. Has the debtor-in-possession during this reporting period provided compensation or remuneration to any officers, directors, principals, or other insiders without appropriate authorization? If "Yes", explain below: | X | ___ |

_____

3. State what progress was made during the reporting period toward filing a plan of reorganization

_____

4. Describe potential future developments which may have a significant impact on the case:

   The Debtor intends to file a proposed plan of reorganization and corresponding disclosure statement on or before July 10, 2009.

5. Attach copies of all Orders granting relief from the automatic stay that were entered during the reporting period.

|  | No | Yes |
|---|---|---|
| 6. Did you receive any exempt income this month, which is not set forth in the operating report? If "Yes", please set forth the amounts and sources of the income below. | X | ___ |

_____

I, M. Aaron Yashouafar, President of Roosevelt Lofts, Inc., Managing Member of the Debtor, declare under penalty of perjury that I have fully read and understood the foregoing debtor-in-possession operating report and that the information contained herein is true and complete to the best of my knowledge.

_6/24/09_____

Date

Page 16 of 16                    Principal for debtor-in-possession

Exhibit 1 Page 000025  (Bank of America N.A)

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
CENTRAL DISTRICT OF CALIFORNIA

| In Re: | CHAPTER 11 (BUSINESS) |
|---|---|
| Roosevelt Lofts, LLC<br>16661 Ventura Blvd, Suite 600<br>Encino, CA 91436<br>Debtor(s). | Case Number: 1;09-BK-14214<br>Operating Report Number: 1<br>For the Month Ending: 6/30/2009 |

I. CASH RECEIPTS AND DISBURSEMENTS
A. (GENERAL ACCOUNT*)

1. TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS     63,336.93

2. LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL
ACCOUNT REPORTS

3. BEGINNING BALANCE:     63,336.93

4. RECEIPTS DURING CURRENT PERIOD:

| | | |
|---|---|---|
| Accounts Receivable - Post-filing | | |
| Accounts Receivable - Pre-filing | | |
| General Sales | | |
| Other (Specify) | Monthly Rent | 24,723.30 |
| **Other (Specify) | Monlthly Parking | 2,188.50 |

TOTAL RECEIPTS THIS PERIOD:     26,911.80

5. BALANCE:     90,248.73

6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD

| | |
|---|---|
| Transfers to Other DIP Accounts (from page 2) | 0.00 |
| Disbursements (from page 2) | 0.00 |

TOTAL DISBURSEMENTS THIS PERIOD:***     0.00

7. ENDING BALANCE:     90,248.73

8. General Account Number(s):     210092560

Roosevelt Lofts, LLC, Debtor in Possession of Case# 1;09-BK-14214

| Depository Name & Location: | City National Bank -Los Angeles Regional Center |
|---|---|
| | 525 S Flower St, Suite 110, LA CA 90071 |

\*  All receipts must be deposited into the general account.

\*\* Include receipts from the sale of any real or personal property out of the ordinary course of business; attach an exhibit specifying what was sold, to whom, terms, and date of Court Order or Report of Sale.

\*\*\* Although the Debtor has not made any disbursements from its Debtor In Possession account, the Debtor has incurred expenses, some of which have been paid by, or paid from advances made by, the Debtor's affiliates including Milbank Holding Corp. These expenses are set forth in an exhibit attached hereto.

Exhibit 1 Page 000026  (Bank of America N.A)

# Roosevelt Lofts, LLC

### As of May 31, 2009

| Type | Date | Num | Name | Original Amount |
|------|------|-----|------|----------------:|
| Check | 06/01/2009 | 8921 | DISCOVER CARD | 1,000.00 |
| Check | 06/01/2009 | 8923 | AMERICAN EXPRESS | 3,000.00 |
| Check | 06/01/2009 | 8924 | AMERICAN EXPRESS | 2,000.00 |
| Check | 06/01/2009 | 8942 | MILBANK REAL ESTATE-(RSVLT) | 10,750.00 |
| Check | 06/04/2009 | 8943 | CYBERNET COMMUNICATIONS | 1,352.94 |
| Check | 06/04/2009 | 8954 | SRM LABOR MANAGEMENT | 8,204.00 |
| Check | 06/04/2009 | 8956 | CHASE CARD SERVICES | 3,000.00 |
| Check | 06/04/2009 | 8957 | DIGITAL EXPRESS, ETC. | 764.75 |
| Check | 06/04/2009 | 8952 | SRM LABOR MANAGEMENT | 7,731.00 |
| Check | 06/06/2009 | 8962 | LOCKTON INSURANCE BROKERS INC. | 4,850.00 |
| Check | 06/06/2009 | 8964 | JEFFREY F. SAX | 500.00 |
| Check | 06/08/2009 | 8970 | ROBERT GROSSMAN | 1,028.48 |
| Check | 06/08/2009 | 8972 | DEANNA PIRICS | 8.00 |
| Check | 06/10/2009 | 8980 | R & S OVERHEAD DOORS OF COMMERCE | 411.00 |
| Check | 06/10/2009 | 8981 | CHASE CARD SERVICES | 3,755.00 |
| Check | 06/10/2009 | 8981 | CHASE CARD SERVICES | 60.00 |
| Check | 06/10/2009 | 8984 | MWW GROUP, INC. | 145.74 |
| Check | 06/15/2009 | 8988 | CHASE CARD SERVICES | 46.19 |
| Check | 06/15/2009 | 8989 | ROBERT GROSSMAN | 283.56 |
| Check | 06/15/2009 | 8993 | EMANUEL ABRISHAMI | 890.78 |
| Check | 06/15/2009 | 8993 | EMANUEL ABRISHAMI | 81.94 |
| Check | 06/16/2009 | 8998 | CARLITOS DIRECTO | 426.08 |
| Check | 06/16/2009 | 8998 | CARLITOS DIRECTO | 426.08 |
| Check | 06/16/2009 | 8998 | CARLITOS DIRECTO | 58.15 |
| Check | 06/16/2009 | 8998 | CARLITOS DIRECTO | 426.08 |
| Check | 06/16/2009 | 8999 | LA SUPERIOR COURT | 1,050.00 |
| Check | 06/16/2009 | 9000 | MILBANK REAL ESTATE-(RSVLT) | 10,250.00 |
| Check | 06/16/2009 | 9001 | DISCOVER CARD | 1,000.00 |
| Check | 06/17/2009 | 9010 | CITY OF LA, DEPT OF PUBLIC WORKS | 162.08 |
| Check | 06/17/2009 | 9019 | SRM LABOR MANAGEMENT | 4,983.00 |
| Check | 06/19/2009 | 9021 | TERMINAL HARDWARE CO., INC. | 364.80 |
| Check | 06/23/2009 | 9026 | PLANT REPUBLIC | 100.00 |
| Check | 06/29/2009 | 9038 | CHASE CARD SERVICES | 1,593.96 |
| Check | 06/30/2009 | 9041 | CHASE CARD SERVICES | 424.00 |
| Check | 06/30/2009 | 9045 | WELLS FARGO CARD SERVICES | 863.22 |
| Total | | | | 71,990.83 |

Exhibit 1 Page 000027  (Bank of America N.A)

TOTAL DISBURSEMENTS FROM GENERAL ACCOUNT FOR CURRENT PERIOD

| Date mm/dd/yyyy | Check Number | Payee or DIP account | Purpose | *Amount Transfered | **Amount Disbursed | Amount |
|---|---|---|---|---|---|---|
| | | | None | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | TOTAL DISBURSEMENTS THIS PERIOD: | 0.00 | 0.00 | $0.00 |

* Fill in amounts in this column if they are TRANSFERS to another DIP account (e.g. Payroll or Tax); the "amount" column will be filled in for you.

** Fill in amounts in this column if they are DISBURSEMENTS to outside payees; the "amount" column will be filled in for you.

Page 2 of 16

Exhibit 1 Page 000028  (Bank of America N.A)

## GENERAL ACCOUNT
## BANK RECONCILIATION

Bank statement Date:  N/A _____   Balance on Statement: _____ $90,248.73

Plus deposits in transit (a):

|  | Deposit Date | Deposit Amount |
|---|---|---|
|  | _____ | _____ |
|  | _____ | _____ |
|  | _____ | _____ |
|  | _____ | _____ |
|  | _____ | _____ |

TOTAL DEPOSITS IN TRANSIT                                                    0.00

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

TOTAL OUTSTANDING CHECKS:                                                   0.00

Bank statement Adjustments:                                     _____
Explanation of Adjustments-
_____

ADJUSTED BANK BALANCE:                                                $90,248.73

* It is acceptable to replace this form with a similar form
** Please attach a detailed explanation of any bank statement adjustment

Exhibit 1 Page 000029  (Bank of America N.A)

I.   SUMMARY SCHEDULE OF CASH

**ENDING BALANCES FOR THE PERIOD:**

(Provide a copy of monthly account statements for each of the below)

|  |  |
|---|---|
| General Account: | 90,248.73 |
| Payroll Account: | |
| Tax Account: | |
| *Other Accounts: | |
| | |
| | |
| *Other Monies: | |
| **Petty Cash (from below): | 0.00 |

**TOTAL CASH AVAILABLE:**                                    90,248.73

Petty Cash Transactions:

| Date | Purpose | Amount |
|------|---------|--------|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**TOTAL PETTY CASH TRANSACTIONS:**                              0.00

* Specify the Type of holding (e.g. CD, Savings Account, Investment Security), and the depository name, location & account#
** Attach Exhibit Itemizing all petty cash transactions

Exhibit 1 Page 000030  (Bank of America N.A)

IV.  AGING OF ACCOUNTS PAYABLE AND RECEIVABLE

| | *Accounts Payable Post-Petition | Accounts Receivable | |
|---|---|---|---|
| | | Pre-Petition | Post-Petition |
| 30 days or less | | | |
| 31 - 60 days | | | |
| 61 - 90 days | | | |
| 91 - 120 days | | | |
| Over 120 days | | | |
| TOTAL: | 0.00 | 0.00 | 0.00 |

## V. INSURANCE COVERAGE

| | Name of Carrier | Amount of Coverage | Policy Expiration Date | Premium Paid Through (Date) |
|---|---|---|---|---|
| General Liability | Firemans Fund | $1M and $2M Agg | 6/30/2010 | 6/30/2009 |
| Worker's Compensation | The Hardford | $1M and $2M Agg | 2/28/2010 | 6/30/2009 |
| Casualty | Affiliated FM Ins | Total $244,469,300 | 6/30/2010 | 6/30/2009 |
| Vehicle | N/A | | | |
| Others: | | | | |
| | | | | |

## VI.  UNITED STATES TRUSTEE QUARTERLY FEES
## (TOTAL PAYMENTS)

| Quarterly Period Ending (Date) | Total Disbursements | Quarterly Fees | Date Paid | Amount Paid | Quarterly Fees Still Owing |
|---|---|---|---|---|---|
| 30-Jun-2009 | 295,103.00 | 1,995.00 | | | 1,995.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | 1,995.00 | | 0.00 | 1,995.00 |

* Post-Petition Accounts Payable SHOULD NOT include professionals' fees and expenses which have been incurred but not yet awarded by the court.  Post-Petition
Accounts Payable SHOULD include professionals' fees and expenses authorized by Court Order but which remain unpaid as of the close of the period report

Page 12 of 16

Exhibit 1 Page 000031  (Bank of America N.A)

## XI. QUESTIONNAIRE

|   |   | No | Yes |
|---|---|----|-----|
| 1. | Has the debtor-in-possession made any payments on its pre-petition unsecured debt, except as have been authorized by the court? If "Yes", explain below: | X | ___ |

|   |   | No | Yes |
|---|---|----|-----|
| 2. | Has the debtor-in-possession during this reporting period provided compensation or remuneration to any officers, directors, principals, or other insiders without appropriate authorization? If "Yes", explain below: | X | ___ |

3.  State what progress was made during the reporting period toward filing a plan of reorganization

The Debtor has been engaged in ongoing discussions with Bank of America, N.A. (the "Bank") and the Official Committee of Unsecured Creditors (the "Committee") regarding the terms of a consensual plan of reorganization. Based upon such discussions, the Debtor, the Bank and the Committee have entered into a number of stipulations providing for the extension of the 11 U.S.C. Section 362(d)(3) time period applicable to the Debtor's case to and including July 31, 2009. The Debtor intends to file a proposed plan of reorganization and corresponding disclosure statement on or before July 31, 2009 (or such further extended date as agreed to by the parties).

4.  Describe potential future developments which may have a significant impact on the case:

See #3 above.

5.  Attach copies of all Orders granting relief from the automatic stay that were entered during the reporting period.

|   |   | No | Yes |
|---|---|----|-----|
| 6. | Did you receive any exempt income this month, which is not set forth in the operating report? If "Yes", please set forth the amounts and sources of the income below. | X | ___ |

I,   M. Aaron Yashouafar, President of Roosevelt Lofts, Inc., Managing Member of the Debtor, declare under penalty of perjury that I have fully read and understood the foregoing debtor-in-possession operating report and that the information contained herein is true and complete to the best of my knowledge.

7/16/09
Date

Page 16 of 16          Principal for debtor-in-possession

Exhibit 1 Page 000032  (Bank of America N.A)

# EXHIBIT 2

1  DAVID L. NEALE (SBN 141225)
   JULIET Y. OH (SBN 211414)
2  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email: dln@lnbrb.com, jyo@lnbrb.com

6  Attorneys for Chapter 11 Debtor and
7  Debtor in Possession

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11             SAN FERNANDO VALLEY DIVISION

12

13  In re                              ) Case No. 1:09-bk-14214-GM
                                       )
14  ROOSEVELT LOFTS, LLC, a Delaware   ) Chapter 11
15  limited liability company,         )
                                       )
16              Debtor.                ) **CHAPTER   11   PLAN   OF**
                                       ) **REORGANIZATION**
17                                     )
                                       ) <u>Hearing:</u>
18                                     ) Date:    [To be set]
19                                     ) Time:    [To be set]
                                       ) Place:   Courtroom "303"
20                                     )          21041 Burbank Boulevard
                                       )          Woodland Hills, California
21                                     )
                                       )
22  ─────────────────────────────────)

23        Roosevelt Lofts, LLC, a Delaware limited liability company (the "Debtor"), the debtor

24  and debtor in possession in the above-captioned chapter 11 bankruptcy case, commenced its

25  chapter 11 bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 *et*

26  *seq.* (as amended, the "Bankruptcy Code") on April 13, 2009 (the "Petition Date"). The Debtor

27

28

                                        1

Exhibit 2 Page 000033 (Bank of America N.A)

1    continues to manage its financial affairs and operate its bankruptcy estate as a debtor in

2    possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3     Chapter 11 allows the debtor, and, under some circumstances, creditors and other parties

4    in interest, to propose a plan.  A plan may provide for the debtor to reorganize by continuing to

5    operate, to liquidate by selling the assets of its estate, or a combination of both.

6     The Debtor is the proponent of this "Chapter 11 Plan of Reorganization" (the "Plan").

7    This Plan is a plan of reorganization which has been proposed by the Debtor.  The effective date

8    of this Plan (the "Effective Date") will be the first business day which is at least eleven days

9    following the date of entry of the Court order confirming this Plan (the "Plan Confirmation

10   Order") when and provided that all of the following conditions to the effectiveness of this Plan

11   have been satisfied or waived by the Debtor:  (a) there shall not be any stay in effect with respect

12   to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any

13   appeal or rehearing; and (c) this Plan and all documents, instruments and agreements to be

14   executed in connection with this Plan shall have been executed and delivered by all parties to

15   such documents, instruments and agreements.  The Debtor following the Effective Date shall be

16   referred to as the "Reorganized Debtor."  Any defined terms which are not defined in this Plan

17   shall have the same definitions as such terms have in the Debtor's Disclosure Statement which

18   describes this Plan.

19   **I.**

20   **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

21   **A.** **General Overview**

22    As required by the Bankruptcy Code, the Plan classifies claims and interests in various

23   classes according to their right to priority.  The Plan states whether each class of claims or

24   interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.  A

25   claim or interest is classified in a particular class only to the extent that it falls within the

26   description of that class.  To the extent that part of a claim or interest falls within a different class

27   description, the claim or interest is classified in that different class.

28

2

Exhibit 2 Page 000034 (Bank of America N.A)

1    NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO

2    DISTRIBUTION WILL BE MADE TO A HOLDER ON ACCOUNT OF A CLAIM OR

3    INTEREST THAT IS NOT ALLOWED.

4    **B.    Unclassified Claims**

5    Certain types of claims are not placed into voting classes; instead they are unclassified.

6    They are not considered impaired and they do not vote on the Plan because they are

7    automatically entitled to specific treatment provided for them in the Bankruptcy Code or the

8    Amended Bankruptcy Code (as applicable).  Therefore, the Debtor has not placed the following

9    claims in classes:

10    **1.    Administrative Claims**

11    Administrative claims are claims for costs or expenses of administering the Debtor's

12    chapter 11 case which are entitled to priority under Bankruptcy Code Section 507(a)(2).  The

13    Bankruptcy Code requires that all allowed administrative claims be paid on the Effective Date,

14    unless a particular holder of an allowed administrative claim agrees to a different treatment.

15    The following chart lists all of the Debtor's known administrative claims, in the amounts

16    the Debtor estimate will be unpaid on the Effective Date, and their treatment under the Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date. |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the Effective Date. |
| Levene, Neale, Bender, Rankin & Brill L.L.P., bankruptcy counsel for the Debtor | $250,000 (est.) in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses pursuant to a final order. |
| Landsberg Margulies LLP, counsel to the Official Committee of Unsecured Creditors (the "Committee") | $30,000 (est.) | Paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses pursuant to a final order. |

3

Exhibit 2 Page 000035 (Bank of America N.A)

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Milbank Holding Corp. ("Milbank") | $500,000 (est.) | To be assigned to Roosevelt Lofts, Inc. ("RLI") and thereafter converted to equity upon confirmation of the Plan as a component of the new value contributed by RLI in exchange for new equity interests in the Reorganized Debtor. |
| **TOTAL** | **$780,000 (est.)** | |

The administrative claim amounts set forth above represent only the Debtor's best estimate as to the amount of allowed administrative claims in the Debtor's case, based upon information provided by the administrative claimants and information in the possession or control of the Debtor. The actual amount of allowed administrative claims may be higher or lower.

<u>Bankruptcy Court Approval of Professional Fees Required</u>

Before they may be paid, the Bankruptcy Court must approve and allow all unpaid fees and expenses of professionals employed at the expense of the Debtor's bankruptcy estate. For all professional fees and expenses, the professional in question must file and serve a properly noticed final fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by a final order of the Bankruptcy Court will be paid under the Plan.

By voting to accept the Plan, Creditors are not acknowledging the validity of, or consenting to the amount of, the allowed administrative claim of any professional employed at the expense of the Debtor's bankruptcy estate, and creditors are not waiving any of their rights to object to the allowance of any of the administrative claims asserted by such professionals.

**2. Priority Tax Claims**

Except to the extent the holder of a particular claim has agreed to different treatment, the Bankruptcy Code requires that the holder of an allowed priority tax claim receive on account of such claim either (i) payment in full on the Effective Date, or (ii) regular installment payments in cash (x) of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such

4

Exhibit 2 Page 000036 (Bank of America N.A)

claim; (y) over a period ending not later than five (5) years after the commencement of a
Debtor's case; and (z) in a manner not less favorable than the most favored non-priority
unsecured claim provided for under the Plan.

The chart below indicates all priority tax claims which were either scheduled by the
Debtor as undisputed, liquidated, and non-contingent or asserted by the taxing agencies in filed
proofs of claim, and the treatment of such allowed priority tax claims under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| United States Treasury, Internal Revenue Service | $0 | Paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such claim by a final order. |
| California Franchise Tax Board | $4,535.34 | Paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such claim by a final order. |
| City of Los Angeles  Office of Finance | $11,542.63 | Paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such claim by a final order. |
| Total | $16,077.97 | |

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

The following chart lists all of the secured claims which were either scheduled by the
Debtor as undisputed, liquidated and non-contingent or asserted by the creditor in filed proofs of
claim, and the treatment of such allowed secured claims under the Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1-A | Secured claim of: Los Angeles County Treasurer and Tax Collector | N | N<br><br>Not impaired; not entitled to | Paid in full on the later of (1) the Effective Date, (2) the date the Court allows such claim by a final order, or (3) the date(s) by which |

5

Exhibit 2 Page 000037 (Bank of America N.A)

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | **Collateral:** Real property located at 727 West 7th Street in Los Angeles, California (the "Building") **Priority of Security Interest:** First priority (statutory) **Collateral value:** Approx. $110,000,000, subject to completion of the final valuation of the Building **Amount of Claim:** $726,000 (est.) | | vote on the Plan. | the claim is due and payable. |
| 1-B | **Secured Claim of:** Bank of America, N.A., individually and as agent for a group of lenders (the "Bank") **Collateral:** The Building, all fixtures located in the Building, and all rents and revenue derived from the sale of units, and use and/or lease of the Building (collectively, the "Bank Collateral") **Priority of Security Interest:** Disputed | N | Y | Upon the Effective Date, the Reorganized Debtor shall deliver to the Bank a new note (the "Restructured Note"), subject to the terms and conditions generally described herein. To the extent inconsistent herewith, the Debtor's existing loan from the Bank (the "Existing Loan") shall be modified as set forth below. The principal terms and conditions of the Restructured Note, as reflected in the projections attached hereto as Exhibit "1," are: (1) The Restructured Note shall mature and all unpaid principal and accrued but unpaid interest shall be |

6

Exhibit 2 Page 000038 (Bank of America N.A)

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | Collateral value: Approx. $110,000,000, subject to completion of the final valuation of the Building  Amount of Claim: $80,000,000 (est.) | | | fully due and payable on the thirtieth (30th) month following the Effective Date (the "New Maturity Date").  (2) The Restructured Note shall bear interest at a per annum rate equal to the prevailing 3-month London Interbank Offering Rate ("LIBOR"), plus a margin of three hundred (300) basis points.  (3) All interest, late fees, attorneys' fees and other costs due and payable as of the Effective Date on the Existing Loan shall be added to the principal balance of the Restructured Note and paid in accordance with the terms thereof. To the extent the Bank has accrued interest on the Existing Loan at the default rate of interest provided for under the Existing Loan documents through and including the Effective Date, the amount due and payable from and after the Effective Date on the Restructured Note shall be based upon the amount of principal, interest and other charges accrued at the non-default rates provided for under the Existing Loan Documents.  (4) Interest on the outstanding principal balance of the Restructured |

7

Exhibit 2 Page 000039 (Bank of America N.A)

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
|  |  |  |  | Note shall be due and payable on the fifteenth (15th) day of each month following the Effective Date, commencing in the month which is the second (2nd) month following the Effective Date through and including the New Maturity Date.<br><br>(5) The Restructured Note shall be secured by a security interest in and lien upon the Bank Collateral, all to the same extent and with the same priority as was the case with respect to the Bank's security interest in and lien upon the Bank Collateral prior to the Petition Date.<br><br>(6) The Bank shall be deemed to have consented to the sale of individual units at the Building at the release prices set forth in the Existing Loan documents, and the Reorganized Debtor shall be permitted to convey title to each unit sold to a third party purchaser free and clear of the Bank's lien and security interest<br><br>The treatment described in the Plan shall be in full settlement and satisfaction of the Bank's Class 1-B claim. |

8

Exhibit 2 Page 000040 (Bank of America N.A)

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1-C | Alleged Secured Claims of: Holders of mechanic's liens

Collateral: The Building and all fixtures located in the Building

Priority of Security Interest: Disputed

Collateral value: Approx. $110,000,000, subject to completion of the final valuation of the Building

Aggregate Amount of Class 1-C Allowed Secured Claims: $8,900,000 (est.) (disputed)[1] | N | Y | To the extent there are any Class 1-C claims and any such claims are determined by a final order of the Court to be allowed secured claims, each such Class 1-C claim will be deemed to have been placed in a separate subclass within Class 1-C, and each such Class 1-C claim will be paid in cash, beginning one (1) year following the Effective Date, but in any event by the later of (i) two (2) years following the Effective Date, or (ii) the date upon which the Court enters a final order determining the allowed amount, if any, of such claim.

Interest shall accrue on all Class 1-C allowed claims at the rate of 2.5% per annum until such allowed Class 1-C claims are satisfied and paid.

The treatment of holders of allowed Class 1-C claims described in the Plan shall be in full settlement and |

[1] Prior to the Petition Date, V.G.I. Corporation ("VGI") recorded a mechanic's lien against the Building for the sum of $2,575,569.55, and is therefore included herein as an alleged holder of a Class 1-C claim. The Debtor disputes the validity and amount of VGI's asserted claim.

Prior to the Petition Date, the Debtor and the Bank entered into an agreement to establish a litigation reserve account (with $1.5 million) to indemnify the Bank in connection with litigation commenced by VGI against the Debtor and others. Any funds remaining in the litigation reserve account upon the resolution of the litigation is to be returned to the Debtor. Based on the cash available in the foregoing litigation reserve account, and the amounts proposed to be paid to holders of Class 1-C allowed claims, as reflected in Exhibit "1" hereto, holders of allowed Class 1-C claims will be paid in full, with interest, through the Plan.

9

Exhibit 2 Page 000041 (Bank of America N.A)

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|----------------|-----------|
|         |             |                |                | satisfaction of all allowed Class 1-C claims. |

## 2.    Classes of Priority Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. Allowed priority claims are entitled to treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all of the priority claims which were either scheduled by the Debtor as undisputed, liquidated and non-contingent or asserted by the creditor in filed proofs of claim, and the treatment of such allowed priority claims under the Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|----------------|-----------|
| 2 | Allowed Priority Claims against the Debtor<br><br>Estimated Amount of Priority Claims: $0 | N | N<br><br>Not impaired; not entitled to vote on the Plan. | To the extent there are any allowed priority claims, the holder of each such Class 2 claim will be paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such claim by a final order. |

## 3.    Classes of Allowed Unsecured Claims

The following chart describes the Plan's treatment of the classes containing the Debtor's allowed unsecured claims:

Exhibit 2 Page 000042 (Bank of America N.A)

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 3 | All General Unsecured Claims, other than the General Unsecured Claim of Milbank<br><br>Aggregate Amount of Class 3 Allowed General Unsecured Claims: $4,300,000 (est.) | Y<br><br>Impaired; Allowed claims in this class are entitled to vote on the Plan. | Holders of Class 3 allowed claims will be paid in full, with interest, from cash generated from the leasing and sales of units in the Building, in accordance with the projections set forth in Exhibit "1" hereto.<br><br>Interest shall accrue on all Class 3 allowed claims at the rate of 1.5% per annum until such Class 3 claims are satisfied and paid.<br><br>The treatment of holders of Class 3 allowed claims described in the Plan shall be in full settlement and satisfaction of all Class 3 allowed claims. |
| 4 | All General Unsecured Claims of Milbank<br><br>Aggregate Amount of Class 4 Allowed General Unsecured Claims: $5,100,000 (est.) | Y<br><br>Impaired; Allowed claims in this class are entitled to vote on the Plan. | On the Effective Date, in full and final satisfaction of Milbank's allowed Class 4 Claim, Milbank shall assign its allowed Class 4 claim to RLI, and RLI shall thereafter waive any right to recovery on account of such Claim, and shall instead be entitled to receive an equity interest in the Reorganized Debtor, subject to the other terms and conditions of the Plan. |

## 4. Classes of Interest Holders

Interest holders are the entities that hold an ownership interest (*i.e.*, equity interest) in the Debtor. The following chart describes the Plan's treatment of the classes of interests:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Equity interests in the Debtor | Y<br><br>Impaired; holders of Class | On the Effective Date, all Class 5 interests will be deemed canceled and extinguished. Holders of |

11

Exhibit 2 Page 000043 (Bank of America N.A)

| | | 5 interests are <u>not</u> entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code. | Class 5 interests will not receive any distribution or retain any property under the Plan on account of their interests. |
|---|---|---|---|

### D.   Means of Effectuating the Plan and Implementation of the Plan

#### 1.   Funding for the Plan

The Plan will be funded with cash from: (i) in addition to the waiver of Milbank's allowed administrative claim and allowed Class 4 claim by RLI, new equity contributions from RLI totaling up to $3.5 million over the duration of the Plan, with $1.5 million of the foregoing amount to be contributed on or before the Effective Date (collectively, the "New Equity Contribution"), (ii) rent revenue generated by the leasing of commercial units in the Building, (ii) rent revenue generated by the short-term leasing of up to seventy five (75) residential units in the Building, and (iii) proceeds generated by the sales of residential units in the Building, as provided in Exhibit "1" hereto.

#### 2.   Composition of the Reorganized Debtor and Post-Confirmation Management

In consideration of the New Equity Contribution, RLI shall receive on the Effective Date 100% of the equity interests in the Reorganized Debtor, free and clear of all liens and adverse claims.

Following the Effective Date, the Debtor shall be referred to as the "Reorganized Debtor." RLI will continue to act as the Managing Member of the Reorganized Debtor, and will have the authority to make all decisions on behalf of the Reorganized Debtor that are required in order to effectuate the terms of this Plan.

12

Exhibit 2 Page 000044 (Bank of America N.A)

3.    **Disbursing Agent**

The Reorganized Debtor shall act as the disbursing agent (the "Disbursing Agent") for purposes of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

4.    **Objections to Claims**

The Debtor or the Reorganized Debtor, as the case may be, and any party in interest may review all claims filed or deemed filed and may object to or seek subordination of any claim filed or scheduled in this case. The deadline to file objections to claims shall be 180 days after the Effective Date. As provided by Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. The Court shall retain jurisdiction over the Debtor, the Reorganized Debtor and this case to resolve such objections to claims following the confirmation of the Plan, if necessary.

Nothing contained in the Plan shall constitute a waiver or release by the Debtor of any rights of setoff or recoupment, or of any defense, it may have with respect to any claim. The Disbursing Agent will withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors ("Disputed Claims") of any particular class as if such claims were allowed in full.

5.    **Interest Pending Allowance of Claims**

Except as specifically provided for in the Plan, in the order confirming the Plan, or in some other order of the Court, interest shall not accrue on claims and no holder of a claim shall be entitled to interest accruing on or after the Petition Date on any claim.

To the extent the Debtor or any other party in interest objects to the allowance of any claim, nothing in the Plan or herein shall be deemed to imply or create for the holders of any Disputed Claims any entitlement to receive interest upon the allowed amount of any such

Exhibit 2 Page 000045 (Bank of America N.A)

1    Disputed Claims as a result, *inter alia*, of the delay in payment of such claims.

2    **6.    Distributions to be Made Pursuant to the Plan**

3    Distributions to be made by the Reorganized Debtor on the Effective Date on account of
4    any claim shall be made on the Effective Date or as promptly thereafter as practicable.
5    Distributions to be made by the Disbursing Agent under the Plan shall be made by check drawn
6    on a domestic bank or by wire transfer, at the sole election of the Disbursing Agent.

7    Except as otherwise agreed to by the Disbursing Agent in writing, distributions to be
8    made to holders of allowed claims pursuant to the Plan may be delivered by regular mail,
9    postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time
10   be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a
11   proof of claim duly filed with the Court, to such address.

12   Checks issued by the Reorganized Debtor or the Disbursing Agent to pay allowed claims
13   shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.
14   Requests for reissuance of any check shall be made to the Reorganized Debtor by the holder of
15   the allowed claim to whom such check originally was issued, prior to the expiration of the
16   Claiming Period.  After such date, (i) the holder of any such claim who has failed to make a
17   timely request for reissuance of such a voided check or such claim and (ii) the unclaimed
18   property held on account of such voided check or such claim shall revest in the Reorganized
19   Debtor free and clear of all claims and interests.

20   In connection with the Plan and any instruments issued in connection therewith, the
21   Reorganized Debtor shall comply with all applicable withholding and reporting requirements
22   imposed by any federal, state or local taxing authority, and all distributions under the Plan shall
23   be subject to any such withholding or reporting requirements.

24   **7.    Exculpations and Releases**

25   To the maximum extent permitted by law, none of the Debtor, the Debtor's estate, nor
26   any of their employees, agents, representatives, or the professionals employed or retained by any
27   of them, whether or not by Bankruptcy Court order (each, an "Indemnified Person"), shall have

28

14

Exhibit 2 Page 000046 (Bank of America N.A)

1  or incur liability to any person or entity for an act taken or omission made in good faith in

2  connection with or related to the formulation of the Plan, the Disclosure Statement, or a contract,

3  instrument, release, or other agreement or document created in connection therewith, the

4  solicitation of acceptances for or confirmation of the Plan, or the consummation and

5  implementation of the Plan and the transactions contemplated therein.  Each Indemnified Person

6  shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its

7  duties and responsibilities under the Plan.

8      The Debtor and the Debtor's estate will be deemed to be forever released and discharged

9  from all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action

10  and liabilities whatsoever in connection with or related to the Debtor and the Debtor's estate, or

11  the Plan (other than the rights of the Debtor to enforce the Plan and the contracts, instruments,

12  releases, indentures, and other agreements or documents delivered thereunder) whether

13  liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown,

14  foreseen or unforseen, then existing or thereafter a rising, in law, equity or otherwise that are

15  based in whole or part on any act, omission, transaction, event or other occurrence taking place

16  on or prior to the Effective Date in any way relating to the Debtor, the Debtor's estate, or the

17  Plan, and that may be asserted by or on behalf of the Debtor or its bankruptcy Estate.

18      **8.   Injunctions**

19  **THE CONFIRMATION ORDER SHALL ENJOIN THE PROSECUTION,**

20  **WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIM,**

21  **OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF**

22  **ACTION, LIABILITY OR INTEREST RELEASED, DISCHARGED OR TERMINATED**

23  **PURSUANT TO THE PLAN.**

24  **EXCEPT AS PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AS**

25  **OF THE EFFECTIVE DATE, ALL ENTITIES THAT HAVE HELD, CURRENTLY**

26  **HOLD OR MAY HOLD A CLAIM OR OTHER DEBT OR LIABILITY THAT IS**

27  **DISCHARGED OR AN INTEREST OR OTHER RIGHT OF AN EQUITY SECURITY**

28

15

Exhibit 2 Page 000047 (Bank of America N.A)

1  HOLDER THAT IS TERMINATED PURSUANT TO THE TERMS OF THE PLAN ARE

2  PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS

3  AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, OR THEIR PROPERTY ON

4  ACCOUNT OF ANY SUCH DISCHARGED CLAIMS, DEBTS OR LIABILITIES OR

5  TERMINATED INTERESTS OR RIGHTS: (I) COMMENCING OR CONTINUING, IN

6  ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (II)

7  ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER

8  ANY JUDGMENT, AWARD, DECREE OR ORDER; (III) CREATING, PERFECTING

9  OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF,

10 RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY

11 DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTOR; AND (V)

12 COMMENCING OR CONTINUING ANY ACTION IN ANY MANNER, IN ANY PLACE

13 THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS

14 OF THE PLAN.

15     BY ACCEPTING DISTRIBUTION PURSUANT TO THE PLAN, EACH

16 HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST RECEIVING

17 DISTRIBUTIONS PURSUANT TO THE PLAN WILL BE DEEMED TO HAVE

18 SPECIFICALLY CONSENTED TO THE INJUNCTIONS SET FORTH IN THIS

19 SECTION.

20     E.     Other Provisions of the Plan

21          1.     Executory Contracts and Unexpired Leases

22     a)     Assumptions

23     In the ordinary course of business, the Debtor is a party to a number of commercial and

24 residential real property leases for units in the Building. A schedule of leases to be assumed

25 under the Plan is attached to the Disclosure Statement as Exhibit "___". On the Effective Date,

26 the Debtor intends to assume all such lease agreements. Based on the Debtor's books and

27 records, the Debtor is not in default of any of the foregoing agreements and, therefore, no cure

28

16

Exhibit 2 Page 000048 (Bank of America N.A)

payments are due and owing to parties to such lease agreements.

        **b)**      **Rejections**

        **To the extent that leases or contracts, other than the ones discussed above, exist, on the Effective Date, such executory contracts and unexpired leases shall be deemed rejected. The Confirmation Order shall constitute an Order approving the Debtor's rejection of all such executory contracts and unexpired leases.**

        **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE 30 DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER. Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.**

        **2.**      **Changes in Rates Subject to Regulatory Commission Approval**

        The Debtor is not subject to governmental regulatory commission approval of its rates.

        **3.**      **Retention of Jurisdiction**

        After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

        a.      To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

        b.      To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, the Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

        c.      To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate.

        d.      To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation,

Exhibit 2 Page 000049 (Bank of America N.A)

1 execution, performance, and consummation of the Plan, the Confirmation Order, and all matters

2 referred to in the Plan, the Confirmation Order, and to determine all matters that may be pending

3 before the Court in this case on or before the Effective Date with respect to any person or entity

4 related thereto;

5       e.     To determine (to the extent necessary) any and all applications for allowance of

6 compensation and reimbursement of expenses of professionals for the period on or before the

7 Effective Date;

8       f.     To determine any request for payment of administrative expenses;

9       g.     To determine all applications, motions, adversary proceedings, contested matters,

10 and any other litigated matters instituted during the pendency of this case whether before, on, or

11 after the Effective Date;

12       h.     To determine such other matters and for such other purposes as may be provided

13 in the Confirmation Order.

14       i.     To modify the Plan under Section 1127 of the Bankruptcy Code in order to

15 remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan

16 so as to carry out its intent and purpose;

17       j.     Except as otherwise provided in the Plan or the Confirmation Order, to issue

18 injunctions to take such other actions or make such other orders as may be necessary or

19 appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or

20 implementation by any person or entity of the Plan or the Confirmation Order;

21       k.     To issue such orders in aid of consummation of the Plan or the Confirmation

22 Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person

23 or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

24       l.     To enter a final decree closing this Case.

25

26

27

28

Exhibit 2 Page 000050 (Bank of America N.A)

4.     **Nonconsensual Confirmation**

To the extent necessary, the Debtor requests the Court to confirm this Plan under Section 1129(b) of the Bankruptcy Code.

## II.

## EFFECT OF CONFIRMATION OF PLAN

A.     **Discharge**

The Plan provides that upon completion of payments from the Effective Date in accordance with the projections attached hereto and to the Disclosure Statement, the Debtor shall be discharged of liabilities for debts incurred before confirmation of the Plan, to the extent provided in 11 U.S.C. § 1141.

Confirmation shall bind the Debtor, all creditors, and other parties in interest to the provisions of the Plan whether or not the claim of such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

B.     **Revesting of Property in the Reorganized Debtor**

Except as provided elsewhere herein, the confirmation of the Plan revests all of the property of the estate in the Reorganized Debtor.

In addition, on the Effective Date, all of the claims against and/or interests in third parties that constitute property of the estate shall be revested in the Reorganized Debtor. Following the Effective Date, the Reorganized Debtor shall have absolute authority to prosecute, waive, adjust or settle any claims without the need for approval by the Court. Following the Effective Date, the Reorganized Debtor shall have the authority to employ such professionals as he deems necessary to prosecute or defend such claims asserted without the need for Court approval.

C.     **Default**

Except as otherwise provided herein or in the Confirmation Order, in the event that the Reorganized Debtor or the Disbursing Agent shall default in the performance of any of its obligations under the Plan and shall not have cured such a default within thirty (30) days after receipt of written notice of default from the creditor to whom the performance is due, then the

19

Exhibit 2 Page 000051 (Bank of America N.A)

1  entity or individual to whom the performance is due may pursue such remedies as are available

2  at law or in equity.  An event of default occurring with respect to one claim shall not be any

3  event of default with respect to any other claim.

4      **D.**    **Modification of Plan**

5  The Debtor may withdraw or modify the Plan at any time before confirmation.  The Court may

6  require a new disclosure statement and/or re-voting on the Plan if the Debtor modifies the Plan

7  before confirmation.  Modification of the Plan shall be in accordance, and the Plan as modified

8  shall comply, with the requirements of Section 1127 of the Bankruptcy Code.

9      **E.**    **Post-Confirmation Status Report**

10      Within 120 days of the entry of the order confirming the Plan, the Debtor shall file a

11  status report with the Court explaining what progress has been made toward consummation of

12  the confirmed Plan.  The status report must be served on the Office of the United States Trustee,

13  the 20 largest unsecured creditors and any secured creditors and priority unsecured creditors

14  entitled to receive distributions under the Plan.  Further status reports shall be filed every 120

15  days and served on the same entities.

16      **F.**    **Post-Confirmation Conversion/Dismissal**

17      A creditor or party in interest may bring a motion to convert or dismiss the Debtor's case

18  under § 1112(b) after the Plan is confirmed if there is a default in performing the Plan.  If the

19  Court orders the Debtor's case converted to Chapter 7 after the Plan is confirmed, then all

20  property that had been property of the Chapter 11 estate, and that has not been disbursed

21  pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed

22  upon the revested property, but only to the extent that the Court did not previously authorize

23  relief from stay during the Debtor's case.

24      The order confirming the Plan may also be revoked under very limited circumstances.

25  The Court may revoke the order if the order of confirmation was procured by fraud and if the

26  party in interest brings an adversary proceeding to revoke confirmation within 180 days after the

27  entry of the order of confirmation.

28

Exhibit 2 Page 000052 (Bank of America N.A)

1    **G.    Post-Confirmation U.S. Trustee Fees**

2    The Debtor shall be responsible for timely payment of all fees incurred after the Effective

3    Date pursuant to 28 U.S.C. Section 1930(a)(6).

4    **H.    Final Decree**

5    Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

6    Debtor or other party as the Court shall designate in the order confirming the Plan, shall file a

7    motion with the Court to obtain a final decree to close the Case.

8    Dated: August 31, 2009              ROOSEVELT LOFTS, LLC

9                                                        By:

10                                                              M. AARON YASHOUAFAR
                                                                President, Roosevelt Lofts, Inc.,
11                                                              Manager of Debtor, Roosevelt Lofts, LLC

12   Submitted By:
13   DAVID L. NEALE
     JULIET Y. OH
14   LEVENE, NEALE, BENDER, RANKIN
               & BRILL L.L.P.
15   Attorneys for Debtor and Debtor in Possession

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 2 Page 000053 (Bank of America N.A)

# EXHIBIT "1"

Exhibit 2 Page 000054 (Bank of America N.A)

| | Jan-10 (M1) | Feb-10 (M2) | Mar-10 (M3) | Apr-10 (M4) | May-10 (M5) | Jun-10 (M6) | Jul-10 (M7) | Aug-10 (M8) | Sep-10 (M9) | Oct-10 (M10) | Nov-10 (M11) | Dec-10 (M12) | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Activity Assumptions** | | | | | | | | | | | | | |
| Total Units Available | 222 | 210 | 205 | 199 | 193 | 187 | 150 | 137 | 124 | 113 | 102 | 91 | |
| Units Leased/mo | 12 | 5 | 6 | 6 | 6 | 7 | 7 | 7 | 5 | 5 | 5 | 4 | |
| Units Sold/mo | 0 | 0 | 0 | 0 | 0 | 30 | 6 | 6 | 6 | 6 | 6 | 6 | |
| Total Leased Units | 12 | 17 | 23 | 29 | 35 | 42 | 49 | 56 | 61 | 66 | 71 | 75 | |
| Total Sold Units | 0 | 0 | 0 | 0 | 0 | 30 | 36 | 42 | 48 | 54 | 60 | 66 | |
| Units Remaining | 210 | 205 | 199 | 193 | 187 | 150 | 137 | 124 | 113 | 102 | 91 | 81 | |
| | | | | | | | | | | | | | |
| Accumulated Sales | 0 | 0 | 0 | 0 | 0 | 12,750,000 | 15,750,000 | 18,900,000 | 22,050,000 | 25,200,000 | 28,350,000 | 31,500,000 | |
| Average Rent/unit | 2,100 | 2,100 | 2,125 | 2,150 | 2,150 | 2,150 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | |
| Average Sale/unit | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 500,000 | 525,000 | 525,000 | 525,000 | 525,000 | 525,000 | |
| Average Parking Rate | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | |
| **Financing** | | | | | | | | | | | | | |
| Estg Bank Group's Loan | 80,000,000 | 80,000,000 | 80,000,000 | 80,000,000 | 80,000,000 | 80,000,000 | 71,192,701 | 69,241,411 | 67,354,941 | 65,457,338 | 62,933,378 | 60,389,731 | |
| Interest Rate | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | 3.50% | |
| **New Equity** | | | | | | | | | | | | | |
| Accumulated Cash Contribution | 1,500,000 | 1,581,467 | 1,930,767 | 2,266,892 | 2,950,042 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | |
| Debt Conversion | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | |
| Total equity Contribution | 7,050,000 | 7,131,467 | 7,480,767 | 7,816,892 | 8,500,042 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | |
| | | | | | | | | | | | | | |
| **Rental Income** | | | | | | | | | | | | | |
| Commercial | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | |
| Residential | 25,200 | 35,700 | 48,875 | 62,350 | 75,250 | 90,300 | 107,800 | 123,200 | 134,200 | 145,200 | 156,200 | 165,000 | |
| Parking | 10,000 | 10,000 | 10,000 | 12,000 | 12,000 | 12,000 | 15,000 | 10,000 | 10,000 | 17,500 | 17,500 | 17,500 | |
| Total Rental Income | 63,200 | 73,700 | 86,875 | 102,350 | 115,250 | 130,300 | 150,800 | 161,200 | 172,200 | 190,700 | 201,700 | 210,500 | |
| | | | | | | | | | | | | | |
| **Sales Proceeds** | | | | | | | | | | | | | |
| Gross Sale | 0 | 0 | 0 | 0 | 0 | 12,750,000 | 3,000,000 | 3,150,000 | 3,150,000 | 3,150,000 | 3,150,000 | 3,150,000 | |
| Sales Cost | 0 | 0 | 0 | 0 | 0 | 765,000 | 180,000 | 189,000 | 189,000 | 189,000 | 189,000 | 189,000 | |
| Net Sales Proceed | 0 | 0 | 0 | 0 | 0 | 11,985,000 | 2,820,000 | 2,961,000 | 2,961,000 | 2,961,000 | 2,961,000 | 2,961,000 | |
| | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | |
| Property Tax | 116,667 | 116,667 | 116,667 | 116,667 | 116,667 | 100,901 | 97,748 | 94,595 | 91,441 | 88,288 | 85,135 | 81,982 | |
| HOA fees | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | |
| Leasing/Sales | 5,000 | 50,000 | 50,000 | 50,000 | 50,000 | 15,000 | 15,000 | 15,000 | 20,000 | 20,000 | 20,000 | 20,000 | |
| Marketing | 0 | 0 | 0 | 362,500 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 302,481 | |
| Parking Expense | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | |
| Total Operating Exp. | 144,667 | 189,667 | 189,667 | 552,167 | 189,667 | 138,901 | 135,748 | 132,595 | 134,441 | 131,288 | 128,135 | 427,463 | |
| | | | | | | | | | | | | | |
| Net Proceeds from Operation | (81,467) | (115,967) | (102,792) | (449,817) | (74,417) | 11,976,399 | 2,835,052 | 2,989,605 | 2,998,759 | 3,020,412 | 3,034,565 | 2,744,037 | |
| | | | | | | | | | | | | | |
| **Interest Expense** | | | | | | | | | | | | | |
| Esng Bank Group Loan | 0 | 233,333 | 233,333 | 233,333 | 233,333 | 233,333 | 233,333 | 207,645 | 201,954 | 196,452 | 190,917 | 183,556 | |
| | | | | | | | | | | | | | |
| Total Interest Expense | 0 | 233,333 | 233,333 | 233,333 | 233,333 | 233,333 | 233,333 | 207,645 | 201,954 | 196,452 | 190,917 | 183,556 | |
| | | | | | | | | | | | | | |
| Monthly Net Cash Flow after Interest | (81,467) | (349,300) | (336,125) | (683,150) | (307,750) | 11,743,066 | 2,601,719 | 2,781,960 | 2,796,804 | 2,823,960 | 2,843,648 | 2,560,481 | |
| | | | | | | | | | | | | | |
| Pymt to Holders of Valid Mechanic's Liens w/Interested@ 2.5% | 0 | 0 | 0 | 0 | 0 | 2,935,766 | 650,430 | 695,490 | 699,201 | 0 | 0 | 0 | |
| Pymt to Unsecured Creditors w/Interested @ 1.5% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Pymt for Completion of Construction | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Payment for Retail T.I. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 200,000 | 200,000 | 300,000 | 300,000 | 500,000 | |
| Esng Bank's Group Loan | 0 | 0 | 0 | 0 | 0 | 8,807,299 | 1,951,289 | 1,886,470 | 1,897,603 | 2,523,960 | 2,543,648 | 2,060,481 | |
| | | | | | | | | | | | | | |
| Total Cash Flow After all Disbursement | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Exhibit 2 Page 000055 (Bank of America N.A)

| | Jan-11 Month 13 | Feb-11 Month 14 | Mar-11 Month 15 | Apr-11 Month 16 | May-11 Month 17 | Jun-11 Month 18 | Jul-11 Month 19 | Aug-11 Month 20 | Sep-11 Month 21 | Oct-11 Month 22 | Nov-11 Month 23 | Dec-11 Month 24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Activity Assumptions** | | | | | | | | | | | | |
| Total Units Available | 81 | 75 | 69 | 63 | 57 | 51 | 45 | 39 | 33 | 27 | 21 | 15 |
| Units Leased/mo | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 0 |
| Units Sold/mo | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| Total Leased Units | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 |
| Total Sold Units | 72 | 78 | 84 | 90 | 96 | 102 | 108 | 114 | 120 | 126 | 132 | 138 |
| Units Remaining | 75 | 69 | 63 | 57 | 51 | 45 | 39 | 33 | 27 | 21 | 15 | 9 |
| | | | | | | | | | | | | |
| Accumulated Sales | 34,800,000 | 38,100,000 | 41,400,000 | 44,850,000 | 48,300,000 | 51,750,000 | 55,350,000 | 58,950,000 | 62,550,000 | 66,300,000 | 70,050,000 | 73,800,000 |
| Average Rent/unit | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| Average Sale/unit | 550,000 | 550,000 | 550,000 | 575,000 | 575,000 | 575,000 | 600,000 | 600,000 | 600,000 | 625,000 | 625,000 | 625,000 |
| Average Parking Rate | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 |
| **Financing** | | | | | | | | | | | | |
| Exstg Bank Group's Loan | 58,329,249 | 55,583,318 | 52,840,078 | 50,086,276 | 47,431,215 | 44,527,577 | 41,613,634 | 38,559,987 | 35,495,307 | 32,419,200 | 29,204,736 | 25,978,782 |
| Interest Rate | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% | 3.75% |
| **New Equity** | | | | | | | | | | | | |
| Accumulated Cash Contribution | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 |
| Debt Conversion | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 |
| **Total equity Contribution** | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 |
| | | | | | | | | | | | | |
| **Rental Income** | | | | | | | | | | | | |
| Commercial | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 |
| Residential | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 |
| Parking | 21,000 | 21,000 | 21,000 | 23,000 | 23,000 | 23,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| **Total Rental Income** | 248,000 | 248,000 | 248,000 | 250,000 | 250,000 | 250,000 | 252,000 | 252,000 | 252,000 | 252,000 | 252,000 | 252,000 |
| **Sales Proceeds** | | | | | | | | | | | | |
| Gross Sale | 3,300,000 | 3,300,000 | 3,300,000 | 3,450,000 | 3,450,000 | 3,450,000 | 3,600,000 | 3,600,000 | 3,600,000 | 3,750,000 | 3,750,000 | 3,750,000 |
| Sales Cost | 198,000 | 198,000 | 198,000 | 207,000 | 207,000 | 207,000 | 216,000 | 216,000 | 216,000 | 225,000 | 225,000 | 225,000 |
| **Net Sales Proceed** | 3,102,000 | 3,102,000 | 3,102,000 | 3,243,000 | 3,243,000 | 3,243,000 | 3,384,000 | 3,384,000 | 3,384,000 | 3,525,000 | 3,525,000 | 3,525,000 |
| **Operating Expenses** | | | | 264,438 | | | | | | | | 188,351 |
| Property Tax | 58,829 | 55,676 | 52,523 | 49,369 | 46,216 | 43,063 | 39,910 | 36,757 | 33,604 | 30,450 | 27,297 | 24,144 |
| HOA Fees | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Leasing/Sales | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Marketing | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Parking Expense | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 |
| **Total Operating Exp.** | 122,829 | 119,676 | 116,523 | 377,807 | 110,216 | 107,063 | 103,910 | 100,757 | 97,604 | 94,450 | 91,297 | 276,495 |
| | | | | | | | | | | | | |
| **Net Proceeds from Operation** | 3,227,171 | 3,230,324 | 3,233,477 | 3,115,193 | 3,382,784 | 3,385,937 | 3,532,090 | 3,535,243 | 3,538,396 | 3,682,550 | 3,685,703 | 3,500,505 |
| **Interest Expense** | | | | | | | | | | | | |
| Exstg Bank Group Loan | 176,137 | 182,279 | 173,698 | 165,125 | 156,520 | 148,223 | 139,149 | 130,043 | 120,500 | 110,923 | 101,310 | 91,265 |
| **Total Interest Expense** | 176,137 | 182,279 | 173,698 | 165,125 | 156,520 | 148,223 | 139,149 | 130,043 | 120,500 | 110,923 | 101,310 | 91,265 |
| | | | | | | | | | | | | |
| **Monthly Net Cash Flow after Interest** | 3,051,034 | 3,048,045 | 3,059,780 | 2,950,068 | 3,226,264 | 3,237,714 | 3,392,941 | 3,405,201 | 3,417,896 | 3,571,627 | 3,584,393 | 3,409,240 |
| | | | | | | | | | | | | |
| Pymt to Holders of Valid Mechanic's Liens w/Interested @ 1.5% | 305,103 | 304,805 | 305,978 | 295,007 | 322,626 | 333,771 | 339,294 | 340,520 | 341,790 | 357,163 | 358,439 | 340,924 |
| Pymt to Unsecured Creditors w/Interested @ 1.5% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pymt for Completion of Construction | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Payment for Retail T.I. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Exstg Bank's Group Loan | 2,745,931 | 2,743,241 | 2,753,802 | 2,655,061 | 2,903,638 | 2,913,943 | 3,053,647 | 3,064,681 | 3,076,107 | 3,214,464 | 3,225,953 | 3,068,316 |
| | | | | | | | | | | | | |
| **Total Cash Flow After all Disbursement** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Exhibit 2 Page 000056 (Bank of America N.A)

| | Jan-12 Month 25 | Feb-12 Month 26 | Mar-12 Month 27 | Apr-12 Month 28 | May-12 Month 29 | Jun-12 Month 30 | Jul-12 Month 31 | Aug-12 Month 32 | Sep-12 Month 33 | Oct-12 Month 34 | Nov-12 Month 35 | Dec-12 Month 36 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Activity Assumptions** | | | | | | | | | | | | | |
| Total Units Available | 9 | 13 | 17 | 21 | 28 | 35 | 18 | 20 | 23 | 18 | 11 | 5 | |
| Units Lease/mo | (10) | (10) | (10) | (10) | (10) | (8) | (8) | (9) | 0 | 0 | 0 | 0 | |
| Units Sold/mo | 6 | 6 | 6 | 3 | 3 | 25 | 6 | 6 | 6 | 6 | 6 | 5 | |
| Total Leased Units | 65 | 55 | 45 | 35 | 25 | 17 | 9 | 6 | 0 | 6 | 6 | 0 | |
| Total Sold Units | 144 | 150 | 156 | 159 | 162 | 187 | 193 | 199 | 205 | 211 | 217 | 222 | |
| Units Remaining | 13 | 17 | 21 | 28 | 35 | 18 | 20 | 23 | 17 | 11 | 5 | 0 | |
| Accumulated Sales | 77,550,000 | 81,300,000 | 85,050,000 | 87,000,000 | 88,950,000 | 104,575,000 | 108,625,000 | 112,675,000 | 116,725,000 | 120,925,000 | 125,125,000 | 128,625,000 | |
| Average Rent/unit | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | |
| Average Sale/unit | 625,000 | 625,000 | 625,000 | 650,000 | 650,000 | 625,000 | 675,000 | 675,000 | 675,000 | 700,000 | 700,000 | 700,000 | |
| Average Parking Rate | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | |
| **Financing** | | | | | | | | | | | | | |
| Exstg Bank Group's Loan | 22,910,467 | 20,029,306 | 17,087,828 | 14,186,114 | 12,807,903 | 11,311,562 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Interest Rate | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | 4.00% | |
| **New Equity** | | | | | | | | | | | | | |
| Accumulated Cash Contribution | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | 3,257,792 | |
| Debt Conversion | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | 5,550,000 | |
| Total equity Contribution | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | 8,807,792 | |
| **Rental Income** | | | | | | | | | | | | | |
| Commercial | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 1,848,000 |
| Residential | 144,625 | 122,375 | 100,125 | 77,875 | 55,625 | 37,825 | 20,025 | 0 | 0 | 0 | 0 | 0 | 3,707,750 |
| Parking | 25,000 | 25,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 27,500 | 27,500 | 27,500 | 750,000 |
| Total Rental Income | 233,625 | 211,375 | 190,125 | 167,875 | 145,625 | 127,825 | 110,025 | 90,000 | 90,000 | 91,500 | 91,500 | 91,500 | 6,305,750 |
| **Sales Proceeds** | | | | | | | | | | | | | |
| Gross Sale | 3,750,000 | 3,750,000 | 3,750,000 | 1,950,000 | 1,950,000 | 15,625,000 | 4,050,000 | 4,050,000 | 4,050,000 | 4,200,000 | 4,200,000 | 3,500,000 | 128,625,000 |
| Sales Cost | 225,000 | 225,000 | 225,000 | 117,000 | 117,000 | 937,500 | 243,000 | 243,000 | 243,000 | 252,000 | 252,000 | 210,000 | 7,717,500 |
| Net Sales Proceed | 3,525,000 | 3,525,000 | 3,525,000 | 1,833,000 | 1,833,000 | 14,687,500 | 3,807,000 | 3,807,000 | 3,807,000 | 3,948,000 | 3,948,000 | 3,290,000 | 120,907,500 |
| **Operating Expenses** | | | | | | | | | | | | | |
| Property Tax | 40,991 | 37,838 | 34,685 | 33,108 | 31,532 | 18,393 | 15,240 | 12,087 | 8,934 | 5,781 | 2,628 | 55,200 | 1,328,034 |
| HOA Fees | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 0 | 2,202,477 |
| Leasing/Sales | 10,000 | 10,000 | 50,000 | 50,000 | 50,000 | 10,000 | 10,000 | 25,000 | 25,000 | 20,000 | 20,000 | 15,000 | 540,000 |
| Marketing | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 850,000 |
| Parking Expense | | | | 155,064 | | | | | | | | | 324,000 |
| Total Operating Exp. | 75,991 | 72,838 | 109,685 | 263,172 | 106,532 | 53,393 | 50,240 | 62,087 | 58,934 | 50,781 | 47,628 | 80,200 | 5,244,511 |
| Net Proceeds from Operation | 3,682,634 | 3,663,537 | 3,605,440 | 1,737,703 | 1,872,093 | 14,761,932 | 3,866,785 | 3,834,913 | 3,838,066 | 3,988,719 | 3,991,872 | 3,301,300 | |
| **Interest Expense** | | | | | | | | | | | | | |
| Exstg Bank Group Loan | 81,184 | 76,368 | 66,764 | 56,959 | 47,287 | 42,693 | 37,705 | 0 | 0 | 0 | 0 | 0 | 4,484,655 |
| Total Interest Expense | 81,184 | 76,368 | 66,764 | 56,959 | 47,287 | 42,693 | 37,705 | 0 | 0 | 0 | 0 | 0 | |
| Monthly Net Cash Flow after Interest | 3,601,450 | 3,587,169 | 3,538,676 | 1,680,744 | 1,824,806 | 14,719,239 | 3,829,080 | 3,834,913 | 3,838,066 | 3,988,719 | 3,991,872 | 3,301,300 | |
| Pymt to Holders of Valid Mechanic's Liens w/interest@ 2.5% | 360,145 | 358,717 | 353,868 | 168,074 | 182,481 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,358,705 |
| Pymt to Unsecured Creditors w/interested @ 1.5% | 360,145 | 286,974 | 283,094 | 134,460 | 145,985 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,420,000 |
| Pymt for Completion of Construction | | | | | | 1,703,838 | 1,505,505 | 0 | 0 | 0 | 0 | 0 | 4,980,887 |
| Payment for Retail T.I. | | | | | | | | 0 | 0 | 0 | 0 | 0 | 1,500,000 |
| Exstg Bank's Group Loan | 2,881,160 | 2,941,479 | 2,901,714 | 1,378,210 | 1,496,341 | 11,311,562 | 0 | 0 | 0 | 0 | 0 | 0 | 80,000,000 |
| Total Cash Flow After all Disbursement | 0 | 0 | 0 | 0 | 0 | 1,703,838 | 2,323,574 | 3,834,913 | 3,838,066 | 3,988,719 | 3,991,872 | 3,301,300 | 22,982,283 |

Exhibit 2 Page 000057 (Bank of America N.A)

| In re:<br>ROOSEVELT LOFTS, LLC | Chapter 11<br>1:09-bk-14214-GM |
|---|---|
| Debtor(s). | |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Blvd., Ste. 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as

**CHAPTER 11 PLAN OF REORGANIZATION**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 31, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
- Helen R Frazer    hfrazer@aalrr.com
- Varand Gourjian    vg@gourjianlaw.com, lala@gourjianlaw.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Herbert Hayden    herbert@ntlg.us
- Ian Landsberg    ilandsberg@lm-lawyers.com
- David L. Neale    dln@lnbrb.com
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Bruce D Rudman    bdr@agrlaw.net
- William D Schuster    bills@allieschuster.org
- Daniel H Slate    dslate@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;marcycarman@tilemlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Marc Weinberg    marcweinberg@att.net
- Aimee Y Wong    aywong@mckennalong.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

___

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

Exhibit 2 Page 000058 (Bank of America N.A)

| In re:<br>ROOSEVELT LOFTS, LLC<br><br>                                                      Debtor(s). | Chapter 11<br>1:09-bk-14214-GM |
|---|---|

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 31, 2009** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**By attorney service**
Hon. Geraldine Mund
United States Bankruptcy Court
21041 Burbank Blvd.
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 31, 2009 | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                    F 9013-3.1

Exhibit 2 Page 000059 (Bank of America N.A)

In re:
Roosevelt Loft, LLC

Debtor(s).

CHAPTER: 11

CASE NUMBER: 1:09-bk-14214-GM

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Buchalter Nemer, A Professional Corporation, 1000 Wilshire Blvd, Suite 1500 Los Angeles, CA 90017

A true and correct copy of the foregoing document described as <u>BANK GROUP'S MOTION TO DISMISS OR CONVERT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DANILE H. SLATE</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>November 24, 2009</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

- John B Acierno    ecfcacb@pitedduncan.com
- Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
- Steven R Fox    emails@foxlaw.com
- Helen R Frazer    hfrazer@aalrr.com
- Varand Gourjian    vg@gourjianlaw.com, lala@gourjianlaw.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Herbert Hayden    herbert@ntlg.us
- Ian Landsberg    ilandsberg@lm-lawyers.com
- David L. Neale    dln@lnbrb.com
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On <u>November 24, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**VIA US Mail**
<u>Debtor</u>
**Roosevelt Lofts, LLC**
660 S Figueroa St 24th Fl
Los Angeles, CA 90017
Tax ID / EIN: 20-4068548

**VIA Federal Express**
Hon. Geraldine Mund
U.S. Bankruptcy Court
21041 Burbank Blvd., Room 342
Woodland Hills, CA 91367-6606

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or, (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 24, 2009 | R. Reeder | /s/ R. Reeder |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9013-3.1**

| In re:<br>Roosevelt Lofts, LLC | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-14214-GM |

**ADDITIONAL SERVICE INFORMATION (if needed):**

**VIA NOTICE OF ELECTRONIC FILING ("NEF") – Continued:**

- S Margaux Ross    margaux.ross@usdoj.gov
- Bruce D Rudman    bdr@agrlaw.net
- William D Schuster    bills@allieschuster.org
- Daniel H Slate    dslate@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;marcycarman@tilemlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Marc Weinberg    marcweinberg@att.net
- Brandon J Witkow    bwitkow@lockelord.com
- Aimee Y Wong    aywong@mckennalong.com

**VIA US MAIL**

**United States Trustee (SV)**
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

**Committee of Creditors Holding
Unsecured Claims**
Landsberg Margulies LLP
16030 Ventura Boulevard, Suite 470
Encino, CA 91436
818-705-2777

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**