1  DAVID L. NEALE (SBN 141225)
   JULIET Y. OH (SBN 211414)
2  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
3  10250 Constellation Blvd., Suite 1700
   Los Angeles, California 90067
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email: dln@lnbrb.com, jyo@lnbrb.com

6  Attorneys for Chapter 11 Debtor and
7  Debtor in Possession

8            **UNITED STATES BANKRUPTCY COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10           **SAN FERNANDO VALLEY DIVISION**

11

12

13  In re                              )  Case No. 1:09-bk-14214-GM
                                       )
14  ROOSEVELT LOFTS, LLC, a Delaware   )  Chapter 11
    limited liability company,         )
15                                     )
                                       )
16              Debtor.                )  **NOTICE OF MOTION AND MOTION
                                       )  FOR ENTRY OF AN ORDER FURTHER
17                                     )  EXTENDING    THE    DEBTOR'S
                                       )  EXCLUSIVE   PERIOD   TO  OBTAIN
18                                     )  ACCEPTANCES  OF  ITS  PLAN  OF
                                       )  REORGANIZATION; MEMORANDUM
19                                     )  OF   POINTS   AND   AUTHORITIES;
                                       )  DECLARATION    OF    M.   AARON
20                                     )  YASHOUAFAR    IN    SUPPORT
                                       )  THEREOF**
21                                     )
                                       )  [No Hearing Required Unless Requested –
22                                     )  Local Bankruptcy Rule 9013-1(o)]
                                       )
23                                     )
                                       )
24                                     )
                                       )
25  ─────────────────────────────────  )

26

27

28

1       **PLEASE TAKE NOTICE** that, pursuant to 11 U.S.C. § 1121 and Local Bankruptcy

2 Rule 9013-1(o), Roosevelt Lofts, LLC, a Delaware limited liability company, the debtor and

3 debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), hereby

4 files this motion (the "Motion") for the entry of an order extending the Debtor's exclusive

5 period to obtain acceptances of the Debtor's Amended Chapter 11 Plan of Reorganization

6 (Dated February 26, 2010) [Docket No. 321] (the "Plan").

7       As described more fully in the Memorandum of Points and Authorities appended hereto,

8 the Debtor's exclusive period to obtain acceptances of the Plan, without any further extension,

9 will expire on April 8, 2010. By this Motion, and for the reasons set forth in the Memorandum

10 of Points and Authorities annexed hereto, the Debtor seeks an extension of its exclusive period

11 to obtain acceptances of the Plan (including any amendments and modifications thereto) to and

12 including October 29, 2010. The Debtor seeks the foregoing extension without prejudice to its

13 right to seek further extensions of such exclusivity period.

14       The Motion is based upon 11 U.S.C. § 1121, this Notice of Motion and Motion, the

15 accompanying Memorandum of Points and Authorities and Declaration of M. Aaron

16 Yashouafar, the entire record in the Debtor's case, the statements, arguments and

17 representations of counsel to be made at the hearing on the Motion, if any, and any other

18 evidence properly presented to the Court.

19       **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

20 1(o)(1)(A)(ii), any response and request for hearing must be filed with the Court and served on

21 the Debtor's counsel and the United States Trustee within fourteen (14) days after the date of

22 service of this Notice.

23       **PLEASE TAKE FURTHER NOTICE** that failure to file and serve a timely response

24 to the Motion or request for a hearing on the Motion may be deemed by the Court to be consent

25 to the granting of the relief requested in the Motion.

26       **WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

27       (1)    affirming the adequacy of the Notice given herein;

28       (2)    granting the Motion in its entirety;

1      (3)    extending the Debtor's exclusive period to obtain acceptances of the Plan

2 (including any amendments and modifications thereto) to and including October 29, 2010;

3      (4)    providing that the foregoing extension of the Debtor's exclusivity period is

4 without prejudice to the Debtor's right to seek further extensions of such exclusivity period;

5 and

6      (5)    granting such other and further relief as the Court deems just and proper.

7 Dated: April 8, 2010             ROOSEVELT LOFTS, LLC

8

9                   By:_____ */s/ Juliet Y. Oh*_____
                        DAVID L. NEALE

10                        JULIET Y. OH
                       LEVENE, NEALE, BENDER,

11                           RANKIN & BRILL L.L.P.
                       Attorneys for Chapter 11 Debtor and

12                        Debtor in Possession

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### STATEMENT OF FACTS

4  **A.    Background.**

5        1.        On April 13, 2009, the Debtor filed a voluntary petition under Chapter 11 of 11

6  U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code"). The Debtor is managing its

7  financial affairs and operating its bankruptcy estate as a debtor in possession pursuant to

8  Sections 1107 and 1108 of the Bankruptcy Code.

9        2.        The Debtor is the owner of real property located at 727 West 7th Street in Los

10  Angeles, California, a fifteen-story architecturally significant building located in the heart of

11  the Financial District in downtown Los Angeles (the "Building").

12        3.        In approximately January 2006, the Debtor entered into an agreement to lease

13  the Building from the previous owners, with an option to buy the Building.[1] The Debtor

14  intended to address the demands of an evolving Downtown residential market by converting the

15  Building from an office building to a luxury residential project.

16        4.        Accordingly, in or about March 2006, the Debtor entered into a construction

17  loan agreement with Bank of America, N.A., individually and as agent for a group of lenders

18  (the "Bank"), pursuant to which the Debtor obtained a loan from the Bank in the original

19  principal sum of $78,840,375.00 (the "Loan"). The Loan provided for, among other things, the

20  repayment of the Loan, including accrued and unpaid interest, by March 9, 2009, with two

21  options to extend the term of the Loan for six months each. The obligations of the Debtor in

22  connection with the Loan are secured by a Construction Deed of Trust and a Leasehold Deed of

23  Trust against the Building (collectively, the "Deeds of Trust"). The Loan was obtained by the

24  Debtor for the purpose of converting the Building into 222 individually subdivided, luxury

25  residential condominium units (the "Units"), a commercial retail component on the ground

26  floor, and parking areas which are both subterranean and above grade within the Building.

27

28

[1]  The Debtor exercised its option to purchase the Building in September 2008.

1    5.    On or about December 30, 2008, the Bank issued a notice of default to the

2  Debtor, contending that the Debtor had defaulted on its obligations under the Loan. Even after

3  receiving the notice of default from the Bank, the Debtor continued to invest a considerable

4  amount of time and effort obtaining independent appraisals, conducting market research, and

5  providing the Bank with alternative plans for the completion of the Building and the sale of all

6  Units in the Building. The Bank rejected all of the plans proposed by the Debtor for the

7  completion of the Building and the sale of all Units.

8    6.    Subsequently, on April 3, 2009, the Bank filed a complaint against the Debtor

9  and others in the Superior Court of the State of California, County of Los Angeles ("State

10  Court") for, among other things, specific performance, appointment of a receiver, and judicial

11  foreclosure on its Deeds of Trust. Pursuant to its complaint in the State Court action, the Bank

12  has asserted a claim against the Debtor and others in an amount exceeding $79 million. Days

13  after filing its complaint, the Bank made an *ex parte* application with the State Court for the

14  appointment of a receiver.

15    7.    As a result of all the foregoing, the Debtor sought protection under Chapter 11

16  of the Bankruptcy Code in order to have the ability and opportunity to close escrow on the units

17  that are under contract, to market and sell the remaining units in the Building, and to complete

18  construction on the Building, all of which will allow the Debtor to repay the Loan and its other

19  debts for the benefit of all creditors.

20  **B.    Post-Petition Operations And Administration Of Bankruptcy Case.**

21    8.    Since the Petition Date, the Debtor has received income derived primarily, if not

22  entirely, from rent received from the Debtor's commercial and residential tenants in the

23  Building. Shortly after the Petition Date, the Debtor requested that the Bank stipulate to the

24  Debtor's use of cash collateral to maintain the Building and to pay the Debtor's operating

25  expenses relating to the Building, including, among other things, insurance, utilities, parking,

26  security services, janitorial services and other operational costs associated with the Building.

27  The Bank did not consent to the Debtor's use of cash collateral to pay such operating expenses.

28

9.      Accordingly, on August 27, 2009, the Debtor filed an emergency motion seeking authority to use its cash collateral in accordance with an operating budget extending through December 31, 2009 (the "First Budget"), and to obtain financing on an administrative expense priority basis from its affiliate, Milbank Holding Corp. ("Milbank"), to cover the operating shortages set forth in the First Budget (the "First Cash Collateral Motion"). The Court granted the Debtor's First Cash Collateral Motion and authorized the Debtor to use cash collateral, subject to the terms and conditions described in an interim order entered by the Court on September 8, 2009 and a final order entered by the Court on October 5, 2009.

10.      Subsequently, the Debtor and the Bank entered into two additional stipulations, pursuant to which the Debtor was authorized to use cash collateral and borrow money from Milbank during the period of March 1, 2010 through and including March 31, 2010 in accordance with the terms set forth therein. The Court entered orders approving the foregoing stipulations on March 4, 2010 and March 25, 2010, respectively.

11.      Although the Debtor requested that the Bank consent to the Debtor's continued use of cash collateral beyond March 31, 2010, the Bank declined to provide such consent. Accordingly, on April 1, 2010, the Debtor filed an emergency motion seeking authority to use its cash collateral in accordance with an operating budget extending from April 1, 2010 through and including October 31, 2010 (the "April-October Budget"), and to obtain financing on an administrative expense priority basis from Milbank to cover the operating shortages set forth in the April-October Budget (the "Second Cash Collateral Motion"). The Court set a hearing on the Second Cash Collateral Motion for April 8, 2010 at 10:00 a.m.

12.      Prior to the hearing on the Second Cash Collateral Motion, the Debtor and the Bank entered into a stipulation authorizing the Debtor to use cash collateral and borrow money from Milbank during the period of April 1, 2010 through and including October 31, 2010, in accordance with the April-October Budget, on the condition that the Debtor not use any cash collateral during such period for "model unit furniture." The Court entered an order approving the foregoing stipulation on April 7, 2010.

6

13.     The Debtor is in substantial compliance with all of the administrative requirements of this Court, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and the Office of the United States Trustee.

**C.    Negotiation And Filing Of The Debtor's Plan Of Reorganization.**

14.     On August 31, 2009, the Debtor filed its *"Chapter 11 Plan Of Reorganization"* (the "Original Plan"), within its exclusive period for doing so. The Original Plan provided for full payment of allowed claims over time, with interest.

15.     On November 24, 2009, the Bank filed a motion seeking to dismiss the Debtor's bankruptcy case or, in the alternative, convert the Debtor's case to one under Chapter 7 (the "Dismissal Motion") based on, among other alleged grounds, the Debtor's failure to file a disclosure statement with respect to the Original Plan. The hearing on the Dismissal Motion was originally calendared for December 15, 2009, but was subsequently continued by stipulation of the parties to February 2, 2010 at 10:00 a.m. Pursuant to the foregoing stipulation, the Debtor agreed to file a disclosure statement with respect to the Original Plan, as well as a notice of the hearing on such disclosure statement, by December 28, 2009.

16.     On December 28, 2009, the Debtor filed a disclosure statement describing the Plan (the "Original Disclosure Statement"). The hearing on the Disclosure Statement was set for February 2, 2010 at 10:00 a.m., the same date and time as the hearing on the Dismissal Motion.

17.     One of the concerns previously expressed by the Bank was the potential negative impact that a sale of only a few, but not a substantial number, of the units could have on the value of the Building and the remaining units in the Building. Based on the Bank's concerns and the Bank's unwillingness to negotiate or otherwise discuss the terms of the Plan, among other reasons, the Debtor determined that conducting a public auction of a large proportion of the units in the Building, following an aggressive marketing campaign, would generate substantial interest in the Building and its units within the market, and result in the expeditious closing of sales on such units within a short span of time.

1    18.    Accordingly, on December 24, 2009, the Debtor filed a motion (the "Auction
2  Motion") seeking authority to employ Kennedy Wilson Auction Group Inc. ("KW"), a highly
3  experienced auctioneer company, to publicize, market and offer approximately sixty five (65)
4  condominium units (but no fewer than fifty units and no more than seventy five units) in the
5  Building for sale through a public auction, pursuant to the terms and conditions set forth in that
6  certain *"Residential Marketing Agreement"* entered into by the Debtor and KW. The Bank and
7  a number of alleged mechanic's lien holders filed oppositions to the Auction Motion. After a
8  lengthy hearing on January 7, 2010 at 10 a.m., the Court granted the Auction Motion and
9  entered an order accordingly on January 8, 2010.[2]

10    19.    At the hearings on the Dismissal Motion and the Original Disclosure Statement
11  held on February 2, 2010 at 10 a.m., the Court continued the hearings on both matters to March
12  16, 2010 at 10:00 a.m. to provide the Debtors with an opportunity to file updated versions of
13  the Original Plan and Original Disclosure Statement.

14    20.    On February 26, 2010, the Debtor filed amended versions of the Original Plan
15  and Original Disclosure Statement (the "Plan" and "Disclosure Statement") to reflect all of the
16  developments in the Debtor's bankruptcy case since the filing of the Original Plan and to
17  incorporate the impact of the public auction event on the Debtor's cash flow projections for the
18  plan.

19    21.    At the hearing on March 16, 2010, the Court denied the Bank's Dismissal
20  Motion and approved the Debtor's Disclosure Statement. The Court also set a hearing to
21  consider confirmation of the Plan for October 14, 2010 at 1:30 p.m. (with such hearing to be
22  continued, to the extent necessary, to October 15, 2010 at 9:00 a.m. and October 21, 2010 at
23  1:30 p.m.) as well as various deadlines relating thereto. Among other deadlines, the Court set a
24  deadline of May 28, 2010 for the return of ballots accepting or rejecting the Plan.

25

26

27    [2] Subsequently, the Los Angeles Community College District (the "District") filed a motion
seeking an order reconsidering and amending the order granting the Auction Motion. The Court
ordered that the Debtor provide disclosure of existing litigation involving, among others, the Debtor
28  and the District, regarding the use of an alleyway between their respective properties to all purchasers
of units at the public auction event, but otherwise denied the District's reconsideration motion.

**D.      The Debtor's Exclusive Period To Obtain Acceptance Of The Plan.**

22.      Pursuant to an order entered by the Court on February 8, 2010, the Debtor's exclusive period to obtain acceptance of the Plan was extended to April 8, 2010.

23.      Since the deadline for creditors to submit ballots voting to accept or reject the Plan is May 28, 2010 and the hearing to consider confirmation of the Plan is set for October 14, 2010 at 1:30 p.m. (with such hearing to be continued, to the extent necessary, to October 15, 2010 at 9:00 a.m. and October 21, 2010 at 1:30 p.m.), it will be impossible for the Debtor to obtain acceptances of the Plan prior to the expiration of its exclusivity period on April 8, 2010.

24.      By this Motion, the Debtor is seeking an extension of its exclusive period to obtain acceptances of the Plan (including any amendments or modifications thereto), from April 8, 2010 to and including October 29, 2010, without prejudice to the Debtor's right to seek further extensions of such exclusivity period. The foregoing extension will provide the Debtor with the additional time necessary to receive ballots on the Plan and seek confirmation of the Plan at the hearings scheduled in October 2010.

## II.

## DISCUSSION

**A.      Plan Exclusivity is Integral to the Congressional Policy of Rehabilitation of Chapter 11 Debtors.**

The principal goal of Chapter 11 is the successful rehabilitation of the debtor's business. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527, 104 S. Ct. 1188 (1984); United States v. Whiting Pools, Inc., 462 U.S. 198, 203, 103 S.Ct. 2309 (1983); See also, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220 (1977) [hereinafter "House Report"]. Rehabilitation preserves and creates going concern value, increases the pool of assets available for distribution to creditors, and permits equity security holders to retain a stake in a debtor's business. Id.; See also, In re Baker & Drake, Inc., 35 F.3d 1348, 1354 (9th Cir. 1994) (Congress' purpose in enacting Chapter 11 was to "establish a preference for reorganizations where they are legally feasible and economically practicable."); LNC Investments, Inc. v. First Fidelity Bank, 247 B.R. 38, 48 (S.D.N.Y. 2000) (Congress prefers the successful reorganization of a corporate debtor to

1  liquidation, dismemberment and death); In re Lange, 75 B.R. 154, 156 (Bankr. N.D. Ohio
2  1987). Recognizing that the best chance for a successful rehabilitation lies in allowing the
3  debtor the initial opportunity to balance debtor-creditor interests, Congress enacted section
4  1121(b) of the Bankruptcy Code which gives Chapter 11 debtors an initial period of 120 days
5  after the order for relief during which only the debtor may file a plan of reorganization. If the
6  debtor files a plan within the 120-day period, Section 1121(c)(3) of the Bankruptcy Code
7  extends the exclusivity period to 180 days after the order for relief to permit the debtor to
8  obtain acceptances of a plan.

9  Further recognizing the need for flexibility with regard to the exclusivity periods,
10  Congress enacted section 1121(d) of the Bankruptcy Code which provides that "[o]n request of
11  a party in interest ... and after notice and a hearing, the court may for cause reduce or increase
12  the 120-day [exclusivity period for filing a plan of reorganization] or the 180-day [exclusivity
13  period for obtaining acceptances of the plan]." However, Section 1121(d)(2) provides that the
14  120 day period may not be extended beyond a date that is 18 months after the date of the order
15  for relief, and the 180 day period may not be extended beyond a date that is 20 months after the
16  date of the order for relief. 11 U.S.C. § 1121(d). Legislative history indicates that the term
17  "cause" is to be viewed flexibly "in order to allow the debtor to reach an agreement [with its
18  creditors]." House Report, supra, at 231, U.S. Code Cong. & Admin. News 1978, pp. 5963,
19  6190; In Re McLean Industries, Inc., 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987); In re Express
20  One International, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).

21  The Bankruptcy Code does not define "cause" or establish formal criteria for an
22  extension of the exclusivity periods. Consistent with a balanced, integrated approach to
23  reorganizations under Chapter 11, Congress contemplated that Bankruptcy Courts would apply
24  the exclusivity provisions flexibly so as to promote the orderly, consensual and successful
25  reorganization of a debtor's affairs. See House Report, supra, at 232. As a result, the decision
26  of whether or not to grant a debtor's request to extend the exclusivity periods lies within the
27  sound discretion of the Bankruptcy Judge. In re AmKo Plastics, Inc., 197 B.R. 74, 77 (Bankr
28

10

1   S.D. Ohio 1996); In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D. N.Y.

2   1989); In re Washington-St. Tammany Elec. Co-Op., Inc., 97 B.R. 852, 854 (E.D. La. 1989).

3          Appropriate "cause" justifying an extension of the exclusivity periods should be

4   interpreted in the context of the overall purposes of Chapter 11 and the means Congress

5   established for accomplishing them. Congress recognized that a debtor must have a reasonable

6   time to formulate and negotiate a plan of reorganization. Denying a debtor an exclusive period

7   to propose and confirm a plan could dissuade debtors from choosing Chapter 11 and encourage

8   creditors to act unilaterally. House Report, supra, at 231-32. See also, In re Pine Run Trust,

9   Inc., 67 B.R. 432, 434 (Bankr. E.D. Pa. 1986) (exclusivity determinations should balance

10  creditor and debtor interests in favor of reorganization).

11         In this case, good cause exists to extend the Debtor's exclusive period to obtain

12  acceptances of the Plan. The Debtor filed the Plan within the Debtor's exclusive period for

13  doing so.    The Debtor is also in substantial compliance with all of the administrative

14  requirements of this Court, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure,

15  the Local Bankruptcy Rules, and the Office of the United States Trustee. The deadline for

16  creditors to return ballots voting on the Plan is May 28, 2010 and the hearing for the Court to

17  consider confirmation of the Plan is set for October 14, 2010 at 1:30 p.m. (with such hearing to

18  be continued, to the extent necessary, to October 15, 2010 at 9:00 a.m. and October 21, 2010 at

19  1:30 p.m.), well after the Debtor's exclusive period for obtaining acceptance of the Plan is set

20  to expire. As a result, without an extension, it will be impossible for the Debtor to obtain

21  acceptance of the Plan within the Debtor's exclusivity period. The Debtor should have a

22  reasonable opportunity to pursue confirmation of the Plan, and engage in meaningful

23  discussions with the Bank, the Committee and other parties in interest regarding the terms of

24  such Plan. Based on the foregoing, the Debtor believes it should retain its exclusive right to

25  confirm the Plan (including any amendments or modifications thereto) through October 29,

26  2010, without the threat or interference from a competing plan proponent and the delay and

27  costs associated therewith.

28

**B.    Progress Towards Reorganization and Proper Motives Warrant an Extension of the Debtor's Exclusive Period to Obtain Acceptance of the Plan.**

A primary test that courts apply to requests for exclusivity extensions is the debtor's good faith progress towards reorganization. Such progress furnishes objective evidence that the requested extensions are not motivated by ulterior, strategic motives, but rather by a desire to pursue to fruition efforts that have been initiated and diligently pursued during the exclusivity period. The requisite showing of progress may take any number of forms. In any event, progress is not to be measured against some arbitrary, across-the-board time standard, but against the peculiar difficulties of each individual case. In re United Press International Inc., supra, 60 B.R. at 269; Amko Plastics, Inc., supra, 197 B.R. at 77. The progress towards Plan confirmation should not be measured by time in Chapter 11 alone, but also by the difficulties besetting the plan process. The United Press International Court found that the debtor's "diligence, speed and skill, in the face of major obstacles" which, after one year's time, put the debtor in a position to file a plan of reorganization warranted an additional three-month extension. Id. at 269 (emphasis added).

In this case, the Debtor's good faith efforts, motives and progress towards reorganization are evident. The Debtor filed its Plan, which provides for the full payment of allowed claims, within its exclusive period for doing so. The Debtor has also made efforts to engage in substantive discussions and negotiations with the Bank, the Committee and other parties in interest regarding the terms of the Plan. The Debtor is not using or requesting an extension to obtain any unfair leverage over or to pressure its creditors. Rather, the Debtor intends to use the extension to pursue confirmation of the Plan and, hopefully, engage in meaningful discussions with the Bank and the Committee regarding the terms of such Plan, without the threat or interference from a competing plan proponent and the delay and costs associated therewith. The Debtor has no interest in delaying this chapter 11 bankruptcy case any longer than absolutely necessary.

12

In short, the Debtor's requested extension of its exclusive period to obtain acceptance of the Plan is not in any way motivated by ulterior, strategic motives, but, rather, motivated solely by a desire to pursue to fruition the most optimal reorganization alternative available.

**C. The Proper and Diligent Management of This Chapter 11 Case Constitutes Cause to Extend the Debtor's Exclusive Period to Obtain Acceptance of the Plan.**

The diligence of management and the proper administration of a chapter 11 case are factors supporting an extension of the exclusivity periods. In re Trainer's, Inc., 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982); Amko Plastics, Inc., supra, 197 B.R. at 77. As noted above, the Debtor is in substantial compliance with all of the administrative requirements of the Court, Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and the Office of the United States Trustee. Under these circumstances, an extension of the exclusive period for obtaining acceptance of the Plan can be granted with the confidence that the Debtor is in compliance with the requirements that are a condition to the Debtor maintaining such exclusive right.

## III.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

(1)    affirming the adequacy of the Notice given herein;

(2)    granting the Motion in its entirety;

(3)    extending the Debtor's exclusive period to obtain acceptances of the Plan (including any amendments and modifications thereto) to and including October 29, 2010;

(4)    providing that the foregoing extension of the Debtor's exclusivity period is without prejudice to the Debtor's right to seek further extensions of such exclusivity period; and

/ / /

/ / /

/ / /

/ / /

13

1    (5) granting such other and further relief as the Court deems just and proper.

2    Dated: April 8, 2010                    ROOSEVELT LOFTS, LLC

3                                            By:_____/s/ Juliet Y. Oh_____
                                                    DAVID L. NEALE
4                                                   JULIET Y. OH
                                                    LEVENE, NEALE, BENDER,
5                                                       RANKIN & BRILL L.L.P.
6                                            Attorneys for Chapter 11 Debtor and
                                             Debtor in Possession
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF M. AARON YASHOUAFAR

2      I, M. AARON YASHOUAFAR, hereby declare as follows:

3      1.      I am the President of Roosevelt Lofts, Inc., which is the Manager of Roosevelt
4  Lofts, LLC, a Delaware limited liability company, debtor and debtor in possession herein (the
5  "Debtor"). Accordingly, I am familiar with virtually all aspects of the Debtor's condominium
6  and commercial space project located at 727 West 7th Street in Los Angeles, California and
7  the Debtor's financial affairs. I have personal knowledge of the facts set forth below and, if
8  called to testify, would and could competently testify thereto.

9      2.      I make this declaration in support of that certain *"Notice Of Motion And Motion*
10 *For Entry Of An Order Further Extending The Debtor's Exclusive Period To Obtain*
11 *Acceptances Of Its Plan Of Reorganization"* (the "Motion") to which this declaration is
12 attached.

13     3.      On April 13, 2009 (the "Petition Date"), the Debtor filed a voluntary petition
14 under Chapter 11 of 11 U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code").

15     4.      The Debtor is the owner of real property located at 727 West 7th Street in Los
16 Angeles, California, a fifteen-story architecturally significant building located in the heart of
17 the Financial District in downtown Los Angeles (the "Building").

18     5.      In approximately January 2006, the Debtor entered into an agreement to lease
19 the Building from the previous owners, with an option to buy the Building.[3]   The Debtor
20 intended to address the demands of an evolving Downtown residential market by converting the
21 Building from an office building to a luxury residential project.

22     6.      Accordingly, in or about March 2006, the Debtor entered into a construction
23 loan agreement with Bank of America, N.A., individually and as agent for a group of lenders
24 (the "Bank"), pursuant to which the Debtor obtained a loan from the Bank in the original
25 principal sum of $78,840,375.00 (the "Loan"). The Loan provided for, among other things, the
26 repayment of the Loan, including accrued and unpaid interest, by March 9, 2009, with two

27

28

---

[3] The Debtor exercised its option to purchase the Building in September 2008.

15

1  options to extend the term of the Loan for six months each. The obligations of the Debtor in
2  connection with the Loan are secured by a Construction Deed of Trust and a Leasehold Deed of
3  Trust against the Building (collectively, the "Deeds of Trust"). The Loan was obtained by the
4  Debtor for the purpose of converting the Building into 222 individually subdivided, luxury
5  residential condominium units (the "Units"), a commercial retail component on the ground
6  floor, and parking areas which are both subterranean and above grade within the Building.

7      7.      On or about December 30, 2008, the Bank issued a notice of default to the
8  Debtor, contending that the Debtor had defaulted on its obligations under the Loan. Even after
9  receiving the notice of default from the Bank, the Debtor continued to invest a considerable
10 amount of time and effort obtaining independent appraisals, conducting market research, and
11 providing the Bank with alternative plans for the completion of the Building and the sale of all
12 Units in the Building. The Bank rejected all of the plans proposed by the Debtor for the
13 completion of the Building and the sale of all Units.

14     8.      Subsequently, on April 3, 2009, the Bank filed a complaint against the Debtor
15 and others in the Superior Court of the State of California, County of Los Angeles ("State
16 Court") for, among other things, specific performance, appointment of a receiver, and judicial
17 foreclosure on its Deeds of Trust. Pursuant to its complaint in the State Court action, the Bank
18 has asserted a claim against the Debtor and others in an amount exceeding $79 million. Days
19 after filing its complaint, the Bank made an *ex parte* application with the State Court for the
20 appointment of a receiver.

21     9.      As a result of all the foregoing, the Debtor sought protection under Chapter 11
22 of the Bankruptcy Code in order to have the ability and opportunity to close escrow on the units
23 that are under contract, to market and sell the remaining units in the Building, and to complete
24 construction on the Building, all of which will allow the Debtor to repay the Loan and its other
25 debts for the benefit of all creditors.

26     10.     Since the Petition Date, the Debtor has received income derived primarily, if not
27 entirely, from rent received from the Debtor's commercial and residential tenants in the
28 Building. Shortly after the Petition Date, the Debtor requested that the Bank stipulate to the

1 Debtor's use of cash collateral to maintain the Building and to pay the Debtor's operating
2 expenses relating to the Building, including, among other things, insurance, utilities, parking,
3 security services, janitorial services and other operational costs associated with the Building.
4 The Bank did not consent to the Debtor's use of cash collateral to pay such operating expenses

5      11.    Accordingly, on August 27, 2009, the Debtor filed an emergency motion seeking
6 authority to use its cash collateral in accordance with an operating budget extending through
7 December 31, 2009 (the "First Budget"), and to obtain financing on an administrative expense
8 priority basis from its affiliate, Milbank Holding Corp. ("Milbank"), to cover the operating
9 shortages set forth in the First Budget (the "First Cash Collateral Motion"). The Court granted
10 the Debtor's First Cash Collateral Motion and authorized the Debtor to use cash collateral,
11 subject to the terms and conditions described in an interim order entered by the Court on
12 September 8, 2009 and a final order entered by the Court on October 5, 2009.

13      12.    Subsequently, the Debtor and the Bank entered into two additional stipulations,
14 pursuant to which the Debtor was authorized to use cash collateral and borrow money from
15 Milbank during the period of March 1, 2010 through and including March 31, 2010 in
16 accordance with the terms set forth therein. It is my understanding and belief that the Court
17 entered orders approving the foregoing stipulations on March 4, 2010 and March 25, 2010,
18 respectively.

19      13.    Although the Debtor requested that the Bank consent to the Debtor's continued
20 use of cash collateral beyond March 31, 2010, the Bank declined to provide such consent.
21 Accordingly, on April 1, 2010, the Debtor filed an emergency motion seeking authority to use
22 its cash collateral in accordance with an operating budget extending from April 1, 2010 through
23 and including October 31, 2010 (the "April-October Budget"), and to obtain financing on an
24 administrative expense priority basis from Milbank to cover the operating shortages set forth in
25 the April-October Budget (the "Second Cash Collateral Motion"). I am advised that the Court
26 set a hearing on the Second Cash Collateral Motion for April 8, 2010 at 10:00 a.m.

27      14.    Prior to the hearing on the Second Cash Collateral Motion, the Debtor and the
28 Bank entered into a stipulation authorizing the Debtor to use cash collateral and borrow money

1  from Milbank during the period of April 1, 2010 through and including October 31, 2010, in
2  accordance with the April-October Budget, on the condition that the Debtor not use any cash
3  collateral during such period for "model unit furniture." It is my understanding and belief that
4  the Court entered an order approving the foregoing stipulation on April 7, 2010.

5      15.    To the best of my knowledge, the Debtor is in substantial compliance with all of
6  the administrative requirements of this Court, the Bankruptcy Code, the Federal Rules of
7  Bankruptcy Procedure, the Local Bankruptcy Rules, and the Office of the United States
8  Trustee.

9      16.    On August 31, 2009, the Debtor filed its *"Chapter 11 Plan Of Reorganization"*
10  (the "Original Plan"), within its exclusive period for doing so. The Original Plan provided for
11  full payment of allowed claims over time, with interest.

12     17.    It is my understanding and belief that, on November 24, 2009, the Bank filed a
13  motion seeking to dismiss the Debtor's bankruptcy case or, in the alternative, convert the
14  Debtor's case to one under Chapter 7 (the "Dismissal Motion") based on, among other alleged
15  grounds, the Debtor's failure to file a disclosure statement with respect to the Original Plan.
16  The hearing on the Dismissal Motion was originally calendared for December 15, 2009, but
17  was subsequently continued by stipulation of the parties to February 2, 2010 at 10:00 a.m.
18  Pursuant to the foregoing stipulation, the Debtor agreed to file a disclosure statement with
19  respect to the Original Plan, as well as a notice of the hearing on such disclosure statement, by
20  December 28, 2009.

21     18.    On December 28, 2009, the Debtor filed a disclosure statement describing the
22  Plan (the "Original Disclosure Statement"). The hearing on the Disclosure Statement was set
23  for February 2, 2010 at 10:00 a.m., the same date and time as the hearing on the Dismissal
24  Motion.

25     19.    One of the concerns previously expressed by the Bank was the potential negative
26  impact that a sale of only a few, but not a substantial number, of the units could have on the
27  value of the Building and the remaining units in the Building. Based on the Bank's concerns
28  and the Bank's unwillingness to negotiate or otherwise discuss the terms of the Plan, among

1   other reasons, the Debtor determined that conducting a public auction of a large proportion of

2   the units in the Building, following an aggressive marketing campaign, would generate

3   substantial interest in the Building and its units within the market, and result in the expeditious

4   closing of sales on such units within a short span of time.

5         20.   Accordingly, on December 24, 2009, the Debtor filed a motion (the "Auction

6   Motion") seeking authority to employ Kennedy Wilson Auction Group Inc. ("KW"), a highly

7   experienced auctioneer company, to publicize, market and offer approximately sixty five (65)

8   condominium units (but no fewer than fifty units and no more than seventy five units) in the

9   Building for sale through a public auction, pursuant to the terms and conditions set forth in that

10   certain *"Residential Marketing Agreement"* entered into by the Debtor and KW. The Bank and

11   a number of alleged mechanic's lien holders filed oppositions to the Auction Motion. After a

12   lengthy hearing on January 7, 2010 at 10 a.m., which I attended, the Court granted the Auction

13   Motion and entered an order accordingly on January 8, 2010.

14         21.   At the hearings on the Dismissal Motion and the Original Disclosure Statement

15   held on February 2, 2010 at 10 a.m., which I attended, the Court continued the hearings on both

16   matters to March 16, 2010 at 10:00 a.m. to provide the Debtors with an opportunity to file

17   updated versions of the Original Plan and Original Disclosure Statement.

18         22.   On February 26, 2010, the Debtor filed amended versions of the Original Plan

19   and Original Disclosure Statement (the "Plan" and "Disclosure Statement") to reflect all of the

20   developments in the Debtor's bankruptcy case since the filing of the Original Plan and to

21   incorporate the impact of the public auction event on the Debtor's cash flow projections for the

22   plan.

23         23.   At the hearing on March 16, 2010, which I attended, the Court denied the

24   Bank's Dismissal Motion and approved the Debtor's Disclosure Statement. The Court also set

25   a hearing to consider confirmation of the Plan for October 14, 2010 at 1:30 p.m. (with such

26   hearing to be continued, to the extent necessary, to October 15, 2010 at 9:00 a.m. and October

27   21, 2010 at 1:30 p.m.) as well as various deadlines relating thereto. Among other deadlines, the

28   Court set a deadline of May 28, 2010 for the return of ballots accepting or rejecting the Plan.

1    24.    It is my understanding and belief that, pursuant to an order entered by the Court

2    on February 8, 2010, the Debtor's exclusive period to obtain acceptance of the Plan was

3    extended to April 8, 2010.

4    25.    Since the deadline for creditors to submit ballots voting to accept or reject the

5    Plan is May 28, 2010 and the hearing to consider confirmation of the Plan is set for October 14,

6    2010 at 1:30 p.m. (with such hearing to be continued, to the extent necessary, to October 15,

7    2010 at 9:00 a.m. and October 21, 2010 at 1:30 p.m.), it will be impossible for the Debtor to

8    obtain acceptances of the Plan prior to the expiration of its exclusivity period on April 8, 2010.

9    I declare under penalty of perjury that the foregoing is true and correct.

10    Executed this 7th day of April, 2010 at Los Angeles, California.

11

12                    _/s/ M. Aaron Yashouafar_
13                    M. AARON YASHOUAFAR

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

| In re:  ROOSEVELT LOFTS, LLC, a Delaware limited liability company, | CHAPTER 11 |
| | |
| Debtor(s). | CASE NUMBER  1:09-bk-14214-Gm |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing document **NOTICE OF MOTION AND MOTION FOR ENTRY OF AN ORDER** FURTHER **EXTENDING THE DEBTOR'S EXCLUSIVE PERIOD TO OBTAIN ACCEPTANCES OF ITS PLAN OF REORGANIZATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONOF M. AARON YASHOUAFAR IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 8, 2010,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- John B Acierno    ecfcacb@piteduncan.com
- Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
- L Dominic Chacon    chacondominic@yahoo.com
- Cynthia M Cohen    cynthiacohen@paulhastings.com
- Steven R Fox    emails@foxlaw.com
- Helen R Frazer    hfrazer@aalrr.com
- Varand Gourjian    vg@gourjianlaw.com, lala@gourjianlaw.com;naz@gourjianlaw.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Herbert Hayden    herbert@ntlg.us
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- Ian Landsberg    ilandsberg@lm-lawyers.com, bgomelsky@landsberg-law.com;rbenitez@landsberg-law.com
- David L. Neale    dln@lnbrb.com
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Bruce D Rudman    bdr@agrlaw.net
- William D Schuster    bills@allieschuster.org
- Daniel H Slate    dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;marcycarman@tilemlaw.com;ldiaz@tilemlaw.com;dianachau@tilemlaw.com;kmis higian@tilemlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Marc Weinberg    marcweinberg@att.net
- Brandon J Witkow    bwitkow@lockelord.com
- Aimee Y Wong    aywong@mckennalong.com

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                **F 9013-3.1**

21

| In re:  ROOSEVELT LOFTS, LLC, a Delaware limited liability company, | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER  1:09-bk-14214-Gm |

## II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):

On **April 8, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Geraldine Mund
United States Bankruptcy Judge
21041 Burbank Blvd., Cham. 342
Woodland Hills, CA 91367  (by overnight delivery)

### PLEASE SEE ATTACHED SERVICE LISTS

☑ Service information continued on attached page

## III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ _____ I  served  the  following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 8, 2010 | Carla Sharpe | /s/ Carla Sharpe |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                **F 9013-3.1**

22

Roosevelt Lofts
Secured Creditors and their agents

Bank of America, N.A.
333 S. Hope St.
11th Floor
Los Angeles, CA 90071

V.G.I. Corporation
5508 S. Santa Fe Avenue
Vernon, CA 90058

~~Alter Electric Company~~
~~5443 Donna Avenue~~
~~Tarzana, CA 91356~~
**Represented by counsel; see below**

Thermalair
1140 Red Gum Street
Anaheim, CA 92806

American Gunite, Inc.
5042 Wilshire Blvd.
Suite 496
Los Angeles, CA 90036

Wrightway Construction, Inc.
1070 E. Dominguez St.
Suite A
Carson, CA 90746

~~Southland Exterior Building Services, Inc.~~
~~9582 Hamilton Ave.~~
~~#166~~
~~Huntington Beach, CA 92646~~
**Address change; see below**

Westye Group - West, Inc.
dba Sub-Zero Wolf
145 W. 134th Street
Los Angeles, CA 90061

Integrity Builders West, Inc.
25942 Via Marejada
Mission Viejo, CA 92691

Pfinish Koncepts Inc.
dba Stonecraft Enterprise
2820 N. San Fernando Blvd.
Burbank, CA 91504

Purcell Murray Builder Sales Company, Inc.
2341 Jefferson Street
Suite 200
San Diego, CA 92110

Lynn Safety, Inc.
367 Civic Drive
Suite 8
Pleasant Hill, CA 94523

Thyssenkrupp Elevator, Inc.
6087 Triangle Drive
Los Angeles, CA 90040

Allsale Electric Inc.
7950 Deering Avenue
Canoga Park, CA 91304

Cal-State Steel Corporation
1801 W. Compton Boulevard
Compton, CA 90220

Commercial Glass Company
1577 Tierra Rejada Road
Simi Valley, CA 93065

Addison Pools, Inc.
10835 Magnolia Boulevard
North Hollywood, CA 91601

EJ Reyes Corp.
6328 Roundhill Drive
Whittier, CA 90601

EFCO Corporation
1290 Carbide Drive
Corona, CA 92881

Siemens Building Technologies, Inc.
10775 Business Center Drive
Cypress, CA 90630

SRS Fire Protection, Inc.
6829 Canoga Avenue #2
Canoga Park, CA 91303

~~Spectra Company~~
~~2510 Supply Street~~
~~Pomona, CA 91767-2113~~
**Address change per post ofc; see below**

New World West
940 Challenger Street
Brea, CA 92821

Brewster Marble Co., Inc.
11818 Glenoaks Boulevard
San Fernando, CA 91340

CraneNetics, Inc.
4780 Cheyenne Way
Chino, CA 91710

Dunn-Edwards Corporation
4885 E. 52nd Place
Los Angeles, CA 90040

PM Estrada Roofing
4257 W. 101st Street
Inglewood, CA 90304

HD Supply / White Cap Construction Supply
P.O. Box 1770
Costa Mesa, CA 92626

Glendale Plumbing & Fire Supply
11120 Sherman Way
Sun Valley, CA 91352

Insul-Flow, Inc.
1911 N. Fine
Fresno, CA 93727

American Concrete Cutting Inc.
dba American Demolition/Concrete Cutting
620 Poinsettia Street
Santa Ana, CA 92701

GRIF-FAB Corporation
5350 Newport Street
Commerce City, CO 80022

Frank's Disposal
PO Box 4271
Sunland, CA 91041

Robertson's Ready Mix
PO Box 3600
Corona, CA 92878

Orco Construction Supply
477 N. Canyons Parkway, #A
Livermore, CA 94551

A Fence Company, Inc.
15205 Carretera Drive
Whittier, CA 90605

AB California Acquisition Corp.
dba Acoustical Material Services
10200 S. Pioneer Boulevard,
Suite 500
Santa Fe Springs, CA 90670

Arrow
7635 Burnet Avenue
Van Nuys, CA 91405

**Counsel for Bank of America**
Daniel H. Slate, Esq.
Buchalter, Nemer
1000 Wilshire Blvd., Ste 1500
Los Angeles, CA 90017

Agent for Bank of America
T. Larry Watts, Esq.
2029 Century Park East, Suite 3300
Los Angeles, CA 90067

Agent for V.G.I. Corporation
Patrick J. Duffy, Esq.
725 S. Figueroa St., Suite 3200
Los Angeles, CA 90017

Agent for American Gunite
Bradley A. Raisin, Esq.
16055 Ventura Blvd., Suite 601
Encino, CA 91436

Agent for Wrightway Construction
E. Leonard Fruchter, Esq.
1609 Cravens Avenue
Torrance, CA90501

Agent for Southland Exterior Building Svcs
Fred S. Pardes, Esq.
34211 Pacific Coast Hwy, Suite 103
Dana Point, CA 92629

Agent for Westye Group – West, Inc
Christopher W. Bayuk, Esq.
Bayuk & Associates
401 W. 'A' Street, Ste. 1400
San Diego, CA 92101

Agent for Ptinish Koncepts, Inc.
Alan J. Carnegie, Esq.
23975 Park Sorrento, Suite 227
Calabasas, CA 91302

Agent for Purcell Murray Builder Sales
David J. Barnier, Esq.
2341 Jefferson Street, Suite 200
San Diego, CA 92110

Agent for Lynn Safety
Herbert Hayden, Esq.
40931 Fremont Boulevard
Fremont, CA 94538

Agent for Cal State Steel Corp
Heather M. Kadeg, Esq.
30423 Canwood Street, Suite 131
Agoura Hills, CA 91301

Agent for EJ Reyes
Meyer S. Levitt, Esq.
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024

Agent for EFCOCorp
Michael C. Brown, Esq.
23230 Chagrin Blvd., Suite 940
Cleveland, OH 44122

Agent for Spectra Company
Beard Hobbs, Esq.
7844 La Mesa Boulevard
La Mesa, CA 91941

Agent for PM Estrada Roofing
J.J. Little, Esq.
1516 S. Bundy Dr., Suite 312
Los Angeles, CA 90025

Agent for American Concrete Cutting
Ryan K. Hirota, Esq.
PO Box 19694
Irvine, CA 92623

Agent for Robertson's Ready Mix
Robert M. Binam, Esq.
200 S. Main Street, Suite 200
Corona, CA 92882

Agent for HD Supply
William D. Schuster, Esq.
2122 N. Broadway
Santa Ana, CA 92706

Southland Exterior Bldg Svcs
27881 La Paz Rd., Ste G
Laguna Niguel, CA 92677

**Counsel for Sidney Alter dba Alter Electric**
Bruce D. Rudman, Esq.
Abdulaziz, Grossbart & Rudman
PO Box 15458
North Hollywood, CA 91615

Spectra Company
2510 Supply Street
Pomona, CA 91767-2113

Roosevelt Lofts
RSN

Roosevelt Lofts, LLC
c/o Mr. M. Aaron Yashouafar, Preside
Roosevelt Lofts, Inc.
16661 Ventura Blvd., #600
Encino, CA 91436

U.S. Trustee
Attn: S Margaux Ross, Esq.
21051 Warner Ctr Ln Ste 115
Woodland Hills, CA 91367

**Counsel for Ryan Anderson, et al.**
Gary Owen Caris, Esq.
McKenna, Long & Aldridge LLP
444 South Flower St., 8th Floor
Los Angeles, CA 90071

**Counsel for HD Supply Construction**
William D. Schuster, Esq.
Allie & Schuster PC
2122 N Broadway
Santa Ana, CA 92706-2614

Homan Taghdiri, Esq.
**Milbank**
660 S. Figueroa St., 24th Floor
Los Angeles, CA 90017

**Counsel for Siemens Bldg Tech., Inc.**
Benjamin R. Trachtman, Esq.
Trachtman & Trachtman
27401 Los Altos, Suite 300
Mission Viejo, Ca 92691

**Counsel for Bank of America**
Daniel H. Slate, Esq.
Buchalter, Nemer
1000 Wilshire Blvd., Ste 1500
Los Angeles, CA 90017

**Counsel for Sidney Alter dba Alter Electric**
Bruce D. Rudman, Esq.
Abdulaziz, Grossbart & Rudman
PO Box 15458
North Hollywood, CA 91615

Herbert Alfred Mayer
5360 Willow Oak Street
Simi Valley, CA 93063-4591

L.A. County Treasurer and Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

**Counsel for Infiniti Metals**
Law Ofcs Theodore A. Anderson
690 S. Brea Blvd.
Brea, CA 92821

**Counsel for VGI**
Patrick J. Duffy III
Andrew W Hawthorne
Monteleone & McCrory
725 S. Figueroa St., Ste. 3200
Los Angeles, CA 90017

**COMMITTEE COUNSEL**
Ian Landsberg, Esq.
Landsberg Margulies LLP
16030 Ventura Blvd., Ste. 470
Encino, CA 91436

**Counsel for ThyssenKrupp Elevator**
William C. Hernquist II
Wallace H. Sweet
8407 La Mesa Blvd.
La Mesa, CA 91942

**Committee Member**
Kuetar Flooring
Attn: Joseph Kember/Ed Sheats
2 Innovation Drive
Renfrew
Ontario, **CANADA** K7V4B1

**Committee Member**
Bontempi USA
Attn: Yeujye Chen
8919 Beverly Blvd.
West Hollywood, CA 90048

**Committee Member**
A American Custom Flooring
Attn: Richard S. Lauter
311 S. Wacker Drive
Chicago, IL 60066

**Counsel for American Gunite, Inc.**
Varand Gourjian, Esq.
Gourjian Law Group
100 N. Brank Blvd., Sixth Floor
Glendale, CA 91203

David Sherwood
CEO
Daniel's Jewelers
PO Box 3750
Culver City, CA 90231

~~Alan B. Clark~~
~~Latham & Watkins LLP~~
~~355 S. Grand Ave~~
~~Los Angeles, CA 90071~~
**Withdrawal of RSN filed 11-10-09**

**Counsel to Bank of America**
Seyfarth Shaw LLP
T. Larry Watts, Eric B. von Zeipel
2029 Century Park East, Suite 3500
Los Angeles, CA 90067-3021

Attorney for Canon Financial Svcs
Scott H. Marcus & Associates
121 Johnson Road
Turnersville, NJ 08012

Fred S. Pardes, Esq.
LAW OFFICES OF FRED S. PARDES
A Professional Corporation
34211 Pacific Coast Highway, Suite 103
Dana Point, Ca. 92629

~~Maria Stark~~
~~Hypothesis~~
~~811 West 7th St., Ste. 600~~
~~Los Angeles, CA 90017~~
*Remove per e-mail dtd 12-29-09*

~~Greg Sinderbrand, Esq.~~
~~Borba, Inc.~~
~~21700 Oxnard St Ste 1850~~
~~Woodland Hills, CA 91367~~
*Remove per e-mail dtd 12-29-09*

PM Estrada Roofing
4257 W. 101st Street
Inglewood, CA 90304

S.E.C.
5670 Wilshire Blvd., Ste. 1100
Los Angeles, CA 90036

Roosevelt Lofts
**CREDITORS COMMITTEE**

**Counsel**
Ian Landsberg, Esq.
Landsberg Margulies LLP
16030 Ventura Blvd., Ste  470
Encino, CA 91436

**Committee Member**
A American Custom Flooring
Attn:  Richard S. Lauter
311 S. Wacker Drive
Chicago, IL 60066

**Committee Member**
Kuetar Flooring
Attn:  Joseph Kember/Ed Sheats
2 Innovation Drive
Renfrew
Ontario, **CANADA** K7V4B1

**Committee Member**
Bontempi USA
Attn:  Yeujye Chen
8919 Beverly Blvd.
West Hollywood, CA 90048