# EXHIBIT 38

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>Roosevelt Lofts, LLC | Case Number:<br>1:09-bk-14214-GM |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>The Prescott Companies, Inc. | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>William Beasley, CFO<br>The Prescott Companies, Inc.<br>5966 La Place Ct, Ste 170, Carlsbad, CA 92008<br><br>Telephone number:<br>(760) 634-4700<br><br>**FILED**<br>**AUG 2 1 2009**<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:_____ Deputy Clerk | Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed:    $    97,980.00<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim. |
| 2. Basis for Claim:   Services Performed<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 3. Last four digits of any number by which creditor identifies debtor:   8092<br><br>3a. Debtor may have scheduled account as:  M. Yashouatar or Milbank Real Estate Services, Inc<br>(See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe:<br><br>Value of Property:$_____ Annual Interest Rate_____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $_____ Basis for perfection:_____<br><br>Amount of Secured Claim: $_____ Amount Unsecured: $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING<br><br>If the documents are not available, please explain: | Amount entitled to priority:<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
| Date: 8/19/09<br>Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>William Beasley, Chief Financial Officer | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (12/08) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## _____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## _____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

2:13 PM

08/19/09

## The Prescott Companies - Nevada
### Customer Balance Detail
#### As of August 19, 2009

| Type | Date | Num | Account | Class | Amount | Balance |
|------|------|-----|---------|-------|--------|---------|
| **ROOSEVELT LOFTS** | | | | | | 0.00 |
| Invoice | 9/26/2008 | 10582 | 1200 · Accounts Re... | | 11,130.00 | 11,130.00 |
| Invoice | 10/31/2008 | 10596 | 1200 · Accounts Re... | | 2,650.00 | 13,780.00 |
| Invoice | 11/1/2008 | 10597 | 1200 · Accounts Re... | | 49.20 | 13,829.20 |
| Invoice | 11/1/2008 | 10743 | 1200 · Accounts Re... | | 82,080.00 | 95,909.20 |
| Invoice | 12/1/2008 | 10611 | 1200 · Accounts Re... | | 2,120.00 | 98,029.20 |
| Payment | 1/14/2009 | 1138 | 1200 · Accounts Re... | | (49.20) | 97,980.00 |
| | | | | | 97,980.00 | 97,980.00 |
| Total ROOSEVELT LOFTS | | | | | 97,980.00 | 97,980.00 |

**TOTAL**

*81*



THE PRESCOTT COMPANIES

115 East Warm Springs Road, Suite 140
Las Vegas Nevada 89119
Phone 702 215 4670 • FAX 702 215 4672

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 9/26/2008 | 10582 |

BILL TO

MR. MASSOUD YASHOUAFAR
MILBANK REAL ESTATE SERVICES, INC.
660 S. FIGUEROA, 24TH FLOOR
LOS ANGELES, CA 90017

| | TERMS | DUE DATE |
|---|-------|----------|
| | Due on receipt | 9/26/2008 |

| DESCRIPTION | QTY | RATE | AMOUNT |
|-------------|-----|------|--------|
| THE ROOSEVELT LOFTS PRE-MANAGEMENT FEES | | | |
| Management Fee 4 weeks 5/5 - 5/30 | 4 | 530.00 | 2,120.00 |
| Management Fee 4 weeks 6/2 - 6/27 | 4 | 530.00 | 2,120.00 |
| Management Fee 5 weeks 6/30 - 8/1 | 5 | 530.00 | 2,650.00 |
| Management Fee 4 weeks 8/4 - 8/29 | 4 | 530.00 | 2,120.00 |
| Management Fee 4 weeks 9/1 - 9/26 | 4 | 530.00 | 2,120.00 |

| | Total | $11,130.00 |
|---|-------|-----------|



115 East Warm Springs Road, Suite 140
Las Vegas Nevada 89119
Phone 702 215 4670 • FAX 702 215 4672

# THE PRESCOTT COMPANIES

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 10/31/2008 | 10596 |

BILL TO

MR. MASSOUD YASHOUAFAR
MILBANK REAL ESTATE SERVICES, INC.
660 S. FIGUEROA, 24TH FLOOR
LOS ANGELES, CA 90017

| | TERMS | DUE DATE |
|---|---|---|
| | Due on receipt | 10/31/2008 |

| DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|
| THE ROOSEVELT LOFTS PRE-MANAGEMENT FEES | | | |
| Management Fee 5 weeks 9/29 - 10/31 | 5 | 530.00 | 2,650.00 |
| SUBTOTAL | | | 2,650.00 |

| | **Total** | $2,650.00 |
|---|---|---|

83



235 East Warm Springs Road, Suite 100
Las Vegas Nevada 89119
Phone 702 215 4670 • FAX 702 215 4672

# THE PRESCOTT COMPANIES

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 11/1/2008 | 10743 |

BILL TO

MR. MASSOUD YASHOUAFAR
MILBANK REAL ESTATE SERVICES, INC.
660 S. FIGUEROA, 24TH FLOOR
LOS ANGELES, CA 90017

| TERMS | DUE DATE |
|-------|----------|
| Due on receipt | 11/1/2008 |

| DESCRIPTION | QTY | RATE | AMOUNT |
|-------------|-----|------|--------|
| MANAGEMENT FEES | | | |
| Management Fee | 1 | 82,080.00 | 82,080.00 |
| SUBTOTAL | | | 82,080.00 |

| | **Total** | $82,080.00 |
|--|-----------|-----------|

84



115 East Warm Springs Road, Suite 140
Las Vegas Nevada 89119
Phone 702 215 4670 • FAX 702 215 4672

# THE PRESCOTT COMPANIES

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 12/1/2008 | 10611 |

BILL TO

MR. MASSOUD YASHOUAFAR
MILBANK REAL ESTATE SERVICES, INC.
660 S. FIGUEROA, 24TH FLOOR
LOS ANGELES, CA  90017

| | TERMS | DUE DATE |
|---|---|---|
| | Due on receipt | 12/1/2008 |

| DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|
| THE ROOSEVELT LOFTS PRE-MANAGEMENT FEES | | | |
| MANAGEMENT FEES 4 WEEK 11/3 - 11/28 | 4 | 530.00 | 2,120.00 |
| SUBTOTAL | | | 2,120.00 |

| **Total** | $2,120.00 |
|---|---|

85

## PRE-MANAGEMENT DEVELOPER TRANSITION AGREEMENT FOR
## ROOSEVELT LOFTS OWNERS ASSOCIATION

THIS AGREEMENT is entered into on May 4th, 2008 by and between
ROOSEVELT LOFTS, LLC, a California limited liability corporation (hereinafter referred
to as "Client"), and THE PRESCOTT COMPANIES, a California corporation (hereinafter
referred to as "Consultant").

### Term

This Agreement will become effective on the date stated above, and will continue in
effect until the first close of escrow, or until earlier terminated as provided in this
Agreement.

### Duties

By the terms of this Agreement, the Consultant will render certain pre-management
services in connection with the establishment of Roosevelt Lofts Owners Association, a
California non-profit corporation (hereinafter referred to as the "Association"), which pre-
management services are set forth on the Scope-of-Services attached hereto as Exhibit
"A" and incorporated herein by reference.

### Hours

The Consultant will devote a sufficient number of hours each month to perform its duties
specified under this Agreement. The Consultant is free to represent or perform services
for any other client, provided that it does not interfere with its duties under this
Agreement.

### Compensation

Client agrees to compensate Consultant according to the Pre-Management and
Consulting Fee Schedule attached hereto as Exhibit "B" and incorporated herein by
reference.

For services rendered pursuant to the Agreement, Client will be invoiced every two
weeks for Consultants weekly rate and reimbursable expenses. Document base fee is
due and payable upon execution of this agreement. Invoices not paid within fifteen
days of issuance will incur a late charge in the amount of 10% of the amount due under
the invoice.

Should Consultant incur or advance any cost for or on behalf of Client, Client agrees to
promptly reimburse Consultant for reasonable costs upon receipt of Consultant's
statement of charges.

## Indemnity

To the fullest extent provided by law, Consultant will indemnify Client and its affiliated companies (collectively, "Indemnified Parties") from and against all losses, costs, expenses, attorney's fees, liabilities, claims, demands, liens and actions (collectively, "Liability") arising from or relating to gross negligence or willful acts, errors or omissions of Consultant or its agents or employees in connection with the services referred to in this Agreement, regardless of the active or passive negligence of the Indemnified Parties, except that this indemnification obligation will not apply to the extent the Liability is determined to have arisen from the sole negligence or willful misconduct of the party to be Indemnified.

To the fullest extent permitted by law, Client will indemnify Consultant and its affiliated companies (collectively, "Indemnified Parties") from and against all losses, costs, expenses, attorney's fees, liabilities, claims, demands, liens and actions (collectively, "Liability") arising from or relating to gross negligence or willful acts, errors or omissions of Client or its agents or employees in connection with the services referred to in this Agreement, regardless of the active or passive negligence of the Indemnified Parties, except that the Indemnification obligation will not apply to the extent the Liability is determined to have arisen from negligence or willful misconduct of the party to be indemnified.

## Insurance

Consultant agrees to maintain, at its sole expense, Professional Liability (Errors & Omissions) insurance, including prior acts coverage sufficient to cover the services referred to in this Agreement, with limits of not less than $1,000,000 per claim, or limits carried, whichever is higher.  Such insurance will be maintained during the term of this Agreement and, so long as such insurance is reasonably available, for period of five (5) years after the term of this Agreement.

## ~~Proprietary Rights~~ Intentionally Deleted

~~Client acknowledges and agrees that all designs, forms, plans, reports, manuals,~~ procedures, inventions, processes, and other information or items produced by Consultant, the "Intellectual Property", while performing ~~services~~ under this Agreement will remain the sole and exclusive property of Consultant, as will any copyrights, patents, or trademarks obtained by Consultant with performing services under this Agreement.  Client acknowledges that Consultant has developed the "know how" and retains all Intellectual Property rights in connection with the work and services performed under this Agreement.  Consultant hereby grants Client a perpetual, non-exclusive license to use the Intellectual Property regardless of the termination of this Agreement.

2

87

### Agreement to Perform Necessary Acts

Each party to this Agreement agrees to perform any further acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this Agreement.

### Assignment

Consultant will not assign its obligations hereunder without the Client's prior written consent. Client may freely assign its rights and obligations hereunder but will notify Consultant in writing of such assignment.

### Termination

Client may terminate this Agreement ~~with cause~~ upon fifteen (15) days written notice ~~in the event of a material breach by Consultant,~~ Notice will be sent certified or registered mail to Consultant's principal place of business. *⌐ in Client's sole and absolute discretion*

If Client terminates this Agreement early as provided in the preceding paragraph, Client understands and agrees that Consultant will be entitled to its monthly service fee for the balance of the month following written notice of termination, if the Client actually allows Consultant to continue its services. If not, such monthly fees will be prorated to the effective date of termination. If Consultant is authorized to continue services, then such duties will be performed through 5:00 pm on the effective date of termination.

In the event a petition of bankruptcy is filed by or against Consultant, or in the event that either party makes an assignment for the benefit of creditors or takes advantage of any insolvency act, either party hereto may terminate this Agreement with written notice to the other.

Upon termination, Consultant will submit all Client documents completed or partially completed per exhibits "A" and "B". After the parties have accounted to each other with respect to all matters outstanding as of the date of termination, the Client will pay Consultant, in accordance with the terms of this Agreement, all undisputed sums for services performed prior to the effective date of termination.

### Validity of Agreement

It is intended that each paragraph of this Agreement will be viewed as separate and divisible, and in the event that any paragraph will be held invalid, the remaining paragraphs will continue to be in full force and effect.

### Attorney's Fees

In the event it will become necessary to maintain legal proceedings to enforce any of the terms and conditions of this Agreement, the prevailing party will be entitled to an award of costs and reasonable attorney's fees.

*88*

## Entire Agreement

It is the express intent of the parties to this Agreement, that this Agreement embodies the entire agreement of the parties with respect to the subject matter addressed hereunder, and that no other agreement or understanding, verbal or otherwise, relative to the matters covered by this Agreement exists between the parties, and this Agreement may not be amended, modified, altered or changed in any respect whatsoever except by a writing duly executed by the parties hereto.

All exhibits, appendices and attachments to this Agreement are incorporated herein "by this reference and are made a part hereof."

## Warranty of Execution Authority

The persons executing this Agreement warrant and respect that each has the legal power and express authority to bind the entity on behalf of which he/she or it signs.

## Governing Law

This Agreement is to be performed in, governed by, and construed in accordance with the laws of the State of California, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of California or any other jurisdiction) that would cause the application of the laws of any jurisdiction other that the State of California.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

CLIENT:                                          CONSULTANT:

By: _____          By: _____

Title: President of The Roosevelt Lofts, Inc.,   Title: CEO
       Its Manager

Dated: 10/20/08                         Dated: 10/21/08

4

89

EXHIBIT "A"

SCOPE OF SERVICES

**Association Set-Up**

- Consult or coordinate for Association matters as directed by client concerning aesthetic review guidelines, community guidelines, and other matters as applicable.

- Research and secure for implementation the insurance program for the Association in compliance with the budget.

- Act as liaison with subcontractors prior to first escrow closing.

- Establish Board policies and resolutions.

- Coordinate and set-up of on-site administrative office/workstations in conjunction with client provided equipment.

- Evaluate staffing and building vendor needs and obtain bids for client approval.

- Create a job description for Association staff.

- Conduct candidate search for identified staff as outlined in the staffing plan (as applicable).

**Client Services**

- Act in the capacity of Association liaison with sales offices.

- Review move-in procedures to ensure smooth transition for new owner.

- Coordinate with client for customer services issues during the one year warranty period.

5

## Administrative Services

- Complete a portfolio for Association which shall include such documents as insurance, contracts, and legal documents.

- Complete a community profile database to document all pertinent information for the project, such as contracts and warranty information.

- Oversee and administer the bidding process for each subcontracted service. Client to execute final contract.

- Create an annual election notebook.

- Create Association newsletter.

- Coordinate all necessary documentation with appropriate escrow companies.

- Verification that property taxes have been segregated.

- Develop and maintain a community website at Association's expense.

- Maintain a utility spread sheet and recommend energy alternatives if practicable.

## Accounting Services

- Establish Association's fiscal year in accordance with Association legal documents.

- Ensure the Association has a Federal Tax Identification Number.

- Review the final public reports to ensure assessment disclosures agree with the budget.

- Set up a checking account for the Association.

- Set up a working capital account (if required) for the Association.

- Set up reserve accounts for the Association.

- Review the Association delinquency policy for the appropriate implementation.

91

EXHIBIT "B"

PRE-MANAGEMENT AND CONSULTING FEE SCHEDULE

The pre-management services as shown in Exhibit "A" are provided to the client upon
execution of a management agreement, according to the following schedule:

- Client shall also reimburse Consultant at a rate of $530 per week, plus all travel,
  room, meal and ohter expenses for Christine Gibbs to serve as the HOA set up
  Consultant starting May 1, 2008 through the last day of the month of the first
  close of escrow . Duties to include soliciting vendor bids/proposals; procuring
  HOA insurance; hiring on-site personnel; contacting buyers to schedule move-ins
  and review HOA policies/procedures; implementing all original HOA policies,
  procedures, rules and guidelines.

Client _____        _____
        Signature                          Date

Client _____        _____
        Signature                          Date

Consultant _____        _____
        Signature                          Date

7

92

# Roosevelt Lofts
# Owners Association

# COMMUNITY ASSOCIATION
# AGENCY AGREEMENT

## TABLE OF CONTENTS

PRELIMINARY RECITALS ................................................................................................1

A.     REAL PROPERTY COVERED BY THIS CONTRACT.......................................1

B.     ASSOCIATION AS PARTY .................................................................................1

C.     MANAGING AGENT ("AGENT") AS PARTY ....................................................1

D.     DEFINITIONS ......................................................................................................3

E.     MISCELLANEOUS ..............................................................................................4

SCOPE OF SERVICES ....................................................................................................6

APPOINTMENT AND ACCEPTANCE ...........................................................................6

1.     RESPONSIBILITIES AND AGENT'S SERVICES TO ASSOCIATION .............6

2.     FINANCIAL MANAGEMENT..............................................................................6
     2.1     Maintenance Assessments ...............................................................7
     2.2     Association Operating Funds.............................................................7
     2.3     Delinquent Accounts .........................................................................7
     2.4     Disbursement Authorization.............................................................7
     2.5     Association Employee Taxes.............................................................7
     2.6     Accounting and Financial Statements .............................................8
     2.7     Budget Preparation ...........................................................................8
     2.8     Reserve Study ....................................................................................8

3.     PHYSICAL MANAGEMENT................................................................................9
     3.1     Maintenance.......................................................................................9
     3.2     Maintenance Requests and/or complaints .......................................9
     3.3     Customer Service................................................................................9
     3.4     On-site Inspections of Common Area ...............................................9
     3.5     Bids for Hiring....................................................................................9
     3.6     Hiring, Monitoring & Discharging Association's Employees.......10

4.     ADMINISTRATIVE MANAGEMENT ...............................................................10
     4.1     Records and Documents ...................................................................10
     4.2     Communication with the Board........................................................10
     4.3     Counsel and Advise...........................................................................10
     4.4     Interpretation of Rules .....................................................................10

|      | 4.5  | Communication with Homeowners | 10 |
|      | 4.6  | Meeting Notices | 11 |
|      | 4.7  | Meeting Attendance - Regular | 11 |
|      | 4.8  | Meeting Attendance - Other | 11 |
|      | 4.9  | Special Meetings | 11 |
|      | 4.10 | Annual Meeting | 11 |
|      | 4.11 | Minutes | 11 |
|      | 4.12 | Association Records | 11 |
|      | 4.13 | Owner Review of Records | 11 |
|      | 4.14 | Special mailings | 11 |
|      | 4.15 | Contractors | 12 |
| 5.   | | TERMINATION OF AGREEMENT | 12 |
|      | 5.1  | Termination | 12 |
|      | 5.2  | Arbitration Provision | 12 |
|      | 5.3  | Attorney Fees and Costs | 12 |
|      | 5.4  | Condemnation | 12 |
| 6.   | | RECORDS RETENTION | 13 |
|      | 6.1  | Current records | 13 |
|      | 6.2  | Owners Lists | 13 |
|      | 6.3  | Correspondence | 13 |
|      | 6.4  | Sole property of Association | 13 |
|      | 6.5  | Storage | 13 |
| 7.   | | INSURANCE AND INDEMNIFICATION | 14 |
|      | 7.1  | Agent's Insurance | 14 |
|      | 7.2  | Association's Insurance | 14 |
|      | 7.3  | Additional Insured | 14 |
|      | 7.4  | Communication with Association's Insurance Agent | 14 |
|      | 7.5  | Indemnification | 14 |
|      | 7.6  | Willful Misconduct | 15 |
| 8.   | | COMPENSATION | 15 |
|      | 8.1  | Base Fee | 15 |
|      | 8.2  | Fee Adjustments | 15 |
|      | 8.3  | Agent's Fees and Costs | 15 |
|      | 8.4  | Reimbursable Expenses | 16 |
|      | 8.5  | Deduction of Agent's Compensation | 16 |
| 9.   | | SPECIAL OR EXTRAORDINARY SERVICES | 16 |
|      | 9.1  | Hourly Compensation | 16 |
| 10.  | | ASSOCIATION EMPLOYEES | 16 |
|      | 10.1 | Separate Payroll | 16 |
|      | 10.2 | Work Performed | 16 |
|      | 10.3 | Hold Harmless | 16 |
|      | 10.4 | Workers' Compensation Insurance | 16 |

|  | 10.5 | Payroll | 16 |

| 11. | | ASSOCIATION SET-UP FEE | 17 |
| | 11.1 | Set-up Fee | 17 |

| 12. | | TERM OF CONTRACT | 17 |
| | 12.1 | Commencement date | 17 |
| | 12.2 | Commencement and Renewal | 17 |

| 13. | | AGENT AND ASSOCIATION PROTECTION | 17 |
| | 13.1 | Agent Employees | 17 |
| | 13.2 | Work Performed | 17 |
| | 13.3 | Trade Secrets | 18 |
| | 13.4 | Confidentiality | 18 |
| | 13.5 | Use of Trade Secrets | 18 |

| 14. | | MISCELLANEOUS | 18 |
| | 14.1 | Advances and Charges | 18 |
| | 14.2 | One Board Member to Deal with Agent | 18 |
| | 14.3 | Successors and Assigns | 18 |
| | 14.4 | Terms and Conditions | 19 |
| | 14.5 | Severable Provisions | 19 |

EXHIBIT A
Reimbursable Association Administrative Operating Costs/Expenses ..............................20

EXHIBIT B
DIRECTORS ACTION BY WRITTEN CONSENT ........................................................23

EXHIBIT C
CERTIFICATE OF SECRETARY ...............................................................................24

# ARTICLE I
# PRELIMINARY RECITALS

## A.   REAL PROPERTY COVERED BY THIS CONTRACT :

Common Interest Development (CID):  Roosevelt Lofts Owners Association

Location:  Los Angeles, CA.

Declaration Recordation No.:

Number of  Residential Living Units: 228

Development Type: Condominiums

Developer:

Address:

## B.   ASSOCIATION AS PARTY :

Association:   Roosevelt Lofts Owners Association

Address:   Association address shall be the current Board President at his or her current home or business address.

Federal Tax I.D. No. :

State Tax I.D. No.:

Corporation No. :  C2751215

## C.   MANAGING AGENT ("AGENT") AS PARTY :

Name:   The Prescott Companies
Address:   5966 La Place Court, #170
Carlsbad, CA  92008-8830
760 634-4700 / 760 634-4759 Fax

DISCLOSURE STATEMENT (California Civil Code § 1363.1)

1.    License/s held by principal/s.

    H. Stephen Ellis
        Type:  Architectural
        Status: Active
        Name: H. Stephen Ellis

        Type:  Real Estate Broker
        Status: Active
        Name: H. Stephen Ellis

    Cynthia K. Gibson
        Type:  Real Estate Salesperson
        Status: Inactive
        Name: Cynthia K. Van Cleave

2.    Certifications or Designations of Principals

    Type:  Association Management Specialist (Community Association Institute)
        Status: Active
        Name: Cynthia K. Gibson

        Type:  Certified Community Association Manager
        Status: Active
        Name: Cynthia K. Gibson

3.    Type of organization (corporation, partnership limited partnership, sole proprietorship)

    Corporation -
        Officers and Shareholders with 10% or more interest

| H. Stephen Ellis | Cynthia K. Gibson |
|---|---|
| 5966 La Place Court, #170 | 5966 La Place Court, #170 |
| Carlsbad, CA  92008-8830 | Carlsbad, CA  92008-8830 |

D.    DEFINITIONS

1.        "Agent Employees" shall mean all employees of the Agent inclusive of all onsite
          personnel provided for under Section 8.

2.        "Association" shall mean a corporation formed under the Nonprofit Mutual
          Benefit Corporation Law of the State of California, or an unincorporated
          California Association, its successors and assigns.

3.        "Association Employees" shall mean those employees hired by the Association
          exclusive of Agent Employees.

4.        "Base Fee" shall mean the monthly fee as identified in Section 8.1 and covers
          Agent's basic contractual services exclusive of all extra-ordinary services which
          may occur by Board direction and exclusive of those services identified in Section
          9 and Exhibit A of this Agreement.

5.        "Board" or "Board of Directors" shall mean the Board of Directors of the
          Association or other governing body of the Association, elected pursuant to the
          Bylaws of the Association.

6.        "Budget" shall mean a written, itemized estimate of the expenses to be incurred
          by the Association in performing its functions under its Declaration and Bylaws.

7.        "Common Area" shall mean all the real property and improvements, including,
          without limitation, streets, open parking areas, landscape areas and recreational
          facilities, which are owned by the Association or owned in common by the
          owners for the common use and enjoyment of all the Owners.

8.        "Common Interest Development" means any of the following: (1) A community
          apartment project (2) A condominium project (3) A planned development (4) A
          stock cooperative.

9.        "Definitions" The terms "Association", "Owner", or "Professional Managing
          Agent", herein or any pronoun used in the place thereof, shall mean and include
          the masculine and the feminine, the singular or the plural number, and jointly and
          severally, individuals, firms or corporations, and each of their respective
          successors, executors, administrators, and assignees as the context so indicates.

10.       "Governing Documents" shall mean the Declaration of Covenants, Conditions and
          Restrictions and other documents, such as Articles of Incorporation, Bylaws,
          operating rules of the Association, which govern the operation of the common
          interest development or Association.

11.       "Maintenance Assessments" As used in the Agreement, the term "Assessments"
          shall mean those monthly rates established and approved by the Board of
          Directors, which the Association members are bound to pay as their share of the

common expenses. The term "Association" as used herein shall mean an Association consisting of all the Owners of units in the Common Interest Development (CID) organized under the laws of the State of California for the purpose of administering the Common Interest Development (CID) established by the Declaration of Covenants, Conditions and Restrictions ("Declarations") for the real property.

12.     "Professional Managing Agent" shall be a person or entity which possesses one or more of the following professional management credentials or licenses. In the case of an entity, at least one credential in each category is recommended. In either case, a person or entity, these credentials are evidence of qualifications to perform professional common interest development management services:

PERSONAL/PROFESSIONAL CATEGORY

12.1    Member of and holder of the designation by California Association of Community Managers (CACM) as a Certified Community Association Manager (CCAM) or is a current candidate.

12.2    Professional Community Association Manager (PCAM) designation awarded by the Community Associations Institute (CAI)

12.3    Certified Property Manager (CPM) designation awarded by the Institute of Real Estate Management

12.4    Licensed by the California Department of Real Estate as a "Real Estate Broker"

E.     MISCELLANEOUS

In consideration of the covenants herein, the Association as described in B above enters into this Agreement with the Agent to manage the property described in A above for the compensation provided in Section 8 and for the term as set forth in Section 12 and subject to compensation provided in the Agency Agreement, "Scope of Service", Terms and Conditions set forth hereinafter which are Pages 6 through 20 incorporated and made a part of this Agreement. These documents are to be construed as one integrated written Agreement between the parties, and recitals.

This written Agreement supersedes any and all prior representations, understandings and communications, and may be modified only by written agreement of the parties. Any oral agreements or modifications are expressly invalid.

This Agreement will be construed in accordance with, and governed by, the laws of the State of California. If any term, provision, covenant or condition of this Agreement, including the Scope

of Services, should be found by a court of competent jurisdiction to be invalid, all other provisions shall continue in full force and effect, and shall in no way be affected, impaired or invalidated.

If any legal proceeding is necessary to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and legal costs. In addition to any other relief to which such party may be entitled. The parties agree that this Agreement shall be effective as of the date set forth in the TERM OF CONTRACT. (Section 12)

If the Association is incorporated, it is understood and so assured by the signer that the person signing on behalf of Association has corporate authority to execute this contract. If the Association is unincorporated, it is understood and so assured by the signer that the person signing on behalf of the Association is authorized to execute this contract. If the Association is unincorporated, and this Agreement is signed by both parties prior to the first (organizational) homeowner's meeting, it is understood and assured by the person signing on behalf of Association that the Association automatically assumes or will assume the full legal obligations of this Agreement for the full term stated in this Agreement, and that no provisions to the contrary are or will be included in the Association's Covenants, Restrictions or By-Laws.

## ARTICLE II

### "SCOPE OF SERVICES"

**APPOINTMENT AND ACCEPTANCE**

The Association hereby exclusively contracts with the Managing Agent, (hereinafter called "Agent") and appoints the Agent to manage the Association under the sole direction of the Board of Directors upon the terms and conditions hereinafter set forth. The relationship between the Association and Agent is one of Principal and Agent.

The Agent will deliver services reasonably necessary to provide the Association with management under the supervision and direction of the Association's Board of Directors.

1.    RESPONSIBILITIES AND AGENT'S SERVICES TO ASSOCIATION

    1.1    The Association hereby appoints the Agent and the Agent hereby accepts appointment on the terms and conditions hereinafter provided.

    1.2    The Association retains the primary responsibility for enforcement of provisions of the Association's governing documents and contractual agreements and assumes liability for any and all acts and occurrences which relate to the Association, and the real property covered by this contract.

    1.3    Agent will undertake reasonable efforts to implement the lawful decisions of the Board of Directors in accordance with the Terms and Conditions of this Agreement, subject to the compensation schedule set forth herein. Agent will not be obligated to implement a decision which:

        a)    is contrary to the terms of this Agreement, applicable law or governing documents

        b)    would involve transactions or services outside the Agent's expertise, knowledge or licenses.

        c)    would involve transactions or services which are not set forth in this agreement.

    1.4    It will be the responsibility of Agent, during the term of this Agreement, to perform the duties as set forth in this Agreement, consistent with the plans and directives of the Association's Board of Directors, and to perform such other acts as are reasonably necessary to discharge Agent's responsibility.

2.    FINANCIAL MANAGEMENT

    2.1    Maintenance Assessments. Agent will provide for the collection of maintenance assessments as prescribed by the Board of Directors of the Association, and will

set up a separate checking account or accounts, with any federally insured institution or institutions, as is customary with other Associations or Cooperatives managed by Agent, at its sole discretion.

2.2    Association Operating Funds. Agent will establish and maintain Association's funds, in a bank of Agent's choice whose deposits are federally insured and in a manner to indicate the custodial nature thereof. All such funds shall be placed in separate accounts with the Agent having authority to draw thereon for any payments to be made by the Agent to discharge any liabilities or obligations incurred pursuant to this Agreement and for the payment of the Agent's fee. All payments are subject to the limitations of this Agreement. From funds collected, Agent will pay the expenses for the operation of Association in accordance with the approved budget or as otherwise authorized by Association's Board of Directors.

2.3    Delinquent Accounts. Agent is authorized to take reasonable steps for the collection of delinquent accounts. In the event such efforts fail, Agent will have authorization to have recorded a lien against the delinquent owner's unit in accordance with the Association's Declarations and Association's Assessment Collection Policy. Agent is authorized to assess the delinquent account a late charge and a delinquent processing charge along with other charges for collection, lien fees, reflective of the costs for collection, accounting payment plan monitoring and legal proceedings. Statutory interest may be charged commencing thirty (30) days after any due date. Reasonable costs of collection, including attorney's fees, are authorized to be charged and collected.

2.4    Disbursement Authorization. Agent is authorized and shall make all disbursements from Association funds for liabilities incurred on behalf of Association. Agent is hereby granted authority to make any non-budgeted expenditures as provided in this section at its own discretion up to $1,000.00. In addition, Agent shall have the authority to make normal and usual expenditures as necessary herein with the approval of Board of Directors, except in cases of emergency requiring prompt action to avoid further loss. Agent will obtain approval for any extraordinary expenses of the Association as they occur.

Agent will establish Association's reserve accounts in federally insured institution(s) at Association's direction. All disbursements from reserve accounts will be made pursuant to the requirements of California Civil Codes.

Emergency repairs involving imminent danger to life or property, or immediately necessary for the preservation and safety of the property, or for the safety of any person, or required to avoid the suspension of any necessary service to the complex, may be made by the Agent, regardless of the cost.

2.5    Association Employee Taxes. Agent will pay from Association's funds taxes and have filed necessary state and federal reports when due. Association further

agrees to furnish Agent with Association employer identification number for employee income tax withholding purposes. If Association does not have an employer identification number, Agent is hereby given authority to obtain an identification number on behalf of the Association. Association further agrees to hold the Agent harmless in accordance with Paragraph 7.5 of this Agreement for any noncompliance with minimum wage laws and record keeping requirements of any governmental act or agency requirement.

2.6     Accounting and Financial Statements. Agent will maintain a set of accounting records in accordance with accepted accounting principles.

    a)     Agent will distribute monthly to all members of the Association's Board of Directors a financial statement for the previous month, including copies of the balance sheet, statement of income and expenses for month and year-to-date, statement of income and expenses versus budget, schedules of cash investments, reserve allowances, year-to-date reserve expenses and a check register of disbursements.

    b)     Agent shall reconcile all banks statements and shall provide to the Board of Directors copies of bank statements and bank reconciliations.

    c)     Agent will cooperate with auditors in their performance of audits and reviews of Association's records and their preparation of applicable tax returns in accordance with Exhibit A.

    d)     Agent will, upon direction from the Board of Directors, distribute to all members, at Association's expense, copies of annual financial reports, budgets, collection policies, and all other disclosures, publications and reports required by the California Civil Code.

2.7     Budget Preparation. Agent will prepare and submit to the Board of Directors a proposed budget. Any budget draft prepared by the Agent will be subject to approval by the Board of Directors and the Board of Directors shall retain full responsibility for the appropriateness of data contained in the budget. Any decision to adopt Agent's proposed budget, or to amend it for adoption will be reserved to and exercised by the Association's Board of Directors.

The Association's Board of Directors acknowledges their awareness of the California Civil Code and the Board shall levy regular and special assessments sufficient to perform its obligations under the governing documents and California Civil Code.

2.8     Reserve Study. In the event the Association elects to have an outside firm perform a reserve study, Agent agrees to cooperate with said outside firm and to furnish any and all necessary forms and documents in Agent's possession upon request. Agent shall be compensated in accordance with Exhibit A for consultation.

3.    PHYSICAL MANAGEMENT

3.1    Maintenance. Agent will assist the Board of Directors in its responsibilities for the upkeep, maintenance, and management of the Common Area and the equipment, pursuant to the Association's documents.

3.2    Maintenance Requests and/or complaints. Agent will receive maintenance requests and/or complaints, concerning the Associations Common Areas, and communicate them to appropriate contractor(s) and vendor(s) for correction, repairs and maintenance.

3.3    Customer Service. Agent will provide a 24 hour per day, 7 day per week call center to assist or refer emergencies in the Common Areas of the Association. Serious matters will be reported to the Association's Board of Directors with appropriate recommendations or for the purpose of receiving further instructions from the Board on how to proceed.

3.4    On-site Inspections of Common Area. Agent will provide daily inspections of the Association Common Areas and facilities and will submit a written report of findings, action taken and recommendations to the Board of Directors. The Agent shall not be required to inspect the property during its walk-throughs from any ladders, scaffolding, rooftops, or any other unstable vantage points.

3.5    Bids for Hiring , Supervising, and Discharging a Third Party Subcontractor(s).

    a)    Agent will, upon receipt of written instructions or upon resolution of the Board of Directors, request from insured vendors of Agent's selection, not more than three (3) bids for the types of third party goods or services that Agent believes, in Agent's sole discretion, are likely to cost $1,000.00 or more. Those items for which the Board of Directors requests bids that in Agent's sole discretion are likely to cost less than $1,000.00, will not be let out for bid, and Agent shall be under no duty to solicit bids for those items. Specifications for all bids shall be included with the Board of Directors' request, and the Board of Directors shall be solely responsible for establishing the standards or specifications or criteria for work to be let out for bid. Agent will endeavor to make helpful suggestions, however, the final decision in establishing standards, specifications or criteria shall be the Association's. Agent will, upon the Board of Directors' written instructions or resolution, discharge subcontractors that the Board decides are not performing to the specifications or criteria established by the Board of Directors. Agent, on the basis of an operations schedule, job standards and compensation rates approved by the Association shall investigate, hire and pay third parties in order to maintain and operate the Association. Any contract for such third party subcontractors will be a direct contract between the Association and the third party subcontractor. Agent will act solely as the Agent of the Association in negotiation and maintenance of said contract and not as a contracting party.

Compensation for the services of all third party subcontractors shall be paid by the Association.

3.6    Hiring, Monitoring and Discharging the Association's Employees.

    a)    In the event the Association directly employs or contracts for personnel in connection with the operation of the Association, the Association shall be solely responsible for adhering to all federal and state laws governing the employer, employee and sub-contractor relationship, including, but not limited to, tax withholding, labor standards, and insurance requirements. Agent may assist the Association in such matters and will advise the Association on such matters that Agent from time to time is requested by the Board of Directors to handle. However, the ultimate responsibility for compliance shall be with the Association.

4.    ADMINISTRATIVE MANAGEMENT

4.1    Records and Documents. Agent will organize the records and documents it receives from the Association in accordance with its normal procedures. In the event the Association is transferring documents from a prior manager or management company, the Agent will, within sixty (60) days from receipt of complete records, render financial statements in their usual form showing the financial status of Association, or, if the records are inadequate to prepare such financial statements, Agent shall submit a written recommendation to Association. If such recommendation suggests a review or audit by a third party, or additional investigation and organization of information that will permit the publication of financial statements, Agent will provide/or obtain estimated cost of performing such services.

4.2    Communication with the Board. Agent will write or delegate letters and communicate as necessary to assist the Board of Directors in carrying out its responsibilities.

    a)    Receive and write letters to homeowners and others concerning violations of Association documents and rules, homeowner's requests, architectural and maintenance matters, etc.

4.3    Counsel and Advise. Agent will counsel and advise the Board of Directors and its committees in their day-to-day operations.

4.4    Interpretation of Rules. Agent will assist in interpretation of the rules of the Association and suggest appropriate steps of enforcement.

4.5    Communication with Homeowners. Agent will provide, at Association's sole cost and expense, material and expertise in the development of methods of communication to the homeowners (rules and regulations, etc.).

4.6     Meeting Notices. At the request of the Board of Directors, and at the Association's
        sole cost and expense, Agent will send notices of Association meetings, prepare
        the Agenda therefore, circulate minutes of any such meetings as prepared by the
        Secretary, and carry out instructions included in the minutes as approved by the
        Board of Directors.

4.7     Meeting Attendance - Regular. Agent will attend one regular monthly meeting of
        the Board of Directors. Time in excess of two (2) hours per meeting, or fraction
        thereof, or any meeting that lasts after 9:00 P.M. shall be charged at the rate
        schedule in accordance with Exhibit A.

4.8     Meeting Attendance - Other. Agent will attend meetings scheduled during the
        normal work week, Mondays through Thursdays, except holidays. Meetings held
        on days other than those identified herein will be charged at the rate on Exhibit A.

4.9     Special Meetings. Agent will not be obligated to attend special meetings of the
        membership or of the Board of Directors or the Association's committees.
        However, if Agent is requested to attend and accepts, Association will pay Agent,
        at the rate schedule in accordance with Exhibit A, per hour for each hour, or
        fraction thereof, that such meeting lasts, plus mileage at IRS rate per mile.

4.10    Annual Meeting. At the Association's sole cost and expense, Agent will assist in
        preparation for Association Annual Membership Meeting, including notices,
        proxies and agenda, and will attend and participate in conducting the meeting if so
        requested by the Board of Directors.

4.11    Minutes. Agent shall provide recording secretary for the purpose of recording
        minutes of regular meetings of the Board of Directors, the Annual Meeting of the
        Association as requested by the Board of Directors, at the rate in Exhibit A.
        Agent shall type, transcribe, and mail them to the Board of Directors in the
        standard Board of Directors report.

4.12    Association Records. Agent will keep all records of the business of the
        Association.

4.13    Owner Review of Records. Agent will make allowable Association records
        available for review. Association agrees that Agent shall charge a fee in
        accordance with Exhibit A for records research and for the scheduling and
        monitoring of such a review.

4.14    Special mailings. Special mailings and newsletters requested by the Board of
        Directors as prepared by the Association shall be duplicated and mailed at the
        expense of the Association. All requests for duplication of additional copies of
        project documents, correspondence, reports, etc. will be at the expense of the
        Association.

4.15    Contractors.  Agent shall not be responsible for any contractor, subcontractor or
Association employee's work performance or adherence to specifications or
schedules.

5.    TERMINATION OF AGREEMENT

5.1    Termination. Either party may terminate this agreement with or without cause and
without penalty by written ninety (90) day notice.  If there arises a dispute
between Association and Agent, and if in the opinion of the aggrieved party the
offending party has committed a material breach of this Agreement, the aggrieved
party will notify the offending party of the alleged breach by mailing such notice
by Certified Mail, Return Receipt requested. If the offending party does not or
cannot cure the breach complained of, then this contract may be terminated
without prejudice, upon thirty (30) days written notice sent by Certified Mail,
Return Receipt requested, subject however, to any and all rights and remedies
available to the aggrieved party.  During the breach cure period, the termination
period or arbitration period, both the Association and Agent agree to diligently
proceed with the management of the Association per the terms of the Agreement.

5.2    Arbitration Provision. Either party to a dispute shall have the right to demand an
arbitration of a dispute, including a termination, as set forth in Section 5.1.

When a written demand for arbitration is entered, the dispute shall be submitted to
an arbitrator mutually selected by the parties from a list of five (5) arbitrators
submitted by the American Arbitration Association. The determination of the
arbitrator shall be binding upon both parties. If the arbitrator shall determine that
the offending party has committed a material breach of this Agreement then such
finding shall furnish the aggrieved party the right to terminate the contract ninety
(90) days after the final decision of the arbitrator and the offending party shall
bear all costs and expenses incurred in the arbitration. In the event that the parties
cannot mutually select a single arbitrator, the parties will select a single arbitrator
from the list submitted by the American Arbitration Association by striking
alternate names from the list. The arbitrator shall award the prevailing party its
costs, including reasonable attorneys fees.

5.3    Attorney Fees and Costs. Should any party hereto retain counsel for the purpose
of enforcing or preventing the breach of any provision hereof, including, but not
limited to, instituting any action or proceeding or arbitration to enforce any
provision hereof, for damages by reason of such party's rights or obligations
hereunder or for another judicial remedy, the prevailing party shall be entitled to
be reimbursed by the losing party for all costs and expenses incurred including,
but not limited to, reasonable attorney's fees and costs for services rendered to
such prevailing party.

5.4    Condemnation. Upon taking of the entire or a substantial portion of the Project
through lawful condemnation proceedings by any Governmental party, either
party may terminate this Agreement by serving ninety (90) days written notice by,
Certified Mail, Return Receipt requested, to the other party.

6.    RECORDS RETENTION

6.1    Current records. The Association's current records shall be kept at Agent's office. Such records shall be available for inspection and copying during Agent's normal business in accordance with California Civil Codes and California Corporations Codes, Monday through Friday. Agent shall be entitled to charge and receive copying and document research cost, as set forth in Exhibit A, from anyone requesting copies of records or documents, before making such copies. Agent shall be entitled to reasonable notice prior to such or copying of records.

6.2    Owners Lists. Agent shall maintain a current list of owners in the Association, in accordance with the information supplied to Agent. Reasonable efforts will be made to keep this list accurate, but it shall be the responsibility of the Association to advise Agent of address or ownership changes. Agent shall not be obligated to discover transfers of ownership that are not reported directly to it, nor obligated to search official records for such transfers of ownership unless specifically requested to do so by the Board of Directors at hourly rates set forth in this agreement. Agent will record changes of address or ownership upon advice from owners, with supporting documentation.

6.3    Correspondence. Agent will maintain documents and files for all current correspondence relating to Association, such as incoming owner correspondence, violation and architectural control letters, contracts, purchase orders, filing with public agencies, insurance policies, information and other related documents.

6.4    Sole property of Association. All records and correspondence regarding Association are and will remain the sole property of Association. Agent agrees to return any and all such records and correspondence to the Association, or to an entity or person designated by the Board of Directors, upon termination of this Agreement. Such records will be available for pickup at Agent's office or such other designated location as may be agreed upon. Electronic media such as computer tapes, discs, and general electronically stored data bases are the sole property of the Agent and any duplication or transference of information shall be at the sole discretion of the Agent with all costs and charges to be paid by the requesting party.

6.5    Storage. Agent agrees to maintain storage of Association's records and correspondence at Association's sole cost and expense in accordance with schedule Exhibit A. Location of stored records shall be at the sole discretion of the Agent.

7.    INSURANCE AND INDEMNIFICATION

AGENT'S INSURANCE

7.1    Agent's Insurance. Agent will, throughout the term of this Agreement, and at
Agent's expense, maintain the following insurance coverage:

a)    A Fidelity Bond with coverage for all Agent's employees to protect
Association's funds.

b)    Agent's liability insurance and comprehensive general liability coverage,
including automobile liability, completed operations, blanket contractual
and personal injury coverage, with combined single limits of $1,000,000
property damage and liability.

c)    Errors and Omissions Insurance/Professional Liability.

d)    Workers' Compensation Insurance in the statutory amount, covering
Agent's Employees.

ASSOCIATION INSURANCE

7.2    Association's Insurance. Association will maintain, at its sole expense, a policy
of comprehensive general liability insurance in accordance with the Association's
Declarations and the California Civil Code.

7.3    Additional Insured. Association shall name Agent as an additional named insured
on the Association's policies of comprehensive general liability and directors and
officers insurance and said insurance policies will cover Agent for any and all
claims and losses indemnified by Association pursuant to Section 7.5. Agent will
be provided with insurance certificates identifying Agent as additional insured
showing the amount of coverage to be furnished to the Agent.

7.4    Communication with Association's Insurance Agent. Agent will maintain
reasonable communication with Association's Insurance Agent, and will assist the
Board in reviewing, and renewing insurance coverage, including solicitation of
bids for such coverage if requested. The Board of Directors is solely responsible
for maintaining insurance coverage for the Association, and for the adequacy of
such coverage.

INDEMNIFICATION

7.5    Indemnification. Association hereby agrees to indemnify, hold harmless and
defend at its own cost and expense, the Agent and its employees, agents, officers
and directors, shareholders or representatives from and against any and all loss,
liability, cost, expenses, or damage (including attorneys fees) in connection with

or arising out of Agent's performance and/or nonperformance of Agent's duties, in connection with and/or arising, out of all contractual liabilities which may be alleged or imposed against Agent. Association further agrees to indemnify, defend and hold harmless Agent and its employees, agents, officers, shareholders, or representatives from any and all liability in connection with or arising from the management of the Association, the Association's property, employees, directors, officers, agents, vendors, members, guests, invitees, or trespassers. This provision shall survive any termination of this agreement.

7.6 Willful Misconduct. Agent will be responsible only for any willful misconduct, gross negligence where such liability is due to the sole conduct of Agent and/or its employees in the performance of its duties under this Agreement.

## 8. COMPENSATION

In consideration of Agent's acceptance of its appointment hereunder and the performance of services as set herein, the compensation to which the Agent will be entitled will consist of fees for basic services (Base Fee) which are considered due upon execution of this agreement, but are paid monthly, along with those fees and costs for special or extraordinary services as set forth in Exhibit A. Agent shall be paid in advance on the first day of each month, without prior Association approval, per the following schedule:

8.1 Base Fee. The Base Fee for 228 units shall be $6,840 per month including a Senior Off-Site Community Association Manager to consult with the Board of Directors and attend monthly board meetings.

8.2 Fee Adjustments. The Base Fee shall be superseded by the adoption of a new annual Association budget indicating an adjusted base for management services, but not less than the increase, in the most recent available Consumer Price Index of the Bureau of Labor Statistics of the Department of Labor for All Urban Consumers. (1967= 100), "All Items" for the city nearest the location of the Association's Real Property, herein referred to as "C.P.I." or three percent (3%). Adoption of the annual budget by the Association's Board of Directors shall constitute an approval of a base fee agreement, but in no event shall the base fee be less than the amount stated in paragraph 8.1 of this section. Fee adjustments shall begin on the 1st day of the month in which the newly adopted budget becomes effective.

8.3 Agent's Fees and Costs. Any base fees and costs due the Agent will be paid promptly each month on the first of each month. Any monies due and billed and not paid to Agent by the fifteenth (15th) of each month will carry a ten percent (10%) per annum late fee which will be added to the balance due and will be subject to further late charges until paid. Interest, at a legal rate, to be charged thirty (30) days after any amounts are delinquent.

8.4 Reimbursable Expenses. Agent is authorized to purchase supplies on behalf of the Association in connection with execution of Agent's obligations under this agreement. The Association shall reimburse Agent for all postage costs incurred

/ / /

by Agent on Association's behalf. In addition, Association will reimburse Agent for all reasonable expenses incurred on behalf of the Association including, but not limited to, those expenses listed in Exhibit A attached hereto and included herein. Said costs will be reimbursed on a monthly basis as incurred and billed.

8.5     Deduction of Agent's Compensation. Association will be obligated to pay, and Agent shall receive as compensation for its services under this Agreement the fees provided for in this section herein and above at the times therein set forth. Agent is entitled to deduct such compensation when due from the funds then in its possession. Agent's compensation covers normal and unusual administration expenses of Agent required by actions of the Board of Director's including costs of travel, as authorized by the Board of Directors.

9.     SPECIAL OR EXTRAORDINARY SERVICES

9.1     Hourly Compensation. Agent shall be reimbursed for services performed on behalf of the Association that are not considered part of Agent's general contractual obligations at the rates defined in Exhibit A.

10.     ASSOCIATION EMPLOYEES (Solely at option of Association)

10.1     Separate Payroll. Agent will establish a separate payroll account under the Association's employer tax ID number.

10.2     Work Performed. Such employees will perform work as directed by the Board of Directors, which has the sole right and obligation to control employees actions while performing services for the Association, and the right to discharge any such employees. Association shall have the sole and entire responsibility for each employee while performing services for the Association. All costs associated with these employees shall be the Association's responsibility.

10.3     Hold Harmless. Association will hold Agent harmless from any and all liability incurred by such employee while performing services on behalf of Association, and will indemnify against such liability or expense which Agent might incur as a result thereof.

10.4     Workers' Compensation Insurance. Association will provide Workers' Compensation Insurance coverage for employees for such employees, which Agent will assist in procuring.

10.5    Payroll. Agent will prepare and maintain all phases of payroll for such employees
including payroll records, checks, and forms and shall disburse payrolls checks in
a timely manner, contingent on timely receipt of employees' hours within the
specific time for cut-off dates. All employees' compensation shall be based on
hourly rates and employees shall keep time cards in accordance with state laws. A
special handling fee will be charged to Association for individualized payroll
processing in accordance with Exhibit A.

11.    ASSOCIATION SET-UP FEE

11.1    Set-up Fee. Set-up Fee is waived.

12.    TERM OF CONTRACT

12.1    Commencement date. After execution of this contract by the Association's Board
of Directors, Agent's compensation shall commence with the first close of escrow.

12.2    Commencement and Renewal. This Agreement shall be in effect for a period
("Term") of one (1) year commencing as defined in Section 12.1 and renew
annually on the 1st day of the fiscal year thereafter from year to year. If
notification by either party of their intent not to renew this Agreement for one
year is not received by the other party in writing at least sixty (60) days prior to
the expiration date of this Agreement, this Agreement shall automatically renew
in full force and effect for the ensuing one year period.

13.    AGENT AND ASSOCIATION PROTECTION

AGENT EMPLOYEES

13.1    Agent Employees. Agent spends significant amounts of time and money to hire
and train employees for the operation of this and other Associations. Association
derives benefits from Agent's experience in managing, and their hiring and
training procedures. Association agrees it will not hire, retain, or contract either
directly or indirectly with any past or present employee, subcontractor, partner,
officer, or co-owner of agent or its parent company or divisions in any capacity
whatsoever for a period of two years following the termination of this Agreement
or any extension thereof. Association agrees to pay Agent the sum of one year's
salary of said employee as liquidated damages if it breaches this provision of the
contract. Association agrees it will use due diligence in ensuring that this
provision is upheld. Both parties agree that this is a reasonable sum due to the
extensive training and trade secrets that Agent provides, as well as expectation of
continued income and allotment of resources, and further with respect to the
difficulty in establishing the amount of actual damages.

13.2    Work Performed. All onsite employees provided to the Association by Agent will
be employees of the Agent, and perform work as supervised, directed and
controlled by the Agent. Onsite employees will work Monday through Friday

Roosevelt Lofts
113

during normal business hours, excluding legal holidays, vacation and sick time.
Agent is not obligated to place another onsite substitute in the case of absences,
vacation or holidays.

## COMPANY TRADE SECRETS

13.3    Trade Secrets. Association will have access to and be dealing with trade secrets
or information of Agent, such as: confidential information pertaining to client
lists, processes and documentation relating to management of Agent's client
Associations; and programs, software, procedures and techniques relating to data
processing and financial reporting. Association agrees to hold any such trade
secrets or proprietary or confidential information attained during the course of this
Agreement in the strictest confidence and shall retain a total confidentiality,
giving value to protect them from Agent's competitors.

13.4    Confidentiality. All materials of a confidential nature, prepared and utilized in
Agent's performance of their duties under this Agreement, shall remain the
exclusive property of Agent, and shall be retained in Agent's possession.

13.5    Use of Trade Secrets. Association agrees not to use any such trade secrets or
proprietary or confidential information commercially for its own benefit or the
benefit of anyone else. Association agrees to limit dissemination of and access to
the trade secrets, proprietary or confidential information only to persons within
Association's immediate organization (and not to subsidiary, parent or affiliated
entities), and then only for those persons who have a need for access to the
information.

14.    MISCELLANEOUS

14.1    Advances and Charges. Agent will not be required to perform any act or duty
hereunder involving the expenditure of money unless Agent shall have in its
possession sufficient funds of the Association available; therefore if at any time
the funds in the possession of Agent are not sufficient to pay the charges incident
to this Agreement, Agent shall not be responsible to advance its own funds for
any reason, and the Association agrees, in such cases, that upon notice thereof by
Agent, the Association shall make immediate arrangements to make funds
available to cover the insufficiency.

14.2    One Board Member to Deal with Agent. The Board of Directors will designate
one of its members who will be authorized to deal with Agent on any matter
relating to the Association. Agent will not accept directions or instructions from
anyone else. In the absence of any other designation by the Board of Directors,
the President of the Board of Directors shall be deemed to have this authority. The
Board of Directors appoints _____, as the alternate, should
the President be unavailable. Agent may, but is not required to, submit any matter,
direction, instruction or the like to the Board of Directors and shall then follow
the direction of the Board of Directors.

14.3   Successors and Assigns. This Agency Agreement will be binding upon and inure to the benefit of the successors and assigns of the Agent and the heirs, administrators, executors, successors and assigns of the Association. This Agency Agreement shall be binding on the parties hereto, their heirs, executors, administrators, successors and assignees, and constitutes the full Agreement except that subsequent changes or additional provisions must be in writing and executed by both parties. Notwithstanding the preceding sentence, the Agent shall not assign its interest under this Agreement except in connection with the sale of all or substantially all of its management business. In the event of such a sale, Agent shall be released from all liability by the Association.

14.4   Terms and Conditions. Association and Agent acknowledge that they have carefully read and reviewed this Agreement and each term and provision contained herein and by execution of Agreement show their informed and voluntary consent thereto. The parties hereby agree that, at the time this Agreement is executed, the terms of this Agreement are commercially reasonable and effectuate the intent and purpose of the Association and Agency with respect to the service agreement.

14.5   Severable Provisions. If any provision of this Agreement should be held to be void or unenforceable, in whole or in part, such provision or part thereof shall be treated as severable, leaving valid the remainder of this Agreement.


AGENT:                                          ASSOCIATION:
The Prescott Companies                          Roosevelt Lofts Owners Association
A California Corporation                         A California Mutual Benefit Corporation


BY: _____                     BY: _____


TITLE: _____                  TITLE: _____


DATE: _____                   DATE: _____

# EXHIBIT A

Reimbursable Association Administrative Operating Costs/Expenses

The following charges are reimbursable Administrative Operating Expenses incurred on behalf of the Association and are in addition to the basic monthly compensation agreed to between the parties in the Agency Agreement. An invoice to substantiate each charge at the time of payment will be provided.

ASSOCIATION CHARGES:

- Principals & Officers ................................................................$ 175.00 per hour
- Division Managers.....................................................................$ 125.00 per hour
- Senior Accounting Personnel ....................................................$  95.00 per hour
- Senior Community Managers.....................................................$  95.00 per hour
- Accounting Personnel ...............................................................$  75.00 per hour
- Community Managers ................................................................$  75.00 per hour
- Asst Community Managers ........................................................$  50.00 per hour
- Clerical.......................................................................................$  40.00 per hour
- Filing, and appearing in Small Claims Court & other
  court appearances or as provided herein ...................................$   Hourly
- Preparation of special mailings, such as newsletters,
- notices and mass mailings .........................................................$  50.00 per page
- Recording Secretary...................................................................$  50.00 per hour
  with $50.00 minimum charge
- Minutes .......................................................................................$   NC
- Board packets..............................................................................$   5.00 each
- File folders ..................................................................................$   0.25 each
- Processing returned checks.........................................................$  18.00 plus bank
  charge
- Photocopies.................................................................................$   0.15 each page
- Fax Charges ................................................................................$   1.00 per page
- Postage .......................................................................................$   1st Class
  Postage Rates
- Certified/UPS/Fed Ex Mailing .................................................$   2.00 plus postage
- Homeowners' Lists ....................................................................$   1.00 per page
- Envelopes (Regular) ..................................................................$   0.15 each
- Envelopes (Large).......................................................................$   0.65 each
- Labels (Mailing) .........................................................................$   0.50 each
- Labels (Computer) ......................................................................$   0.05 each
- Telephone ...................................................................................$   Cost
- Out of Town Travel/Board Request ...........................................$   IRS rate per mile
- Mailing .......................................................................................$   NC
- Mailing -Labor............................................................................$   NC
- Statement Enclosures .................................................................$   NC

- Year End Preparation for CPA Examination and Tax Filings.....$   NC
- Year End 1099's Payroll -Tax Returns .......................................$   10.00 each
- Attendance at Additional Night Board Meeting (in excess
  of one two hour meeting per month) ...........................................$   Hourly
- Manager Overtime (meeting- over 2 hours) ...............................$   Hourly
- Special Meetings..........................................................................$   Hourly
- Secretarial Services (not regular correspondence) .....................$   Hourly
- Consulting and Research Projects
  (tasks not included in contract).....................................................$   Hourly
- Courier Service ...........................................................................$   1.50 plus cost
- Document Storage  .....................................................................$   2.00 per
  box/month
- Additional Budget Change in Fiscal Year (Phasing)...................$   5.00 per unit
- Special Assessment
        First Month ...................................................................$ 500.00
        Each Additional month................................................$   2.00 per unit
- Special Emergency Check Request (outside of pay schedule)....$  15.00 per check
- ACH Processing  ........................................................................$   10.00 per unit
- Set-up Fee (one time charge)......................................................$   5.00 per unit
- Payroll Processing Fee.................................................................$  25.00 per employee
- Architectural Processing.............................................................$  50.00 each
- Architectural Review ..................................................................$ 125.00 each
- Website Set-up............................................................................$  50.00 per hour
- Website Maintenance..................................................................$  50.00 per hour
  with $50.00 per month minimum
- Amenity Access System Initial Set-up .......................................$  50.00 per hour
- Gate Entry System Initial Set-up ...............................................$  50.00 per hour
- Gate Entry System Updates .......................................................$  15.00 per up-date

INDIVIDUAL PROPERTY OWNER CHARGES:
(Billed Directly to Individual Property Owners)

1.    Escrow Transactions -Compliance with Civil Code 1368

        1.1    Escrow Demands Regarding Sale................................$  45.00
        1.2    Refinance Fee -Escrow Compliance...........................$  45.00
        1.3    Association Documents
                 CC&Rs.............................................................$  50.00
                 By-Laws...........................................................$  20.00
                 Articles of Incorporation..................................$  10.00
                 Rules and Regulations .......................................$  20.00

|     | Minutes | $ | 50.00 |
|-----|---------|---|-------|
|     | Insurance | $ | 5.00 |
|     | Audited Financials | $ | 15.00 |
|     | Current Financials | $ | 10.00 |
|     | Budget | $ | 10.00 |
|     | Litigation Letter | $ | 10.00 |
|     | Reserve Study | $ | 10.00 |
| 1.4 | Ownership Recordation (new construction) | $ | 50.00 |
| 1.5 | Change of Ownership Recordation (resale) | $ | 200.00 |

2.   <u>Collection Charges</u> (Billed to Property Owner for Association Reimbursement)

| 2.1 | Late Letter | $ | 25.00 |
|-----|-------------|---|-------|
| 2.2 | Preparation of "Intent to Lien" | $ | 75.00 |
| 2.3 | Recording of Lien/Delinquent Assessment Lien Letter, Final Demand for Payment | $ | 200.00 |
| 2.4 | Notice of Intent to Commence Foreclosure (Letter) | $ | 75.00 |
| 2.5 | Preparation of documents/transfer of delinquent file to attorney or trustee service (after lien recordation) for processing and coordination of collection and/or foreclosure. | $ | 50.00 |

NOTE:       Exhibit A is intended to identify the major areas of service which are
extraordinary expenses. There may be additional charges for which the
Association will be charged, in such cases the Agent will provide cost
estimates prior to assigning any additional service. Agent reserves the
right to modify at its sole discretion, the rates identified in Exhibit A.

# EXHIBIT B

### DIRECTORS ACTION BY
### WRITTEN CONSENT

Pursuant to California Corporations Code § 307(b), the Directors of Roosevelt Lofts Owners Association, acting by written consent, pursuant to the adopted Association legal documents, hereby adopts, approves and consents to the following action without a meeting:

WHEREAS, the Board of Directors has the authority and responsibility to collect and disburse funds on behalf of the Association, and see to the orderly management of its business affairs; and

WHEREAS, the Board of Directors has the authority to appoint a Manager/Agent to act on its behalf;

NOW, THEREFORE, be it resolved that the Board of Directors retains The Prescott Companies as its Management Agent to prepare and disburse payments on behalf of the Association for charges incurred as follows:

      1.  Compensation due and payable to employees or to independent contractors as stated in established contracts;
      2.  Taxes payable;
      3.  Insurance premiums ;
      4.  The amounts specified for allocation to any reserve fund for replacement or any other reserve accounts;
      5.  Common area utilities;
      6.  Sums otherwise due and payable as operating expenses authorized to be incurred under the terms of this Agency Agreement.

RESOLVED, FURTHER, that the Agency Agreement dated, _____, 20
is approved and the President of the Association is authorized to execute it on behalf of the Association.

DIRECTORS:

_____

_____

_____

_____

_____

# EXHIBIT C

CERTIFICATE OF SECRETARY
OF

## Roosevelt Lofts Owners Association

A California Non-Profit Mutual Benefit Corporation

I certify that:

I am the duly qualified and acting Secretary for Roosevelt Lofts Owners Association, a California Non-Profit Mutual Benefit Corporation.

The attached written consent of the Board of Directors consisting of one (1) page is a true copy of the original written consent of the Board of Directors of the corporation executed on _____ _____, 20___.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the corporation this _____ day of _____, 20___.

SECRETARY:

_____

# EXHIBIT G

========================
From: Christine Gibbs
Sent: Tuesday, May 19, 2009 1:14 PM
To: 'M. Aaron Yashouafar'
Subject: The Roosevelt

Hi.  The amount for me at The Roosevelt is $15,900 and that's all Prescott billed you for.  That's about $2,271.43 per month from May and December I think.  cg

Christine A. Gibbs, CM, CMCA, AMS
Community Association and General Manager
Sky Las Vegas Condominium Unit Owners' Association
Sky Las Vegas Master Association
2700 Las Vegas Boulevard South
Las Vegas, NV  89109
professionally managed by The Prescott Companies
Management Office (702) 669-3160; fax (702) 669-3165
OWNERS!  DON'T FORGET TO USE THE ASSOCIATION'S WEBSITE @ www.skylasvegashoa.com

# EXHIBIT H

B6F (Official Form 6F) (12/07) - Cont.

In re    **Roosevelt Lofts, LLC**                                        Case No.  **1:09-bk-14214-GM**
                              Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| **ACCO Engineering Systems** 6265 San Fernando Road Glendale, CA 91201 | | - | | | | X | 82,300.00 |
| Account No. | | | | | | | |
| **Accoustical Construction, Inc.** 10121 Stonehurst Avenue Sun Valley, CA 91352 | | - | | | | X | 8,629.00 |
| Account No. | | | | | | | |
| **Ace Concrete Cutting, Inc.** 8965 Herrick Avenue Sun Valley, CA 91352 | | - | | | | X | 5,191.00 |
| Account No. | | | | | | | |
| **Ace Parking Services** 645 Ash Street San Diego, CA 92101 | | - | | | | | 20,140.18 |
| Account No. | | | | | | | |
| **B&N Industries, Inc.** 1409 Chapin Avenue, 2nd Floor Burlingame, CA 94010 | | - | | | | X | 11,916.35 |

Sheet no. __1__ of __14__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                    128,176.53

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

# EXHIBIT I

## Lindsey L. Smith

**From:** Paul_Gnasso@aceparking.com

**Sent:** Wednesday, April 28, 2010 2:25 PM

**To:** Raymond Yashouafar

**Subject:** Re: Roosevelt Lofts Account

Raymond,

You are correct. We do not have any outstanding payments due Ace Parking for the Roosevelt Lofts
(Location 2069) at this time.



**Paul T. Gnasso**
Regional Director – Los Angeles, Orange County

**ace parking management, inc.**
6151 W. Century Blvd., Ste. 302  Los Angeles, CA 90045
tel 310.693.0362  fax 310.693.0367

Please consider the environment before printing this email

| | |
|---|---|
| "Raymond Yashouafar"<br><ryashoua@milbankre.com> | To  <Paul_Gnasso@aceparking.com><br>cc<br>Subject  Roosevelt Lofts Account |
| 04/28/2010 12:14 PM | |

Paul,

It was nice seeing you yesterday.

Can you please confirm that there is no outstanding amounts due Ace Parking for the Roosevelt Lofts at 727 W.
Seventh Street, 90017. I believe it is your account 2069.

Thank you,

Raymond Yashouafar
Vice President-Operations
Milbank Real Estate Services, Inc.
660 S. Figueroa Street, 24th Floor
Los Angeles, CA  90017

Tel:  213-403-1400 ext. 1415
Fax: 213-403-1440
www.milbankre.com

This e-mail message and any attachments are intended solely for the individual or entity to which it is addressed,
and is confidential. If the reader of this message and any attachments is not the intended recipient, you are hereby
notified that any examination, distribution, or copying of the material is strictly prohibited. If you received this
message in error, please notify the sender promptly and delete this message and any attachments.

 PLEASE CONSIDER THE ENVIRONMENT BEFORE PRINTING THIS EMAIL

*123*

4/28/2010

# EXHIBIT J

B6F (Official Form 6F) (12/07) - Cont.

In re    **Roosevelt Lofts, LLC**
_____
Debtor

Case No. __1:09-bk-14214-GM__

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | | | | | |
| City of Los Angeles Public Works 200 N. Spring Street, Room 967 Los Angeles, CA 90012 | - | | | | | | | 91.08 |
| Account No. | | | | | | | | |
| Commercial Scaffolding of CA, Inc. 14732 S. Maple Avenue Gardena, CA 90248 | - | | | | | | X | 38,111.00 |
| Account No. | | | | | | | | |
| Crenshaw Lumber 424 Pico Boulevard Santa Monica, CA 90405 | - | | | | | | X | 17,779.53 |
| Account No. | | | | | | | | |
| Davis Langdon 301 Arizona Avenue Santa Monica, CA 90401 | - | | | | | | X | 7,500.00 |
| Account No. | | | | | | | | |
| Dewey Pest Control 3711 Beverly Blvd. Los Angeles, CA 90004 | - | | | | | | | 6,310.00 |

Sheet no. __3__ of __14__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

69,791.61

# EXHIBIT K



April 16, 2009

The Roosevelt Bldg c/o Milbank
660 S. Figueroa 24th Floor
Los Angeles CA. 90017

RE: Account # 942544-01
Service Address: 727 West 7th Street Los Angeles CA. 90017

Please be advised that your account with Dewey Pest Control has been suspended due to
lack of payment.

We must have a response regarding the balance due or payment in full in the amount of
$2,275.00 must be forwarded. We will expect your payment within five (5) days of
receiving this letter. If payment has already been mailed, please disregard this notice.

If there is a problem please contact us at (323) 666-1361 between the hours of 8 A.M
and 5 P.M., Monday through Friday.

Sincerely,
DEWEY PEST CONTROL COMPANY
Office Phone No. (323) 666-1361

DEWEY PEST CONTROL, 3711 BEVERLY BOULEVARD, LOS ANGELES, CALIFORNIA 90004-3516 ♦ (323) 665-1361 ♦ FAX: (323) 660-8459
ENVIRONMENTAL SECURITY SINCE 1929

/25



**PLEASE DIRECT ALL INQUIRIES TO**

LOS ANGELES
3711 Beverly Blvd.
Los Angeles CA 90004–3516
(323) 666–1361
**WWW.DEWEYPEST.COM**

# INVOICE/ACCOUNT SUMMARY

| CLOSING DATE | 24–APR–09 |
|---|---|
| ACCOUNT TYPE | RES |
| ACCOUNT NUMBER | 942544 |
| BALANCE DUE | 2,275.00 |

**BILL TO:**

THE ROOSEVELT BLDG
660 SOUTH FIGUEROA 24TH FLOOR
c/l:MILBANK
LOS ANGELES, CA 90017

## Past Due Transactions

| DATE | SITE | INVOICE | SERVICE LOCATION | DESCRIPTION | TYPE | AMOUNT |
|---|---|---|---|---|---|---|
| 24–DEC–08 | | 4928069 | THE ROOSEVELT BLDG 727 WEST 7TH STREET LOS ANGELES, CA 90017 | | INV | 350 00 |
| 26–SEP–08 | | 4766622 | THE ROOSEVELT BLDG 727 WEST 7TH STREET LOS ANGELES, CA 90017 | | INV | 350 00 |
| 12–FEB–09 | | 269349 | THE ROOSEVELT BLDG 727 WEST 7TH STREET LOS ANGELES, CA 90017 | | INV | 1,400.00 |
| 24–OCT–08 | | 4821878 | THE ROOSEVELT BLDG 727 WEST 7TH STREET LOS ANGELES, CA 90017 | | INV | 350 00 |
| 24–NOV–08 | | 4875736 | THE ROOSEVELT BLDG 727 WEST 7TH STREET LOS ANGELES, CA 90017 | | INV | 350 00 |

RECEIVE A FREE MONTH'S RESIDENTIAL SERVICE!
RECOMMEND OUR SERVICE TO A FRIEND, RELATIVE OR NEIGHBOR.
IF YOUR REFERRAL ACCEPTS OUR MAINTENANCE PROGRAM,
YOUR NEXT MONTHLY SERVICE WILL BE FREE OF CHARGE.

| PREVIOUS BALANCE | CURRENT CHARGES | PAYMENTS | ADJUSTMENTS | NEW BALANCE |
|---|---|---|---|---|
| | | .00 | | 2,275.00 |

**PAYMENT IS DUE AFTER SERVICE IS RENDERED.** PAYMENTS OR CHARGES NOT SHOWN WILL APPEAR ON NEXT MONTH'S STATEMENT
1 1/2% INTEREST PER MONTH (18% PER ANNUM) WILL BE CHARGED ON PAST DUE ACCOUNTS

TO ENSURE PROPER CREDIT PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT



**PLEASE DIRECT ALL INQUIRIES TO**

LOS ANGELES
3711 Beverly Blvd.
Los Angeles CA 90004–3516
(323) 666–1361
**WWW.DEWEYPEST.COM**

# INVOICE/ACCOUNT SUMMARY

\* PLEASE WRITE AMOUNT REMITTED

| CLOSING DATE | 24–APR–09 |
|---|---|
| ACCOUNT TYPE | RES |
| ACCOUNT NUMBER | 942544 |
| BALANCE DUE | 2,275.00 |
| AMOUNT REMITTED | |

**BILL TO:**

THE ROOSEVELT BLDG
660 SOUTH FIGUEROA 24TH FLOOR
c/l:MILBANK
LOS ANGELES, CA 90017

**REMIT TO:**

DEWEY PEST CONTROL
P O BOX 7114
PASADENA CA    91109–7214

00942544002275002009042400102B

| In re:  ROOSEVELT LOFTS, LLC, a Delaware limited liability company, | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER  1:09-bk-14214-Gm |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing document **NOTICE OF MOTION AND OMNIBUS MOTION FOR ORDER DISALLOWING CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONOF M. AARON YASHOUAFAR** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 29, 2010,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- John B Acierno    ecfcacb@piteduncan.com
- Carleton R Burch    crb@amclaw.com,
  amc@amclaw.com;jsh@amclaw.com;awh@amclaw.com;mav@amclaw.com;esf@amclaw.com;slc@amclaw.com;csh@amclaw.com
- Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
- L Dominic Chacon    chacondominic@yahoo.com
- Cynthia M Cohen    cynthiacohen@paulhastings.com
- Steven R Fox    emails@foxlaw.com
- Helen R Frazer    hfrazer@aalrr.com
- Varand Gourjian    vg@gourjianlaw.com, lala@gourjianlaw.com;naz@gourjianlaw.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Herbert Hayden    herbert@ntlg.us
- Mark J Krone    crb@amclaw.com, crs@amclaw.com;amc@amclaw.com
- Ian Landsberg    ilandsberg@lm-lawyers.com, bgomelsky@landsberg-law.com;rbenitez@landsberg-law.com
- David L. Neale    dln@lnbrb.com
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- Russell H Rapoport    rrapoport@prllplaw.com, lgillis@prllplaw.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Bruce D Rudman    bdr@agrlaw.net
- William D Schuster    bills@allieschuster.org
- Daniel H Slate    dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;marcycarman@tilemlaw.com;ldiaz@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Marc Weinberg    marcweinberg@att.net
- Brandon J Witkow    bwitkow@lockelord.com
- Aimee Y Wong    aywong@mckennalong.com

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

127

| In re:  ROOSEVELT LOFTS, LLC, a Delaware limited liability company, | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER  1:09-bk-14214-Gm |

## II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):

On **April 29, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

> Honorable Geraldine Mund
> United States Bankruptcy Judge
> 21041 Burbank Blvd., Cham. 342
> Woodland Hills, CA 91367  (by overnight delivery)

☑ Service information continued on attached page

## III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 29, 2010 | Carla Sharpe | /s/ Carla Sharpe |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                F 9013-3.1

128

**Roosevelt Lofts, LLC**
**Case No. 1:09-bk-14214**
**Omnibus Objection List 1**

United States Trustee
Office of the U.S. Trustee
21051 Warner Center Lane, #115
Woodland Hills, CA 91367

Century Shower Doors
20100 S. Normandie Avenue
Torrance, CA 90502

Robert Woodcock Plumbing
18968 Hatteras St.
Tarzana, CA 93156

Bontempi USA
8919 Beverly Blvd
West Hollywood, CA 90048

QualityBuilt.com
15330 Avenue of Science
San Diego, CA 92128

William Beasley, CFO
The Prescott Companies, Inc
5966 La Place Ct., Ste 170
Carlsbad, CA 92008

Ace Parking Services
645 Ash Street
San Diego, CA 92101

Dewey Pest Control
3711 Beverly Blvd
Los Angeles, CA 90004

129