1  DAVID L. NEALE (SBN 141225)
   JULIET Y. OH (SBN 211414)
2  LEVENE, NEALE, BENDER, YOO & BRILL
   L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone:  (310) 229-1234
   Facsimile:  (310) 229-1244
5  Email:  dln@lnbyb.com, jyo@lnbyb.com
6  Attorneys for Chapter 11 Debtor and
   Debtor in Possession

   LATHAM & WATKINS LLP
   Robert A. Klyman (SBN 142723)
   355 South Grand Avenue
   Los Angeles, California 90071-1560
   Telephone:  (213) 485-1234
   Facsimile:  (213) 891-8763
   Email:      robert.klyman@lw.com

   Attorneys for GS Roosevelt, LLC

7

8

**UNITED STATES BANKRUPTCY COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**SAN FERNANDO VALLEY DIVISION**

11

| | |
|---|---|
| 12  In re | ) Case No. 1:09-bk-14214-GM |
| 13  ROOSEVELT LOFTS, LLC, a Delaware limited liability company, | ) Chapter 11 |
| 14 | ) |
| 15          Debtor. | ) **SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION (DATED JUNE 20, 2011), AS MODIFIED [AS SERVED]** |
| 16 | ) |
| 17 | ) Disclosure Statement Hearing: |
| 18 | ) Date:    July 6, 2011 |
| 19 | ) Time:    10:00 a.m. |
| 20 | ) Place:   Courtroom "303" |
| 21 | )          21041 Burbank Boulevard |
|    |            Woodland Hills, California |

22

23

24

25

26

27

28

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 2

ARTICLE I: TERMINOLOGY AND DEFINITIONS ............................................ 3

ARTICLE II: CLASSIFICATION OF CLAIMS AND INTERESTS ................... 14

   2.1    Introduction ............................................................................... 14

   2.2    Classes of Claims and Interests ............................................... 15

ARTICLE III: TREATMENT OF CLAIMS AND INTERESTS ......................... 15

   3.1    Unclassified Claims .................................................................. 15

   3.2    Classes of Claims Against and Interests in the Debtor ............ 17

         A.    Class 1, Allowed Claim of Bank of America ......................... 17

         B.    Class 2, Allowed Mechanics' Lien Claims ............................ 17

         C.    Class 3 et seq.; Allowed Other Secured Claims. ................... 19

         D.    Class 4, Allowed Priority Non-Tax Claims............................ 19

         E.    Class 5, Allowed General Unsecured Claims ........................ 19

         F.    Class 6, Old Debtor LLC Interests. ........................................ 20

ARTICLE IV: ACCEPTANCE OR REJECTION OF THE PLAN ..................... 20

   4.1    Impaired Classes of Claims Entitled to Vote ........................... 20

   4.2    Acceptance by an Impaired Class Entitled to Vote .................. 20

   4.3    Presumed Acceptances by Unimpaired Classes ....................... 21

   4.4    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ............ 21

ARTICLE V: MEANS FOR IMPLEMENTATION OF THE PLAN .................... 21

   5.1    Corporate Existence .................................................................. 21

   5.2    New Governing Documents ....................................................... 21

   5.3    Vesting of Assets; Releases of Liens......................................... 21

   5.4    Cancellation of Pre-Effective Date Claims and Interests ........ 22

   5.5    The Greystar Contribution ........................................................ 22

   5.6    Claim Reserves ......................................................................... 22

   5.7    Authorization and Issuance of New Securities ........................ 23

5.8    Member of Reorganized Debtor ..................................................................23

5.9    Officers of Reorganized Debtor  ...............................................................23

5.10   Indemnification of Reorganized Debtor's Directors, Officers, an
       Employees ...............................................................................................24

5.11   Retained Litigation Rights........................................................................24

5.12   Effectuating Documents; Further Transactions..........................................24

5.13   Exemption From Certain Transfer Taxes ...................................................24

5.14   Corporate Action ....................................................................................25

5.15   Approval of Compromises and Settlements Embodied in Plan ...................25

5.16   No Effect On Bank Of America's Rights Under BofA/Debtor Settlement ...25

ARTICLE VI: TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ......................................................................................26

6.1    Assumption of Contracts and Leases; Continuing Obligations....................26

6.2    Cure Rights for Executory Contracts or Unexpired Leases Assumed
       under Plan  ..............................................................................................27

6.3    Rejection of Contracts and Leases............................................................28

6.4    Rejection Damage Claim Bar Date for Rejections Pursuant to Plan ...........28

6.5    Employee Compensation and Benefit Programs .........................................29

6.6    Indemnification Obligations .....................................................................29

6.7    Insurance Rights......................................................................................30

6.8    Limited Extension of Time to Assume or Reject ........................................30

6.9    Postpetition Contracts and Leases ...........................................................31

6.10   Claims Arising from Assumption or Rejection ...........................................31

ARTICLE VII: PROVISIONS GOVERNING DISTRIBUTIONS ...............................31

7.1    Distributions for Claims and Interests Allowed as of Effective Date............31

7.2    Interest on Claims  ..................................................................................31

7.3    Designation of and Distributions by Disbursing Agent ...............................32

7.4    Means of Cash Payment ..........................................................................32

7.5    Delivery of Distributions...........................................................................32

7.6     Application of Distribution Record Date ...................................................34

7.7     Withholding and Reporting Requirements..................................................34

7.8     Prepayment ...................................................................................................35

7.9     De Minimis Distributions.............................................................................35

7.10    No Distribution in Excess of Allowed Amount of Claim ...........................35

7.11    Allocation of Distributions...........................................................................35

ARTICLE VIII: PROCEDURES FOR RESOLVING DISPUTED,
CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS
WITH RESPECT THERETO ....................................................................................... 36

8.1     Prosecution of Objections to Claims........................................................... 36

8.2     Deemed Allowance of the Bank of America Claim ..................................... 37

8.3     Treatment of Disputed Claims Pending Allowance  ................................... 37

8.4     Distributions on Account of Disputed Claims Once Allowed ..................... 37

ARTICLE IX: CONDITIONS TO CONFIRMATION AND CONSUMMATION
OF THE PLAN........................................................................................................... 38

9.1     Conditions to Confirmation......................................................................... 38

9.2     Conditions to Effective Date........................................................................ 39

9.3     Waiver of Conditions ....................................................................................41

ARTICLE X: RETENTION OF JURISDICTION ........................................................42

10.1    Scope of Retention of Jurisdiction ..............................................................42

10.2    Failure of the Bankruptcy Court to Exercise Jurisdiction..........................44

ARTICLE XI: MISCELLANEOUS PROVISIONS .......................................................44

11.1    Professional Fee Claims; Expense Reimbursements....................................44

11.2    Administrative Claims Bar Date .................................................................44

11.3    Payment of Statutory Fees............................................................................ 45

11.4    Modifications and Amendments ................................................................... 45

11.5    Severability of Plan Provisions....................................................................46

11.6    Successors and Assigns and Binding Effect ................................................46

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2268533.5  Roosevelt - Plan of Reorganization

| | | |
|---|---|---|
| **11.7** | **Compromises and Settlements** | **46** |
| **11.8** | **Releases and Satisfaction of Subordination Rights** | **47** |
| **11.9** | **Releases and Related Matters** | **47** |
| **11.10** | **Discharge of the Debtor** | **48** |
| **11.11** | **Injunction** | **49** |
| **11.12** | **Exculpation and Limitation of Liability** | **50** |
| **11.13** | **Term of Injunctions or Stays** | **51** |
| **11.14** | **Revocation, Withdrawal, or Non-Consummation** | **51** |
| **11.15** | **Plan Supplement** | **52** |
| **11.16** | **Notices** | **52** |
| **11.17** | **Dissolution of Creditors' Committee** | **54** |
| **11.18** | **Computation of Time** | **54** |
| **11.19** | **Governing Law** | **54** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2268533.5  Roosevelt - Plan of Reorganization

1

2

# TABLE OF AUTHORITIES

3

**Page(s)**

4

**FEDERAL STATUTES**

5    11 U.S.C. § 101 ...................................................................................................................5

6    11 U.S.C. § 102 ...................................................................................................................3

7    11 U.S.C. § 105 .................................................................................................................51

8    11 U.S.C. § 327 ...........................................................................................................42, 44

9    11 U.S.C. § 328 ...........................................................................................................42, 44

10

11 U.S.C. § 330 ...........................................................................................................42, 44

11

11 U.S.C. § 331 ...........................................................................................................42, 44

12

11 U.S.C. § 346 .................................................................................................................43

13

11 U.S.C. § 362 .................................................................................................................51

14

15   11 U.S.C. § 365 ...........................................................................................9, 26, 27, 29, 30

16   11 U.S.C. § 365(a) ............................................................................................................28

17   11 U.S.C. § 365(b) ..............................................................................................................7

18   11 U.S.C. § 365(b)(1) .........................................................................................................8

19   11 U.S.C. § 365(d)(4) .......................................................................................................30

20   11 U.S.C. § 501 .................................................................................................................48

21   11 U.S.C. § 502 .............................................................................................................7, 48

22   11 U.S.C. § 502(c) ............................................................................................................36

23   11 U.S.C. § 503(b) ........................................................................................3, 12, 42, 44

24   11 U.S.C. § 503(b)(3) .......................................................................................................44

25   11 U.S.C. § 503(b)(4) .......................................................................................................44

26   11 U.S.C. § 503(b)(5) .......................................................................................................44

27   11 U.S.C. § 503(b)(9) .........................................................................................................3

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

11 U.S.C. § 505 ...................................................................................................................43

11 U.S.C. § 507(a) ..............................................................................................................11

11 U.S.C. § 507(a)(1) ...........................................................................................................3

11 U.S.C. § 507(a)(8) .........................................................................................................12

11 U.S.C. § 507(b) ................................................................................................................3

11 U.S.C. § 524 ..................................................................................................................49

11 U.S.C. § 541 ....................................................................................................................9

11 U.S.C. § 546(c)(2)(A) ......................................................................................................3

11 U.S.C. § 553 ..................................................................................................................13

11 U.S.C. § 1101(2) ..............................................................................................................6

11 U.S.C. § 1102(a) ..............................................................................................................7

11 U.S.C. § 1103 ..........................................................................................................42, 44

11 U.S.C. § 1107 ..................................................................................................................8

11 U.S.C. § 1108 ..................................................................................................................8

11 U.S.C. § 1114 ................................................................................................................29

11 U.S.C. § 1114(e)(2) .........................................................................................................3

11 U.S.C. § 1123 ................................................................................................................26

11 U.S.C. § 1123(a)(1) .......................................................................................................14

11 U.S.C. § 1123(b) ...........................................................................................................24

11 U.S.C. § 1124 ........................................................................................................10, 14

11 U.S.C. § 1125 ..........................................................................................................8, 38

11 U.S.C. § 1126 ................................................................................................................20

11 U.S.C. § 1126(e) ...........................................................................................................20

11 U.S.C. § 1126(f) ............................................................................................................21

11 U.S.C. § 1127 ..................................................................................................................2

11 U.S.C. § 1127(a) ...........................................................................................................45

11 U.S.C. § 1128 ................................................................................................................7

11 U.S.C. § 1129 ................................................................................................................7

11 U.S.C. § 1129(a)(4) .......................................................................................................2

11 U.S.C. § 1129(a)(13) ...................................................................................................29

11 U.S.C. § 1129(b) .........................................................................................................21

11 U.S.C. § 1141 ................................................................................................................9

11 U.S.C. § 1141(d)(1)(A) ...............................................................................................48

11 U.S.C. § 1146 ..............................................................................................................43

11 U.S.C. § 1146(c) ..........................................................................................................24

28 U.S.C. § 1930 ................................................................................................3, 16, 45

Fed. R. Bankr. Proc. 1009 ...............................................................................................13

Fed. R. Bankr. Proc. 3018 .................................................................................................8

Fed. R. Bankr. Proc. 3019 .................................................................................................2

Fed. R. Bankr. Proc. 7023 .........................................................................................13, 42

Fed. R. Bankr. Proc. 9006(a) .....................................................................................6, 54

Fed. R. Civ. Proc. 23 .................................................................................................13, 42


CALIFORNIA STATUTES

California Civil Code § 1542 .............................................................................................8


OTHER STATE STATUTES

Hart-Scott-Rodino Antitrust Improvements Act of 1976 ...............................................40

Title IV of the Employee Retirement Income Security Act of 1974 ..............................29

**PLAN OF REORGANIZATION**

**UNDER CHAPTER 11, TITLE 11, UNITED STATES CODE**

**OF ROOSEVELT LOFTS, LLC**

**INTRODUCTION**

Roosevelt Lofts, LLC (the "<u>Debtor</u>") and GS Roosevelt, LLC (with its designee, "<u>Greystar</u>," and collectively with the Debtor, the "<u>Plan Proponents</u>") hereby propose this plan of reorganization for the resolution of outstanding Claims (as defined herein) against and Interests (as defined herein) in the Debtor.

Reference is made to the Disclosure Statement (as defined herein) distributed contemporaneously herewith for a discussion of the history, businesses, properties, results of operations, projections for future operations, and risk factors of the Debtor, a summary and analysis of the Plan (as defined herein), and certain related matters. <u>To the extent any conflict exists between the terms of the Plan and the Disclosure Statement, the terms of the Plan shall govern.</u>

All holders of Claims and Interests who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. **<u>The Plan contemplates payment in full or consensual satisfaction of all Allowed Claims and Interests</u>**. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code, Rule 3019 of the Bankruptcy Rules (as defined herein), and Article XI of the Plan, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined in the Plan shall have the meanings ascribed to them in Article I of the Plan. Any capitalized term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

All documents within the Plan Supplement (as defined herein) and all Exhibits to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein.

## ARTICLE I

## TERMINOLOGY AND DEFINITIONS

For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (c) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan, (d) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.1**    **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in Section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor, including wages, salaries, bonuses, or commissions for services rendered after the commencement of the Chapter 11 Case, (b) Professional Fee Claims, (c) Substantial Contribution Claims, (d) all fees and charges assessed against the Estate under Section 1930 of Title 28 of the United States Code, (e) all Allowed Claims for the value of goods received under Section 503(b)(9) of the Bankruptcy Code, (f) all Allowed Claims for reclamation under Section 546(c)(2)(A) of the Bankruptcy Code, (g) Cure payments, and (h) to the extent applicable, the portion of the Adequate Protection Obligations that constitute Claims under Section 507(b) of the Bankruptcy Code.

1.2    **"Allowed"** means, (a) when used with respect to an Administrative Claim, all or any portion of an Administrative Claim that has been allowed, or adjudicated in favor of the holder by estimation or liquidation, by a Final Order, that was incurred by the Debtor in the ordinary course of business during the Chapter 11 Case and as to which there is no dispute as to the Debtor's liability, or that has become allowed by failure to object pursuant to Section 8.1 of the Plan; (b) when used with respect to a Claim other than an Administrative Claim, such Claim or any portion thereof (i) that has been allowed, or adjudicated in favor of the holder by estimation or liquidation, by a Final Order, or (ii) as to which (x) no Proof of Claim has been filed with the Bankruptcy Court and (y) the liquidated and noncontingent amount of which is included in the Schedules, other than a Claim that is included in the Schedules at zero, in an unknown amount, or as Disputed, or (iii) for which a Proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order, or other applicable bankruptcy law, and as to which either (x) at the time of the applicable initial Distribution Date, the Debtor has not identified such Claim as being objectionable in whole or part and no objection to the allowance thereof has been filed by the applicable Claims Objection Deadline, or (y) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (iv) that is expressly allowed in a liquidated amount in the Plan; or (c) when used with respect to an Interest, an Interest held in the name, kind, and amount set forth on the records retained by the Debtor.

1.3    **"Ballot"** means the form of ballot approved by the Bankruptcy Court for use by holders of Claims and Interests for purposes of voting to accept or reject the Plan.

1.4    **"Bank of America"** means Bank of America, N.A., individually and as agent for a group of lenders under the BofA Loan Agreement.

1.5    **"Bank of America Claim"** means all claims held by Bank of America against the Debtor including, without limitation, claims arising out of or related to the BofA Loan Agreement.

1.6    **"Bank of America Payment"** means a Cash payment of $ ▮▮▮▮▮ to the holder of the Bank of America Claim on the Effective Date.

1.7    **"BofA Loan Agreement"** means, collectively, (a) that certain amended and restated

1  Construction Loan Agreement (the "Loan Agreement") with Bank of America as administrative

2  agent for the Bank Group in the original principal amount of $78,840,375, (b) that certain Deed

3  of Trust Note dated as of on or about March 9, 2006 in the original principal amount of

4  $78,840,375 (the "Note"), (c) those certain (i)  Construction Deed of Trust, Assignment of Rents

5  and Leases, Security Agreement and Fixture Filing recorded on March 22, 2006 and re-recorded

6  on November 17, 2006 to correct certain typographical errors (the "Fee Deed of Trust"), and (ii)

7  Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture

8  Filing (California Leasehold Interest) recorded on March 22, 2006 (the "Leasehold Deed of

9  Trust," and collectively, with the Fee Deed of Trust, the "Deeds of Trust"), each of which (x)

10 secure the Loan Agreement and Note and (y) encumber the Property (defined below), including

11 an absolute assignment of all rents, issues and profits generated from operation of the Property

12 and (d) all documents, agreements, instruments and amendments relating to any of the foregoing.

13 **1.8      "BofA/Debtor Settlement"** means that certain settlement agreement between the Debtor

14 and Bank of America dated as of June 3, 2011.

15 **1.9      "BofA/Debtor Settlement Order"** means that certain order entered by the Bankruptcy

16 Court on June 10, 2011 approving the BofA/Debtor Settlement.

17 **1.10     "BofA/Mechanics' Lien Settlement Order"** means that certain order entered by the

18 Bankruptcy Court (1) Granting Motion by Class Representatives for Approval of Settlement; (2)

19 Approving Settlement; (3) Setting Continued Status Conference; and (4) Other Ancillary Relief,

20 entered by the Bankruptcy Court on May 20, 2011 in Adv. Action No. 10-01031 [docket no. 83].

21 **1.11     "Bankruptcy Code"** means Section 101 *et seq.*, of Title 11 of the United States Code, as

22 now in effect or hereafter amended and applicable to the Chapter 11 Case.

23 **1.12     "Bankruptcy Court"** means the United States Bankruptcy Court for the Central District

24 of California or such other court as may have jurisdiction over the Chapter 11 Case or any aspect

25 thereof.

26 **1.13     "Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

27 **1.14     "Bar Date(s)"** means the date(s) designated by the Bankruptcy Court as the last date(s)

28 for filing Proofs of Claim against the Debtor.

1.15    **"Business Day"** means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Rule 9006(a) of the Bankruptcy Rules), on which commercial banks are open for business in New York, New York.

1.16    **"Cash"** means legal tender of the United States or equivalents thereof.

1.17    **"Chapter 11 Case"** means the Chapter 11 case of the Debtor.

1.18    **"Claim"** means (a) the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.19    **"Claims Objection Deadline"** means as follows: (1) for any Claim filed through and including the Bar Date of September 15, 2009, the last day for filing objections to such Claim shall be April 30, 2010, pursuant to an Order of the Court entered January 8, 2010 [Docket No. 286]; (2) for any non-Administrative Claim filed after the Bar Date of September 15, 2009, the last day for filing objections to such Claim shall be the later of (a) one hundred and twenty (120) days after the Effective Date, or (b) sixty (60) days after the applicable Proof of Claim is filed; and (3) for any Administrative Claim, the last day for filing objections to such Administrative Claim shall be sixty (60) days after the applicable Request for Payment of an Administrative Claim is filed.

1.20    **"Class"** means a category of holders of Claims or Interests, as described in Article II of the Plan.

1.21    **"Class Action"** means that certain adversary proceeding styled <u>Muir Chase Plumbing Co., Inc., et al. v. Bank of America, N.A., et al.</u>, bearing Adversary Proceeding No. 1:10-ap-01301-GM.

1.22    **"Class Action Counsel"** means, collectively, Law Offices of David A. Tilem, The Law Offices of Abdulaziz, Grossbart & Rudman, and The Mouzis Law Firm, counsel to the plaintiffs in the Class Action.

1.23    **"Class Action Reserve"** means the sum of $16,000,000, or such other sum as the Court may authorize, which is funded from the Greystar Contribution and which is established and held in segregated interest-bearing account(s) to ensure the satisfaction of Allowed Mechanics' Lien Claims.

1.24    **"Confirmation"** means approval of the Plan by the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code.

1.25    **"Confirmation Date"** means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

1.26    **"Confirmation Hearing"** means the hearing to consider Confirmation of the Plan under Section 1128 of the Bankruptcy Code.

1.27    **"Confirmation Order"** means the order entered by the Bankruptcy Court confirming the Plan and approving associated findings of fact and conclusions of law.

1.28    **"Contract/Lease Schedules"** means the schedules, in form and substance satisfactory to Greystar in Greystar's sole discretion, which identify the executory contracts and unexpired leases to be assumed under the Plan and set forth any Cure obligation associated with the assumption of such contracts and leases.

1.29    **"Creditor"** means any Person who holds a Claim against the Debtor.

1.30    **"Creditor Payments"** means payments from the Greystar Contribution necessary to pay (or create a reserve for payment of) all claims (other than the Bank of America Claim) in full and render such claims Unimpaired.

1.31    **"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed pursuant to Section 1102(a) of the Bankruptcy Code in the Chapter 11 Case, as reconstituted from time to time.

1.32    **"Cure"** means (a) with respect to the assumption of an executory contract or unexpired lease pursuant to Section 365(b) of the Bankruptcy Code, (i) the distribution of Cash, or the distribution of such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties under an executory contract or

1    unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and

2    applicable bankruptcy law, or (ii) the taking of such other actions as may be agreed upon by the

3    parties or ordered by the Bankruptcy Court.

4    **1.33    "Cure Reserve"** means the reserve established to make payments of Cure amounts

5    described in Section 6.2 of the Plan.

6    **1.34    "Debtor"** means Roosevelt Lofts, LLC in its capacity as a debtor and debtor in

7    possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

8    **1.35    "Disbursing Agent"** means the Debtor or any Person designated by the Debtor, in its

9    sole discretion, to serve as disbursing agent under the Plan.

10    **1.36    "Disclosure Statement"** means the written disclosure statement that relates to the Plan,

11    as amended, supplemented, or modified from time to time, and that is prepared and approved in

12    form and substance satisfactory to the Debtor and Greystar, and distributed, in accordance with

13    Section 1125 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules or any summary

14    thereof approved by the Bankruptcy Court for distribution to certain Classes or categories of

15    Claims and Interests.

16    **1.37    "Disputed"** means (a) with respect to any Claim, other than a Claim that has been

17    Allowed pursuant to the Plan or a Final Order, a Claim (i) as to which no Request for Payment or

18    Proof of Claim has been filed or deemed to have been filed by the applicable Bar Date, that has

19    been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed; (ii) as to

20    which a Request for Payment or Proof of Claim has been filed or deemed to have been filed by

21    the applicable Bar Date, but as to which an objection or request for estimation in accordance

22    with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy

23    Court has been filed by the applicable Claims Objection Deadline, or which is otherwise

24    disputed in accordance with applicable law, which objection, request for estimation, or dispute

25    has not been withdrawn or determined by a Final Order; (iii) as to which a Request for Payment

26    or Proof of Claim was required to be filed by the Bankruptcy Code, the Bankruptcy Rules, or an

27    order of the Bankruptcy Court, but as to which a Request for Payment or Proof of Claim was not

28    timely or properly filed; (iv) for damages based upon the rejection by the Debtor of an executory

contract or unexpired lease under Section 365 of the Bankruptcy Code and as to which the applicable Bar Date has not passed as of the applicable initial Distribution Date; (v) that is disputed in accordance with the provisions of the Plan; or (vi) if not otherwise Allowed, identified by the Debtor or RLI, as applicable, at the time of the applicable initial Distribution Date as being objectionable in whole or part and as to which an objection to the allowance thereof has been filed by the applicable Claims Objection Deadline; and (b) with respect to any Interest, an Interest held in a name, kind, or amount different from the name, kind, and amount set forth on the records retained by the Debtor.

**1.38** **"Distribution Date"** means for any Claim (a) that is an Allowed Claim on the Effective Date, the Effective Date or as soon as practicable thereafter, or (b) that is not an Allowed Claim on the Effective Date, thirty (30) calendar days after the last day of the month during which the Claim becomes an Allowed Claim.

**1.39** **"Distribution Record Date"** means the record date for determining entitlement to receive distributions under the Plan on account of Allowed Claims, which date shall be the Business Day immediately preceding the Effective Date, at 5:00 p.m. prevailing Pacific time on such Business Day.

**1.40** **"Effective Date"** means the Business Day upon which all conditions to the consummation of the Plan as set forth in Section 9.2 of the Plan have been satisfied or waived as provided in Section 9.3 of the Plan, and is the date on which the Plan becomes effective. When the Plan refers to a payment to be made on the Effective Date, the payment shall be made on the Effective Date or as soon as practicable thereafter.

**1.41** **"Estate"** means the estate of the Debtor in the Chapter 11 Case created pursuant to Section 541 of the Bankruptcy Code.

**1.42** **"Final Order"** means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction as entered on the docket in the Chapter 11 Case or the docket of any such court, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for

reargument or rehearing shall then be pending or as to which any appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Parties, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied or resulted in no modification of such order and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired.

**1.43** **"General Unsecured Claims"** means a Claim against the Debtor that is <u>not</u> an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Mechanics' Lien Claim, a Bank of America Claim or an Other Secured Claim.

**1.44** **"Greystar"** means GS Roosevelt, LLC or its designee.

**1.45** **"Greystar Contribution"** means the Cash payment of $95,000,000 made to the Estate on the Effective Date.

**1.46** **"Impaired"** means, with respect to any Claim or Interest, that such Claim or Interest is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.47** **"Interests"** means the legal, equitable, contractual, or other rights of any Person (a) with respect to Old Roosevelt LLC Interests and (b) to acquire or receive any of the foregoing.

**1.48** **"Material Adverse Change"** means, since June 3, 2011, any change, effect, event, occurrence, development, circumstance or state of facts occurs which has had or would reasonably be expected to have a materially adverse effect on the business, properties, prospects (financial or otherwise), operations, financial condition or results of operations of the Debtor, taken as a whole, or which would materially impair the Debtor's ability to perform its obligations under this Agreement or have a materially adverse effect on or prevent or materially delay the consummation of the transactions contemplated by the Plan.  Neither the Class Action nor the Chapter 11 Case shall constitute a Material Adverse Change.

**1.49** **"Mechanics' Lien Claims"** means all Claims secured by a duly perfected lien arising under Division 3, Part 4, Title 15 of the California Civil Code that arose prior to, and remain

unpaid as of, the Effective Date.

**1.50   "New Securities"** means collectively, the membership interests issued under the Reorganized Debtor LLC Agreement.

**1.51   "Old Debtor LLC Interests"** means, collectively, all membership interests in the Debtor issued and outstanding prior to the Effective Date, including any options or rights to purchase or acquire such interests, or other conversion rights, rights of first refusal, subscriptions, commitments, agreements, or other rights, contractual or otherwise, to acquire or receive any such interests prior to the Effective Date.

**1.52   "Other Priority Claim"** means a Claim against the Debtor entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

**1.53   "Other Secured Claim"** means a Secured Claim arising prior to the Petition Date against the Debtor, other than a Bank of America Claim and a Mechanics' Lien Claim.

**1.54   "Outside Date"** means August 22, 2011, unless such date is extended by written agreement of Greystar (such agreement to be granted or withheld in Greystar's sole discretion).

**1.55   "Person"** means any individual, firm, partnership, corporation, trust, association, company, limited liability company, joint stock company, joint venture, governmental unit, or other entity or enterprise.

**1.56   "Petition Date"** means April 13, 2009, the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

**1.57   "Plan"** means this plan of reorganization under Chapter 11 of the Bankruptcy Code and all exhibits annexed hereto or referenced herein, as the same may be amended, modified, or supplemented from time to time.

**1.58   "Plan Supplement"** means the supplement to the Plan described in Section 11.15 of the Plan.

**1.59   "Plan Support Agreement"** means that certain plan support agreement dated as of June 3, 2011 approved by the Plan Support Agreement Order and attached hereto as Exhibit 1.

**1.60   "Plan Support Agreement Order"** means that certain order entered by the Bankruptcy

1   Court on June 10, 2011 that, among other things, approved the Plan Support Agreement and

2   attached hereto as Exhibit 2.

3   **1.61    "Plan Term Sheet"** means that certain plan term sheet by and among the Debtor, RLI

4   and Greystar, attached to the Plan Support Agreement.

5   **1.62    "Priority Tax Claim"** means a Claim of a governmental unit that is entitled to priority

6   pursuant to Section 507(a)(8) of the Bankruptcy Code.

7   **1.63    "Professional"** means any professional employed in the Chapter 11 Case by order of the

8   Bankruptcy Court and any professional seeking compensation or reimbursement of expenses in

9   connection with the Chapter 11 Case pursuant to Section 503(b) of the Bankruptcy Code.  This

10  term does not include the Debtor's ordinary course professionals or Class Action Counsel.

11  **1.64    "Professional Fee Claim"** means a Claim of a Professional for compensation or

12  reimbursement of costs and expenses relating to services rendered after the Petition Date and

13  prior to and including the Confirmation Date.

14  **1.65    "Proof of Claim"** means a proof of claim filed with the Bankruptcy Court in connection

15  with the Chapter 11 Case.

16  **1.66    "Property"** means that certain real property located at 727 West 7th Street, Los Angeles,

17  California, and all improvements, personal property (including, without limitation, all accounts

18  of the Debtor, all funds and assets therein, and all Property described on Exhibit G to the Plan

19  Support Agreement) and other rights related to or appurtenant to such improvements, personal

20  property and real property and any other collateral securing the Bank of America Claim

21  **1.67    "Released Causes of Action"** means all claims, obligations, suits, judgments, damages,

22  demands, debts, rights, causes of action, and liabilities that are released, waived, and discharged

23  pursuant to Section 11.9(a) of the Plan or pursuant to any agreement, contract, instrument,

24  release, or document entered into in connection with the Plan.

25  **1.68    "Releasing Party"** has the meaning set forth in Section 11.9(b) of the Plan.

26  **1.69    "Reorganized Debtor"** means the reorganized Debtor or its successor on or after the

27  Effective Date.

28  **1.70    "Reorganized Debtor LLC Agreement"** means the limited liability company agreement

for the Reorganized Debtor substantially in the form included in the Plan Supplement, which shall have terms and conditions satisfactory to Greystar in Greystar's sole discretion.

**1.71** **"Request for Payment"** means a request for payment of an Administrative Claim filed with the Bankruptcy Court in connection with the Chapter 11 Case other than a request made by Class Action Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure or Rule 7023 of the Bankruptcy Rules.

**1.72** **"Retained Litigation Rights"** means all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities that are property of the Estate, whether arising under the Bankruptcy Code or non-bankruptcy law that are not Released Causes of Action.

**1.73** **"RLI"** means Roosevelt Lofts, Inc., the managing member of the Debtor and holder of all Old Debtor LLC Interests.

**1.74** **"RLI Payment"** means the remainder of the Greystar Contribution (net of the Bank of America Payment, the Creditor Payments and the funds needed to establish the Class Action Reserve) to be paid on the Effective Date to RLI, as the holder of the Old Debtor LLC Interests, or such other Person(s) holding the Old Debtor LLC Interests as of the Distribution Record Date.

**1.75** **"Schedules"** means the statements of financial affairs and the schedules of assets, liabilities, and contracts filed in the Bankruptcy Court by the Debtor, as amended or supplemented from time to time in accordance with Rule 1009 of the Bankruptcy Rules or orders of the Bankruptcy Court.

**1.76** **"Secured Claim"** means a Claim that is secured by a Lien that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which an Estate has an interest, or a Claim that is subject to setoff under Section 553 of the Bankruptcy Code; to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order, or in the case of setoff, pursuant to Section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtor or the Reorganized Debtor and the holder of such Claim.

1    **1.77    "Termination Date"** has the meaning set forth in Section 6 of the Plan Support

2    Agreement.

3    **1.78    "Termination Event"** means the occurrence of any of the events set forth in Section 6

4    of the Plan Support Agreement.

5    **1.79    "Unimpaired"** means, with respect to any Claim, that such Claim is not impaired within

6    the meaning of Section 1124 of the Bankruptcy Code.

7    **1.80    "Voting Deadline"** means the deadline established by the Bankruptcy Court by which

8    the holders of Claims and Interests in Classes that are entitled to vote on the Plan must submit

9    the Ballot indicating such holder's vote on the Plan, in accordance with the procedures set forth

10    in the Disclosure Statement and the instructions provided with the Ballot.

11    **ARTICLE II**

12    **CLASSIFICATION OF CLAIMS AND INTERESTS**

13    **2.1    Introduction**

14    In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims

15    and Priority Tax Claims have not been classified, and the respective treatment of such

16    unclassified claims is set forth in Section 3.1 of the Plan.

17    A Claim or Interest is placed in a particular Class only to the extent that the Claim or

18    Interest falls within the description of that Class and such Claim or Interest has not been paid,

19    released, or otherwise settled prior to the Effective Date.  A Claim or Interest may be bifurcated

20    and classified in other Classes to the extent that any portion of the Claim or Interest falls within

21    the description of such other Classes.

22    Except as expressly set forth below, all distributions will be made on the Effective Date

23    or as soon as practicable thereafter.  At Greystar's election, the structure of the transaction

24    described herein (but not the amount of the Greystar Contribution) may be modified to reflect

25    tax, accounting and other considerations.  The Plan will establish a reserve or reserves to ensure

26    payment of any claims that arose in whole or in part prior to the Effective Date but that are

27    allowed and payable after the Effective Date.

28

**Following payment of the Greystar Contribution, Greystar, the Reorganized Debtor and their respective Affiliates, Insiders successors, subsidiaries, members and assets (including, without limitation, the Property) shall have no liability for, among other things, (a) any Claim or Interest against the Debtor that arose or was asserted or could have arisen or been asserted prior to the Effective Date, (b) any pre-Effective Date act of the Debtor or any of the Debtor's Affiliates or Insiders, (c) the cost and expense of implementing the Plan, (d) any costs or fees related to any objection to, resolution of or payment of any Claims filed against or Interests in the Debtor; (e) any act of the Disbursing Agent including, without limitation, distributions from any reserve established under or pursuant to the Plan. Except as specifically identified in the Plan or the Confirmation Order, the Debtor shall bear full responsibility for making or arranging for the making of disbursements under the Plan and for the creation and administration of any reserve established under or pursuant to the Plan; or (f) any other person or entity making any distributions or holding any reserve under the Plan.**

## 2.2    Classes of Claims and Interests

| CLASS | TREATMENT |
|---|---|
| Class 1, Allowed Claim of Bank of American | Impaired, entitled to vote on the Plan |
| Class 2, Allowed Mechanics' Lien Claims | Unimpaired, not entitled to vote on the Plan |
| Class 3 et seq., Allowed Other Secured Claims | Unimpaired, not entitled to vote on the Plan |
| Class 4, Allowed Priority Non-Tax Claims | Unimpaired, not entitled to vote on the Plan |
| Class 5, Allowed General Unsecured Claims | Unimpaired, not entitled to vote on the Plan |
| Class 5, Old Debtor LLC Interests | Impaired, entitled to vote on the Plan |

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

### 3.1    Unclassified Claims

(1)    Administrative Claims.

    1.    *General.*  Except as set forth below, Allowed Administrative Claims, other

than Allowed Administrative Claims of insiders,[1] shall be paid in full in Cash on the later of (a) 60 days after such claims are allowed or (b) the Effective Date. To the extent Allowed Administrative Claims are Allowed or payable after the Effective Date, they shall be paid in full in Cash promptly after such claims are Allowed or payable out of a reserve established under or pursuant to the Plan from the Greystar Contribution.

2.    *Statutory Claims.*  All fees payable pursuant to 28 U.S.C. Section 1930 shall be paid in full in Cash.

3.    *Professional Claims.*  Professionals shall file final fee applications within 60 days after the Effective Date.  Promptly after allowance, professional fees shall be paid in full in Cash.

4.    *Postpetition Ordinary Course Liabilities.*  Allowed Postpetition Ordinary Course Liabilities (other than Postpetition Tax Claims) incurred prior to the Effective Date shall be paid in full in full in Cash on the Effective Date (or if incurred but not yet due as of the Effective Date, then paid when due in the ordinary course out of a reserve established under the Plan from the Greystar Contribution).

*5.*    *Postpetition Tax Claims.*  Postpetition tax claims shall be filed on the later of (a) 60 days after the Effective Date or (b) 120 days after the filing of a tax return with the applicable governmental unit, and shall be paid in full in Cash promptly after such claims are allowed out of a reserve established under the Plan from the Greystar Contribution.

6.    *Tenant Deposits.*  Funds in an amount equal to all security, pet or other deposits that (i) have been received by the Debtor or its agents, or (ii) are hereafter received by Debtor or its agents prior to the Effective Date, in each case from any tenants of the Property (each a "Tenant") shall be placed in a reserve account controlled by the Reorganized Debtor.  No Tenant shall be required to file a proof of claim in order to receive a refund of any such deposit

---

[1]    All claims asserted against the Debtor by Insiders of the Debtor, including without limitation RLI and Milbank Holding Corp., will be cancelled and no distribution shall be made under the Plan on account of such claims (including any and all administrative, priority, secured or unsecured claims).  To the extent any distributions must be made to any Insiders of the Debtor, such distributions will be made exclusively from the Greystar Contribution.

funds which such Tenant is entitled to receive in the ordinary course of business; provided, however, that each Tenant's right to receive a refund of any deposit shall be determined in accordance with the provisions of each Tenant's lease or an estoppel certificate signed by the Tenant, and nothing in the Plan shall waive any of the Debtor's rights to withhold all or any portion of a Tenant's deposit if appropriate to do so under that Tenant's lease.   To the extent the Debtor lacks sufficient Cash to fully fund the foregoing reserve, any deficiency shall be funded from the Greystar Contribution on the Effective Date.

(2)  Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim shall receive Cash on the Effective Date in an amount equal to such Allowed Priority Tax Claim.  All Priority Tax Claims which are not due and payable on or before the Effective Date shall be pro rated, so the amount that is due as of the Effective Date shall be paid in Cash on the Effective Date (or paid when due in the ordinary course of business in accordance with the terms thereof out of a reserve established under the Plan from the Greystar Contribution).

**3.2    Classes of Claims Against and Interests in the Debtor**

A.    <u>Class 1, Allowed Claim of Bank of America</u>:  On the Effective Date, the holder of the Class 1 Allowed Claim of Bank of America shall receive the Bank of America Payment in full satisfaction of its Class 1 Bank of America Claim.  In the event Greystar acquires the Class 1 Bank of America Claim prior to the Effective Date, (i) Greystar will not receive the Bank of America Payment but instead will receive the New Securities on the Effective Date, and (ii) the Greystar Contribution will be reduced by $██████ .

B.    <u>Class 2, Allowed Mechanics' Lien Claims</u>:    Each holder of an Allowed Mechanics' Lien Claim shall receive Cash in the full amount of such Claim on the later of (1) the Effective Date and (2) the date upon which such Claim becomes an Allowed Mechanics' Lien Claim by Final Order or agreement with RLI and/or the Debtor.  The Class Action Reserve shall be established on the Effective Date; provided, however, that in no event shall the sum of (a) the amount of payments made on the Effective Date to holders of Allowed Mechanics' Lien Claims and (b) the amount of Cash deposited into the foregoing reserve exceed $16,000,000 in the aggregate.  The Class Action Reserve shall be in such amount as may be determined by the

Bankruptcy Court (prior to or after the Effective Date) as sufficient to provide for payment in full of all Allowed Mechanics' Lien Claims and shall be deposited into segregated interest-bearing account(s) established and maintained by the law firm of Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB") or such other party that is approved by Class Action Counsel, or into one or more investment accounts mutually acceptable to RLI, the Debtor and Class Action Counsel (on terms and conditions reasonably acceptable to Class Action Counsel); provided, however, that the amount of Cash in the Class Action Reserve shall be equal to the lesser of (i) $16,000,000, or (ii) the remaining balance in the Class Action Reserve after payment of Allowed Mechanics' Lien Claims, not to exceed one hundred fifty percent (150%) of the aggregate amount of the unresolved Mechanics' Lien Claims (as set forth in the proof(s) of such Claims filed by holders of such Claims) (the "Class Action Reserve Threshold Amount"); and provided further that in no event shall any provision in the Plan or the Disclosure Statement cause an increase in the amount of the Greystar Contribution. Any Cash in the Class Action Reserve which is in excess of the Class Action Reserve Threshold Amount shall be distributed as part of the RLI Payment, or to RLI at any time following the Effective Date so long as the appropriate Class Action Threshold Amount is maintained in the Class Action Reserve. Any distributions from the Class Action Reserve for, or on account of an Allowed Claim asserted by a member of the class of holders of Mechanics' Lien claims shall be disbursed to Class Action Counsel in accordance with the terms and conditions of the Mechanics Lien Settlement Agreement and the Class Action Settlement Order, as more fully defined in the Plan Support Agreement Order. RLI and the Debtor shall have the right to object to and/or resolve any Mechanics' Lien Claim that is not allowed by Final Order as of the Effective Date, and nothing contained herein shall constitute an admission or waiver of any rights, claims or defenses regarding the validity of any Mechanics' Lien Claim or the lien asserted by any holder of any Mechanics' Lien Claim. On the Effective Date, all liens asserted and/or recorded by holders of Mechanics' Lien Claims shall be deemed released and extinguished as to the Property and shall attach to the funds maintained in the Class Action Reserve to the same extent, validity, priority, force and effect as such liens existed as against the Property. On and after the Effective Date, holders of Mechanics' Lien Claims shall have no

1  rights, claims or interests whatsoever against the Property.  Each holder of a Class 2 Claim shall

2  deliver to the Debtor a duly-executed release of lien for recordation upon the Effective Date, and

3  in the event a release of lien is not timely delivered to the Debtor, the Debtor and/or Greystar

4  shall be authorized to record a release of lien upon the Effective Date on behalf of each holder of

5  a Class 2 Claim.

6       C.    Class 3 et seq.; Allowed Other Secured Claims.  Class 3 consists of separate sub-

7  Classes for each Allowed Other Secured Claim.  Each sub-Class is deemed to be a separate Class

8  with respect to the Debtor for all purposes under the Bankruptcy Code.  Each holder of an

9  Allowed Class 3 Allowed Other Secured Claim shall receive Cash in the full amount of such

10  claim on the later of (1) the Effective Date and (2) the date upon which such claim becomes an

11  Allowed Class 3 Allowed Other Secured Claim by Final Order of the Bankruptcy Court.  On the

12  Effective Date, a reserve shall be established under the Plan and funded from the Greystar

13  Contribution for the benefit of members of Class 3 whose claims have not been Allowed as of

14  the Effective Date by Final Order of the Bankruptcy Court.

15       D.    Class 4, Allowed Priority Non-Tax Claims.  Each holder of an Allowed Class 4

16  Priority Non-Tax Claim shall receive Cash on the later of (1) the Effective Date and (2) the date

17  upon which such claim becomes an Allowed Class 4 Allowed Priority Non-Tax Claim in an

18  amount equal to such Allowed Class 4 Priority Non-Tax Claim. On the Effective Date, a reserve

19  shall be established under the Plan and funded from the Greystar Contribution for the benefit of

20  members of Class 4 whose claims have not been Allowed as of the Effective Date by Final Order

21  of the Bankruptcy Court.

22       E.    Class 5, Allowed General Unsecured Claims.  Each holder of an Allowed Class

23  General Unsecured Claim will receive Cash on the later of (1) the Effective Date and (2) the date

24  upon which such claim becomes an Allowed Class 5 Allowed General Unsecured Claim by Final

25  Order of the Bankruptcy Court in an amount equal to such Allowed Class 5 General Unsecured

26  Claim.  On the Effective Date, a reserve shall be established under the Plan and funded from the

27  Greystar Contribution for the benefit of members of Class 5 whose claims have not been

28  Allowed as of the Effective Date by Final Order of the Bankruptcy Court

F.    <u>Class 6, Old Debtor LLC Interests</u>.  Holders of Old Debtor LLC Interests shall receive their pro rata share of the RLI Payment on the Effective Date.  On the Effective Date, the Old Debtor LLC Interests shall be canceled.

All Allowed Claims in Classes 2 through 5 shall be Unimpaired under the Plan, deemed to accept the Plan and not entitled to vote on the Plan.  Classes 1 and 6 are Impaired under the Plan and entitled to vote to accept or reject the Plan.  Notwithstanding the foregoing, RLI as holder of the Class 6, Old Debtor LLC Interests, has agreed to vote in favor of the Plan (following receipt of the Disclosure Statement in a form approved by the Bankruptcy Court).  In addition, in the event Greystar acquires the Allowed Class 1 BofA Claim prior to the Voting Deadline, Greystar, as the holder of the Allowed Class 1 BofA Claim, has agreed to vote in favor of the Plan (following receipt of the Disclosure Statement in a form approved by the Bankruptcy Court).

<div align="center">

**ARTICLE IV**

**ACCEPTANCE OR REJECTION OF THE PLAN**

</div>

**4.1    Impaired Classes of Claims Entitled to Vote**

Holders of Claims in each Impaired Class of Claims and Interests are entitled to vote as a Class to accept or reject the Plan, other than Classes that are deemed to reject the Plan.  The votes of holders of Claims in Class 1 and Interests in Class 6 shall be solicited with respect to the Plan.

**4.2    Acceptance by an Impaired Class Entitled to Vote**

In accordance with Section 1126 of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of (a) Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class or sub-Class that have timely and properly voted to accept or reject the Plan and (b) Interests shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have timely and properly voted to accept or reject the Plan..

**4.3    Presumed Acceptances by Unimpaired Classes**

With respect to Classes of Claims against the Debtor, Classes 2 through 5 are Unimpaired under the Plan.  Under Section 1126(f) of the Bankruptcy Code, holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of holders of such Unimpaired Claims shall not be solicited.

**4.4    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Plan Proponents shall request Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code.  The Plan Proponents reserve the right to alter, amend, or modify the Plan, the Plan Supplement, or any Exhibit to satisfy the requirements of Section 1129(b) of the Bankruptcy Code, if necessary, with such changes to be acceptable to Greystar in Greystar's sole discretion and to the Debtor in the Debtor's reasonable discretion.

<div align="center">

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

</div>

**5.1    Corporate Existence**

The Reorganized Debtor shall exist after the Effective Date as a separate limited liability entity, in accordance with the applicable laws in the jurisdiction in which it is organized and pursuant to the Reorganized Debtor LLC Agreement.

**5.2    New Governing Documents**

The Reorganized Debtor LLC Agreement shall be in substantially the form of such document included in the Plan Supplement.

**5.3    Vesting of Assets; Releases of Liens**

The assets of the Debtor's Estate, including all the Property and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities against third parties held or asserted by the Debtor, shall vest in the Reorganized Debtor on the Effective Date free and clear of all Liens, Claims, encumbrances and interests.  Although, on the Effective Date, all liens asserted by holders of Mechanics' Lien Claims shall be released against the Property,

1    such liens shall attach to the funds maintained in the Class Action Reserve to the same extent,

2    validity, priority, force and effect as such liens existed as against the Property.  On and after the

3    Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and

4    dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules,

5    and the Bankruptcy Court.

6    **5.4      Cancellation of Pre-Effective Date Claims and Interests**

7          On the Effective Date, except as otherwise specifically provided for in the Plan, all

8    Claims against and Interests in the Debtor shall be canceled and discharged.

9    **5.5      The Greystar Contribution**

10          The Cash necessary to make payments required to be made on the Effective Date shall be

11    obtained from the Greystar Contribution.  The Greystar Contribution will be applied as follows:

12    (i) the first $███ for payment to Bank of America in full satisfaction of the Bank of America

13    Claim; (ii) the next $16,000,000 (or such other amount as may be ordered by the Bankruptcy

14    Court) to fund the Class Action Reserve; (iii) third, to pay or satisfy in full the Creditor Payments

15    other than the Class Action Reserve and (iv) the remainder of the Greystar Contribution to fund

16    the RLI Payment.

17          As noted above, in the event Greystar acquires the Class 1 Bank of America Claim prior

18    to the Effective Date, (i) Greystar will not receive the Bank of America Payment but instead will

19    receive the New Securities on the Effective Date, and (ii) the Greystar Contribution will be

20    reduced by $███.

21    **5.6      Claim Reserves**

22          A.      Class Action Reserve.  The Class Action Reserve shall be established, funded and

23    maintained in accordance with Section 3.2(B) of the Plan.  Funds held for the Class Action

24    Reserve shall not be commingled with funds for any other reserve.

25          B.      Other Claim Reserves.  On the Effective Date, the Debtor shall create reserves

26    other than the Class Action Reserve (collectively, "Reserves" and individually, a "Reserve") in

27    an amount necessary to pay (a) all non-Class 2 Claims that arose or were incurred on or prior to

28    the Effective Date but (b) not otherwise paid in full on the Effective Date (the "Incurred But Not

Paid Claims"). All Reserves shall be funded from the Greystar Contribution with Cash equal to the maximum potential liability of the Debtor under the Incurred But Not Paid Claims. The Debtor will present evidence at the Confirmation Hearing setting forth the Debtor's reasonable estimate of the amount of Cash necessary to fully fund the Reserves. Such Reserves shall be placed into one or more segregated accounts maintained by LNBYB or such other party that is designated by the Court. Funds held for one Reserve shall not be commingled with funds for another Reserve. Payments shall be made to holders of Allowed non-Class 2 Claims once such Claims are Allowed by Final Order within ten (10) Business Days following receipt by LNBYB (or such other party that is designated by the Court) of such Final Order allowing any such Claims. Any residual Cash left in the Reserves following the allowance and payment, or disallowance, of the Incurred But Not Paid Claims shall be distributed as part of the RLI Payment.

Where the Plan refers to a reserve, that reference shall be to the Class Action Reserve or one of the Reserves, as applicable, as described in this Section 5.6.

Notwithstanding the foregoing, the treatment of tenant deposits shall be governed by Section 3.1(6) of the Plan.

**5.7     Authorization and Issuance of New Securities**

The Reorganized Debtor shall issue the New Securities on the Effective Date to Greystar Equity Partners VII, LLC or to an intermediary limited liability company or other corporation (the "Intermediary Entity") identified by Greystar prior to the Confirmation Hearing, in each case pursuant to the terms of the Reorganized Debtor LLC Agreement. On the Effective Date, Greystar Equity Partners VII, LLC, at its option will own (a) all of the New Securities or (b) all of the membership interests of or equity in the Intermediary Entity.

**5.8     Member of Reorganized Debtor**

As of the Effective Date, the Sole Member of the Reorganized Debtor shall be Greystar Equity Partners VII, LLC or the Intermediary Entity.

**5.9     Officers of Reorganized Debtor**

The existing officers and managers of the Debtor shall be deemed to have resigned as of

1   the Effective Date.  The proposed senior officers of the Reorganized Debtor shall be identified at

2   or prior to the Disclosure Statement Hearing.

3   **5.10    Indemnification of Reorganized Debtor's Directors, Officers, and Employees**

4          Upon the Effective Date, the Reorganized Debtor LLC Agreement may contain

5   customary indemnification provisions for members, officers, and other key employees serving

6   the Reorganized Debtor.

7   **5.11    Retained Litigation Rights**

8          Except as otherwise provided in the Plan or the Confirmation Order, or in any contract,

9   instrument, release, indenture, or other agreement entered into in connection with the Plan, in

10  accordance with Section 1123(b) of the Bankruptcy Code, on the Effective Date, the

11  Reorganized Debtor shall retain all of the Debtor's Retained Litigation Rights that the Debtor

12  may hold against any Person.  The Reorganized Debtor shall retain and may enforce, sue on,

13  settle, or compromise (or decline to do any of the foregoing) all such Retained Litigation Rights.

14  The Reorganized Debtor or its successor(s) may pursue such Retained Litigation Rights as

15  appropriate, in accordance with the best interests of the Reorganized Debtor or its successor(s)

16  who hold such rights in accordance with applicable law and consistent with the terms of the Plan.

17  **5.12    Effectuating Documents; Further Transactions**

18         Any appropriate officer or manager of the Debtor or the Reorganized Debtor, as the case

19  may be, shall be authorized to execute, deliver, file, or record such contracts, instruments,

20  releases, indentures, and other agreements or documents, and take such actions as may be

21  necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

22  The secretary or assistant secretary of the Debtor or the Reorganized Debtor (or other appropriate

23  manager or officer), as the case may be, shall be authorized to certify or attest to any of the

24  foregoing actions.

25  **5.13    Exemption From Certain Transfer Taxes**

26         Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from the Debtor to the

27  Reorganized Debtor or any other Person in the United States pursuant to the Plan shall not be

28  taxed under any law imposing a stamp tax or other similar tax.  Such exemption specifically

applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan, including the documents contained in the Plan Supplement, and vesting of the Property in the Reorganized Debtor.

**5.14    Corporate Action**

On the Effective Date, the adoption of the Reorganized Debtor LLC Agreement and all actions contemplated or necessary to implement the transactions described in the Plan shall be authorized and approved in all respects pursuant to the Plan.  All matters provided for herein involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the members, officers or directors of the Debtor or the Reorganized Debtor.  On the Effective Date, the appropriate officers and members of the Reorganized Debtor are authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtor without the need for any required approvals, authorizations or consents except for express consents required under the Plan.

**5.15    Approval of Compromises and Settlements Embodied in Plan**

The terms of the Plan represent compromises and settlements of certain issues.  To the extent necessary, the Plan is deemed to be a motion for approval of the compromises and settlements and the Confirmation Order shall contain findings supporting and conclusions approving the compromises and settlements as fair and equitable and within the bounds of reasonableness.

**5.16    No Effect On Bank Of America's Rights Under BofA/Debtor Settlement**

Notwithstanding any other provisions of the Plan, if, for any reason, the Purchaser under the BofA/Debtor Settlement as not paid the Purchase Price on or before the Payment Date (as those terms are defined in the BofA/Debtor Settlement) then all actions taken towards effectuation of Confirmation shall be null and void and Bank of America may exercise all rights under the Stipulation Modifying the Automatic Stay [Docket No. 800] and the Order approving the BofA/Debtor Settlement and that stipulation [Docket No. 799].

**ARTICLE VI**

**TREATMENT OF EXECUTORY CONTRACTS**

**AND UNEXPIRED LEASES**

**6.1    Assumption of Contracts and Leases; Continuing Obligations**

(a)    On the Effective Date, all executory contracts and unexpired leases of the Debtor listed on the Contract/Lease Schedules are hereby deemed assumed in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code.  On or before the day that is ten (10) days before the Voting Deadline, the Debtor shall file the Contract/Lease Schedules; *provided, however*, that Greystar reserves the right to amend the Contract/Lease Schedules at any time prior to the Effective Date.  The Debtor shall provide notice of any amendments to the Contract/Lease Schedules to the parties to the executory contracts and unexpired leases affected thereby.

(b)    To the extent applicable, all executory contracts or unexpired leases of the Debtor assumed pursuant to the Plan shall be deemed modified such that the transactions contemplated by the Plan shall not be a "change of control," however such term may be defined in the relevant executory contract or unexpired lease, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

(c)    Each executory contract and unexpired lease assumed pursuant to Article VI of the Plan (or pursuant to other Bankruptcy Court order) shall remain in full force and effect and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

(d)    In the event that any license granted to the Debtor by a governmental unit, and in effect immediately prior to the Effective Date, is considered to be an executory contract and is not otherwise terminated or rejected by the Debtor, such license shall be deemed to be assumed pursuant to Section 365 of the Bankruptcy Code under the Plan.

(e)    Continuing obligations of third parties to the Debtor under insurance policies, contracts, or leases that have otherwise ceased to be executory or have otherwise expired on or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

prior to the Effective Date, including, without limitation, continuing obligations to pay insured

claims, to defend against and process claims, to refund premiums or overpayments, to provide

indemnification, contribution or reimbursement, to grant rights of first refusal, to maintain

confidentiality, or to honor releases, shall continue and shall be binding on, and enforceable by

the Reorganized Debtor against, such third parties notwithstanding any provision to the contrary

in the Plan, unless otherwise specifically terminated by the Debtor (with the consent of Greystar,

such consent to be granted or withheld in Greystar's sole discretion) or by order of Bankruptcy

Court.  The deemed rejection provided by Section 6.3 of the Plan shall not apply to any such

continuing obligations.

(f)    To the extent any insurance policy under which the insurer has a continuing

obligation to pay the Debtor or a third party on behalf of the Debtor is held by the Bankruptcy

Court to be an executory contract and is not otherwise assumed upon motion by a Final Order,

such insurance policy shall be treated as though it is an executory contract that is assumed

pursuant to Section 365 of the Bankruptcy Code under the Plan. Any and all Claims (including

Cure) arising under or related to any insurance policies or related insurance agreements that are

assumed by the Debtor prior to or as of the Effective Date: (i) shall not be discharged; (ii) shall

be Allowed Administrative Claims; and (iii) shall be paid on the Effective Date.

**6.2    Cure Rights for Executory Contracts or Unexpired Leases Assumed under Plan**

Any monetary Cure amounts by which each executory contract and unexpired lease to be

assumed pursuant to the Plan is in default shall be satisfied, pursuant to Section 365(b)(1) of the

Bankruptcy Code, by payment of the Cure amount in Cash on the later of (a) the Effective Date

(or as soon as practicable thereafter), (b) as due in the ordinary course of business or (c) on such

other terms as the parties to such executory contracts or unexpired leases may otherwise agree.

If not paid on the Effective Date, such payments shall be made out of a reserve established on the

Effective Date to ensure payment in full any cure amount (the "Cure Reserve").  In the event of a

dispute regarding: (i) the amount of any Cure payments, (ii) the ability of the Reorganized

Debtor or any assignee to provide "adequate assurance of future performance" (within the

meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed or

1    assigned, or (iii) any other matter pertaining to assumption, the Cure payments required by

2    Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order

3    resolving the dispute and approving the assumption.  The Debtor shall list Cure amounts for

4    executory contracts and unexpired leases on the Contract/Lease Schedules.  **The failure of any**

5    **non-Debtor party to an executory contract or unexpired lease to file and serve an objection**

6    **to the Cure amount listed on the Contract/Lease Schedules for such party's contract or**

7    **lease by the deadline set forth on the Contract/Lease Schedules shall be deemed consent to**

8    **such Cure amount**; *provided*, *however*, that prior to entry of a Final Order approving the

9    assumption of an executory contract or unexpired lease, the Debtor (at the sole direction of

10   Greystar) shall be authorized to reject any executory contract or unexpired lease to the extent the

11   Debtor, in the exercise of their sound business judgment, conclude that the amount of the Cure

12   obligation as determined by the Bankruptcy Court renders assumption of such executory contract

13   or unexpired lease unfavorable to the Estate.

14   **6.3      Rejection of Contracts and Leases**

15          Except as otherwise provided in the Plan, or in any contract, instrument, release,

16   indenture, or other agreement or document entered into in connection with the Plan, as of the

17   Effective Date, the Debtor shall be deemed to have rejected each prepetition executory contract

18   and unexpired lease to which it is a party unless such contract or lease (i) is listed on the

19   Contract/Lease Schedules as of the Confirmation Date, (ii) was previously assumed or rejected

20   upon motion by a Final Order, (iii) previously expired or terminated pursuant to its own terms, or

21   (iv) is the subject of any pending motion, including to assume, to assume on modified terms, to

22   reject or to make any other disposition filed by a Debtor on or before the Confirmation Date.

23   The Confirmation Order shall constitute an order of the Bankruptcy Court under Section 365(a)

24   of the Bankruptcy Code approving the rejection of the prepetition executory contracts and

25   unexpired leases described above, as of the Effective Date.

26   **6.4      Rejection Damage Claim Bar Date for Rejections Pursuant to Plan**

27          If the rejection of an executory contract or unexpired lease pursuant to the Plan results in

28   a Claim, then such Claim will be (a) classified as a Class 5, General Unsecured Claim but (b)

1    shall be forever barred and shall not be enforceable against the Debtor unless a Proof of Claim is

2    filed and served upon counsel to the Reorganized Debtor and the Debtor within thirty (30) days

3    after entry of the Confirmation Order. The foregoing applies only to Claims arising from the

4    rejection of an executory contract or unexpired lease; any other Claims held by a party to a

5    rejected contract or lease shall have been evidenced by a Proof of Claim filed by earlier

6    applicable bar dates, or shall be otherwise Allowed, and if not shall be barred and unenforceable

7    unless otherwise ordered by the Bankruptcy Court.

8    **6.5    Employee Compensation and Benefit Programs**

9    (a)    All employee compensation, benefit, and expense reimbursement programs,

10   plans, policies, and agreements of the Debtor in effect during the pendency of the Chapter 11

11   Case, including all health and welfare plans, 401(k) plans, pension plans within the meaning of

12   Title IV of the Employee Retirement Income Security Act of 1974, as amended, and all benefits

13   subject to Sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the

14   Petition Date and in effect during the pendency of the Chapter 11 Case, shall be deemed to be,

15   and shall be treated as though they are, executory contracts that can be rejected pursuant to

16   Section 365 of the Bankruptcy Code under the Plan.  All such contracts shall be deemed rejected

17   as of the Effective Date.

18   (b)    As of the Effective Date, any and all stock based incentive plans or stock

19   ownership plans of the Debtor entered into before the Effective Date shall be terminated. To the

20   extent such plans, agreements, or documents are considered to be executory contracts, such

21   plans, agreements, or documents shall be deemed to be, and shall be treated as though they are,

22   executory contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the

23   Plan.

24   **6.6    Indemnification Obligations**

25   All Indemnification Obligations owed to any person by the Debtor shall be deemed to be,

26   and shall be treated as though they are, executory contracts that are rejected pursuant to Section

27   365 of the Bankruptcy Code under the Plan pursuant to the Confirmation Order (unless earlier

28   rejected by Final Order).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2268533.5 Roosevelt - Plan of Reorganization

29

### 6.7    Insurance Rights

Notwithstanding anything to the contrary in the Plan or the Plan Supplement (including any other provision that purports to be preemptory or supervening), nothing in the Plan or the Plan Supplement (including any other provision that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, impairing the legal, equitable or contractual rights of the Debtor's insurers, if any, in any respect. The rights of the Debtor's insurers shall be determined under their respective insurance policies and any related agreements with the Debtor, as applicable, subject, however, to the rights, if any, of the Debtor to assume or reject any such policy or agreement (at the direction of Greystar) and the consequences of such assumption or rejection under Section 365 of the Bankruptcy Code.

### 6.8    Limited Extension of Time to Assume or Reject

(a)    Notwithstanding anything set forth in Article VI of the Plan, and except with respect to a real property lease subject to Section 365(d)(4) of the Bankruptcy Code (unless otherwise agreed by the lessor), in the event of a dispute as to whether a contract is executory or a lease is unexpired, Debtor's right to move to assume or reject such contract or lease (which shall be exercised at the direction of Greystar) shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.  The deemed rejection provided for in Section 6.3 of the Plan shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Debtor following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

(b)    Except with respect to a real property lease subject to Section 365(d)(4) of the Bankruptcy Code (unless otherwise agreed by the lessor), in the event the Debtor or the Reorganized Debtor become aware after the Confirmation Date of the existence of an executory contract or unexpired lease that was not included in the Contract/Lease Schedules, the right of the Debtor or Reorganized Debtor to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the date on which the Debtor or the Reorganized Debtor become aware of the existence of such contract or lease. The deemed

rejection provided for in Section 6.3 of the Plan shall not apply to any such contract or lease unless a motion to assume or reject is not filed within such (30) day period.

**6.9    Postpetition Contracts and Leases**

The Debtor shall not be required to assume or reject any contract or lease entered into by the Debtor after the Petition Date. Any such contract or lease shall continue in effect in accordance with its terms after the Effective Date unless, at the direction of Greystar, the Debtor has obtained a Final Order of the Bankruptcy Court approving rejection of such contract and lease.

**6.10    Claims Arising from Assumption or Rejection**

All Allowed Claims arising from the assumption of any executory contract or unexpired lease shall be treated as Administrative Claims pursuant to Section 3.1(1) of the Plan; all Allowed Claims arising from the rejection of an executory contract or unexpired lease shall be treated as General Unsecured Claims pursuant to Section 3.2(E) of the Plan, and all other Allowed Claims relating to an executory contract or unexpired lease shall have such status as they may be entitled to under the Bankruptcy Code as determined by Final Order of the Bankruptcy Court.

<div align="center">

**ARTICLE VII**

**PROVISIONS GOVERNING DISTRIBUTIONS**

</div>

**7.1    Distributions for Claims and Interests Allowed as of Effective Date**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all distributions to holders of Allowed Claims and Interests as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date.  Distributions on account of Claims and Interests that first become Allowed after the applicable Distribution Date shall be made pursuant to Section 8.4 of the Plan.

**7.2    Interest on Claims**

To the extent required to render a Claim in Classes 2 through 5 hereof Unimpaired, postpetition interest shall accrue and will be paid on such Claims.

**7.3    Designation of and Distributions by Disbursing Agent**

(a)    Except as provided herein, the Debtor shall designate the Person to serve as the Disbursing Agent under the Plan, and shall file a written notice of such designation at least five (5) days prior to the Voting Deadline.

(b)    Unless otherwise provided herein, the Disbursing Agent shall make all distributions required to be made on the respective Distribution Dates under the Plan. Notwithstanding the foregoing, all distributions from the Class Action Reserve shall be made by LNBYB or such other party that is approved by Class Action Counsel in accordance with Sections 3.2(B) and 5.6 of the Plan.

(c)    If the Disbursing Agent is an independent third party designated by the Debtor to serve in such capacity, such Disbursing Agent shall receive from the Debtor, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services, on any agreed terms.  No Disbursing Agent shall be required to give any bond, surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

(d)    The Reorganized Debtor, Greystar and each of their respective members, Affiliates agents, insiders and officers shall have no liability for the Disbursing Agent's actions or inactions, including failure to make any payments under the Plan.

**7.4    Means of Cash Payment**

Cash payments made pursuant to the Plan shall be in U.S. funds, by check or wire transfer or by such other commercially reasonable means as may be agreed to by the payor and the payee.

**7.5    Delivery of Distributions**

(a)    Distributions to holders of Allowed Claims shall be made by the Disbursing Agent or at its direction as applicable, (i) at the addresses set forth on the Proofs of Claim filed by such holders (or at the last known addresses of such holders if no Proof of Claim is filed or if the Debtor, the claims agent and the Disbursing Agent have been notified of a change of

address), (ii) at the addresses set forth in any written notices of address changes delivered to the

Debtor and the Disbursing Agent after the date of any related Proof of Claim or (iii) at the

addresses reflected in the Schedules if no Proof of Claim has been filed and a written notice of a

change of address has not been received by the Debtor and the Disbursing Agent.  The foregoing

shall not apply to distributions to Class 2 members holding Allowed Mechanics' Lien Claims,

which distributions shall be made as specified in Section 3.2 of the Plan.

(b)      If any holder's distribution is returned as undeliverable, no further distributions to

such holder shall be made unless and until the Disbursing Agent is notified by the Debtor or such

holder of such holder's then current address, at which time all missed distributions shall be made

to such holder without interest.  If any distribution is made by check and such check is not

returned but remains uncashed for six (6) months after the date of such check, the Disbursing

Agent may cancel and void such check, and the distribution with respect thereto shall be deemed

undeliverable.  If any holder is requested to provide a taxpayer identification number or to

otherwise satisfy any tax withholding requirements with respect to a distribution and such holder

fails to do within six (6) months of the date of such request, such holder's distribution shall be

deemed undeliverable.

(c)      With respect to distributions to be made by the Disbursing Agent or at its

direction, amounts in respect of returned or otherwise undeliverable or unclaimed distributions

made by the Disbursing Agent on behalf of the Debtor shall be returned to the Debtor or returned

to the reserve established for the Claim at issue until such distributions are claimed. All claims

for returned or otherwise undeliverable or unclaimed distributions must be made (a) on or before

the first (1st) anniversary of the Effective Date or (b) with respect to any distribution made later

than such date, on or before six (6) months after the date of such later distribution; after which

date all undeliverable property shall revert to the RLI free of any restrictions thereon and the

claims of any holder or successor to such holder with respect to such property shall be

discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

The Reorganized Debtor and Greystar shall have no liability for any such claims.  In the event of

a timely claim for any returned or otherwise undeliverable or unclaimed distribution, the Debtor

1  shall deliver the applicable distribution amount or property to the Disbursing Agent for

2  distribution pursuant to the Plan.  Nothing contained in the Plan shall require the Debtor, the

3  Reorganized Debtor, RLI or any Disbursing Agent to attempt to locate any holder of an Allowed

4  Claim.

5  **7.6    Application of Distribution Record Date**

6          At the close of business on the Distribution Record Date, the claims register maintained

7  in the Chapter 11 Case shall be closed and there shall be no further changes in the listed holders

8  of the Claims.  The Debtor, the Reorganized Debtor, Greystar, the Disbursing Agent, and each of

9  their respective agents, successors, and assigns shall have no obligation to recognize any transfer

10 of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize

11 and deal for all purposes hereunder with only those record holders stated on the claims register as

12 of the close of business on the Distribution Record Date irrespective of the number of

13 distributions to be made under the Plan to such Persons or the date of such distributions.

14 **7.7    Withholding and Reporting Requirements**

15         In connection with the Plan and all distributions hereunder, the Disbursing Agent shall, to

16 the extent applicable, comply with all tax withholding, payment, and reporting requirements

17 imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions

18 hereunder shall be subject to any such withholding, payment, and reporting requirements. The

19 Disbursing Agent shall be authorized to take any and all actions that may be necessary or

20 appropriate to comply with such withholding, payment, and reporting requirements.

21 Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim or Interest

22 that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility

23 for the satisfaction and payment of any tax obligations imposed by any governmental unit,

24 including income, withholding, and other tax obligations, on account of such distribution, and (b)

25 no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until

26 such holder has made arrangements satisfactory to the Disbursing Agent for the payment and

27 satisfaction of such withholding tax obligations in connection with such distribution.  Any Cash

28 or other property to be distributed pursuant to the Plan shall, pending the implementation of such

1    arrangements, be treated as an undeliverable distribution pursuant to Section 7.5 of the Plan.

**7.8    Prepayment**

Except as otherwise provided in the Plan, any ancillary documents entered into in connection herewith, or the Confirmation Order, the Debtor shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; *provided*, *however,* that any such prepayment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

**7.9    De Minimis Distributions**

Neither the Reorganized Debtor, the Debtor nor the Disbursing Agent shall have any obligation to make a Cash distribution with respect to any Claim if the amount of the distribution is less than $20.00.  The Claim of any holder whose distribution is in an amount less than $20.00 shall be discharged, and such holder shall be forever barred from asserting such Claim against the Debtor, the Reorganized Debtor, Greystar or their respective property.

**7.10    No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim (including payments on account of interest due and payable through the date of payment of such Claim, as further described in the Plan).

**7.11    Allocation of Distributions**

All distributions received under the Plan by holders of Claims shall be deemed to be allocated first to the principal amount of such Claim as determined for United States federal income tax purposes and then to accrued interest, if any, with respect to such Claim.

# ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED,

## CONTINGENT, AND UNLIQUIDATED CLAIMS AND

## DISTRIBUTIONS WITH RESPECT THERETO

**8.1    Prosecution of Objections to Claims**

(a)    **Objections to Claims**

All objections to Claims must be filed and served on the holders of such Claims by the Claims Objection Deadline.  If an objection has not been filed to a Proof of Claim or Request for Payment by the Claims Objection Deadline, the Claim to which the Proof of Claim or scheduled Claim, or Request for Payment, relates shall be treated as an Allowed Claim if such Claim has not been allowed earlier.  The Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated non-Class 2 Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any non-Class 2 Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court so estimates any contingent or unliquidated non-Class 2 Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.  Non-Class 2 Claims may be estimated and thereafter resolved by any permitted mechanisms.

(b)    **Authority to Prosecute Objections**

After the Effective Date, only the Debtor shall have the authority to file or continue to pursue objections to Claims and to settle, compromise, withdraw, or litigate to judgment objections to Claims. The Debtor may settle or compromise any Disputed Claim

1    without approval of the Bankruptcy Court.

2        Nothing herein shall limit the contractual rights and obligations of any party, including

3    any insurer, with respect to any Claim, under (i) an assumed agreement, including any assumed

4    insurance policy, or (ii) any non-executory agreement, including a non-executory insurance

5    policy, as to which such party has continuing obligations pursuant to Section 6.1(e) of the Plan or

6    applicable law.

7    **8.2    Deemed Allowance of the Bank of America Claim**

8        The Bank of America Claim shall receive the treatment under the Plan as identified in

9    Article III of the Plan.  Pursuant to the Plan Support Agreement, the Bank of America Claim has

10   been Allowed (within the meaning of Section 502 of the Bankruptcy Code) as fully perfected,

11   valid, nonavoidable and duly enforceable (without being subject to any defense, counterclaim,

12   right of offset or subordination, or any other claim, surcharge or challenge by any party in

13   interest) with first priority security against the Property subject only to the Mechanics' Lien

14   Claims to the extent such Mechanics' Lien Claims are provided senior priority to any portion of

15   the Bank of America Claim as described in the BofA/Mechanics' Lien Settlement Order.  The

16   Bank of America Claim shall not be subject in any way whatsoever to the equitable doctrine of

17   "marshaling" or any similar doctrine with respect to the Property

18   **8.3    Treatment of Disputed Claims Pending Allowance**

19       Notwithstanding any other provisions of the Plan, no payments or distributions shall be

20   made on account of a Disputed Claim or, if less than the entire Claim is a Disputed Claim, the

21   portion of a Claim that is Disputed, until such Claim becomes an Allowed Claim.

22   **8.4    Distributions on Account of Disputed Claims Once Allowed**

23       The Disbursing Agent shall, on the applicable Distribution Dates, make or direct

24   distributions on account of any Disputed Claim that has become an Allowed Claim.  Such

25   distributions shall be made pursuant to the provisions of the Plan governing the applicable Class.

26   Such distributions shall be based upon the cumulative distributions that would have been made to

27   the holder of such Claim under the Plan if the Disputed Claim had been an Allowed Claim on the

28   Effective Date in the amount ultimately Allowed.  Notwithstanding anything to the contrary

1  herein, all distributions from the Class Action Reserve shall be made by LNBYB or such other

2  party that is approved by Class Action Counsel in accordance with Sections 3.2(B) and 5.6 of the

3  Plan.

4  <center>**ARTICLE IX**</center>

5  <center>**CONDITIONS TO CONFIRMATION AND CONSUMMATION OF THE PLAN**</center>

6  **9.1    Conditions to Confirmation**

7       The following are conditions precedent to Confirmation, each of which must be satisfied

8  or waived in accordance with Section 9.3 of the Plan:

9       (a)    the Bankruptcy Court shall have entered the Plan Support Agreement Order and

10  such order shall have become a Final Order and not have been modified, amended or reversed

11  (all in form and substance negotiated by the Debtor, RLI and Greystar); provided that any

12  changes to the Plan Support Agreement Order following the filing of such Plan Support

13  Agreement Order shall be satisfactory to Greystar in Greystar's sole discretion and reasonably

14  acceptable to RLI and the Debtor; and provided further that the Plan Support Agreement Order

15  shall not have been modified, amended or reversed;

16       (b)    the Disclosure Statement shall have been in form and substance reasonably

17  satisfactory to the Plan Proponents, and an order (in form and substance reasonably satisfactory

18  to the Plan Proponents) finding that the Disclosure Statement contains adequate information

19  pursuant to Section 1125 of the Bankruptcy Code shall have been entered by the Bankruptcy

20  Court, shall have become a Final Order and not have been modified, amended or reversed;

21       (c)    the Bankruptcy Court shall have entered the Confirmation Order in form and

22  substance satisfactory to Greystar in Greystar's sole discretion and the Confirmation Order shall

23  have become a Final Order and not have been modified, amended or reversed; provided,

24  however, that the Confirmation Order shall be deemed satisfactory to the Debtor and RLI so long

25  as the Confirmation Order does not deviate in any material way from the terms set forth in the

26  Plan Term Sheet;

27       (d)    the Plan, the exhibits thereto and the Plan Supplement (as confirmed or approved

28  by the Confirmation Order) shall be in form and substance satisfactory to Greystar in Greystar's

1    reasonable discretion.  The Plan, the exhibits thereto and the Plan Supplement (as confirmed or

2    approved by the Confirmation Order)  shall be deemed satisfactory to the Debtor and RLI so

3    long as they do not deviate in any material way from the terms set forth in the Plan Term Sheet

4    and

5        (e)    the BofA/Debtor Settlement Order shall have become a Final Order and not have

6    been modified, amended or reversed.

7        (f)    The Purchase Price (as defined in the BofA/Debtor Settlement) has been paid

8    timely to Bank of America and in every respect under the terms of the BofA/Debtor Settlement.

9    This condition to Confirmation cannot be waived, altered, amended or modified in any respect,

10   notwithstanding the provisions of Section 9.3 and Section 11.4 of the Plan.

11   **9.2    Conditions to Effective Date**

12       The following conditions precedent must be satisfied or waived on or prior to the

13   Effective Date in accordance with Section 9.3 of the Plan:

14       (a)    All conditions to confirmation of the Plan shall remain satisfied or waived (with

15   any waiver to be in the sole discretion of the party who has the right to waive such condition or

16   conditions) in accordance with Section 9.3 of the Plan.

17       (b)    Each order of the Bankruptcy Court referred to in Section 9.1 of the Plan shall

18   have become a Final Order and not have been withdrawn, modified, amended or reversed.

19       (c)    All documents and agreements to be executed on the Effective Date or otherwise

20   necessary to implement the Plan (not otherwise specified herein) shall be in form and substance

21   reasonably acceptable to the Plan Proponents.

22       (d)    The Plan Proponents shall have received any authorization, consent, regulatory

23   approval, ruling, letter, opinion, or document that may be necessary to implement the Plan and

24   that is required by law, regulation, or order.

25       (e)    The Reorganized Debtor shall have received title insurance from a title insurance

26   company reasonably satisfactory to Greystar and on terms and conditions satisfactory to Greystar

27   in Greystar's sole discretion and reasonably acceptable to the Debtor and RLI, and the Property

28   shall be in compliance with all material restrictions, requirements and encumbrances applicable

1   to the Property (other than the fact that the parking stalls are non-conforming).

2       (f)    The New Securities shall have been issued (free and clear of all liens, claims,

3   encumbrances and interests) to Greystar Equity Partners VII, LLC or an Intermediary Entity

4   identified by Greystar prior to the Confirmation Hearing in accordance with the Plan.

5       (g)    All other actions, documents and agreements necessary to implement the Plan as

6   of the Effective Date shall have been executed and delivered and all conditions precedent thereto

7   shall have been satisfied or waived by the party who has the right to waive such conditions.

8       (h)    All corporate and other proceedings to be taken by the Debtor in connection with

9   the Plan and/or the Plan Supplement and the consummation of the transactions contemplated

10  thereby and by the Plan and all documents incident thereto shall have been completed in form

11  and substance reasonably satisfactory to Greystar; provided however that the foregoing

12  proceedings and documents shall be deemed satisfactory to RLI and the Debtor so long as they

13  do not deviate in any material way from the terms set forth in the Plan Term Sheet.

14      (i)    No event, condition or circumstance shall have occurred or arisen subsequent to

15  June 3, 2011 which has had or could reasonably be expected to have or give rise to a Material

16  Adverse Change.

17      (j)    Subsequent to June 3, 2011, there shall be no threatened or pending suit, action,

18  investigation, inquiry or other proceeding by or before any court of competent jurisdiction (prior

19  to the date of the Plan Support Agreement excluding the Chapter 11 Case and the Class Action)

20  which is likely to have a Material Adverse Change.

21      (k)    The Effective Date shall have occurred on or before August 22, 2011.

22      (l)    The managing member of the Reorganized Debtor shall have been designated by

23  Greystar as of the Effective Date, and directors' and officers' liability insurance (or comparable

24  insurance) shall be available to the officers of the Reorganized Debtor and such managing

25  member on terms reasonably satisfactory to Greystar.

26      (m)    All waiting periods imposed by applicable law (including, without limitation,

27  under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable) in

28  connection with the consummation of the Plan and transactions contemplated thereby shall have

1    expired or been terminated without any action having been taken by any court of competent

2    jurisdiction restraining, preventing or imposing materially adverse conditions upon such

3    transactions, and the Plan Proponents shall have received all material regulatory approvals

4    required for the consummation of the Plan and the transactions contemplated thereby and for the

5    Reorganized Debtor to continue to carry on its businesses without material change, each of

6    which approvals shall have become final.

7           (n)      Subsequent to June 3, 2011, the Debtor shall have operated in a manner consistent

8    with its ordinary course or business prior to the date of the Plan Support Agreement.

9           (o)      The Reorganized Debtor shall receive good and marketable, fee simple title to the

10   Property.

11          (p)      The Property shall be free and clear of Liens, Claims, interests and encumbrances,

12   except those specifically permitted by Greystar in Greystar's sole discretion.

13          (q)      Greystar shall have received an owner's policy of title insurance in form and

14   substance acceptable to Greystar in Greystar's sole discretion, subject only to such exceptions as

15   Greystar approves during the review process.  All existing insurance policies of any kind

16   (including without limitation title insurance and property and casualty insurance) related to the

17   Property shall be maintained in full force and assigned to Greystar.  The Debtor and RLI shall

18   not have done anything to impair coverage under any of the foregoing insurance policies.

19          (r)      No Termination Event shall have occurred.

20   **9.3    Waiver of Conditions**

21          Notwithstanding anything contained herein to the contrary, Greystar shall have the

22   exclusive right, in its sole discretion, to deem satisfied or waived any of the conditions set forth

23   above in Sections 9.2(b), (f), (i), (j), (k), (m), (n), (o), (p) and (q), and such determination by

24   Greystar shall be binding on all Plan Proponents and other parties in interest. Each of the other

25   conditions may be waived by the party identified as having the applicable consent right, in each

26   case in the reasonable discretion of such party; *provided*, *however*, that any such waiver shall not

27   be effective without the consent of the Greystar.

28

**ARTICLE X**

**RETENTION OF JURISDICTION**

**10.1    Scope of Retention of Jurisdiction**

Notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the holder), including, without limitation, the resolution of any Request for Payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code as well as applications for compensation and reimbursement of expenses of Class Action Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or Rule 7023 of the Bankruptcy Rules; *provided, however,* that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Reorganized Debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)    hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(d)    effectuate performance of and payments under the provisions of the Plan;

(e)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

(f)    enter such orders as may be necessary or appropriate to execute, implement, or

1  consummate the provisions of the Plan and all contracts, instruments, releases, and other

2  agreements or documents created in connection with the Plan, the Disclosure Statement, or the

3  Confirmation Order;

4      (g)    hear and determine any matters arising in connection with or relating to the Plan,

5  the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other

6  agreement or document created in connection with the Plan, the Disclosure Statement, or the

7  Confirmation Order;

8      (h)    hear and determine disputes arising in connection with the interpretation,

9  implementation, consummation, or enforcement of the Plan, including disputes arising under

10  agreements, documents, or instruments executed in connection with the Plan;

11      (i)    consider any modifications of the Plan, cure any defect or omission, or reconcile

12  any inconsistency in any order of the Bankruptcy Court, including, without limitation, the

13  Confirmation Order;

14      (j)    issue injunctions, enter and implement other orders, or take such other actions as

15  may be necessary or appropriate to restrain interference by any entity with the implementation,

16  consummation, or enforcement of the Plan or the Confirmation Order;

17      (k)    enter and implement such orders as may be necessary or appropriate if the

18  Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

19      (l)    enforce all orders, judgments, injunctions, releases, exculpations,

20  indemnifications, and rulings entered in connection with the Chapter 11 Case;

21      (m)    except as otherwise limited herein, recover all assets of the Debtor and property of

22  the Estate, wherever located;

23      (n)    hear and determine matters concerning state, local, and federal taxes in

24  accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

25      (o)    hear and determine all disputes involving the existence, nature, or scope of the

26  Debtor's discharge;

27      (p)    hear and determine such other matters as may be provided in the Confirmation

28  Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy

1    Code; and

2        (q)    enter one or more final decrees closing the Chapter 11 Case.

3    **10.2    Failure of the Bankruptcy Court to Exercise Jurisdiction**

4        If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or

5    is otherwise without jurisdiction over any matter arising in, arising under, or related to the

6    Chapter 11 Case, including the matters set forth in Section 10.1 of the Plan, the provisions of this

7    Article X shall have no effect upon and shall not control, prohibit, or limit the exercise of

8    jurisdiction by any other court having jurisdiction with respect to such matter.

9                                    **ARTICLE XI**

10                            **MISCELLANEOUS PROVISIONS**

11   **11.1    Professional Fee Claims; Expense Reimbursements**

12       All final applications seeking allowance and payment of Professional Fee Claims

13   pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code and Substantial

14   Contribution Claims under Section 503(b)(3), (4), or (5) of the Bankruptcy Code must be filed

15   and served on the Reorganized Debtor, the Debtor, RLI, their counsel, and other necessary

16   parties in interest no later than sixty (60) days after the Effective Date, unless otherwise ordered

17   by the Bankruptcy Court.  Objections to such applications must be filed and served on the

18   Reorganized Debtor, the Debtor, RLI, their counsel, and the requesting Professional or other

19   entity no later than twenty (20) days (or such longer period as may be allowed by order of the

20   Bankruptcy Court) after the date on which the applicable application was served.

21   **11.2    Administrative Claims Bar Date**

22       All Requests for Payment of an Administrative Claim (other than as set forth in Sections

23   3.1(1) and 11.1 and this Section 11.2 of the Plan) must be filed with the Bankruptcy Court and

24   served on counsel for the Debtor, the Reorganized Debtor and RLI no later than forty-five (45)

25   days after the Effective Date.  The Debtor shall provide supplemental notice of such filing

26   deadline by mail with respect to known claimants and by publication with respect to unknown

27   claimants.  Unless the Debtor or RLI objects to an Administrative Claim by the applicable

28   Claims Objection Deadline, such Administrative Claim shall be deemed Allowed in the amount

1  requested.  In the event that the Debtor or RLI object to an Administrative Claim, the Bankruptcy

2  Court shall determine the Allowed amount of such Administrative Claim.  Notwithstanding the

3  foregoing, (a) no Request for Payment need be filed with respect to an undisputed postpetition

4  obligation which was paid or is payable by the Debtor in the ordinary course of business;

5  *provided, however*, that in no event shall a postpetition obligation that is contingent or disputed

6  and subject to liquidation through pending or prospective litigation, including, but not limited to,

7  alleged obligations arising from personal injury, property damage, products liability, consumer

8  complaints, employment law (excluding claims arising under workers' compensation law),

9  secondary payor liability, or any other disputed legal or equitable claim based on tort, statute,

10  contract, equity, or common law, be considered to be an obligation which is payable in the

11  ordinary course of business; (b) no Request for Payment need be filed with respect to Cure

12  owing under an executory contract or unexpired lease if (i) the amount of Cure is fixed or

13  proposed to be fixed by the Confirmation Order or other order of the Bankruptcy Court either

14  pursuant to the Plan or pursuant to a motion to assume and fix the amount of Cure filed by the

15  Debtor and (ii) a timely objection asserting an increased amount of Cure has been filed by the

16  non-Debtor party to the subject contract or lease; and (c) no Request for Payment need be filed

17  with respect to fees payable pursuant to Section 1930 of Title 28 of the United States Code.

18  **11.3    Payment of Statutory Fees**

19       All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as

20  determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the

21  Effective Date.  All such fees that arise after the Effective Date shall be paid by the Debtor.  The

22  obligation of the Debtor to pay such fees as shall continue only until the Chapter 11 Case is

23  closed, dismissed, or converted.

24  **11.4    Modifications and Amendments**

25       The Plan Proponents may alter, amend, or modify the Plan under Section 1127(a) of the

26  Bankruptcy Code at any time prior to the Confirmation Date, *provided*, *however*, that any such

27  alteration, amendment, or modification shall not be effective without the consent of (a) Greystar

28  in Greystar's sole discretion and (b) the Debtor in the Debtor's reasonable discretion.  After the

1  Confirmation Date and prior to substantial consummation of the Plan, as defined in Section

2  1101(2) of the Bankruptcy Code, the Plan Proponents may institute proceedings in the

3  Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan

4  or the Confirmation Order, *provided*, *however,* that prior notice of such proceedings shall be

5  served to the extent required by the Bankruptcy Rules or order of the Bankruptcy Court.

6  **11.5    Severability of Plan Provisions**

7  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy

8  Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of Greystar (and

9  subject to the reasonable consent of the Debtor), shall have the power to alter and interpret such

10  term or provision to make it valid or enforceable to the maximum extent practicable, consistent

11  with the original purpose of the term or provision held to be invalid, void, or unenforceable, and

12  such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any

13  such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan

14  shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by

15  such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial

16  determination and shall provide that each term and provision of the Plan, as it may have been

17  altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its

18  terms.

19  **11.6    Successors and Assigns and Binding Effect**

20  The rights, benefits, and obligations of any Person named or referred to in the Plan shall

21  be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal

22  representative, successor, or assign of such entity, including, but not limited to, the Reorganized

23  Debtor and all other parties in interest in the Chapter 11 Case and any subsequent bankruptcy

24  case involving the Debtor.

25  **11.7    Compromises and Settlements**

26  From and after the Effective Date, the Reorganized Debtor and RLI, as applicable, may

27  compromise and settle various Claims against them and/or Retained Litigation Rights and other

28  claims that they may have against other Persons without any further approval by the Bankruptcy

1    Court.

2    **11.8    Releases and Satisfaction of Subordination Rights**

3    All Claims against the Debtor and all rights and claims between or among the holders of

4    Claims relating in any manner whatsoever to any alleged subordination rights shall be deemed

5    satisfied by the distributions under, described in, contemplated by, and/or implemented in the

6    Plan. Distributions under, described in, contemplated by, and/or implemented by the Plan to the

7    various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like

8    legal process by any holder of a Claim by reason of any alleged subordination rights or

9    otherwise, so that each holder of a Claim shall have and receive the benefit of the distributions in

10    the manner set forth in the Plan.

11    **11.9    Releases and Related Matters**

12    (a)    **Debtor Releases**

13    **On the Effective Date, the Debtor shall release all claims, rights and causes of**

14    **action against (1) the current members, directors, officers and employees of the Debtor**

15    **(other than for money borrowed from or owed to the Debtor by any such members,**

16    **directors, officers or employees as set forth in the Debtor's books and records) and the**

17    **Debtor's agents and advisors (including lawyers), (2) the Creditors' Committee and its**

18    **advisors (solely in their capacity as such), (3) Greystar, its affiliates, and their respective**

19    **officers, directors, employees, partners, members, managers and advisors (including**

20    **lawyers) and (4) RLI and its officers, directors, employees, partners, members, managers**

21    **and advisors (including lawyers) (the parties described in Section 11.9(a)(1)-(4), collectively**

22    **"Released Parties"), so long as such releases do not vitiate or impair coverage under any**

23    **insurance policies related to the Property.**

24    (b)    **Third Party Releases**

25    **As of the Effective Date, for good and valuable consideration, the adequacy**

26    **of which is hereby confirmed, to the maximum extent permitted by law, each holder of any**

27    **Claim or Interest that votes to accept the Plan (each a "Releasing Party") shall be deemed**

28    **to forever release, waive, and discharge all claims, obligations, suits, judgments, damages,**

1  demands, debts, rights, causes of action, and liabilities whatsoever, against the Released

2  Parties arising from or related to the Debtor's pre- and/or post-petition actions, omissions

3  or liabilities with respect to the Property.

4      (c)    **Waiver of Statutory Limitations on Releases**

5      **THE LAWS OF SOME STATES (FOR EXAMPLE, CALIFORNIA CIVIL**

6  **CODE §1542) PROVIDE, IN WORDS OR SUBSTANCE THAT A GENERAL RELEASE**

7  **DOES NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT**

8  **KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING**

9  **THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY**

10  **AFFECTED HIS DECISION TO RELEASE.  THE RELEASING PARTIES IN EACH OF**

11  **SECTIONS 11.9(a), (b), AND (c) OF THE PLAN ARE DEEMED TO HAVE WAIVED**

12  **ANY RIGHTS THEY MAY HAVE UNDER SUCH STATE LAWS AS WELL AS UNDER**

13  **ANY OTHER STATUTES OR COMMON LAW PRINCIPLES OF SIMILAR EFFECT.**

14  **11.10   Discharge of the Debtor**

15      (a)    Except as otherwise provided herein or in the Confirmation Order, all

16  consideration distributed under the Plan shall be in exchange for, and in complete satisfaction,

17  settlement, discharge, and release of, all Claims and Interests of any nature whatsoever against

18  the Debtor or any of its assets or properties and, regardless of whether any property shall have

19  been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan

20  on account of such Claims; and upon the Effective Date, except as otherwise provided herein or

21  in the Confirmation Order, (i) the Debtor shall be deemed discharged and released under Section

22  1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to,

23  demands and liabilities that arose before the Confirmation Date, and all debts of the kind

24  specified in Section 502 of the Bankruptcy Code, whether or not (A) a Proof of Claim based

25  upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (B) a Claim

26  based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (C) the holder of

27  a Claim based upon such debt accepted the Plan, and (ii) all Interests shall be terminated.

28      (b)    As of the Effective Date, except as provided in the Confirmation Order, all

1    Persons shall be precluded from asserting against the Debtor, Greystar or the Reorganized

2    Debtor, or any of their respective officers, directors, members, agents, affiliates or professionals

3    (including lawyers) any other or further Claims, debts, rights, causes of action, liabilities, or

4    Interests relating to the Debtor based upon any act, omission, transaction, or other activity of any

5    nature that occurred prior to the Confirmation Date related to the Debtor or the Property.  In

6    accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the

7    Confirmation Order shall be a judicial determination of discharge of all such Claims and other

8    debts and liabilities against the Debtor and termination of all Interests, pursuant to Sections 524

9    and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against

10   the Debtor at any time, to the extent that such judgment relates to a discharged Claim or

11   terminated Interest.

12          (c)     The discharge of the Debtor pursuant to the Plan is not intended to limit in any

13   way the Debtor's insurance coverage or to deprive any third party of any rights to such coverage

14   that may otherwise exist.

15   **11.11  Injunction**

16          (a)     **Except as provided in the Confirmation Order, as of the Effective Date, all**

17   **Persons that have held, currently hold, may hold, or allege that they hold, a Claim or other**

18   **debt or liability that is discharged or an Interest or other right of an equity security holder**

19   **that is terminated pursuant to the terms of the Plan are permanently enjoined from taking**

20   **any of the following actions against the Debtor, the Reorganized Debtor, Greystar and any**

21   **of their respective officers, directors, members, agents, affiliates or professionals (including**

22   **lawyers), subsidiaries or their property on account of any such discharged Claims, debts,**

23   **or liabilities or terminated interests or rights:  (i) commencing or continuing, in any**

24   **manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting,**

25   **or recovering in any manner or in any place any judgment, award, decree, or order; (iii)**

26   **creating, perfecting, or enforcing any Lien or encumbrance in any manner or in any place;**

27   **or (iv) commencing or continuing any action, in each such case in any manner or in any**

28   **place or against any Person that does not comply with or is inconsistent with the provisions**

of the Plan.

(b)    **As of the Effective Date, all Persons that have held, currently hold, or may hold, a claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability that is released pursuant to Section 11.9 of the Plan or is subject to exculpation pursuant to Section 11.12 of the Plan are permanently enjoined from taking any of the following actions on account of such released claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner or in any place any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance in any manner or in any place; or (iv) commencing or continuing any action, in each such case in any manner or in any place or against any Person that does not comply with or is inconsistent with the provisions of the Plan.**

(c)    Without limiting the effect of the foregoing upon any person, by accepting distributions pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 11.11.

**11.12    Exculpation and Limitation of Liability**

(a)    **None of (i) the Debtor, (ii) the Reorganized Debtor, (iii) Greystar, (iv) the Creditors' Committee, or (v) any of the respective current or former members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders, or affiliates of the foregoing (but solely in their respective capacities as such), shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders, or affiliates, or any of their respective successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the**

1     **Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan**

2     **or the property to be distributed under the Plan, except for acts or omissions which are the**

3     **result of fraud, gross negligence, or willful misconduct, or willful violation of federal or**

4     **state securities laws or the Internal Revenue Code (in each case as determined by a Final**

5     **Order), and in all respects shall be entitled to reasonably rely upon the advice of counsel**

6     **with respect to their duties and responsibilities under the Plan.**

7             **(b)**     **Notwithstanding any other provision of the Plan, no holder of a Claim or an**

8     **Interest, no other party in interest, none of their respective members, directors, officers,**

9     **employees, advisors, attorneys, professionals, agents, partners, stockholders, or affiliates,**

10     **and none of their respective successors or assigns, shall have any right of action against (i)**

11     **the Debtor, (ii) the Reorganized Debtor, (iii) Greystar, (iv) the Creditors' Committee, or**

12     **(vi) any of the respective current or former members, directors, officers, employees,**

13     **advisors, attorneys, professionals, agents, partners, stockholders, or affiliates of the**

14     **foregoing (but solely in their respective capacities as such), for any act or omission in**

15     **connection with, relating to, or arising out of, the Chapter 11 Case, the formulation,**

16     **negotiation, or implementation of the Plan, solicitation of acceptances of the Plan, the**

17     **pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the**

18     **Plan, or the administration of the Plan or the property to be distributed under the Plan,**

19     **except for acts or omissions which are the result of fraud, or willful misconduct or willful**

20     **violation of federal or state securities laws or the Internal Revenue Code (in each case as**

21     **determined by a Final Order).**

22     **11.13  Term of Injunctions or Stays**

23     Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays

24     provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code or

25     otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in

26     the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

27     **11.14  Revocation, Withdrawal, or Non-Consummation**

28     The Plan Proponents (with the consent of Greystar, which shall be granted or withheld in

1  Greystar's sole discretion) reserve the right to revoke or withdraw the Plan at any time prior to

2  the Confirmation Date and to file subsequent plans of reorganization.  If the Plan Proponents

3  revoke or withdraw the Plan in its entirety, or if Confirmation or the Effective Date does not

4  occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise

5  embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of

6  Claims), assumption or rejection of executory contracts or unexpired leases effected by the Plan,

7  and any document or agreement executed pursuant to the Plan shall be deemed null and void,

8  and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the

9  Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or

10  against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights

11  of the Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute an

12  admission of any sort by the Debtor or any other Person.

13  **11.15   Plan Supplement**

14          The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court at least five

15  (5) days prior to the Voting Deadline.  Upon such filing, all documents included in the Plan

16  Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal

17  business hours or may be accessed online at www.ca.uscourts.gov (cm/ecf). Holders of Claims

18  or Interests may obtain a copy of any document included in the Plan Supplement upon written

19  request to the Debtor in accordance with Section 11.16 of the Plan.

20  **11.16   Notices**

21          All notices, requests and other communications hereunder must be in writing and will be

22  deemed to have been duly given only if delivered personally or by facsimile or electronic

23  transmission or mailed (first class postage prepaid) to the parties at the following addresses,

24  email addresses, or facsimile numbers:

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2268533.5  Roosevelt - Plan of Reorganization

If to the Debtor:

Roosevelt Lofts, LLC
c/o Milbank Real Estate Services, Inc.
Attention:  M. Aaron Yashouafar
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  mayashoua@milbankre.com
with a copy (which shall not constitute notice) to:

David L. Neale, Esq.
Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Fax:  (310) 229-1234
Email:  DLN@LNBYB.COM

If to RLI:

The Roosevelt Lofts, Inc.
c/o Milbank Real Estate Services, Inc.
Attention:  M. Aaron Yashouafar
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  mayashoua@milbankre.com
with a copy (which shall not constitute notice) to:

Homan Taghdiri, Esq.
General Counsel
Milbank Real Estate Services, Inc.
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  htaghdiri@milbankre.com

If to Greystar:

Greystar GP, LLC
Attention: A. Joshua Carper
3rd Floor
18 Broad Street
Charleston, NC 29401
United States of America
Fax: (843) 579-9420
Email:  jcarper@greystar.com

with a copy (which shall not constitute notice) to:

Robert A. Klyman, Esq.
Latham & Watkins LLP
355 S. Grand Ave.
Los Angeles, CA  90071
Fax:  (213) 891-8763
Email:  robert.klyman@lw.com

**11.17    Dissolution of Creditors' Committee**

On the Effective Date, the Creditors' Committee shall dissolve and its members shall be released and discharged from all duties and obligations arising from or related to the Chapter 11 Case.  The Professionals retained by the Creditors' Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date, except as may be necessary to file applications pursuant to Section 11.1 of the Plan.

**11.18    Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**11.19    Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of California shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation of each Debtor shall govern corporate governance matters with respect to such Debtor; in each case without giving effect to the principles of conflicts of law thereof.

[space intentionally left blank]

1

Dated:  July 8, 2011                          Roosevelt Lofts, LLC

2

                                              By:  /s/ M. Aaron Yashouafar

3

                                              Name:  M. Aaron Yashouafar

4                                             Title:    President

5                                             GS Roosevelt, LLC

6                                             By:  /s/ A. Joshua Carper

7                                             Name:  A. Joshua Carper
                                              Title:    Vice President
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

LNBYB000001

# PLAN SUPPORT AGREEMENT

This PLAN SUPP ORT AGRE EMENT (as th e same m ay be am ended, modified or supplem ented from tim e to ti me in accord ance with the term s hereof, this " **Agreement**"), dated as of June 3, 2011, is en tered into by and am ong Roosevelt Lofts, LLC, as debtor and debtor in possession (the " **Debtor**") in case no. 09-14214-GM (the " **Bankruptcy Case** ") pending before the United States B ankruptcy Court for the Centra l District of Ca lifornia (the "**Bankruptcy Court** "), The Roosevelt Lofts, Inc. (" **RLI** ") and Greystar GP, LLC (with its designee, as applicab le, " **Greystar**"). Each of the Debtor, RLI and Greystar are referred to herein individually as a "**Party**", and collectively as the "**Parties**".

# RECITALS

WHEREAS, prior to the date hereof, representatives of the Parties have discussed the possibility of consummating a financial restru cturing of the Debtor's indebtedness and other obligations (the " **Restructuring**") as se t forth in th is Agre ement and the Plan Te rm Sheet (as defined below).

WHEREAS, it is anticipated that the Restructuring will be implemented through a plan of reorganization jointly sponsored by the Debtor, RLI a nd Greystar (the "**Plan**") and filed in the Bankruptcy Case.

WHEREAS, each Party desires that the te rms and conditions of the Plan will be substantially consistent with those d escribed in th e plan term sheet attach ed hereto as Exhibit A (the "**Plan Term Sheet**") and incorporated herein by reference.

WHEREAS, Bank of America (as defined below) has agreed that it will assign the BofA Claim (as defined below) to a " **Purchaser**" arran ged by the " **Borrower Parties** " (a s defined below) in accordance with the term s of tha t ce rtain se ttlement agreem ent b etween the Debtor and Bank of America date d as of June 3, 2011 (the " **BofA Settlement**"). The Debtor is one of the Borrower Parties, and together with the other Borrower Parties and RLI, has executed an agreement to d esignate Greystar as Purch aser under the BofA Settlem ent, attached hereto as Exhibit B (the " **Borrower Parties Designation Agreement** ") and incorporated herein by reference.

WHEREAS, the Debtor has entered into th is Agreement in order to, am ong other things, implement the terms and conditions of the BofA Settlement.

WHEREAS, subject to the terms and conditions of this Agreement, the Plan Term Sheet and Plan Support Agreem ent Order (as define d below), the Parties have agreed to support the Restructuring and the Plan.

NOW, THEREFORE, in consideration of the prem ises and agreem ents set forth herein, and for other good and valuable consid eration, the receip t and sufficiency of which ar e hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

LNBYB000002

1.      Incorporation of Plan Term Sheet and Def initions.  The Plan Term Sheet is expressly incorporated herein by reference an d is m ade part of th is Agreement.  In the ev ent there is a co nflict between the term s and conditions of the Plan Term Sheet, the Le tter of Intent (defined below) and this Agreem ent, the term s and conditions of the Plan Term   Sheet shall govern.  Capitalized term s used and not define d in this Agreem ent shall have the m  eaning ascribed to them in the Plan Term   Sheet.  The Parties agree that this Agreem ent constitutes the "Definitive Agreement" for purposes of the Letter of Intent.

2.      Definitions.  The following terms shall have the following definitions:

"363 Auction" means the auction with respect to the Property to be held in accordance with the Bidding Procedures.

"363 Order" means an order in form and substan ce acceptable to Greystar authorizing and directing the Debtor to sell the Property to the winning bidder at the 363 Auction.  The 363 Order shall include, am ong other things, (a) findings that (i) Greystar upon the exercise of the 363 Purchase Right or (ii) such other bidder that the Bankruptcy Court approves as the winning bidder     at the 363 Auction shall acquire good and marketable f ee title to the Property, f  ree and clear of  all liens, c laims, interes ts and encumbrances, and (b) other reasonable, usual and customary provisions.

"363 Purchase Right" means Greystar's right to credit bid  the full original par am ount of the BofA Claim  (including defa ult interest and fees ) at the 363 Auction; provided that if the Plan Eff ective Date shall h ave occurred on or by the Outside Date, Greystar shall not exercise th e 363 Purchase Right; and provided further that, pursuant to the Bof A/Mechanics' Lien Settlem ent Order,  the BofA Claim shall be subject to the Mechanics' Lien Claims in any 363 Auction, but shall not be subject to any claims of any insider or affiliate of the Debtor or RLI.

"363 Sale Hearing" means the hearing to occur on Septem ber 2, 2011 or such later date set by the Bankruptcy Court       on the first hearing d ate available after September 2, 2011 (but in no event later than    the 363 Sale Outside Date) at which the Bankruptcy Court shall approve the result of the 363 Auction and enter the 363 Order.

"363          Sale Outside Date" means September 16, 2011.

"Agreement" has the meaning set forth in the preamble hereof.

"Bank of Am erica" m eans Bank of Am erica, N.A., individually and as agent for a group of lenders under the BofA Loan Agreement.

"Bankruptcy Code" m eans title 11 of the United States Code, 11 U.S.C. §§101 et seq., as amended from time to time and as applicable to the Bankruptcy Case.

"Bankruptcy Case" has the meaning set forth in the preamble hereof.

"Bankruptcy Court" has the meaning set forth in the preamble hereof.

LNBYB000003

"Bidding Procedures" m eans the bidding procedures, in for m a nd substance reasonably acceptab le to Greystar, th at estab lish the rules an d procedures for the 363 Sale and 363 Auction. Am ong other provisions, the Bidding Procedures shall (a) require qualified bidders to (i) subm it a written bid for the Property (a " **Bid**") and evidence of their f inancial ab ility to perf orm to the Debtor, Greystar and the Official Committee of Creditors appointed in the Ba nkruptcy Case no later than five business days prior to the 363 A uction, (ii) bid all cash in an am ount equal to at l east the sum of (A) the BofA Claim , (B) the Mechanics' Lien Claim s (in an am ount of at least $16,000,000) and (C) an addition al $1,000,000, (iii) bid for all of th e Property in its entirety, (iv) subm it a Bid that contains no contingencies or conditi ons other than those set forth in the Plan S upport Agreem ent, (v) subm it a Bid that does not contain any condition related to financing or the satisfaction of diligence, and (b) provide for (1) Greystar's exercise of the 363 Purchase Ri ght, (2) increm ental bidding am ounts of at least $250,000 and (3) payment in full and in cash through the Closing of (X) the amount of cash necessary to pay in full the BofA Claim to Greys tar as the ho lder of such claim , and (Y) th e amount of c ash necessary to pay in full the Mechanics' Lien Claims to the holders of such claim s or to fund a reserve fo r the benefit of such holders to the extent such Mechanics' Lien Claims are disputed by the Debtor.

"Bidding Procedures Motion" means the motion to be filed by the Deb tor in for m and substance reasonably satisfactory to Greystar s eeking entry of the Bidding Procedures Order.

"Bidding Procedures Order " m eans the order in form and substance satisfactory to Greystar ente red by th e Bankruptcy Court approving the Bidding Procedures.

"BofA Claim" means (a) a ll claims held by Ba nk of America arising out of, relating to and/or secured by the BofA Loan Agreem ent and (b) all o f BofA's rig ht, title and interest in and under all documents, agreements and instruments relating thereto or that cons titute the BofA Loan Agreem ent. For avoidan ce of doubt, the BofA Claim for purposes of this Agreem ent shall not incl ude any obligations on th e part of Bank of America to perform under the BofA Loan Agreement.

"BofA Loan Agreement" means, collectively, (a) that certain amended and restated Construction Loan Agreement (the "**Loan Agreement**") with B ank of Am erica as adm inistrative agent for the B ank Group in the original principal am ount of $78,840,375, (b) that certain Deed of Trust Note dated as of on or about March 9, 2006 in the original principal am ount of $78,840,375 (the " **Note**"), (c) those certain (i) Construction Deed of Trust, Assignm ent of Rents and Leases, Secu rity Agreem ent and Fixture F iling recorded on March 22, 2006 and re-recorded on November 17, 2006 to correct certain typogra phical errors (the " **Fee Deed of Trust**"), and (ii) Construction Deed of Trust, Assignment of Rents and L eases, Security Agreem ent and Fixture F iling (California Leasehold Interes t) r ecorded on March 22, 2006 (the " **Leasehold Deed of Trust**," and collec tively, with th e F ee Deed of Trust, the " **Deeds of Trust** "), each of which (x) secure the Lo an Agreement and No te and (y) encum ber the Property (defined

3

below), including an abso lute assignment of all rents, i ssues and profits generated fro m operation of the Property and (d) all docum ents, agreements and instrum ents relating to any of the foregoing..

"BofA/Mechanics' Lie n Settlem ent Order " m eans that certain order entered by the Bankruptcy Court (1) Granti ng Motion by Class Representatives for Approval o f Settlem ent; (2 ) Approving Settlem ent; (3 ) Setting C ontinued Status Conference; and (4) Other Ancillary Relief, entered by the Bankruptcy Court on May 20, 2011 in Adv. Action No. 10-01031 [docket no. 83].

"BofA Settlement" has the meaning set forth in the recitals hereof.

"BofA/Debtor Settlem ent Order" h as the m eaning set forth in Section 6 hereof.

"Borrower Parties Designation Agreem ent" has the m eaning set forth in the recitals hereof.

"Broker" means Charles Sturges and/or CSIV Investments.

"Broker's C ommissions" m eans any and all commissions payable to the Broker in connection with the transactions contemplated by this Agreement.

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

"Claim Assignment" means that certain Assignment of Claims executed or to be executed by Bank of America in favor of the Purcha ser in the form attached hereto as Exhibit C, or in such other form as is acceptable to Greystar in its sole discretion.

"Confirmation Hearing" means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"Confirmation Order" m eans the o rder entered by th e Bankruptcy Court confirming t he Plan, including all exhibits, appendices and related docum ents, each in form and substance reasonably acceptable to the Parties.

"Disclosure Statement" means the disclo sure statement in respec t of the Plan which shall be acceptable in form and substance to the Parties.

"Escrow Agreem ent" means an esc row agreem ent in the form attached hereto as E xhibit D , or in such other form as is acceptable to Greystar in its s ole discretion.

"Final Order" m eans a n order or judgm ent of the Bankruptcy Court or any other c ourt of competent ju risdiction as to which the tim e to appeal, petitio n f or

certiorari, or m ove for reargum ent or rehear ing has expired and as   to w hich no appeal, petition for certiorari, or ot  her proceedings for reargum ent or reh earing shall th en be pending or as to which any appe  al, petition for certiorari, r  eargue, or rehear shall have been waived in writing in f orm and substance s atisfactory to the Partie s, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court   or other court of  com petent jurisdiction shall h ave b een determined by the h  ighest cou rt to which    such order was appeal  ed, or certiorari, reargument, or rehearing shall have been deni  ed or resulted in no m  odification of suc h order and the tim  e to take any f  urther appe al, petition for certiorari, or m     ove for reargument or rehearing shall have expired.

"Foreclosure Right " means Greys tar's in rem autom atic relief from  the automatic stay under 11 U.S.C. Section 362 to   credit bid the full original par am ount of the BofA Claim (including default interest and  fees) in a foreclosure  sale of the Pro perty at a date, tim e and place in Los Angeles, Calif ornia of Greystar's choo sing (on or after September 2, 2011) without further notice, he aring or order of the Bankruptcy Court and with no limitations on   such relief; provided  th at if the  Pla n Ef fective Date shall h  ave occurred on or by the Outside Date, Greystar    shall no t ex ercise the F oreclosure Right; and provided  further th at, pursu ant to the BofA/Mechanics' Lien Settlem ent Order, the BofA Claim shall be subject to the Mechanics' Lien Claims in any foreclosure sale of the Property but shall not be  subject to any claims of any insider or af filiate of the Debtor or RLI.

"Greystar Receivership Stipulation" means that certain s tipulation for th e appointment of a receiver to take control of   the Property in the for m attached hereto as Exhibit E , which stipulation shall be executed       and delivered concurrently with the execution of this Agreement, but shall on ly be enforceable once Greystar has the rig ht to exercise its Foreclosure Right.

"Letter of Intent" and "LOI" means that certain Letter of Intent dated as of May 23, 2011 (attached hereto as Exhibit F and incorporated herein by reference).

"Liquidated  Damages" m eans the $500,000 in dam     ages and related guarantees described in Section 12 of the Letter of Intent.

"Material Adverse Change" means, since the date of this Ag reement, any change, effect, event, o  ccurrence, d evelopment, circum stance or state of facts occurs which has had or would reasonably be expected to have a materially adverse effect on the business, properties, prospects (financial or othe rwise), operations, financial condition or results of operations of  the Debtor, taken as  a whole, or w hich would m aterially impair the Debtor's ability to p erform its obliga tions under this Agreement or have a m aterially adverse effect on or prevent or m   aterially delay the con summation of the trans actions contemplated by this Agreement.

"Mechanics' Lien Claim  s" m eans all allowed claim  s arising und er or relating to work of i mprovement that arose   prior to, and rem ain unpaid as of, the Plan Effective Date and that are duly perfected.

LNBYB000006

"Outside Date" means August 22, 2011, unless such date is extended by written agreement of Greystar (such agreement to be granted or withheld in Greystar's sole discretion).

"Parties" has the meaning set forth in the preamble hereof.

"Plan" means a chapter 11 plan of reorganization under the Bankruptcy Code, which shall be substantially consistent with this Agreement, the Plan Term Sheet and the Plan Support Agreement Order, and otherwise acceptable to Greystar in Greystar's sole discretion and reasonably acceptable to the other Parties.

"Plan Definitive Documents" has the meaning set forth in section 3 hereto.

"Plan Effective Date" means the date on which the Plan becomes effective.

"Plan Support Agreement Order" means an order in the form and substance acceptable to Greystar that, among other things, (a) memorializes and implements the terms of this Agreement, (b) approves the Borrower Parties Designation Agreement and, subject to the terms thereof, irrevocably designates Greystar as the Purchaser under the BofA Settlement, (c) requires the Debtor to file a Plan that provides for (i) Greystar to receive 100% of the equity interests of Roosevelt Lofts, LLC as reorganized (or such entity that holds, as of the Plan Effective Date, such equity interests) free and clear of all liens, claims, encumbrances and interests, (ii) approves and allows the BofA Claim as of the earlier of (A) the Effective Date or (B) the date on which Greystar acquires the BofA Claim (x) in an amount reasonably acceptable to Greystar, but in no event less than an amount equal to $78,422,049.33 plus interest at the default rate and all fees, charges and other costs which have accrued under the BofA Loan Agreement from and after September 3, 2009, and (y) as perfected, valid and duly enforceable (without any defense, counterclaim, right of offset or subordination, or any other claim or challenge by any party in interest) with first priority security against the Property subject only to the Mechanics' Lien Claims as described in the BofA/Mechanics' Lien Settlement Order and (iii) if the Plan has not been performed in accordance with its terms by the Outside Date, automatic in rem relief from stay for Greystar (as holder of the BofA Claim) on the Plan Effective Date to foreclose on the Property (pursuant to the Foreclosure Right) on the tenth day following the Outside Date (with such timing held to be commercially reasonable for the exercise of the Foreclosure Right), (d) approves the Greystar Receivership Stipulation and authorizes and directs the Debtor to perform under and in accordance with its terms and (e) (i) approves and authorizes and directs the Debtor to take all steps necessary to implement the 363 Purchase Right, (ii) obtain entry of the Bidding Procedures Order, (iii) obtain approval of the 363 Order on or before the 363 Sale Outside Date and (iv) authorizes Greystar to take all of the foregoing steps if the Debtor fails to timely take such steps.

"Plan Term Sheet" has the meaning set forth in the recitals hereto.

"Purchaser" has the meaning set forth in the recitals hereto.

LNBYB000007

"Property" m eans that certain real property located at 7    27 W est 7th Street, Los Angeles, California, and all     improvements, personal property (including, without limitation, all accounts of     the Debtor , all funds and assets therein, and     all Property described on Exhibit G hereto) and other rights related to or appurtenant to such improvements, personal property and real prope rty and any other collateral securing the BofA Claim.

"Restructuring" has the meaning set forth in the recitals hereto.

"RLI" has the meaning set forth in the preamble hereof.

"Termination Date" has the meaning set forth in section 6 hereto.

"Termination Event" means the occurrence of a ny of the events set forth in section 6 hereto.

"Voting De adline" m eans the date fixed by th e Bankruptcy Court as the deadline for holders of claims to vote on the Plan.  The record date for voting claims shall be the Voting Deadline.

3.    Obligations of the Par ties.  Subject to the ter ms  and conditions of this Agreement and the Plan Term Sheet, each of th e Parties agrees, subject to  the Term ination Date (as defined below in section 6 hereof), as follows with respect to the Restructuring and the Plan:

a.    to prom ptly negotiate, in good faith, the d     efinitive docu ments implementing, achieving and relating to the Re structuring and the Plan, including, but not limited to, (i) the Dis     closure S tatement and   the Plan an d (ii) all o  ther agreements, documents, exhibits (whether to this Plan     Support Agreem ent or otherwise), annexes, schedules and orders of  the Bankruptcy Court   that are necessary or  app ropriate f or the Restructuring and the prom pt consummation of the Restructuri ng and the Plan (all of the foregoing, collectively with this A    greement, the Plan Term  Sheet, the Plan and the Disclosure Statement, and in each case as am ended, modified or supplemented from time to tim e in acco   rdance with the term  s hereof or th    ereof, the " **Plan Defin itive Documents**"); provided that, in e ach case,  su ch Plan De finitive Docum ents shall not contain terms or conditions which are m aterially inconsistent with th e Plan Term  Sheet and shall otherwise be reasonably acceptab le in form and substance to the Parties (excep t as otherwise provided in this Agreement); and

b.    to promptly execute and deliver  all Plan Definitive Docum ents (to the extent a Party thereto), and otherwis  e support the prompt consummation of the transactions contem plated by, th  e Plan    Definitive Do cuments, including without limitation, to timely cast an appropriate ballot or ballots in favor of the Plan.

c.    to not object to, or support any    action or proceeding or take any other action that would, or     would reasonably be expected  to, im pede or delay, the consummation of the Restructuring, the appr    oval of  the Disclosur e Statem ent or th e confirmation or consummation of the Plan;

LNBYB000008

d.     to not vote for, consent to, intentionally induce or participate, directly or indirectly, in the formation,        filing or prosecution of any other plan of reorganization or liquidation (or disclosure stat ement related thereto) with respect to the Debtor that is in consistent with the Plan or the consumm ation of the R estructuring and the Plan;

e.     other than as expressly contem plated herein o r in the Plan Term Sheet, to not directly or indirectly seek, solic it or encourage any other plan, sale, proposal or offer of winding up, liquida tion, reorganization, m erger, consolidation, dissolution or restructuring of the Debtor or any of its assets;

f.     to not comm ence or support any ac tion or proceeding to appoint a trustee, con servator, receiver or ex aminer with expanded powers for the Debtor, or to dismiss the Bankruptcy Case, or to convert  the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code; and

g.     to use its comm ercially reasonabl e efforts to obtain Bankruptcy Court appro val of the Disclosure Statem ent and Plan as prom ptly as possible and to consummate the Restructuring and the Plan on  or before the Plan Effective Date, subject to the term s and conditions  set f orth h erein, the Plan Term Sheet, the  Disclosure Statement and Plan.

4.     <u>Obligations of Greystar.</u>

a.     <u>Support of Restructuring and Plan   </u>. Subject to the term s and conditions of this Agreem ent and the Plan Term  Sheet ( including entry of the Plan Support Agreem ent Order), Greystar further ag rees that, until this Agreem ent has been terminated in accordan ce with section 6 here  of, it sh all, s ubject to its receipt of  a Disclosure Statem ent and related voting     and solicitation m aterials approved by the Bankruptcy Court, (i) vote a  ny an d all BofA Claim  s it holds to accept th  e Plan in accordance with th e ap plicable p rocedures se t f orth in  the Disclosu re Statem ent and accompanying voting and solicitation m aterials, and (ii) return a du ly-executed ballot in connection therewith no  later than the dead line for voting on the Plan, and not (and not seek to) withdraw, ann  ul, rescind, m odify or revoke such vote to accept the P        lan; <u>provided</u>, <u>however</u>, Greystar sh all not be obligated to vo  te to accept the Plan, and m ay withdraw or revoke its vote w  ith respect to the Plan, upon (A  ) the term ination of this Agreement (<u>provided </u>, that if  Greystar is the te rminating party, Greys tar is not th  en in material breach of its obligations under th        is Agreem ent); or (B) the withdrawal, amendment, modification of, or the filing of a pleading by any of the other Parties hereto seeking to withdraw, a mend or m odify, the Plan or the oth er Plan Definitive Documents in a manner that is adverse to Greystar.

b.     <u>Acquisition of BofA Claim</u>. Subject to the terms and conditions of this Agreement and the Plan Term Sheet (including entry of the Plan Support Agreem ent Order), the Claim   As signment and the Bo     rrower Parties Designation Agreem ent, Greystar further agrees that, at its option, Gr  eystar will (i) acquire (by assignm ent) the BofA Claim from Bank of Am erica for a  cash payment of ███████ on or before the

LNBYB000009

Plan Effective Date or (ii) if Greystar does not previously acquire the BofA Claim prior to the Plan Effective Date, satisfy the BofA Claim in full by cash payment of ███████ through the Plan. Notwithstanding anything contained herein to the contrary, following the assignment of the BofA Claim to Greystar (or its designee), the amount of the BofA Claim for voting, distribution, the Foreclosure Right, the 363 Purchase Right and all other purposes shall be the full face amount of the BofA Claim, plus all accrued and unpaid interest (including default interest) and other expenses/costs that constitute the BofA Claim. Greystar shall make the deposits described in Section 9 of the Letter of Intent, and such deposits shall be subject to the terms and conditions set forth in this Agreement, the Plan Term Sheet (including entry of the Plan Support Agreement Order), the Letter of Intent and the Escrow Agreement.

c.    Payment of Broker's Commission. Greystar believes that no Broker's Commission is due and payable. To the extent the Broker's Commission becomes due and payable, Greystar shall pay the Broker's Commission. Nothing contained herein shall be deemed to make the Broker a third-party beneficiary of this Agreement. Greystar will indemnify and defend Debtor and RLI against, and hold such Parties harmless from, any claim by Broker with respect to compensation in connection with this Agreement, the consummation of the transactions contemplated hereby or in connection with the sale of the Property to Greystar. Debtor and RLI agree that each will indemnify and defend Greystar, and hold Greystar harmless from, the claims of any other broker(s), representative(s), employee(s), agent(s) or other intermediary(ies) claiming to have represented Debtor or RLI, or otherwise to be entitled to compensation in connection with this Agreement, the consummation of the transactions contemplated hereby or in connection with the sale of the Property to Greystar.

d.    Right to be Heard. Nothing contained herein shall limit the ability of Greystar, as holder of the BofA Claim or otherwise, to appear and be heard, concerning any matter arising in the Bankruptcy Case so long as such appearance is not materially inconsistent with its obligations under this Agreement, the Plan Term Sheet, the Restructuring or the Plan or is not for the purpose of hindering, delaying or preventing consummation of the Restructuring or the Plan.

5.    Obligations of the Debtor and RLI.

a.    To the extent Greystar does not acquire the BofA Claim before the Voting Deadline, the Debtor will use its best efforts to enter into an agreement with Bank of America to ensure that Bank of America shall vote the BofA Claim in favor of the Plan so such vote is timely received on or before the voting deadline

b.    From and after the date hereof, so long as Greystar is willing to perform hereunder, the Debtor and RLI hereby agree that each will not accept offers with respect to any transaction involving or relating to a potential acquisition of the BofA Claim, the Property, the Debtor, RLI or RLI's membership interests in the Debtor (including, without limitation, through a plan of reorganization).

c.      The Debtor  and RLI will prov      ide such af  fidavits and  other documentation the title company may require to issue the title insurance contemplated by Section VI(Q) of the Plan Term Sheet.

d.      The Debtor and RLI will (i) not amend, modify, terminate or waive any prov ision of  the Bof A Settle ment, and (  ii) caus e G reystar to b  e des ignated the Purchaser f or purposes  of  the BofA Settlem  ent and in the Bankruptcy Court o      rder approving the BofA Settlem  ent. Subject to    the satisfaction or waiver of Greystar's obligations hereunder, the fo      regoing designations shall be      irrevocable or further encumber or transfer any interest in the Property or any portion thereof.

e.      The Debtor and RLI will (i) pro      mptly negotiate, in goo  d f aith, execute and  deliver all docum  ents necess ary  for, and oth  erwise supp  ort, the p  rompt consummation of the transactions contemplated by, at the sole discretion of Greystar, the Foreclosure Right and the 363 Purchase Right,  (ii) not object to, or support any action or proceeding or take any   other actio n that w  ould, or would reasonab  ly be expected to, impede or delay, the consummation and Bankr  uptcy Court approval of the Foreclosure Right, the 363 Purchase Right, entry of the  Bidding Procedures Order and the 363 Order, and (iii) use commercially reasonable efforts to obtain Bankruptcy Court approval of the Bidding Procedures Order and the 363 Order as promptly as possible.

f.      Debtor and RLI will pr  ovide Greys tar with co  pies of  all of  the documents comprising the BofA Loan Agreem ent that are in the posse ssion or control of Debtor, RLI or their respective agents or cons      ultants, toge ther with a list of    all s uch documents, in each case within fourteen days of the date of this Agreement.

6.      <u>Termination of Obligations</u>.

a.      This Agree  ment shall te      rminate, and (exc  ept a s oth  erwise specifically set forth herein) all of the rights and  obligations of the Parties hereunder shall be of no further force o  r effect, in the event   that (i) the Par ties m utually agree  to s uch termination in writing   o r ( ii) th is Agreem ent is  te rminated pursuan t to the  rem aining paragraphs of this section 6.

b.      Each Party may terminate this Agreement by written no tice to the other Parties upon the occurrence of any of the following events:

(1)      a m aterial breach by any other Party of its      respectiv e obligations, representations or warran  ties under (i) this A   greement, the Plan Term  Sheet, or a  ny other Def  initive Docum ent or (ii) the Pla      n Support Order, which m aterial breach  is not cured on or  within three (3) business days after the g iving of written notice of such breach to the other Parties or, if applicable, on or with   in the cure period provided for under the applicable agreements or documents; and

(2)      the issuance by any governm ental authority, including any regulatory authority or court of comp   etent jurisdiction, of any ruling or order enjoining or restraining the      consummation of the Restructuring

LNBYB000011

and/or the confirmation and consummation of the Plan on the terms and conditions set forth herein and the Plan Term Sheet.

c.    Greystar may terminate this Agreement upon by written notice to the other Parties upon the occurrence of any of the following events:

(1)    the occurrence of a Material Adverse Change;

(2)    the failure of the Plan Effective Date to occur on or before the Outside Date;

(3)    the Debtor fails to file a motion (in form and substance reasonably acceptable to Greystar) seeking Bankruptcy Court Approval of the Plan Support Agreement Order on or before June 3, 2011 (or such later date as may be acceptable to Greystar in Greystar's sole discretion);

(4)    the Bankruptcy Court fails to enter the Plan Support Agreement Order on or before June 20, 2011 (or such later date as may be acceptable to Greystar in Greystar's sole discretion);

(5)    the Debtor fails to file the Bidding Procedures Motion on or before July 8, 2011;

(6)    the Bankruptcy Court fails to enter the Bidding Procedures Order or such order fails to become a Final Order on or before August 5, 2011 (provided, however, that the requirement of a Final Order may be waived by Greystar in its sole discretion);

(7)    the Bankruptcy Court fails, by Final Order entered on or before August 5, 2011, to schedule the 363 Sale Hearing on or before the 363 Outside Sale Date (provided, however, that the requirement of a Final Order may be waived by Greystar in its sole discretion);

(8)    the Bankruptcy Court fails to enter the 363 Sale Order or such order fails to become a Final Order on or before the 363 Outside Sale Date (provided, however, that the requirement of a Final Order may be waived by Greystar in its sole discretion);

(9)    the entry of an order by the Bankruptcy Court invalidating, disallowing or limiting in any respect, as applicable, the amount, enforceability, first priority (subject only to the Mechanics' Lien Claims), or validity of the of the BofA Claim or the liens securing the BofA Claim as described in the Plan Support Order;

(10)    the appointment in the Bankruptcy Case of a trustee or examiner with expanded powers;

11

LNBYB000012

(11)    the am ount of allowed Mechanics' Lien Claim    s or any reserve required by the Bankruptcy C ourt under the Plan with respect to the Mechanics' Lien Claims exceeds $16,000,000;

(12)    any of the representations or    war ranties se t f orth in th e Claim Assignm ent is or becom e untr ue or incorrect (provided, however, that the Liquidated Damages shall not be payable to Greystar solely due to a breach of a representation or wa  rranty by Bank of Am erica under the Claim Assignm ent, unless th e facts or circum stances giv ing rise to su ch breach of such representation or warranty also constitute a separate breach or circum stance which would entitle  Greystar to rece ive th e Liquid ated Damages);

(13)    any of the r epresentations or warranties of Debtor or RLI set forth in this Agreement is or become untrue or incorrect;

(14)    any of the representations or warranties of any Debtor Related Party (as defined in the Borr ower Parties Designation Agreem ent) set f orth in the Bor rower Parties Designation Agreem ent is o r be come untrue or incorrect;

(15)    any Debtor Related Party (as defined in the Borrower Parties Designation Agreem   ent) br eaches any of its covenants or agreements under the Borrower Parties Designation Agreement; or

(16)    the Bankrup tcy Court f ails to en ter an order on or before June 14, 2011 approving the BofA Settlem  ent (in form  and substance reasonably acceptab le to Greystar) that  irrevocably (sub ject to Greys tar's performance hereunder) designates Grey  star as the Purchaser under the BofA Settlement (the "**BofA/Debtor Settlement Order**").

d.    The date o n which this Agreem ent is term inated in a ccordance with this section 6 shall be referred to as the "**Termination Date**".

e.    If this Agre ement is ter minated pursuant to th is section 6, then all further obligations of the Parties hereunder sh  all be term inated without further liability related to th is Agreem ent; provided that Greystar sha ll h ave the righ t to the Liqu idated Damages; and provided  further that Greystar shall be un    conditionally authorized to exercise the Foreclosure Right  and the 363 Purchase Right a nd to proceed with the 363 Auction and 363 Sale Hearing, and nothing contained herein sh all prevent Greystar from exercising the Foreclosure Right and the 363 Purchase Right and to proceed with the 363 Auction and 363 Sale Hearing; and provided  further that in the event the  Debtor fails to timely file the Bidding Procedures Motion or any other motion or document related to the exercise by Greystar of the 363 Purchase Right,   Greystar shall be authorized to file any such m otion or docum ent in its sole discre  tion. Notwithstanding an y p rovision in this Agreement to the contr ary, the r ight to term inate this Agreem ent under this s ection 6 shall not be available to any   Party whose failure to f ulfill any material obligation under

LNBYB000013

this Agreement has been the cause of, or resulted in, the occurrence of the applicable Termination Event. The provisions of this Section 6(e) shall survive any termination of this Agreement.

7.  Representations of the Debtor. The Debtor hereby represents and warrants to each other Party as follows as of the date hereof:

a.  Corporate Power and Authority. It has all requisite corporate power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its obligations under, this Agreement and the Plan Term Sheet, subject only to entry of appropriate orders by the Bankruptcy Court.

b.  Authorization. The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate action on its part, other than the requisite approvals of the Bankruptcy Court.

c.  No Conflicts. The execution, delivery and performance by it of this Agreement do not and shall not (i) violate any provision of law, rule or regulation applicable to it or any of its subsidiaries or its certificate of incorporation or bylaws or other organizational documents or those of any of its subsidiaries or (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it or any of its subsidiaries is a party, other than as a result of the commencement of the Bankruptcy Case.

d.  Governmental Consents. The execution, delivery and performance by it of this Agreement do not and shall not require any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any federal, state or other governmental authority or regulatory body, other than such filings as may be necessary or required in connection with the Bankruptcy Case.

e.  No Litigation. No litigation or proceeding before any court, arbitrator or administrative or governmental body is pending against it that would adversely affect its ability to enter into this Agreement or perform its obligations hereunder (other than the Bankruptcy Case).

f.  Binding Obligation. Subject to entry of the Plan Support Agreement Order, this Agreement is the legally valid and binding obligation of the Debtor, enforceable against it in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, fraudulent conveyance and other laws affecting creditors' rights, and by general limitations in the availability of equitable remedies.

g.  Debtor owns all of the Property, and no other person or entity has any ownership interest in the Property or any portion thereof. To Debtor's knowledge, there are no liens, encumbrances or title defects of any kind affecting the Property, except those described in that certain Preliminary Report prepared by First American Title Insurance Company, May 24, 2011 Update, Order No. NCS-383344-LA2.

LNBYB000014

h.      [Intentionally Omitted.]

i.      As of the date hereof, a m inimum of $78,422,049.33 plus interest at th e defau lt rate and all fees, charges a nd other costs w hich have accrued under the BofA Loan Agreem ent from and after Sept ember 3, 2009 is owed by Debtor under the BofA Claim.

j.      Attached hereto as <u>Exhibit I</u> is a description of all bank accounts of the Debtor, and the amount of the deposits therein as of the date hereof.

k.      Attached hereto as <u>Exhibit J</u> is a true, correct, complete and current rent roll for the Property that describes all l eases, subleases and other occupancy agreem ents affecting the Property, and all security deposits received by Debtor in connection therewith.

8.      <u>Representations of RLI and Greystar</u>.  Each of RLI and Greystar severally (but not jointly) represents and warrants to the other Parties as follows with respect to itself only and as of the date hereof:

a.      <u>Corporate P ower and Authority</u> .  It has all requi site co rporate, partnership or limited liability company power and authority to enter into this Agreem ent and to carry out th e transactions contem plated by, and perform its obligations under, this Agreement.

b.      <u>Authorization</u>.  The execution and delivery of this Agreem ent and the performance of its obliga tions hereunder have been duly authorized by all necessary corporate, partnership or limited liability company action on its part.

c.      <u>No Conf licts</u>.  The execution, delivery and perform ance by it of this Agreement do not and shal l not (i) violate any provision of law, rule or regulation applicable to it or any of its subsidiar ies or its certificate of incorporation or bylaws or other organizational docum ents or those of any of its subs idiaries o r ( ii) conf lict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it or any of its subsidiaries is a party.

d.      <u>Governmental Consents</u>.  The execution, delivery and performance by it of this Agreement do not and shall not require any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any fe deral, state or other governmental authority or regulatory body, other than such filings as may be necessary or required in connection with the Bankruptcy Case.

e.      <u>No Litigation</u> .  No litigation or proceed ing before any court, arbitrator or adm inistrative or governm ental body is pending against it that would adversely a ffect its ab ility to enter in to this Agreem ent or pe rform its oblig ations hereunder (other than the Bankruptcy Case).

f.      <u>Binding Obligation</u> .  Subject to entry of the P lan Support Agreement Order, this Agreem ent is the leg ally valid an d binding obliga tion o f it, enforceable against it in accordance with its terms, except a s such enforceability may be

LNBYB000015

limited by bankruptcy, insolvency, fraudulen t conveyance and other laws affecting creditors' rights, and by general limitations in the availability of equitable remedies.

9.    <u>Entire Agreement; Prior Negotiations</u>. This Agreem ent, the LOI and the Plan Term Sheet and the Borrower Parties Designation Agreement, including any exhibits to any of the foregoing, set forth in full the term s of agreement between and among the Parties and is intended as the f ull, co mplete and exclus ive contract governing the re lationship between and among the Parties with respect to    the transactions contemplated    herein, superseding all other discussions, prom ises, representations, warran ties, agreem ents and understandings, whether written or oral, between or among the Parties with respect to the subject matter hereof; <u>provided</u>, that any confidentiality agreement between or among any of the Parties shall remain in full force and effect in accordance with its term s. No repr esentations, oral or written, other th an those set forth herein, may be relied on by any Party in connection with the subject matter hereof.

10.    <u>Amendment or W aiver</u>. No waiver, m odification or am endment of any term or pro vision of this Agreem ent, the LOI o r the Plan Term Sheet s hall be v alid unless such waiver, modification or am endment is in writin g and has been signed by the Party affected by such waiver, modification or amendment. No waiver of any of the provisions of this Agreement, the LOI or the Plan Term Sheet shall be d eemed or constitute a waiver of any other provision of this Agreement, the LOI or the Pl an Term Sheet, whether or not si milar, nor shall any waiver be deemed a continuing waiver. Any m    odification of this se ction 10 sh all requ ire the writte n consent of all Parties.

11.    <u>Miscellaneous</u>.

a.    <u>Governing Law</u> .  This Agreem    ent shall be governed by, and construed in accordance with, the laws of the Stat e of Calif ornia, without regard to such state's choice of law provisions which would require the application of the law of any other jurisdiction. By its execution and delivery of this Agreemen    t, each of the Parties    hereby irre vocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter arising under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, may be brought in th e Unite d States Ba nkruptcy Court f or the Ce ntral Distric t of Califo rnia, a nd by e xecution and delivery of this Agreement, each of the Part ies hereby irrevocably accepts and submits itself to the exclusive jurisdiction of    such court, generally and unc onditionally, with respect to any such action, suit or proceeding, but only for such action, suit or proceeding.

b.    <u>Specific Perfor mance</u>. It is understood and agreed by the P arties that money damages would not be a sufficient rem edy for any breach of this Agreem ent by any Party and each non-breaching Party shall be entit led to specific perform ance and injunctive or other equitable relief as a rem edy of any such breach, incl uding, without lim itation, an order of the Bankruptcy Court or other court of com petent jurisdiction requiring any Party to com ply promptly with any of its obligations hereunder.

c.    <u>Reservation of Rights</u> .  Except as expressly provided in this Agreement or in the Plan Term    Sheet, noth ing he rein is in tended to, o r does, in any m anner, waive, lim it, im pair or r estrict the a bility of RL I or Greystar to protect    and preserve its rights,

LNBYB000016

remedies and interests, including its claim      s, against the Debtor.  If the Restructuring contemplated here in an d in th e Pla n Term Sheet is  not co nsummated, or if  th is Agreem ent is terminated for any reaso n, the Pa rties hereto fully reserve any and all of  their respective rights and remedies.

d.      <u>Headings</u>.  The section heading      s of this    Agreem ent are for convenience of reference only and shall not, for        any purpose, be deem ed a part of thi  s Agreement.

e.      <u>Notice</u>.  All notices, requests and  other communications hereunder must be in writing and will be deemed to have been duly given only if delivered personally or by facsimile or electronic transm ission or m ailed (first  class postage prepaid) to the parties at th  e following addresses, email addresses, or facsimile numbers:

If to the Debtor:


Roosevelt Lofts, LLC
c/o Milbank Real Estate Services, Inc.
Attention:  M. Aaron Yashouafar
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  mayashoua@milbankre.com

*with a copy (which shall not constitute notice) to*:

David L. Neale, Esq.
Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Fax:  (310) 229-1234
Email:  DLN@LNBYB.COM

If to RLI:


The Roosevelt Lofts, Inc.
c/o Milbank Real Estate Services, Inc.
Attention:  M. Aaron Yashouafar
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  mayashoua@milbankre.com

*with a copy (which shall not constitute notice) to*:

Homan Taghdiri, Esq.

General Counsel
Milbank Real Estate Services, Inc.
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  htaghdiri@milbankre.com

If to Greystar:

Greystar GP, LLC
Attention: A. Joshua Carper
3rd Floor
18 Broad Street
Charleston, NC 29401
United States of America
Fax: (843) 579-9420
Email:  jcarper@greystar.com
*with a copy (which shall not constitute notice) to*:

Robert A. Klyman, Esq.
Latham & Watkins LLP
355 S. Grand Ave.
Los Angeles, CA  90071
Fax:  (213) 891-8763
Email:  robert.klyman@lw.com

      f.      <u>Successors and Assigns, No Third-Party Beneficiaries</u>.  This Agreement is intended to bind and inure to the      benefit of the Parties and their respective successors, perm itted a ssigns, he irs, execut o rs, adm inistrators and re presentatives, includ ing, without lim itation, any chapter 11 or chapter 7 tr ustee appointed in the Bankruptcy Case.  For avoidance of doubt, Greystar reserves the righ t to assign this agreement to a designee or affiliate but, notwithstanding such assignm ent, shall rem ain liable for all of  the obliga tions of Greystar under this Agreem ent, the LOI and the Plan T  erm Sheet.  Unless expressl y stated herein, this Agreement shall be solely for the benefit of the Parties hereto and no other Person or entity shall, or shall be deemed to, be a third party beneficiary hereof.

      g.      <u>Severability</u>.  Wherever possible, each provision of this Agreement shall be interpreted in such a m anner as to be effective and valid under app licable law, but if any provision of this Agreem  ent shall be prohibite  d by or invalid under applicable law, such provision shall be ineffective to the extent of  such prohibition or invalid ity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

      h.      <u>Counterparts</u>.  This Agreem      ent m ay be executed in several counterparts, each of wh ich shall be deem ed to be  an original, and all of which together shall be deemed to be one and the same agreement.  Execution copies of this agreement may be delivered by facsimile or elec tronic mail which shall be  deemed to be  an o riginal for the pu rposes of this Agreement.

i.      Acknowledgement.  This Agreem ent is not, and shall not be deemed to be, an offer    for the purchase, sale   , exchange, hypothecation, or other transfer of securities for any purpose or a so licitation for consents to or vot es on the Plan.  The vote of any holder of any claim  against  or interest in the Debtor on or with re spect to  the P lan shall not be solicited until it h as received (or concurrently with the delivery of) the Disclosure Statem ent and the Plan.

j.      Public Disclosure .  Each of the Debtor and RLI will use its best efforts to (a nd will cause each of th eir respective affiliates and insiders to) submit to Greystar in advance for approval all press releases and public    filings re lating to this Agreem ent, the Term Sheets, o r the transactions contem  plated here by and thereby and any am    endments thereof. Except as re quired by applicable law, the Debtor and RLI (and each of t heir respective affiliates and insiders) shall not use the nam e of any Party  in any press release without such Party's prior written consent.

k.      No Strict C onstruction.  This Agreem ent and all other agreem ents and documents executed and/or delivered in connection herewith have been prepared through the joint ef forts of all of  the Parties her eto or there to.  Neither the provisions  of this Agreem ent or any such other agreements and documents nor any alleged ambiguity therein shall be interpreted or resolved against any Party on the ground that su  ch Party or such Party's counsel drafted this Agreement or such o  ther ag reements and do  cuments, or based on any ot    her rule of strict construction.

l.      Representation.  Each P arty has been represented by counsel of its choosing in connection with this Agree        ment  and the transactions contem     plated by this Agreement, the LOI and Plan Term Sheet.

m.      WAIVER OF JURY TRIAL   .  EA  CH O F TH E PA RTIES TO THIS AGREEMENT HEREBY I RREVOCABLY  WAIVES ALL  RIGHT  TO A TRIAL   BY JURY IN ANY ACTI  ON, P ROCEEDING OR  COUNTERCLAIM ARISING OUT OF O   R RELATING TO THIS AGREEM      ENT OR TH   E TRANSACTIONS CONTEMPLATED HEREBY.

n.      Time Periods.  If any time period or other deadline provided in this Agreement expires on a day that is not a Busine ss Day, then such tim e period or other deadline, as applicable, shall be deemed extended to the next succeeding Business Day.

*[Remainder of page intentionally left blank; signature pages follow]*

IN W ITNESS W HEREOF, the Parties he  reto have caused this Plan Support
Agreement to be duly executed and delivered by their respective duly authorized officers,
all as of the date and year first above written.

GREYSTAR GP, LLC,
a Delaware limited liability company


By: _____
Na        me:
Title        :


ROOSEVELT LOFTS, LLC,
a California limited liability company

By:  The Roosevelt Lofts, Inc.
        Its:  Managing Member

        By: _____
                M. AARON YASHOUAFAR
Presiden            t


THE ROOSEVELT LOFTS, INC.,
a California corporation

By: _____
        M. AARON YASHOUAFAR
        President


M. AARON YASHOUAFAR


_____


SOLYMON YASHOUAFAR


_____


SIMON BARLAVA


_____

LNBYB000020

**<u>Exhibit A</u>**

**Plan Term Sheet**

**(see attached)**

LNBYB000021

**CONFIDENTIAL AND PRELIMINARY**

**ROOSEVELT LOFTS LLC (THE "DEBTOR")**
**TERM SHEET FOR PLAN OF REORGANIZATION**
**PROPOSED BY THE DEBTOR, ROOSEVELT LOFTS, INC. ("RLI") AND GREYSTAR**
**GP, LLC OR ITS DESIGNEE (COLLECTIVELY, "GREYSTAR")**

This term sheet is prepared for the purpose of facilitating discussion of a possible restructuring of the Debtor, whose chapter 11 case, case no. 09-14214 GM (the "Bankruptcy Case") is pending before the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). The term sheet sets forth certain major terms of a possible restructuring, but additional terms and conditions, material to the transaction, are not set forth herein. This term sheet is not, and should not be deemed, a solicitation for votes on a plan of reorganization containing the terms outlined herein. Subject to applicable orders of the Bankruptcy Court and satisfaction of conditions described herein and in the Plan Support Agreement, nothing contained herein shall in part or in whole constitute an offer susceptible of acceptance of a legally binding obligation. This Term Sheet is not an offer with respect to any securities or solicitation of acceptances of a chapter 11 plan. Such offer or solicitation only will be made in compliance with all applicable securities laws and/or provisions of the Bankruptcy Code. This Term Sheet is part of, and will be attached to, the Plan Support Agreement (the "Plan Support Agreement") among the Debtor, RLI and Greystar and is subject to the terms thereof. Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan Support Agreement. For purposes of this term sheet, the Debtor, RLI and Greystar shall be referred to as the "Plan Proponents." Roosevelt Lofts, LLC, as debtor and debtor in possession in the Bankruptcy Case shall be referred to herein as the "Debtor," and as reorganized on and after the Effective Date (as defined below) as the "Reorganized Debtor."

The Plan will be funded by a cash payment of $95,000,000 by Greystar (the "Greystar Contribution"). Greystar will apply the Greystar Contribution as follows: ▮▮▮▮▮▮▮ (the "Bank of America Payment") for payment to Bank of America (for itself, and as agent for the bank group) (collectively, "BofA") for its allowed secured claim (the "BofA Claim"), the amount necessary to pay (or create a reserve for payment of) all other allowed claims in full and render such claims unimpaired (the "Creditor Payments") as of the Effective Date (defined below), and the remainder of the Greystar Contribution (net of the Bank of America Payment and the Creditor Payments) shall be paid on the Effective Date to RLI, as holder of all of the membership and equity interests in the Debtor (the "RLI Payment"). In exchange for the Greystar Contribution, on the Effective Date (defined below), and (i) after Greystar has acquired the BofA Claim or (ii) concurrently with such time as the BofA Claim has otherwise been satisfied through the Plan, Greystar will receive all of the interests in the Reorganized Debtor or, at Greystar's option, all of the interests in an entity that holds all of the interests in the Reorganized Debtor, free and clear of all liens, claims, encumbrances and interests (the "Reorganized Debtor Interests"). For the avoidance of doubt, the Property shall be transferred to the Reorganized Debtor free and clear of all liens, claims, encumbrances and interests.

The proposed plan of reorganization for the Debtor (the "Plan____") will contain the following classes of claims and treatment for creditors in those classes. Except as expressly set

forth below, all distributions will be made on the effective date of the plan of reorganization or as soon as practicable thereafter (the "Effective Date"). At Greystar's election, the structure of the transaction described herein (but not the consideration delivered by Greystar under the Plan) may be modified to reflect tax, accounting and other considerations. The Plan will establish a reserve to ensure payment of any claims allowed and payable after the Effective Date.

## I. UNCLASSIFIED CLAIMS

    A. Allowed Administrative Claims[1].

  1.      *General.* Except as set forth below, Allowed Administrative Claims, other than Allowed Administrative Claims of Insiders,[2] shall be paid in full in cash on the later of (a) 60 days after such claims are allowed or (b) the Effective Date.

  2.      *Statutory Claims.* All fees payable pursuant to 28 U.S.C. Section 1930 shall be paid in full in cash.

  3.      *Professional Claims.* Professionals shall file final fee applications within 60 days after the Effective Date. Promptly after allowance, professional fees shall be paid in full in cash.

  4.      *Postpetition Ordinary Course Liabilities.* Allowed Postpetition Ordinary Course Liabilities (other than tax claims) incurred prior to the Effective Date shall be paid in full in full in cash on the Effective Date (or if incurred but not yet due as of the Effective Date, then paid when due in the ordinary course out of a reserve established under the Plan from the Greystar Contribution).[3]

---

[1] To the extent such claims are allowed after the Effective Date, they shall be paid in full in cash promptly after such claims are allowed out of a reserve established under the Plan from the Greystar Contribution.

[2] All claims asserted against the Debtor by insiders of the Debtor, including without limitation RLI and Milbank Holding Corp., will be cancelled and no distribution shall be made under the Plan on account of such claims (including any and all administrative, priority, secured or unsecured claims).

[3] Funds in an amount equal to all security, pet or other deposits that (i) have been received by Debtor or its agents, or (ii) are hereafter received by Debtor or its agents prior to the Effective Date, in each case from any tenants of the Property (each a "Tenant") shall be placed in a reserve account controlled by the Reorganized Debtor. No Tenant shall be required to file a proof of claim in order to receive a refund of any such deposit funds which such Tenant is entitled to receive in the ordinary course of business; provided, however, that each Tenant's right to receive a refund of any deposit shall be determined in accordance with the provisions of each Tenant's lease or an estoppel certificate signed by the Tenant, and nothing in the Plan shall waive any of the Debtor's rights to withhold all or any portion of a Tenant's deposit if appropriate to do so under that Tenant's lease.

LA\2259903.9
06-03-2011

LNBYB000023

5.         *Postpetition Tax Claims.*  Postpetition tax claims shall be filed on the later of (a) 60 days after the   Effective Date or  (b) 120 days af ter the f iling of a tax r eturn with the applicable g overnmental unit, and s hall be pa id in f ull in c ash prom ptly af ter such claim s are allowed out of a reserve established under the Plan from the Greystar Contribution.

B.  Priority Tax Claim s.  Each holder of an allo wed priority tax claim  shall receiv e cash on the Effective Date in an amount equal to such allowed priority tax claim.  All allowed priority tax claims which are not due and payable on or be fore the Effective Date shall b e pro ra ted, so the amount that is due as of the Effec tive Date shall be paid on the Effective Date (or paid when due in the ordinary course of business in acco    rdance with the term s thereof out of a reserv e established under the Plan from the Greystar Contribution).

## II.    CLASSIFIED CLAIMS AND INTERESTS

A.         Class 1, BofA Claim  :  On the Eff ective Date, the holder o f the Class 1 BofA Claim shall receive the Bank of America Paym ent in full satisfaction of its Class 1 BofA Clai m. In the event Greystar acquires the C lass 1 BofA  Claim prior to the Eff ective Date, ( i) Greystar will not re ceive the Ba nk of America Payment but instead will rec eive the Reorgan ized Debtor Interests on  the  Ef fective Date, a  nd (ii)  th e Greystar Contributio n wi ll be re  duced by ██████████.

B.         Class 2, Allowed Mechanics' Lien Claims:  On the Effective Date, each holder of an Allowed Class 2 Mechanics ' Lien Claim  shall receive cash on th e later of (1) th e Effective Date and (2) the date upon which such claim       becomes an Allowed Class 2 Mechanics' Lien Claim by Final Order of the Bankruptcy Court.       On the Ef fective Date , a reserve shall be established under the Plan from  the Greystar Contribution for  the benefit of m embers of Class 2 whose claim  have not been allowed by Final Or der of the Bankruptcy Court; provided, however, that in no event shall the am ount of payments made on the E ffective Date to holders of Allowe d Class 2 M echanics' Lien Claim s and the fore going reserve exceed the s um of $16 m illion.  It shall be the responsibility of      RLI and the Debtor to object to      and/or resolve any Class 2 Mechanics' Lien Claim  that is not allowed by   Final Order of the Bankruptcy Court as of the Effective Date.

C.         Class 3 et seq.; Allowed Other Secured Claim s.  Each secured credito r shall be in a Class by itself.  Each holder of  an Allowed Class 3A, 3B, et  seq. Secured Claim shall receive cash on the Effective Date in an amount equal to such Allowed Class 3 et seq.

D.         Class 4, Allowed Priority Non-Tax Claim   s.  Each holder of a Class 4 Priority Non-Tax Claim  shall receive cash on the Effectiv e Date in an am ount equa l to s uch Allowe d Class 4 Priority Non-Tax Claim.

E.         Class 5, Allowed General Unsecured Claim  s.  Each holder of an Allowed Class General Un secured Claim will receive cash on the    Effective Date in an am ount e qual to su ch Allowed Class 5 General Unsecured Claim.

F.    Class 6, Allowed Equity Interests in Roosevelt.  Holders of equity inter ests in the Debtor ( including witho ut lim itation m embership interests, stock, warran ts and options) shall receive the their pro rata shar e of the RLI Paym ent and, on the Effective Date, such equity interests shall be canceled.

All Allowed Claim s in Classes  2 through 5 shall be un impaired under the Pl an and deem ed to accept the Plan.

## III.    MEANS FOR IMPLEMENTATION OF PLAN

A.  Sources of Cash for Distribution.  The cash necessary for the Reorganized Debtor to make payments under the Plan shall be obtained from the Greystar Contribution.

B.  New Managing Member.  The Managing Member of the Reorganized Debtor shall be selected by Greystar an d such m anaging member's identity shall be d isclosed on or prior to the date of the hearing on the approval of the Disclo sure Statem ent with respect to th e Plan.  The remaining m embers of  senio r m anagement will  continue to s erve until the  Ef fective Da te pursuant to their respective existing terms of compensation.

C.  Executory Contracts and No nresidential Real Property Leases:  All exe cutory contracts and unexpired leases not specifically assumed or rejected prior to the date on which the Plan is confirmed, or set forth on a schedule of cont racts to be assum ed and/or rejected as of the Effective Date purs uant to the o rder conf irming the Plan (the "Confirm ation Order"), shall be rejected on and as of th e Effective Date. From and after the date  hereof, Greystar shall have the sole right to determ ine, no later th an ten days prior to the h earing on co nfirmation of the Plan, which executory contracts and unexpired leases sh all be assum ed and which shall be rejected, including, without lim itation, any  contracts for sale of any condo minium units at the Property, and any contracts relating to the portions of the Property to be devoted to retail use.[4]

## IV. DISCHARGE AND RELEASES

A.  Discharge.  On the Effective Date, all claim s against and equity inter ests in the Debtor shall be discharged and  all persons and e ntities shall be  precluded from asserting against the Debtor, the Reorganized Debt or or Greys tar any claim s ba sed on any act or om ission that occurred in whole or in part on or prior to the Effective Date.

B.  Release by the Debtor and Reorganized Debtor.  On the Eff ective Date, the Debtor and Reorganized Debtor shall release all clai ms, rights and causes of  action ag ainst (1) the current m embers, directors, officers and em ployees of the Debtor (other than for m oney borrowed from or owed to the Debtor by any such  members, directors, officers or employees as

---

[4] Greystar assum es that all such   contracts are of the type th at can be rejected, and intends to reject all of them . However, to th e extent tha t any such con tracts a re not execu tory contracts , Greystar intends that the Reorga nized Debtor shall not be a part y to such contracts following the Effective Date, and that all related damages will be paid as set forth above in Sections I and II of this Agreement.

set forth in the Debtor's books and records) an d the Debtor's agents and advisors (including lawyers), (2 ) the creditors' comm ittee and its a dvisors (so lely in their capacity as such), (3 ) Greystar, its af filiates, a nd their re spective of ficers, dir ectors, em ployees, partne rs, m embers, managers and advisors (includi ng lawyers) and (4) RLI an d its officers, directo rs, em ployees, partners, members, managers and advisors (including lawyers) (th e "Released Parties"), so long a such releases do not vitiate or impair coverage under any insu rance policies related to the Property.

C.  Release by Holders of Claims and Interests.  To the fullest extent permissible by law, on the Effective Date, all holders of claims against and inte rests in the D ebtor, in co nsideration for the obligations of Greystar, RLI, the Debtor and the Reorganized Debt or under the Plan, and the cash, stock of the Reorganize d Debtor and other docum ents delivered in connection with the Plan, shall be deemed to release each of the Released Parties from all claims, rights and causes of action again st the Relea sed Parties aris ing f rom or re lated to the Deb tor's pre- and/or post-petition actions, omissions or liabilities with respect to the Property.

## V.  CONDITIONS TO CONFIRMATION

The conditions to confirm ation of the Plan sh all include those custom ary for c omparable transactions, including, without limitation:

A.    The Bankruptcy Court shall have entered a Final Order approving the Plan Support Agreement (the "Plan Support Agreem ent Order") in form and substance negotiated by the Debtor, RLI and Greystar; provi ded that any changes to the Plan Support Agreem ent Order following the filing of such Plan Support Agreem ent Order shall be satisfactory to Greystar in Greystar's sole discretion and reasonably acceptable to RLI and the Debtor; and provided further that the Plan Support Agreem ent Order shall ha ve becom e a Final Order and not have been modified, amended or reversed;

B.  The Bankruptcy Court shall have entere d an order approving the disclosure statem ent with respect to the Plan (the "Dis closure S tatement Order") in form and substance that is reasonably acceptable to the Plan Proponents, and the Disclosure Statem ent Order shall have become a Final Order and not have been modified, amended or reversed.

C.  The Bankruptcy Court shall have entere d an order confirming the Plan and approving associated findings of fact and conclusions of law (coll ectively, the "Confirm ation Order") in form and substance satisfactory to Greystar in Greystar's s ole disc retion and the Conf irmation Order shall have becom e a Fina l Order and not have been m odified, am ended or reversed; provided, however, that the Confirm ation Order sh all be deem ed satisfactory to the Debtor and RLI so long as the Confirm ation Order does not de viate in any m aterial way from the term s set forth in this term sheet.

D.  The Plan, the exhibits thereto and any Plan supplem ent (as confirmed or approved by the Confirmation Orde r) shall b e in f orm and s ubstance satisfactory to Greystar in Greystar's reasonable discretion.  The Plan, the exhibits th ereto and any Plan supplem ent (as confirm ed or approved by the Confirm ation Order) shall be de emed satisfactory to the Debtor and RLI so long as they do not deviate in any material way from the terms set forth in this term sheet.

5

LNBYB000026

E.  The Bof A/Debtor S ettlement Order sh all have becom e a Final Order and not have been modified, amended or reversed.

## VI.  CONDITIONS TO EFFECTIVENESS

The conditions precedent to the    Effective Date shall in clude those custom ary for com parable transactions, including, without limitation:

A.  All conditions to confirmation of the Plan shall remain satisfied or waived in the sole discretion of the party who has the right to waive such condition or conditions.

B.  Each order of the Bankruptcy Court refe rred to in Section V above shall have become a Final Order and not have been modified, amended or reversed.

C.  All d ocuments and agreem ents to b e ex ecuted on the Ef fective Date or oth erwise necessary to implement the Plan (no t otherwise specified herein) shall be in for m and substance reasonably acceptable to the Plan Proponents.

D.  The Plan Proponents     shall have receiv ed any authorization, consent, regulatory approval, ru ling, letter, opinion, or docum ent that may be necessary to implement the Plan and that is required by law, regulation, or order.

E.  The Reorganized D ebtor shall have r eceived title insu rance fr om a title insurance company reasonably satisfactory to Greystar and on terms and conditions satisfactory to Greystar in Greystar's sole discretion and reasonably acceptable to the De btor and RLI, and the Property shall be in c ompliance with all m aterial restrictions, requirements and e ncumbrances applicable to the Property (other than the fact that the parking stalls are non-conforming).

F.  The Reorganized Debtor Interests shall ha ve been issued (free and clear of all liens, claims, encumbrances and interests) to Greystar in accordance with the Plan.

G.  All other actions, docum ents and agreem ents necessary to im plement the Plan as of the Effective Date shall have been delivered and all conditions precedent th ereto shall have been satisfied or waived.

H.  All corporate and other proceed ings to be taken by the Debtor in connection with the Plan and/or plan supplement and the consummation of the transactions contemplated thereby and by the Plan and all docum ents incident thereto shall have been co mpleted in form and substance reasonably satisfactory to Grey star; provided however that    the foregoing proceedings and documents shall be deem ed satisfactory to RLI a nd the Debtor so long as they do not deviate in any material way from the terms set forth in this term sheet.

I.  No event, condition or circum stance shall have occurred or aris en subsequent to the date of the Plan Support Agreem ent which has had or could reasonably be expected to have or give rise to a Material Adverse Change.

J.  Subsequent to the date of the Plan S upport Agreement, there shal l be no threatened or pending suit, action, investigati on, inquiry or other proceeding by or before any court of

6

competent jurisdiction (excluding the bankruptcy case prior to the date of the Plan Support Agreement) which is likely to have a Material Adverse Change.

K   The Effective Date shall have occurred on or before August 22, 2011.

L.   The managing member of the Reorgani zed Debtor shall have been designated by Greystar as of the Effective Date, and the d irectors' and o fficers' liability insu rance sha ll b e available to the officers of the     Reorganized Debtor and such m anaging m ember on term s reasonably satisfactory to Greystar.

M.   All waiting periods im posed by applic able law (including, without lim itation, under the Hart-Scott-Rodino Antitrus t Improvem ents Ac t of 1976, as amended, if applicab le) in connection with the consummation of the Plan and transactions con templated thereby shall have expired or been term inated without any action   having been taken by  any court of com petent jurisdiction restraining, preventing or im     posing m aterially adverse conditions upon such transactions, and the Plan Proponents shall have     received all m aterial regulatory approvals required for the consummation of the Plan and th e trans actions contem plated th ereby and f or the Reorganized Debtor to continue to carry on  its businesses without m aterial change, each of which approvals shall have become final.

N.   Subsequent to the date of the Plan Support Agreement, the Debtor shall have operated in a m anner consistent with its or dinary course or business prior  to the date of the Plan Support Agreement.

O.   Greystar shall receive good and marketable title to the Property.

P.   The P roperty shall be free and  clear of liens, claim s, interes ts and encum brances, except those specifically permitted by Greystar in Greystar's sole discretion.

Q.   Greystar shall ha ve receiv ed an ow ner's policy of title insura  nce in form and substance acceptable to Greystar in Greystar's s ole discretion, subject only to such exceptions as Greystar approves during the revi  ew process.  All existing in  surance policies of any kind (including without lim itation title insurance and property and casualty  insurance) related to the Property shall be m aintained in f ull force and  assigned to Greystar.  The Debtor and RLI shall not have done anything to impair coverage under any of the foregoing insurance policies.

R.   No Term  ination E vent (as defined in  the Plan Support Agreem  ent) shall have occurred.

Notwithstanding anything contained  herein to the con trary, Greyst ar s hall have th e exclusive right, in its sole dis cretion, to d eem satisfied o r waived any of the conditions set forth above in Sections VI.B, F, I, K, N, O, P and Q, and such determination by Greystar shall be binding on all Plan Proponents and other parties in interest.

* * * * *

7

## **Exhibit B**

**Borrower Parties Designation Agreement**

**(see attached)**

LA\2263445.11

LNBYB000029

## BORROWER PARTIES DESIGNATION AGREEMENT

This Borrower Parties Designation Agreement (this "**Agreement**") is made as of June 3, 2011 by and among (i) Greystar GP, LLC ("**Greystar**"), (ii) The Roosevelt Lofts, Inc. ("**RLI**"), (iii) Roosevelt Lofts, LLC as debtor and debtor in possession (the "**Debtor**") in case no. 09-14214-GM (the "**Bankruptcy Case**") pending before the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**"), (iv) M. Aaron Yashouafar ("**M.A. Yashouafar**"), (v) Solymon Yashouafar ("**S. Yashouafar**") and (vi) and Simon Barlava ("**Barlava,**" and together with M.A. Yashouafar and S. Yashouafar, the "**Bank Guarantors,**" and with the Debtor and RLI, the "**Debtor Related Parties**"). Each of Greystar, RLI, the Debtor, M.A. Yashouafar, S. Yashouafar and Barlava are referred to herein individually as a "**Party**" and collectively as the "**Parties**."

## RECITALS

WHEREAS, the Debtor and the Bank Guarantors have entered into that certain Settlement Agreement dated as of June 3, 2011 (the "**Bank Settlement Agreement**") with Bank of America, N.A., individually and as administrative agent for a group of lenders (as described more fully in the Settlement Agreement, the "**Bank Group**"). A true and correct copy of the Bank Settlement Agreement is attached hereto as Exhibit A. Capitalized terms not defined herein shall have the meaning ascribed to them in the Bank Settlement Agreement.

WHEREAS, pursuant to the Bank Settlement Agreement, the Debtor and the Bank Guarantors agreed to identify and cause a Purchaser other than the Debtor and the Bank Guarantors to purchase the Bank Group's interest in certain obligations, loan and security documents and agreements described in the Bank Settlement Agreement.

WHEREAS, Section 2 of the Bank Settlement Agreement calls for the Purchaser to make certain deposits of funds (the "**Deposits**") and to make timely payment of the Purchase Price on the Payment Date.

WHEREAS, the Debtor and the Bank Guarantors have requested that Greystar or Greystar's designee serve as the Purchaser.

WHEREAS, RLI as the holder of all of the membership interests of the Debtor will benefit from Greystar or its designee serving as the Purchaser, and has requested that Greystar or Greystar's designee serve as the Purchaser.

WHEREAS, the Debtor Related Parties have entered into this Agreement in order to, among other things, implement the terms and conditions of the Bank Settlement Agreement.

WHEREAS, Greystar, RLI and the Debtor have entered into that certain Plan Support Agreement dated as of June 3, 2011 (the "**Plan Support Agreement**"), pursuant to which and subject to the terms and conditions set forth therein, Greystar has agreed, among other things, to serve or have its designee serve as the Purchaser. It is a condition to the Plan Support Agreement that the Parties hereto execute this Agreement.

NOW, THEREFORE, in consideration of the recitals, covenants and conditions in this Agreement, and for valuable consideration, the Parties agree and follows:

1.    <u>Designation of Greystar or Greystar's Designee as Purchaser</u>.    Greystar or, at Greystar's option, Greystar's designee, is hereby designated as Purchaser under the Bank Settlement Agreement.    This designation is irrevocable as long as Greystar makes the Deposits into Escrow described in Section 2 of the Bank Settlement Agreement.

2.    <u>No Modification/Waiver/Amendment of the Bank Settlement Agreement</u>. None of the Debtor Related Parties (a) shall consent to or make any modification, waiver, amendment or termination of the Bank Settlement Agreement, any exhibits thereto, or any existing or future court orders approving the Bank Settlement Agreement or any exhibits thereto, or (b) shall permit any of their affiliates or direct or indirect subsidiaries to make any modification, waiver, amendment or termination of the Bank Settlement Agreement, any exhibits thereto, or any existing or future court orders approving the Bank Settlement Agreement or any exhibits thereto, in each case without the prior written consent of Greystar, which consent may be granted or withheld in Greystar's sole discretion.

3.    <u>Binding Nature of this Agreement</u>.    By signing below, each Party shall be bound to this Agreement as of the date hereof; provided, however, that the Debtor's obligations hereunder shall be subject only to entry  by the Bankruptcy Court of the Plan Support Agreement Order (as defined in the Plan Support Agreement).  The Parties shall use their respective reasonable best efforts to obtain entry of the Plan Support Agreement on an expedited basis, and in no event later than one (1) business day before the first Deposit is due under the Bank Settlement Agreement.

4.    <u>The Deposits</u>.  The Deposits shall be and remain property solely of Greystar.  In no event shall any of the Debtor Related Parties, or any other party other than Greystar,  have any legal or equitable right to any of the Deposits.  No holder of a claim against or interest in any of the Debtor Related Parties shall have any right to attach or claim to payment from any Deposit or Escrow.  If for any reason the Sale is not consummated on or before the Outside Date (as defined in the Plan Support Agreement), or if a Termination Event (as defined in the Plan Support Agreement) occurs, then in each case all Deposits shall be promptly returned to Greystar without need for further order of any court or approval of any party; provided, however, that if (i) such failure to consummate the Sale on or before the Outside Date (as defined in the Plan Support Agreement) occurs as a direct result of a default by Greystar of its obligations under the Plan Support Agreement (after satisfaction of the conditions to such obligations), and (ii) after receipt by Greystar of written notice of such default from any Debtor Related Party, Greystar failed to cure such default within ten (10) days after Greystar's receipt of such notice (provided that (a) such cure period shall in no event extend beyond such day as is one day prior to the Payment Date (as defined in the Bank Settlement Agreement), and (b) with regard to any such default relating to the making of Deposits pursuant to the Bank Settlement Agreement, such cure period shall be two business days commencing upon Debtor's transmittal of notice of such default to Greystar by facsimile or electronic transmission), then the Deposit

LA\2265146.7  borrower parties designation agreemetn

LNBYB000031

funds which have theretofore been placed in escrow by Greystar shall become non-refundable to Greystar. The terms and conditions of this Section 4 shall be included in the Escrow Agreement.

      5.    <u>Cooperation of Debtor Related Parties</u>. The Debtor Related Parties waive all objections and will not oppose or cause any person or entity to oppose (a) any exercise by Greystar or its designee of the Foreclosure Right (as defined in the Plan Support Agreement), (b) any exercise by Greystar or its designee of the 363 Purchase Right (as defined in the Plan Support Agreement), or (c) the appointment of any receiver pursuant to the Greystar Receivership Stipulation (as defined in the Plan Support Agreement). The Debtor Related Parties agree that they will reasonably cooperate with (i) any receiver in connection with the exercise of the Foreclosure Right (as defined in the Plan Support Agreement), and (ii) Greystar or its designee in the exercise of any of their remedies hereunder or under the Plan Support Agreement (including, without limitation, the Foreclosure Right (as defined in the Plan Support Agreement)).

      6.    <u>Representations</u>.

      a.    Each Party severally (but not jointly) represents and warrants to the other Parties as follows with respect to itself only and as of the date hereof:

    (i)    <u>Corporate Power and Authority</u>. It has all requisite authority (whether corporate, partnership, limited liability company or individual power and authority) to enter into this Agreement and to carry out the transactions contemplated by, and perform its obligations under, this Agreement, other than, with respect to the Debtor, the requisite approvals of the Bankruptcy Court.

    (ii)    <u>Authorization</u>. The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate, partnership or limited liability company action on its part, other than, with respect to the Debtor, the requisite approvals of the Bankruptcy Court.

    (iii)    <u>No Conflicts</u>. The execution, delivery and performance by it of this Agreement do not and shall not (i) violate any provision of law, rule or regulation applicable to it or any of its subsidiaries, (ii) violate its certificate of incorporation or bylaws or other organizational documents or those of any of its subsidiaries, or (iii) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under, any material contractual obligation to which it or any of its subsidiaries is a party.

    (iv)    <u>Governmental Consents</u>. The execution, delivery and performance by it of this Agreement do not and shall not require any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any federal, state or other governmental authority or regulatory body, other than such filings as may be necessary or required in connection with the Bankruptcy Case.

    (v)    <u>No Litigation</u>. No litigation or proceeding before any court, arbitrator or administrative or governmental body is pending against it that would adversely affect its ability to enter into this Agreement or perform its obligations hereunder.

3

LNBYB000032

(vi)                    Enforceability.  This Agreement is the legally valid and binding obligation of it, enforceable against it in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, fraudulent conveyance and other laws affecting creditors' rights, and by general limitations in the availability of equitable remedies.

b.      Each Debtor Related Party severally (but not jointly) (i) represents and warrants to Greystar that the Debtor owns all of the Property (as defined in the Plan Support Agreement), and that no Debtor Related Party other than the Debtor has any right, title or interest in or to the Property (as defined in the Plan Support Agreement) or any portion thereof, and (ii) covenants not to, and not to cause any other person or entity to, take, remove or transfer any Property (as defined in the Plan Support Agreement) from the property located at 727 West 7th Street, Los Angeles, CA or from any accounts of Debtor.

7.      Entire Agreement; Prior Negotiations.  This Agreement, the Plan Support Agreement, Plan Term Sheet (as defined in the Plan Support Agreement) and the LOI (as defined in the Plan Support Agreement), including any exhibits to any of the foregoing, sets forth in full the terms of agreement between and among the Parties and is intended as the full, complete and exclusive contract governing the relationship between and among the Parties with respect to the transactions contemplated herein, superseding all other discussions, promises, representations, warranties, agreements and understandings, whether written or oral, between or among the Parties with respect to the subject matter hereof; provided, that any confidentiality agreement between or among any of the Parties shall remain in full force and effect in accordance with its terms.  No representations, oral or written, other than those set forth herein, may be relied on by any Party in connection with the subject matter hereof.

8.      Amendment or Waiver.  No waiver, modification or amendment of any term or provision of this Agreement shall be valid unless such waiver, modification or amendment is in writing and has been signed by the Party affected by such waiver, modification or amendment.  No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any waiver be deemed a continuing waiver.  Any modification of this section 8 shall require the written consent of all Parties.

9.      Miscellaneous.

a.      Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of California, without regard to such state's choice of law provisions which would require the application of the law of any other jurisdiction.  By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter arising under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, may be brought in the United States Bankruptcy Court for the Central District of California, and by execution and delivery of this Agreement, each of the Parties hereby irrevocably accepts and submits itself to the exclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding, but only for such action, suit or proceeding.

4

LNBYB000033

b.    Specific Performance.  It is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, including, without limitation, an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.

c.    Headings.  The section headings of this Agreement are for convenience of reference only and shall not, for any purpose, be deemed a part of this Agreement.

d.    Notice.  All notices, requests and other communications hereunder must be in writing and will be deemed to have been duly given only if delivered personally or by facsimile or electronic transmission or mailed (first class postage prepaid) to the parties at the following addresses, email addresses, or facsimile numbers:

If to the Debtor:

Roosevelt Lofts, LLC
c/o Milbank Real Estate Services, Inc.
Attention:  M. Aaron Yashouafar
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  mayashoua@milbankre.com

with a copy (which shall not constitute notice) to:

David L. Neale, Esq.
Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Fax:  (310) 229-1234
Email:  DLN@LNBYB.COM

If to RLI:

The Roosevelt Lofts, Inc.
c/o Milbank Real Estate Services, Inc.
Attention:  M. Aaron Yashouafar
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  mayashoua@milbankre.com

5

LNBYB000034

with a copy (which shall not constitute notice) to:

Homan Taghdiri, Esq.
General Counsel
Milbank Real Estate Services, Inc.
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  htaghdiri@milbankre.com

If to the Bank Guarantors:

M. Aaron Yashouafar
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  mayashoua@milbankre.com

with a copy (which shall not constitute notice) to:

Homan Taghdiri, Esq.
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  htaghdiri@milbankre.com

Solyman Yashouafar
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  syashoua@milbankre.com

with a copy (which shall not constitute notice) to:

Homan Taghdiri, Esq.
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440
Email:  htaghdiri@milbankre.com

Simon Barlava
2209 South Santa Avenue
Los Angeles, Ca, 90058
Fax:  (323) 277-1717
Email:  simon@designcollection.com

6

LNBYB000035

If to Greystar:

Greystar GP, LLC
Attention: Josh Carper
3rd Floor
18 Broad Street
Charleston, NC 29401
United States of America
Fax: (843) 579-9420
Email:  jcarper@greystar.com

with a copy (which shall not constitute notice) to:

Robert A. Klyman, Esq.
Latham & Watkins LLP
355 S. Grand Ave.
Los Angeles, CA  90071
Fax:  (213) 891-8763
Email:  robert.klyman@lw.com

      e.    <u>Successors and Assigns, No Third-Party Beneficiaries</u>.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, permitted assigns, heirs, executors, administrators and representatives, including, without limitation, any chapter 11 or chapter 7 trustee appointed in the Bankruptcy Case.  For avoidance of doubt, Greystar reserves the right to assign this agreement to a designee or affiliate but, notwithstanding such assignment, shall remain liable for all of the obligations of Greystar under this Agreement.  Unless expressly stated herein, this Agreement shall be solely for the benefit of the Parties hereto and no other Person or entity shall, or shall be deemed to, be a third party beneficiary hereof.

      f.    <u>Severability</u>.  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

      g.    <u>Counterparts</u>.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement.  Execution copies of this agreement may be delivered by facsimile or electronic mail, which shall be deemed to be an original for the purposes of this Agreement.

      h.    <u>Public Disclosure</u>.  Each of the Debtor Related Parties shall use their respective best efforts to (and will cause each of their respective affiliates and insiders to) submit to Greystar in advance for approval all press releases and public filings relating to this Agreement, the Plan Support Agreement, the Plan Term Sheet (as defined in the Plan Support

7

LNBYB000036

Agreement), or the transactions contemplated hereby and thereby and any amendments thereof. Except as required by applicable law, the Debtor Related Parties (and each of their respective affiliates and insiders) shall not use the name of any Party in any press release without such Party's prior written consent.

       i.      <u>No Strict Construction</u>.  This Agreement and all other agreements and documents executed and/or delivered in connection herewith have been prepared through the joint efforts of all of the Parties hereto or thereto.  Neither the provisions of this Agreement or any such other agreements and documents nor any alleged ambiguity therein shall be interpreted or resolved against any Party on the ground that such Party or such Party's counsel drafted this Agreement or such other agreements and documents, or based on any other rule of strict construction.

       j.      <u>Representation</u>.  Each Party has been represented by counsel of its choosing in connection with this Agreement and the transactions contemplated by this Agreement.

       k.      <u>WAIVER OF JURY TRIAL</u>.  EACH OF THE PARTIES TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

       l.      <u>Time Periods</u>.  If any time period or other deadline provided in this Agreement expires on a day that is not a Business Day, then such time period or other deadline, as applicable, shall be deemed extended to the next succeeding Business Day.

*[Remainder of page intentionally left blank; signature pages follow]*

LA\2265146.7  borrower parties designation agreemetn

LNBYB000037

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed and delivered by their respective duly authorized officers, all as of the date and year first above written.

GREYSTAR GP, LLC,
a Delaware limited liability company

By: _____

Na          me:
Title          :


ROOSEVELT LOFTS, LLC,
a California limited liability company

By:  The Roosevelt Lofts, Inc.
    Its:  Managing Member


By: _____
    M. AARON YASHOUAFAR
Presiden          t


THE ROOSEVELT LOFTS, INC.,
a California corporation


By: _____
    M. AARON YASHOUAFAR
    President


M. AARON YASHOUAFAR

_____


SOLYMON YASHOUAFAR

_____


SIMON BARLAVA

_____


9

LNBYB000038

<u>Exhibit A</u>

Bank Settlement Agreement

(See Attached)

## SETTLEMENT AGREEMENT

This settlement agreement (the "**Settlement Agreement**") is entered into as of June 3, 2011 (the "**Effective Date**"), by and between the following entities:  (i) M. Aaron Yashouafar ("**M.A. Yashouafar**"), Solyman Yashouafar ("**S. Yashouafar**"), and Simon Barlava ("**Barlava**" and together with M.A. Yashouafar and S. Yashouafar, the "**Guarantors**"); (ii) Roosevelt Lofts, LLC, debtor and debtor in possession (the "**Debtor**" and together with the Guarantors, the "**Borrower Parties**"); and (iii) Bank of America, N.A., individually and as administrative agent for a group of lenders[1] (collectively, the "**Bank Group**").  The Borrower Parties and the Bank Group are referred to collectively as the "**Parties**" and each individually as a "**Party**."  This Settlement Agreement is based upon the following facts, which each of the Parties confirms is entirely true and accurate in every material respect:

## RECITALS

A.     On or about March 9, 2006, the Debtor executed a Construction Loan Agreement (the "**Loan Agreement**") with the Bank of America N.A., as administrative agent for the Bank Group in the amount of $78,840,375.  On or about March 9, 2006, Debtor executed a Deed of Trust Note in the original principal amount of $78,840,375 (the "**Note**").  The Loan Agreement and Note are secured by two deeds of trust: (i) the Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing recorded on March 22, 2006 and re-recorded on November 17, 2006 to correct certain typographical errors (the "**Fee Deed of Trust**"), and (ii) the Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing (California Leasehold Interest) recorded on March 22, 2006 (the "**Leasehold Deed of Trust**," and collectively, with the Fee Deed of Trust, the "**Deeds of Trust**").  The Deeds of Trust encumber the property commonly known as the "Roosevelt Building, " located at 727 West 7th Street, Los Angeles, California (the "**Property**"), including an absolute assignment of all rents, issues and profits generated from operation of the Property (collectively, the "**Collateral**").

B.     In further consideration of the Bank Group's loan and extension of credit, on or about March 9, 2006, the Guarantors each agreed to guarantee certain of the Debtor's obligations under the Loan Agreement and Note pursuant to the terms of a written Guaranty Agreement (the "**Guaranty**").  The Loan Agreement, the Note, the Deeds of Trust and the Guaranty, together with all modifications thereto and all other loan and security documents and agreements between the Parties related to the Collateral are collectively referred to as the "**Loan Documents**."

C.     The Borrower Parties failed to pay the obligations under the Loan Documents in full at maturity, March 9, 2009.  As a result, the Bank Group delivered a default notice dated December 30, 2008.  On March 23, 2009, the Bank Group caused notices of default to be recorded in the Los Angeles County Registrar-Recorder's Office.  On or about April 3, 2009, the Bank Group filed a complaint for breach of the Guaranty, appointment of a receiver

---

[1]     The Bank Group is comprised of the Bank of America N.A., East West Bank, Manufacturers Bank and United Commercial Bank.

1

LNBYB000040

and judicial foreclosure on the Deeds of Trust in the Superior Court of the State of California for the County of Los Angeles, bearing case no. SC 102472 and including all claims raised in the cross complaint filed by the Guarantors (the "**Guaranty Litigation**").   The Borrower Parties dispute the Bank Group's contentions.   The Guarantors asserted counterclaims in the Guaranty Litigation.

D.      On April 13, 2009, the Debtor filed a voluntary petition commencing a chapter 11 bankruptcy case in the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**"), bearing case no. 1:09-bk-14214-GM (the "**Bankruptcy Case** ").

E.      The Parties desire to settle their disputes relating to the Guaranty Litigation (including all claims raised in the cross complaint) and the Bankruptcy Case, and therefore, enter into this Settlement Agreement which provides, among other provisions, for the purchase and sale of the Bank Group's interest in the Loan Documents, and certain rights provided therein, to a purchaser other than the Borrower Parties, but arranged by the Debtor who has been qualified (no less than 30 days before the Payment Date) under applicable banking regulations (the "**Purchaser**").

NOW, THEREFORE, in consideration of the recitals, covenants and conditions in this Settlement Agreement, and for valuable consideration, the Parties agree as follows:

## <u>AGREEMENT</u>

1.      <u>Note Purchase and Sale</u>.

a.      Pursuant to the assignment of claims (the "**Assignment of Claims** ") in the form attached hereto as Exhibit "1", and according to the terms and conditions of this Settlement Agreement, the Bank Group agrees to sell and assign the Loan Documents to the Purchaser, "as is," and with no representation or warranties other than as may be set forth in the Assignment of Claims (the "**Sale**").   If the Sale is to be consummated, the Purchaser shall pay the Bank Group the total sum of ▮▮▮▮▮▮▮ by wire transfer in immediately available federal funds (the "**Purchase Price**").   The Sale must close and the Purchase Price must be paid to the Bank Group on or before the "**Payment Date,**" which is the earlier of:  (i) September 1, 2011; and (ii) the first business day which is at least 90 calendar days after the Effective Date.

b.      Conditions to the Closing of the Sale.

The closing of the Sale is conditioned upon the occurrence of each of the following:

i.      The timely deposit by the Purchaser of the funds as set forth in paragraph 2;

ii.      Bankruptcy Court Approval as defined in paragraph 10;

iii.      The timely payment of the Purchase Price on the Payment Date;

iv.      The Purchaser has provided the Bank Group with sufficient representations, covenants and evidence (including evidence of ownership) so as to qualify under applicable

LNBYB000041

banking regulations and demonstrate that it is not otherwise violative of U.S. banking laws; and

v.  The delivery by the Bank Group of the documents set forth in paragraph 4(b).

c.  The closing of the Sale will be facilitated through the services of an escrow agent approved by both the Purchaser and the Bank Group (the "**Escrow Agent**"). The terms of escrow shall be governed by an escrow agreement (the "**Escrow Agreement**") in the form not materially at variance from the form of escrow agreement attached hereto as Exhibit "2."

d.  With at least five business days' notice, the Purchaser shall advise the Bank Group of its intention to close the Sale on a particular Payment Date.  The Assignment of Claims shall be released to the Purchaser at the closing of the Sale on the Payment Date, and returned to the Bank Group if the conditions to the Sale do not occur.  The Assignment of Claims is to effectuate the transfer of certain claims against the Borrower Parties to the Purchaser on the terms and conditions set forth therein.  The Assignment of Claims shall specifically include all claims, if any, related to any deposit and other accounts held in the name of the Debtor. Notwithstanding the foregoing, the Assignment of Claims shall not affect any rights the Bank of America N.A. may have against Milbank Holding Corp. ("**Milbank**") to the extent related to or arising from the judgment entered against Milbank in the state court action as case no. BC415625 in the Los Angeles Superior Court.  The Assignment of Claims shall also provide, among other things, that pursuant to and to the extent permitted by applicable law and the terms of any such policies, the Purchaser will acquire the rights of the Bank Group, if any, to any policies of title insurance covering the Deeds of Trust and the Property.  The Bank Group makes no representations or warranties regarding its claims against the Borrower Parties or any coverage it may have as a beneficiary under any policy of title of insurance covering the Deeds of Trust and the Property.

e.  On the Payment Date, and on condition that the Sale closes, the Escrow Agent shall deliver to the Borrower Parties for filing in the Guaranty Litigation, a request for dismissal, without prejudice, of the entire Guaranty Litigation in the form attached hereto as Exhibit "3" (the "**Bank Group's Request for Dismissal of Guaranty Litigation Without Prejudice**").

f.  As long as Greystar GP, LLC or its designee (collectively, "**Greystar**") satisfies the conditions set forth in Section 1(b) hereof on or before the Payment Date, Greystar shall be designated the Purchaser under this Agreement.

2.  <u>Purchaser Deposits into Escrow</u>.

a.  Within 10 calendar days of the Effective Date, the Purchaser must deposit with the Escrow Agent $5,000,000 to be applied, on the Payment Date, towards the Purchase Price.  Within 40 calendar days of the Effective Date, the Purchaser must deposit with the Escrow Agent an additional $10,000,000 for a total deposit of $15,000,000 to be applied, on the Payment Date, towards the Purchase Price.  Within 70 days of the Effective Date, the

BN 9150681v2

LNBYB000042

Purchaser must deposit with the Escrow Agent an additional $20,000,000 for a total deposit of $35,000,000 to be applied, on the Payment Date, towards the Purchase Price. On or before the Payment Date, the Purchaser must deposit additional sums necessary to have the full Purchase Price on deposit with the Escrow Agent.

b.    All such deposits must be in immediately available federal funds. In any event, the Escrow Agent will immediately advise the Bank Group when funds are deposited. If any of the funds are not timely deposited with the Escrow Agent, then the Bank Group may send a notice of default by electronic means to counsel for the Borrower Parties. If any of the required deposits are not made within two (2) business days following the transmittal of the notice of default, then pursuant to the 362 Stipulation and the Bankruptcy Court Order described below, the Bank Group will immediately have *in rem* relief from the automatic stay on the Collateral without further notice, hearing or order of the Bankruptcy Court and with no limitations on such relief. If, for any reason, the Sale is not consummated on or before the Payment Date, all deposited funds will be refunded to the Purchaser.

3.    <u>If Sale is not Consummated</u>. If, for any reason, either the Purchaser fails to make any deposit timely, or the Sale is not consummated timely, and conditioned upon Bankruptcy Court Approval (as defined below), then each of the following shall occur:

a.    <u>Return of Assignment of Claims</u>. The Assignment of Claims shall be returned immediately to the Bank Group.

b.    <u>Stipulation for Relief From Stay</u>. Pursuant to (i) the stipulation entered into between the Bank Group and the Borrower in the form attached hereto as Exhibit "4" (the "**362 Stipulation**"); and (ii) the Bankruptcy Court Order, the Bank Group will immediately have *in rem* relief from the automatic stay on the Collateral without further notice, hearing or order of the Bankruptcy Court and with no limitations on such relief.

c.    <u>Dismissal of Guarantors from Guaranty Litigation</u>  The Escrow Agent shall deliver to the Guarantors for filing in the Guaranty Litigation, a request for dismissal, without prejudice, of all causes of action against the Guarantors in the form attached hereto as Exhibit "5"  (the "**Bank Group's Request for Dismissal of Guarantors Without Prejudice**").

d.    <u>Covenant Not to Sue</u>. The Escrow Agent shall deliver to the Borrower Parties the covenant not to sue in the form attached hereto as Exhibit "6" (the "**Covenant**").

e.    <u>Stipulation for Appointment of a Receiver</u>. The stipulation for the appointment of a receiver to take control of the Property (the "**Receivership Stipulation**") in the form attached hereto as Exhibit "7" shall be filed, *ex parte*, in the Guaranty Litigation, and a receiver shall be appointed, *ex parte*, immediately. The receiver shall take possession and control over the Collateral (other than deposit or other accounts with the Bank of America N.A.) pursuant to the terms of the Receivership Stipulation. Each of the Borrower Parties agrees to cooperate with the receiver and the Bank Group on all matters, including matters concerning mechanic's liens, title of the Property and the prompt and orderly transition of management of the Property to the receiver including the turnover of all Collateral accounts and tenant deposits.

4

LNBYB000043

4.      <u>Deliveries on the Effective Date</u>.

          a.      On the Effective Date, the Borrower Parties shall deliver to the Bank Group fully executed originals of each of the following:

i.      Releases from each of the Guarantors in the form attached as Exhibit "8;"

ii.     the Receivership Stipulation;

iii.    the 362 Stipulation;

iv.     the request for dismissal with prejudice of the cross-complaint filed in the Guaranty Litigation by the Guarantors against the Bank Group (the "**Guarantors' Request for Dismissal**") in the form attached as Exhibit "9," which then may be filed immediately in the Guaranty Litigation by the Bank Group; and

v.      the Insider Lien Releases described below, each signed by an authorized representative of each of those entities described in paragraph 7 of this Settlement Agreement.

          b.      On the Effective Date, the Bank Group shall deliver to the Escrow Agent fully executed originals of each of the following:

i.      the Assignment of Claims;

ii.     the Covenant;

iii.    the Bank Group's Request for Dismissal of Guaranty Litigation Without Prejudice; and

iv.     the Bank Group's Request for Dismissal of Guarantors Without Prejudice.

5.      <u>Deadline to File Plan</u>.  The Parties agree that the time within which the Debtor is required to file its Chapter 11 plan is extended to no later than August 31, 2011, or subject, however, to further extension, if any, by mutual agreement of the Parties.

6.      <u>Stay of Litigation</u>.  Conditioned upon there being no default under the terms of this Settlement Agreement, for 90 days after the execution of the Settlement Agreement, a stay shall be effective as to the following:  (i) the Guaranty Litigation in its entirety; and (ii) any scheduled judgment debtor exams of Milbank.  Except as provided in this paragraph, nothing in this Settlement Agreement shall affect any rights, obligations or remedies available to Bank of America N.A., with respect to any credit extended to Milbank pursuant to the loan documents related to that credit.

7.    Mechanic's Liens.  On the Effective Date, all of the insiders and affiliates of the Debtor set forth on the attached Exhibit "10," shall deliver to the Bank Group fully executed lien releases in the form attached hereto as Exhibit "11" (the "**Insider Lien Release**") evidencing that none shall assert a mechanic's lien against the Property.  On and after the Effective Date, if no Sale is consummated timely, then the Borrower Parties will cooperate in resolving any issues regarding the remaining mechanic's lien claims asserted by third parties.

8.    Release by the Debtor.  The Debtor, on its behalf and on behalf of its respective assigns, successors, administrators, executors, heirs, beneficiaries, agents, officers, directors, employees, owners, members, managers, affiliates, professionals, trustees, and representatives hereby release and forever discharge all claims, rights, demands, damages, actions, causes of action, costs, expenses, and suits of law or in equity which they have held, now hold or hereafter may hold against the Bank Group, including Bank of America, N.A., East West Bank, Manufacturers Bank and United Commercial Bank and each of their respective assigns, successors, administrators, executors, heirs, beneficiaries, agents, officers, directors, employees, owners, shareholders, members, managers, affiliates, professionals, attorneys, trustees, and representatives that arise in or are related to the Loan Documents or were or could have been alleged in the Guaranty Litigation.

9.    Scope of Release by the Debtor.  The Debtor understands that the release of claims set forth in this Settlement Agreement covers claims within the areas specified which the Debtor has knowledge of and those which it may not know about.  The Debtor expressly waives all rights under Section 1542 of the California Civil Code, which section the Debtor has read and understands, and which provides as follows:

> Section 1542.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Notwithstanding the foregoing, the release set forth herein shall not apply to the obligations under this Settlement Agreement, and shall have no effect upon any documents or acts necessary to accomplish the terms and intent of this Settlement Agreement.

10.    Bankruptcy Court Approval.

a.    The Debtor is not bound to perform under this Settlement Agreement until "**Bankruptcy Court Approval**," which shall mean both (i) entry of an order after hearing on approval of the Settlement Agreement in the form attached hereto as Exhibit "12" (the "**Bankruptcy Court Order**"), and (ii) the Bankruptcy Court Order is fully enforceable on its terms and has not been stayed, modified or altered by any court of competent jurisdiction.

b.    This Settlement Agreement is binding and fully enforceable as to each Party other than the Debtor on the Effective Date.  Notwithstanding the foregoing, no Party is obligated to perform under paragraph 3 of this Settlement Agreement without Bankruptcy Court Approval.

BN 9150681v2

LNBYB000045

   c. The Bankruptcy Court Order shall also approve the 362 Stipulation.

   d. The Debtor will file a motion for approval of this Settlement Agreement and the 362 Stipulation within 5 business days following the Effective Date and will seek to have the motion heard and approved on June 14, 2011 or as soon before or after as the Bankruptcy Court may set.  The Bank Group will reasonably assist the Debtor in obtaining Bankruptcy Court approval of this Settlement Agreement and the 362 Stipulation.  Subject to its review and approval, the Bank Group will support the motion, and will not oppose it.

   11. <u>Confidentiality</u>.  The Parties agree to keep the Purchase Price (and such other terms as may be expressly agreed upon in writing) confidential, and, if necessary, the Bank Group will support a motion by the Debtor in the Bankruptcy Case to seal the record and maintain the confidentiality of the Purchase Price.

   12. <u>Further Assurances</u>.  The Parties agree to perform such acts and to prepare, execute, deliver, file, and record any documents or agreements reasonably required to perform under and satisfy the conditions in this Settlement Agreement, or to give full force and effect to this Settlement Agreement.

   13. <u>Attorneys' Fees and Costs</u>.  If any action or proceeding is brought to enforce this Settlement Agreement, the prevailing Party shall be entitled to recover all of its costs in bringing and prosecuting such action to enforce the Settlement Agreement, including reasonable attorneys' fees, from the losing Party.

   14. <u>Complete Agreement</u>.  This Settlement Agreement supersedes any and all other agreements, understandings, negotiations or discussions, either oral or in writing, express or implied between the Parties concerning settlement.  The Parties to this Settlement Agreement each acknowledge that no representations, inducements, promises, agreements or warranties, oral or otherwise, have been made by them or any of them, or anyone acting on their behalf which are not embodied in this Settlement Agreement, that they have not executed this Settlement Agreement in reliance on a representation, inducement, promise, agreement or warranty, and that no representation, inducement, promise, agreement or warranty not contained in this Settlement Agreement including any purported supplements, modifications, waivers or terminations of this Settlement Agreement shall be valid or binding, unless executed in writing by all of the Parties to this Settlement Agreement.

   15. <u>Terms Read and Understood</u>.  Each of the Parties hereby certifies that he or it (i) has read the entire Settlement Agreement, (ii) has conferred with legal counsel pertaining to this Settlement Agreement, (iii) fully understands all of the terms of this Settlement Agreement, and (iv) acknowledges and represents that he or it enters into this Settlement Agreement and all other contemplated documents of their own free will and not due to any oral representation, commitment, promise, pressure, or duress from any other Party.

   16. <u>Successors and Third Parties</u>.  Each covenant in this Settlement Agreement shall inure to the benefit of and be binding upon the Parties and their respective owners, managers, heirs, successors, assigns, agents, employees, representatives (past and present), trustees, and legal and personal representatives.  Further, the releases of any entities

LNBYB000046

who are not signatories to this Settlement Agreement are made expressly for their benefit and they shall be deemed third party beneficiaries of this Settlement Agreement.  Except as set forth in this paragraph, there shall be no third party beneficiaries under this Settlement Agreement.

17.    Construction.  As used in this Settlement Agreement, the masculine and feminine gender, in the singular or plural, shall be deemed to include the others whenever the text so requires.  The term "including" in any form shall not be limiting and shall be construed to mean "including, but not limited to."  Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of text.  The language of all parts of this Settlement Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties.

18.    Governing Law.  This Settlement Agreement shall be governed by and construed in accordance with the internal substantive laws of the State of California, without giving effect to the principles of conflicts of law thereof, and applicable bankruptcy law.  Each of the Parties agrees that as long as the Bankruptcy Case remains open, any dispute, claim or controversy arising out of or relating to this Settlement Agreement shall be heard in the Bankruptcy Court and that the Bankruptcy Court has exclusive jurisdiction thereof.  If the Bankruptcy Case is closed, then any court of competent jurisdiction may resolve any dispute, claim or controversy arising out of or relating to this Settlement Agreement.

19.    Severability.  If any provision of this Settlement Agreement is determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner which would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision of this Settlement Agreement.

20.    No Waiver.  Failure to insist on compliance with any term, covenant or condition contained in this Settlement Agreement shall not be deemed a waiver of that term, covenant or condition, nor should any waiver or relinquishment of any right or power contained in this Settlement Agreement, at any one time or more times, be deemed a waiver or relinquishment of any right or power at any other time or times.

21.    Warranty of Authority.  Each Party whose signature is affixed hereto in a representative capacity represents and warrants that she/he is authorized to execute this Settlement Agreement on behalf of and to bind the entity on whose behalf her/his signature is affixed.

22.    Time of the Essence.  Time is of the essence in the performance of all obligations set forth in this Settlement Agreement.

23.    Counterparts.  This Settlement Agreement may be executed in separate counterparts which, together shall constitute one and the same fully executed Settlement Agreement.  Signed counterparts transmitted by facsimile or email shall be deemed originals.

[signatures follow on next page]

LNBYB000047

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first listed above.

BANK OF AMERICA, N.A.,
As administrative agent for the Bank Group

By: _____
        David R. Kegaries, Senior Vice President

ROOSEVELT LOFTS, LLC
By:  Its manager The Roosevelt Lofts, Inc.

By: _____
        M. Aaron Yashouafar, President

_____
        M. Aaron Yashouafar, individually

_____
        Solyman Yashouafar, individually

_____
        Simon Barlava, individually

9

LNBYB000048

<u>Exhibits</u>

1.  Assignment of Claims from the Bank Group to the Purchaser. (para. 1a.)

2.  Escrow Instructions (para. 1c)

3.  Bank Group's Request for Dismissal of Guaranty Litigation Without Prejudice (para. 1e)

4.  362 Stipulation (para. 3b)

5.  Bank Group's Request for Dismissal of Guarantors Without Prejudice (para. 3c)

6.  Covenant Not to Sue (para. 3d)

7.  Receivership Stipulation (para. 3e)

8.  Releases from the Guarantors (para. 4a.i)

9.  Guarantors' Request for Dismissal with prejudice of the Cross Complaint in the Guaranty Litigation (para. 4a.iv)

10. List of Insiders (para. 7)

11. Insider Lien Release (para. 7)

12. Bankruptcy Court Order (para. 10)

BN 9150681v2

LNBYB000049

**<u>Exhibit C</u>**

**Assignment of Claims**

**(see attached)**

LNBYB000050

## ASSIGNMENT OF CLAIMS

This Assignment of Claims is made this ___ day of June, 2011 pursuant to the Settlement Agreement dated as of June __, 2011 ( the "**Settlement Agreement**") among the following:  (i) the Bank of America, N.A., individually and as administrative agent for a group of lenders [1] (collectively, including Bank of America, N.A. and all such lenders, the "**Bank Group**"); (ii) M. Aaron Yashouafar ("**M.A. Yashouafar**"), Solyman Yashouafar ( "**S. Yashouafar**"), and Simon Barlava ("**Barlava**" and together with M.A. Yashouafar and S. Yashouafar the "**Guarantors**"); and (iii) Roosevelt Lofts, LLC, debtor and debtor in possession in the bankruptcy case no. 1:09-14214-GM (the "**Debtor**" and together with the Guarantors, the "**Borrower Parties**").  A true copy of the Settlement Agreement is attached as an Exhibit to the "Order Approving Motion to Compromise with Bank Group" (the "**Order**") entered June __, 2011 as docket no. ___ in the Debtor's bankruptcy case.  Unless otherwise defined herein, the words and phrases used in this Assignment of Claims and defined in the Settlement Agreement shall have those defined meanings.  Under the terms of the Order, the Bank Group does hereby covenant and agree as follows:

The Bank Group hereby assigns to _____ (the "**Purchaser**") the following:

(i)    to the extent permitted by applicable law and the terms of any such policies, any and all claims the Bank Group may have against First American Title Insurance Company arising under or related to the issuance of Policy No. NCS-213559 LA1 dated March 22, 2006 with respect to the real and personal property located at 727 West Seventh Street, Los Angeles, CA and commonly known as the "Roosevelt Lofts" Building (collectively, the "**Property**"), as well as the rights of the Bank Group, if any, to any other policies of title insurance covering the Loan Documents or the Property; and

(ii)    any and all claims the Bank Group may have against the Borrower Parties that exist, arise in or relate to the Loan Documents, together with any and all right, title and interest of the Bank Group in, to and under the Loan Documents (collectively, the "**Loan Document Claims**").

Except as expressly provided herein, this Assignment of Claims is made without recourse, representation or warranty, express or implied, by the Bank Group, including but not limited to the terms, existence or validity of any claims under any title insurance policy, or the terms, existence or validity of any claims against the Borrower Parties. Notwithstanding the foregoing, however, the Bank Group represents and warrants to the Purchaser that: (i) the Bank Group has all right, title and interest to the Loan Document Claims; (ii) the Bank Group has not transferred, assigned, pledged, hypothecated or otherwise encumbered the Loan Document Claims; (iii) the Loan Document Claims are assigned to the Purchaser free and clear of any lien, pledge, security interest or encumbrance; (iv) the Bank of America N.A. has all necessary authority to (a) enter into this Assignment of Claims, (b) provide the representations and warranties set forth

---

[1]     The Bank Group is comprised of the Bank of America N.A., East West Bank, Manufacturers Bank and United Commercial Bank.

LNBYB000051

herein, and (c) perform the obligations described herein, in each case on behalf of the Bank Group; (v) the Loan Documents include those scheduled on Exhibit "2" hereto; and (vi) Exhibit "2" describes the Loan Agreement, the Note, such additional promissory notes evidencing the debt secured by the Deeds of Trust (collectively, with the Note, the "**Bank Group Notes**"), the Deeds of Trust and the Guaranty.

The Bank of America N.A. will cause the originals of each of the following to be deposited into the escrow established pursuant to the Escrow Agreement no later than 2 days before the Payment Date:  (i) each of the Bank Group Notes, with a duly executed allonge attached thereto, assigning each of the Bank Group Notes to the Purchaser; and (ii) an assignment of each of the Deeds of Trust duly executed and acknowledged by the Bank of America N.A., as agent for the Bank Group, in a recordable form  In addition, the Bank Group will submit a copy of the Deeds of Trust and of the Guaranty, each acknowledged by the Borrower Parties as accurate and complete and enforceable as if an originally executed counterpart.

Without limiting the foregoing, the Bank Group has entered into a stipulation (the "**Mechanic's Lien Stipulation**") with certain mechanic's lien claimants that has been filed in adversary proceeding called Muir-Chase Plumbing *et al*. v. Bank of America N.A., as adv. case no. 1:10-01031 (the "**Mechanic's Lien Litigation**").  The Mechanic's Lien Stipulation was approved by the Bankruptcy judge at a court hearing on May 4, 2011.  An order approving the Mechanic's Lien Stipulation was entered on the docket in the Mechanic's Lien Litigation on May 20, 2011 as docket entry no. 83.  This assignment is expressly subject to the terms of the Mechanic's Lien Stipulation.

BANK OF AMERICA, N.A.
As administrative agent for the Bank Group

By:   _____
      David R. Kegaries
      Senior Vice President

Exhibit 2

Certain Loan Documents

1.      a Construction Loan Agreement dated March 6, 2006 between the Debtor and the Bank of America, N.A., as administrative agent for the Bank Group.

2.      a Deed of Trust Note executed on or about March 7, 2006 in the original principal amount of $78,840,375 payable to Bank of America N.A., a national banking corporation.

3.      a Deed of Trust Note executed on or about June 16, 2006 in the original principal amount of $10,000,000 payable to Manufacturers Bank, a California banking corporation.

4.      a Deed of Trust Note executed on or about June 16, 2006 in the original principal amount of $15,000,000 payable to East West Bank, a California banking corporation.

5.      a Deed of Trust Note executed on or about August 24, 2006 in the original principal amount of $15,000,000 payable to United Commercial Bank, a California banking corporation.

6.      an Amended and Restated Deed of Trust Note executed on or about August 24, 2006 in the original principal amount of $38,840,375 payable to Bank of America, N.A. a national banking corporation.

7.      a Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing recorded on March 22, 2006 as Instrument No. 0610284 of Official Records, and re-recorded on November 17, 2006 as Instrument No. 2553685 of Official Records.

8.      a Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing (California Leasehold Interest) recorded on March 22, 2006 as Instrument No. 0610286.

9.      a Guaranty Agreement made as of March 6, 2006 by M. Aaron Yashouafar Solyman Yashouafar and Simon Barlava

**<u>Exhibit D</u>**

**Escrow Agreement**

**(see attached)**

LNBYB000054

# COMMERCE ESCROW COMPANY

1545 WILSHIRE BLVD., 6th FLOOR, LOS ANGELES, CA 90017
TEL.: (213) 484-0855 / (310) 284-5700 / (888) 732-6723 / FAX: (213) 484-0417

COMMERCE ESCROW COMPANY IS LICENSED BY THE DEPARTMENT OF CORPORATIONS
STATE OF CALIFORNIA, LICENSE # 963 0884

GP 2009

## General Provisions

1) Time is of the essence in these instructions.  In the event that the conditions of this escrow have not been complied with at the expiration of the time provided for herein, you are instructed to complete the same at the earliest possible date thereafter, unless we or either of us have made written demand upon you for the return of the money and/or instruments deposited by either of us, in which case you may withhold and stop all further proceedings in this escrow, without liability for interest on funds held or for damages, until mutual cancellation instructions by all parties shall have been deposited in this escrow.  Whereupon you are then instructed to disburse the escrowed funds and instruments accordingly, less your proper charges, or you may return all funds and/or instruments, less your proper charges to the respective parties hereto, and this escrow shall without further notice, be considered terminated.

2) All prorations and adjustments are to be made on a basis of a 30 day month and "close of escrow" with reference to said prorations and adjustments shall be the day the instruments of conveyance called for herein are recorded or filed.

3) Unless otherwise instructed in writing prior thereof, all disbursements of funds and/or instruments of this escrow shall be by united states mail to the designated parties in accordance with these escrow instructions, at their respective address shown herein.

4) Escrow holder shall make no physical inspection and/or representation of the real and/or personal property described in any instrument deposited herein.

5) Escrow holder is authorized and directed to deposit any and all funds placed in this escrow in an "escrow trust account" with any state or national bank in the name of your company pending the completion of this escrow.  All disbursements shall be made by check of your company on said account.

6) Escrow holder is not held responsible for any personal property tax which may be assessed against any former or present owner of the property described in these instructions, nor for the corporation or license tax of any corporation as a former or present owner.

7) Escrow holder is authorized to destroy or otherwise dispose of any and all documents, papers, instructions, correspondence and other material pertaining to this escrow at the expiration of five years from the date of the close of escrow or the cancellation of this escrow, without liability and without further notice to the parties hereto.

8) Execute on behalf of the parties hereto, form assignments of interest in any insurance policies (other than title insurance policies) called for herein and forward them upon the close of escrow to the agent with request first that insurer consent to such transfer or attach loss payable clause and/or make such other additions or corrections as may have been specifically required herein, and second, that agent thereafter, forward such policies to the parties entitled to them.  You are authorized and instructed to consider the premiums on any insurance policies which are handed you are caused to be handed you in this escrow are paid in full and that said policies have not been hypothecated and are in full force and effect.

9) The parties hereto jointly and severally agree that in the event of cancellation they shall pay you a sum sufficient to pay for any expenses which you may have incurred pursuant to these instructions and a reasonable cancellation fee for services rendered by you.  Said expenses and fees shall be deposited in escrow before cancellation is effective they further agree that said charges may be apportioned to them in a manner which you consider equitable and that your decision in that regard will be binding and conclusive upon them.  Unless otherwise instructed in writing by third parties depositing funds into this escrow for the benefit of the parties hereto, such funds deposited by said third parties shall be returned to the party depositing same in the event of such cancellation.

LNBYB000055

## General Provisions - continued

10) If conflicting demands are made on you or notice is served upon you in connection herewith or any legal action is taken in connection with this escrow, you shall not be required to determine the same or take any action in the premises, but may withhold and stop all further proceedings without liability therefore or you may file suit in interpleader or for declaratory relief.  If you are required to respond to any legal summons or proceedings or if any action in interpleader or declaratory relief is brought by you, we jointly and severally agree to pay all costs, expenses and reasonable attorney's fees expended or incurred by you and a lien is hereby created in your company's favor to cover said items.  We agree to save you harmless as escrow holder hereunder from all loss and expense, including reasonable attorney's fees and court costs by reason of any action, legal or otherwise which may in any way arise out of this escrow, before or after closing or cancellation, notwithstanding anything in these instructions to the contrary.

11) If this escrow is not consummated, unless specifically instructed in writing to the contrary by the party depositing same, you are further authorized and instructed to remit all the funds by your check to the parties depositing same in this escrow.

12) In the event it may be necessary or proper for the consummation of this escrow, you are authorized to deposit or have deposited funds or documents, or both, with any bank, trust company, title company, savings and loan association, building and loan association, industrial loan company, credit union, admitted insurer, or licensed escrow agent, subject to your order pursuant to closing this escrow and such deposit shall be deemed a deposit in accordance with the terms of these instructions.

13) My signature on all instruments and instructions pertaining to this escrow indicates my unconditional acceptance and approval of same.

14) The parties to this escrow hereby authorize the recordation of any instrument delivered through this escrow if necessary or proper in the issuance of the policy of title insurance called for, and in connection therewith funds and/or instruments received in this escrow may be delivered to, or deposited with any title company for the purpose of complying with the terms and conditions of this escrow.

15) If any party to these instructions obtains a loan on the land involved or is represented by a broker or any attorney during the pendency of this escrow, you are authorized to furnish the lender, broker and/or attorney or anyone operating on their behalf, any information concerning this escrow, including but not limited to a copy or a certified copy of the escrow instructions and any amendments thereto, upon request.

16) In the event that part of the total consideration in this escrow be paid by "one party" to the other in the form of a note secured by a deed of trust in favor of "the other party" and as a result thereof this transaction falls under the purview of the provisions of the real estate settlement procedures act of 1974, the other party agrees to comply with the provisions of said act outside of escrow and you as escrow holder are not to be concerned therewith.

17) These instructions may be executed in counterparts, all of which when taken together shall be deemed to be the instrument.

18) **Next Business Day:** in the event that the calculation of any of the various time periods provided for in the agreement result in the obligation becoming due on a Saturday, Sunday, or legal holiday, the due date of such obligation, or scheduled time of occurrence of such event, shall be delayed until the next business day, unless instructed to the contrary.

19) California Income Tax Notification to Buyers and Sellers:
Seller hereby acknowledges receipt of California Franchise Tax Board general information booklet relative to 2005 tax law changes, along with relevant forms for completion (California form 593-c w/instructions).

Seller and/or buyer hereby agree to comply with **California Revenue and Taxation Code Section 18662**, as expanded by **assembly bill 2065,** for sales of California real property that close **on or after January 01, 2003**, and shall cause to be deposited into escrow such forms that may be necessary for the parties hereto to be in compliance with said tax code, as expanded.

Page 2
Continued on Page 3

LNBYB000056

## General Provisions - continued

20) Parties hereto are aware that a preliminary change of ownership report, in accordance with section 480.3 of the revenue and taxation code is to be completed by any transferee for each and every recorded document pertaining to the change of title and filed with the county recorder at the time the document is recorded for property located in the state of California.  Such form will be handed to buyer during the course of this escrow.  Buyer (and/or seller if a document is recorded for the benefit of same) is aware that transferee is liable for any and all fees/penalties in connection with same (including surcharge) if said report is not completed and filed at the close of escrow.  Escrow holder is hereby relieved of any liability or responsibility in the event that the form submitted by buyer (or seller) is not acceptable or if buyer (or seller) fails to submit the form.

21) The signatures of any party hereto shall be deemed delivered to Commerce Escrow Company when escrow holder receives a signed fax or an electronic signature from the signatory.  The party sending such fax or electronic transmittal shall within a reasonable period of time thereafter follow up said signature by sending an originally executed copy of the faxed or electronic material to escrow holder.  Escrow holder shall have no liability and/or responsibility to obtain said original executed document of the faxed or electronically transmitted material should same not have been received by escrow holder prior to the close of escrow. Provided that the principals to this escrow have placed the escrow holder otherwise in a position to close this escrow, the principals hereby further instruct and authorize the escrow to proceed with the closing of this escrow. Escrow holder is further relieved of any responsibility and/or liability of receiving the original executed fax and/or electronic material subsequent to the closing of this escrow. The parties are aware that the county recorder's office and that certain lenders require ink signed original documentation for recordation and may have paper quality and size requirements.

22) The buyer is aware that under certain circumstances, if the seller is a foreign person or entity as defined in the foreign investors real property tax act section 1445 of internal revenue code, buyer will be required to withhold ten per cent of the purchase price.

Each seller/transferor will either deposit: a) seller's affidavit that seller is not foreign or b) a qualifying statement issued by the IRS. Absent the seller's affidavit or the qualifying statement prior to the close of escrow, both the buyer and seller will deliver to escrow holder in writing joint mutual instructions setting forth escrow holder's duties in connection with the withhold, if any.

23) As a condition to acting as escrow agent in the within transaction, certain information must be provided by sellers/transferors to escrow holder prior to the date of closing.  Under the tax reform act of 1986, escrow holder is required to report the gross proceeds of an ownership interest in reportable real estate to the internal revenue service ("IRS") the seller/transferor is required by law to furnish a correct taxpayer identification number ("TIN") or social security number to escrow holder and seller/transferor may be subject to civil or criminal penalties for failure to do so. Each seller/transferor must provide a permanent address to which escrow agent can mail I.R.S. form 1099-s following the closing of the escrow.

If there is more than one seller/transferor, an allocation of the gross proceeds from the within transaction must be received by escrow holder prior to the date of closing.  If escrow holder fails to receive a complete allocation or receives no allocation as to any seller/transferor, escrow holder must report the entire unallocated gross proceeds to that seller/transferor.  If conflicting allocations are received, escrow holder must report the entire gross proceeds on each seller/transferor's 1099-s to the irs.  Sellers/transferors who are married on the closing date and who hold title to the subject property as tenants in common, joint tenancy or community property are treated for reporting purposes as a single seller/transferor.

24) The buyer and seller acknowledge that depending on the type (commercial, residential) and location (city) of real property involved in this escrow, there may be disclosure(s) as well as civil ordinance requirement(s) that would affect the transfer of the real property.  Escrow holder urges both the buyer and the seller to seek appropriate counsel to ascertain what disclosure and/or civil ordinances if any need to be complied with prior to the close of escrow, outside of escrow as between buyer and seller.  The buyer and seller's signature upon these instructions shall be deemed evidence by escrow holder that buyer and seller have obtained counsel, are aware of any disclosures/civil ordinance requirements and will comply with same outside of this escrow.  Unless otherwise instructed in writing to the contrary within the body of the escrow instructions, escrow holder shall have no responsibilities or liabilities in connection herewith.

LNBYB000057

## General Provisions - continued

25) In the event the terms of the escrow transaction as contained in attached escrow instructions, contract, or agreement, call for the investment of deposited funds, it is hereby understood, by and between the principals hereto, that such investment shall be in the form of a money market interest bearing account at City National Bank, located in Commerce, California, after bank clearance of check and after receipt of form W-9, unless specifically provided for in writing to the contrary. The name of the account will be Commerce Escrow Co. as trustee for this escrow for the benefit of depositing party. All interest accrued thereon shall be credited to the account of depositing party at close of escrow. In the event the escrow fails to close, the interest shall be credited to the account of the depositing party at cancellation. The funds will not be withdrawn except for redeposit into the "trust" or "escrow" account. In compliance with this instruction, the depositing party hands you herewith form w-9 as required by city national bank. The depositing party is aware that the account will not be opened until escrow holder is in receipt of fully completed and executed form W-9 from depositing party. Furthermore, in the event the depositing party fails to furnish or does not have a tax payer identification number, then a certain portion of the interest accrued on the account may be paid by the bank to the I.R.S. as back-up withholding. (note: in the event the depositing party is not a us citizen or resident or is a foreign corporation, partnership, estate or trust, then the depositing party should request from escrow holder and complete form w-8 in lieu of form w-9.)

All parties to this transaction hereby acknowledge their understanding that all investments made through this escrow transaction by commerce escrow company must be made pursuant to FDIC guidelines and limitations, as more particularly mandated by the department of corporations code section 1737 (CCR) special accounts. In addition, all parties to this transaction acknowledge their familiarity with the limitation on payments for insured deposits in excess of $250,000.00, as mandated by the federal insuring governmental agency, and the cumulative effect of other accounts held or owned by the depositing party in the named depository. The total liability or responsibility of the escrow holder is to make the deposit as instructed, which shall be held in accordance with the rules and regulations of the depository.

The parties hereto have satisfied themselves to the extent that all necessary federal, state, local and administrative laws and regulations, which may pertain to and/or affect the real (and personal) property which is the subject of this escrow transaction, including, but not limited to, certificate of compliance-water conservation ordinance (which ordinance effects residential and commercial/industrial and apartment buildings) have been met. The parties hereto acknowledge that escrow holder is not responsible, nor liable, for providing information as to such laws and regulations or of causing documentation relative to same, to be prepared and/or filed. In addition all parties are hereby aware and amend the fact as needed that Commerce Escrow shall be governed by the laws of the state of California.

26) This notification is in compliance with our obligations to comply with federal (and state) law to safeguard your nonpublic personal information.

    We collect nonpublic personal information about you from the
following sources:
- A) Information we receive from you on applications or other forms;
- B) Information about your transactions with us, our affiliates, or others involved in the processing of your transaction, and
- C) Information we receive from a consumer reporting agency.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

We restrict access to nonpublic information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic and procedural safeguards that comply with federal and state regulations to guard your non-public personal information.

28) I have received a copy of these instructions as evidenced by my signature herein.

LNBYB000058

## ADDENDUM TO GENERAL PROVISIONS
## JOINT ESCROW INSTRUCTIONS

These Joint Escrow Instructions ("**Instructions**") are made as of June __, 2011 by and among (i) M. Aaron Yashouafar ("**M.A. Yashouafar**"), Solyman Yashouafar ("**S. Yashouafar**"), and Simon Barlava ("**Barlava**" and together with M.A. Yashouafar and S. Yashouafar, the "**Guarantors**"); (ii) Roosevelt Lofts, LLC (the "**Borrower**" and together with the Guarantors, the "**Borrower Parties**"); (iii) Greystar GP, LLC (the "**Purchaser**"); (iv) Bank of America, N.A., individually and as administrative agent for a group of lenders (collectively, the "**Bank Group**"); and (v) Commerce Escrow Company ("**Escrow Agent**").

These Instructions amend and supplement those certain General Provisions dated June ___, 2011 (the "**General Provisions**") entered into by the Borrower Parties, the Purchaser, the Bank Group and Escrow Agent. All references to the General Provisions shall be construed to mean the General Provisions and all exhibits and addenda attached thereto (including these Instructions). In the case of a conflict between the terms of the General Provisions and the terms of these Instructions, the terms of these Instructions shall control.

These Instructions are based on the following facts:

A.    The Borrower Parties and Bank Group are parties to that certain Settlement Agreement (the "**Settlement Agreement**") dated ~~of even date herewith~~, *June 3, 2011* which provides for the possible purchase and sale of those certain rights under the Loan Documents (as defined in the Settlement Agreement) to Purchaser or another entity as may be designated by the Borrower and approved by the Bank Group; and

B.    The Borrower Parties, the Purchaser and the Bank Group desire that Escrow Agent act in accordance with the instructions set forth in these Instructions.

**NOW, THEREFORE,** in consideration of the terms, conditions, and covenants hereinafter set forth, the parties hereto mutually agree as follows:

## AGREEMENT:

1.    **Delivery of Escrow Documents to Escrow Agent**.

(a)    The Bank Group has executed and delivered to Escrow Agent, and Escrow Agent acknowledges receipt of, the following documents (the "**Initial Escrow Documents**"):

(1)    Assignment of Claims from the Bank Group to the Purchaser in the form attached hereto as <u>Exhibit A</u> (the "**Assignment of Claims**");

(2)    Covenant Not to Sue in the form attached hereto as <u>Exhibit B</u> (the "**Covenant**"); and

LNBYB000059

(3)      Bank Group's Request for Dismissal of Guarantors without prejudice in the form attached hereto as <u>Exhibit C</u> (the "**Request for Dismissal of Guarantors**").

(4)      Bank Group's Request for Dismissal of the entire Guaranty Litigation without prejudice in the form attached hereto as <u>Exhibit D</u> (the "**Request for Dismissal of Guaranty Litigation**").

(b)      At least two (2) days prior to the Payment Date (as defined in the Settlement Agreement), the Bank Group shall cause to be delivered to Escrow Agent the documentation specified in the Assignment of Claims (the "**Supplemental Escrow Documents**," and collectively with the Initial Escrow Documents, the "**Escrow Documents**"). Escrow Agent will immediately notify Purchaser upon receipt of the Supplemental Escrow Documents.

(c)      Escrow Agent acknowledges that the Escrow Documents are to be held in escrow subject to the terms contained in these Instructions.

## 2.    <u>Delivery of Funds to Escrow Agent</u>.

(a)      Escrow Agent shall receive funds from the Purchaser as follows (collectively, the "<u>Funds</u>"):

(1)      On or before June 13, 2011, an initial installment of $5,000,000;

(2)      On or before July 13, 2011, a second installment of $10,000,000;

(3)      On or before August 12, 2011, a third installment of $20,000,000; and

(4)      On or before September 1, 2011, a fourth and final installment of $33,000,000 plus an amount sufficient to pay all costs and expenses due to the Escrow Agent in connection with the transactions contemplated in these Instructions.

(b)      Escrow Agent shall immediately notify the Bank Group upon receipt of the Funds as set forth above. If Escrow Agent does not timely receive the Funds in the manner and amounts set forth above, Escrow Agent shall immediately provide notice to the Bank Group of such failure to receive the Funds.

(c)      The Funds shall be and remain property solely of Purchaser. Escrow Agent will place all of the Funds received by Escrow Agent into a separate interest bearing deposit account at City National Bank located in Los Angeles, California, after bank clearance of check and after receipt of a completed W-9 form. In no event shall any of the Borrower Parties, the Bank Group, or any other person or party have any legal or equitable right to any of the Funds. No holder of a claim against or interest in any of the Borrower Parties shall have any right to attach or claim to payment from any Funds. If for any reason the closing of the transaction contemplated hereby is not consummated on or before August 22, 2011, then notwithstanding any provision in these Instructions to the contrary, all Funds shall be promptly returned to Purchaser without need for further order of any court or approval of any party.

2

LNBYB000060

(d)    Escrow Agent shall immediately return all funds to Purchaser in the event that (i) the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**") fails to enter the Plan Support Agreement Order (as defined in that certain Plan Support Agreement among Borrower, The Roosevelt Lofts, Inc. and Purchaser dated on or about the date hereof (the "**Plan Support Agreement**")) on or before June 20, 2011, or (ii) the Bankruptcy Court fails to enter the BofA/Debtor Settlement Order (as defined in the Plan Support Agreement) on or before June 14, 2011..

**3.    Conditions Precedent to Closing.**

Notwithstanding anything herein to the contrary, Escrow Agent is authorized to close the transaction as instructed in Section 4 below when and only when:

(a)    The Bank Group has delivered the Escrow Documents to Escrow Agent;

(b)    The Purchaser has delivered all of the Funds to Escrow Agent;

(c)    The Bank Group has approved the Purchaser as being in compliance with the USA PATRIOT Act and the United States Treasury Department's Office of Foreign Asset Control's Specially Designated Nationals and Blocked Persons List) in a manner as described in Exhibit "E" hereto; and

(d)    Bankruptcy Court Approval of the Settlement Agreement as defined in paragraph 10 of the Settlement Agreement.

(e)    Escrow Agent has received telephonic or email authorization from David R. Kegaries of the Bank Group to proceed with the closing of the transaction.

(f)    Escrow Agent has received telephonic or email authorization from A. Joshua Carper or Kevin Kaberna, of Purchaser, to proceed with the closing of the transaction.

**4.    Closing of Transaction.**

Upon satisfaction of all conditions set forth in Section 3 above, Escrow Agent shall:

(a)    Disburse ███████ of the Funds to the Bank Group by wire transfer at the Bank Group's wire address set forth on Schedule 1;

(b)    Deliver the executed Assignment of Claims to the Purchaser;

(c)    Return the executed Covenant to the Bank Group;

(d)    Return the executed Request for Dismissal of Guarantors to the Bank Group;

(e)    Deliver the executed Request for Dismissal of Guaranty Litigation to the Borrower Parties; and

(f)    Deliver all of the Supplemental Escrow Documents to the Purchaser.

5.      **Failure to Close Transaction**.

If any of the conditions set forth in <u>Section 3</u> above are <u>not</u> satisfied and the Escrow Agent receives notice from the Bank Group or Purchaser that the transaction will not be consummated, Escrow Agent shall:

(a)     Pay all Escrow Agent's costs and expenses incurred in connection with the transaction;

(b)     Promptly disburse all of the Funds (minus any amounts used to pay Escrow Agent's costs and expenses pursuant to paragraph 5(a) above) to the Purchaser in the manner requested by the Purchaser;

(c)     Return the executed Assignment of Claims to the Bank Group;

(d)     Return all of the Supplemental Escrow Documents to the Bank Group;

(e)     Return the executed Request for Dismissal of Guaranty Litigation to the Bank Group;

(f)     Deliver the executed Covenant to the Borrower Parties; and

(g)     Deliver the executed Request for Dismissal of Guarantors to the Guarantors.

6.      **Costs and Expenses**.

All costs and expenses of the Escrow Agent incurred in connection with the transactions contemplated in these Instructions shall be paid for by the Purchaser.

7.      **Escrow Agent Matters**.

(a)     Escrow Agent shall have no duties or responsibilities except those set forth in these Instructions and shall incur no liability in acting upon any signature, notice, request, waiver, consent, receipt or other paper or document believed by Escrow Agent to be genuine.

(b)     The Borrower Parties, the Purchaser and the Bank Group hereby jointly and severally agree to indemnify and save Escrow Agent harmless from and against any and all loss, damage, claims, liabilities, judgments and other costs and expenses which may be incurred by Escrow Agent by reason of its acceptance of, and its performance under, these Instructions unless caused by the negligence or intentional act or omission of Escrow Agent.

(c)     Escrow Agent may act or refrain from acting with respect to any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it and shall be fully protected in so acting or refraining from acting upon the advice of such counsel.

8.      **Notices**.

Notices and other communications required to be given hereunder, or which may be given pursuant or relative to the provisions hereof, shall be in writing and shall be deemed to

SD\790687.2

LNBYB000062

have been given when delivered in hand or mailed, postage prepaid, by first class United States mail, certified return receipt requested or by facsimile as follows:

<u>If to the Bank Group</u>:    Bank of America, N.A.
333 South Hope St., 11th Floor
Los Angeles, CA 90071
Attention:  David R. Kegaries
Facsimile:  (213) 621-4868

With a copy to:    Buchalter Nemer, P.C.
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017
Attention: Daniel Slate, Esq.
Facsimile: (213) 630-5640
dslate@buchalter.com

<u>If to the Borrower Parties</u>:    Roosevelt Lofts, LLC
c/o Milbank Real Estate Services, Inc.
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Attention:  M. Aaron Yashouafar
Facsimile:  (213) 403-1440

With a copy to:    Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Attention:  David L. Neale, Esq.
Facsimile:  (310) 229-1234
Email:  dln@lnbyb.com

<u>If to the Guarantors</u>:    M. Aaron Yashouafar
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Facsimile:  (213) 403-1440

Solyman Yashouafar
660 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017
Fax:  (213) 403-1440

Simon Barlava
2209 South Santa Avenue
Los Angeles, Ca, 90058
Fax:  (323) 277-1717

With a copy to:    Homan Taghdiri, Esq.
660 S. Figueroa Street, 24th Floor

SD\790687.2

LNBYB000063

|  | Los Angeles, CA 90017 |
|  | Facsimile: (213) 403-1440 |

If to the Purchaser:    Greystar GP, LLC
Attention: A. Joshua Carper
3rd Floor
18 Broad Street
Charleston, NC 29401
United States of America
Fax: (843) 579-9420
Email: jcarper@greystar.com

With a copy to:    Robert A. Klyman, Esq.
Latham & Watkins LLP
355 S. Grand Ave.
Los Angeles, CA 90071
Fax: (213) 891-8763
Email: robert.klyman@lw.com

If to Escrow Agent:    Commerce Escrow Company
1545 Wilshire Boulevard, Suite 600
Los Angeles, CA 90017
Attention: Luisa Chi
Facsimile: 213-201-5192
Email: lchi@comescrow.com

**9.    Successors and Assigns Bound; Captions**

These Instructions shall not be assigned by a party without the prior written consent of the other parties, except that Purchaser may assign its rights hereunder without the need for any such consent, so long as (i) the assignee (a) is an affiliate of Greystar GP, LLC, and (b) complies with the provisions of paragraph 3(c) of these instructions, and (ii) the day-to-day operations of the assignee are controlled, directly or indirectly, by Greystar Real Estate Partners, LLC. Except as limited by the preceding sentence, the covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of the Bank Group, the Purchaser, the Borrower Parties and Escrow Agent. The captions and headings of the paragraphs in these Instructions are for convenience only and are not to be used to interpret or define any provisions hereof.

**10.    Governing Law; Venue; Severability**.

These Instructions shall be governed by the laws of California. Any dispute between the parties that rises to litigation shall be conducted in the United States District Court for the Central District of California. If any provision or clause of these Instructions conflicts with applicable law, such conflict shall not affect other provisions of these Instructions which can be given effect without the conflicting provision, and to this end the provisions of these Instructions are declared to be severable.

LNBYB000064

**11.**   **No Third Party Beneficiary**.

The terms and provisions of these Instructions shall not create any right in any person, firm, corporation or entity other than the parties hereto and their respective successors and permitted assigns, and no third party shall have the right to enforce or benefit from the terms hereof.

**12.**   **Interpretation**.

No provision of these Instructions shall be construed against or interpreted to the disadvantage of any party by reason of such party having or being deemed to have requested, drafted, required or structured such provision.

**13.**   **Counterparts**.

These Instructions (and any amendments, modifications or extensions hereof) may be executed in several counterparts and, after execution and as executed, shall constitute an agreement binding on all of the parties, notwithstanding that all of the parties are not signatory to the original or the same counterpart.

**14.**   **Facsimile**.

Execution copies of these Instructions may be delivered by facsimile or electronic mail, which shall be deemed to be an original for the purposes of these Instructions.

*[Signature Page(s) To Follow]*

SD\790687.2

LNBYB000065

**IN WITNESS WHEREOF**, the parties hereunto have executed these Instructions as of the date first written above.


**BORROWER PARTIES:**

**ROOSEVELT LOFTS, LLC**
By:  Its manager The Roosevelt Lofts, Inc.


By:  _____
      M. Aaron Yashouafar, President



_____

**M. Aaron Yashouafar**, individually



_____

**Solyman Yashouafar**, individually



_____

**Simon Barlava**, individually




**PURCHASER:**


**GREYSTAR GP, LLC,**
**a Delaware limited liability company**


By:  _____
Name:
Its:




Joint Escrow Instructions          S-1
SD\790687.2

LNBYB000066

**BANK GROUP:**

**BANK OF AMERICA, N.A.,**
as administrative agent for the Bank Group


By:    _____
        David R. Kegaries, Senior Vice President




**ESCROW AGENT:**


**COMMERCE ESCROW COMPANY**


By:    _____
Name:
Its:

**<u>Schedule 1</u>**

**Wire Instructions – Bank Group**

**[INSERT BANK GROUP WIRE INSTRUCTIONS]**

Schedule 1
Wire Instructions – Bank Group

SD\790687.2

LNBYB000068

## **Exhibits A – D**

Exhibits A – D are attached to the *Supplement To Notice Of Motion And Motion Pursuant To Federal Rule Of Bankruptcy Procedure 9019 For Authority To Compromise Controversy With Bank Of America, N.A., Individually And As Administrative Agent For A Group Of Lenders* filed on June 8, 2011 as Docket No. 793.

LNBYB000069

**Exhibit E**

**USA PATRIOT ACT; OFAC**


      Purchaser and its designee (i) are, and shall remain, in compliance with all applicable anti-money laundering laws, including without limitation, the USA PATRIOT Act and the laws administered by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), including, without limitation, Executive Order 13224 (as amended or modified from time to time, (ii) are not, and shall not be, on the OFAC Specially Designated Nationals and Blocked Persons Lists, which, as of the date hereof, may be accessed through the following Internet address:  http://www.treas.gov/offices/enforcement/ofac, and (iii) are not, and shall not be otherwise identified by government or legal authority as a person with whom a U.S. Person (as defined below) is prohibited from transacting business.  Purchaser covenants and agrees to deliver to the Bank of America N.A. any certification or other evidence requested from time to time by Bank of America N.A. in it reasonable discretion confirming Purchaser's compliance with this section.  As used herein, "U.S. Person" shall mean any United States citizen, any permanent resident alien, any entity organized under the laws of the United States (including foreign branched) or its political subdivisions, or any person in the United States.

Exhibit D
USA Patriot Act; OFAC

LNBYB000070

**<u>Exhibit E</u>**

**Greystar Receivership Stipulation**

**The Greys tar Receiv ership Stip ulation sha ll be in a     form    acceptable to Greystar, and substantially in the form of, and comparable to, the Receivership Stipulation (as defined in the BofA Settlement).**

LA\2263445.11

LNBYB000071

1  LATHAM & WATKINS LLP
   Robert A. Klyman (State Bar No. 142723)
2  355 S. Grand Ave.
   Los Angeles, CA  90071
3  Telephone:  (213) 485-1234
   Facsimile:  (213) 891-8763
4

5  Attorneys for Plaintiff
   Greystar GP, LLC
6

7           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
                **FOR THE COUNTY OF LOS ANGELES**
8

9  GREYSTAR GP, LLC , a Delaware Limited        CASE NO.
   Liability Company,
10                                              **STIPULATION FOR APPOINTMENT OF**
11                 Plaintiff,                    **RECEIVER; [PROPOSED] ORDER**

12       vs.

13  ROOSEVELT LOFTS, LLC (aka THE
    ROOSEVELT LOFTS, LLC), a Delaware
14  limited liability company, *et al.*

15  Defendants, Inclusive,

16                 Defendants.

17

18

19         The parties to this Stipulation for Appointment of Receiver ("Stipulation") are, Plaintiff,

20  Greystar GP, LLC ("Greystar"), as successor to and assignee of claims and rights of Bank of

21  America, N.A., a national banking association, individually and as the Administrative Agent on

22  behalf of Bank of America, N.A., Manufacturers Bank, a California banking corporation, United

23  Commercial Bank, a California banking corporation, and East West Bank, a California banking

24  corporation, ("Lender"), as further described below in Section F hereof, below, and Defendant,

25  Roosevelt Lofts, LLC (aka The Roosevelt Lofts, LLC), a Delaware limited liability company

26  ("Roosevelt"), by and through the parties' undersigned counsel.

27                                      **RECITALS**

28         A.       On or about March 9, 2006, the Debtor executed a Construction Loan Agreement

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LA\2268489.2

LNBYB000072

(the "Loan Agreement") with the Bank of America N.A., as administrative agent for the Bank Group in the amount of $78,840,375. On or about March 9, 2006, Debtor executed a Deed of Trust Note in the original principal amount of $78,840,375 (the "Note"). The Loan Agreement and Note are secured by two deeds of trust: (i) the Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing recorded on March 22, 2006 and rerecorded on November 17, 2006 to correct certain typographical errors (the "Fee Deed of Trust"), and (ii) the Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing (California Leasehold Interest) recorded on March 22, 2006 (the "Leasehold Deed of Trust," and collectively, with the Fee Deed of Trust, the "Deeds of Trust"). The Deeds of Trust encumber the property commonly known as the "Roosevelt Building," located at 727 West 7th Street, Los Angeles, California (the "Property"), including an absolute assignment of all rents, issues and profits generated from operation of the Property (collectively, the "Collateral").

B.      In further consideration of the Bank Group's loan and extension of credit, on or about March 9, 2006, the Guarantors each agreed to guarantee certain of the Debtor's obligations under the Loan Agreement and Note pursuant to the terms of a written Guaranty Agreement (the "Guaranty"). The Loan Agreement, Note, Deeds of Trust and the Guaranty, together with all modifications thereto and all other ancillary documents are collectively referred to as the "Loan Documents."

C.      That certain Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing recorded on March 22, 2006 as Instrument No. 06 0610284, and re-recorded on November 17, 2006 as Instrument No. 20062553685 to correct certain typographical errors (collectively, the "Fee Deed of Trust"), and that certain Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing (California Leasehold Interest) recorded on March 22, 2006 as Instrument No. 06 0610286 (the "Leasehold Deed of Trust"), encumbering the Property, and by which Roosevelt is bound, provide for the *ex parte* appointment of a receiver in the event of Roosevelt's default.

2

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LA\2268489.2

LNBYB000073

Specifically, Section 5.1 – Remedies, of each of the Fee Deed of Trust and the Leasehold Deed of Trust, provide that Lender shall be entitled to *ex parte* appointment of a receiver in the event of Roosevelt's default:

> (g) <u>Receiver</u>. Holder [a defined term under the Fee Deed of Trust that includes Lender and any subsequent beneficiary under the Fee Deed of Trust], on behalf of itself and Lenders, shall as a matter of right be entitled to the appointment of a receiver or receivers for all or any part of the Property, whether such receivership is incident to a proposed sale (or sales) of such property or otherwise, and without regard to the value of the Property or the solvency of any person or persons liable for the payment of the Secured Indebtedness, and Borrower does hereby irrevocably consent to the appointment of such receiver or receivers, waives notice of such appointment, of any request therefor or hearing in connection therewith, and any and all defenses to such appointment, agrees not to oppose any application therefor by Holder, and agrees that such appointment shall in no manner impair, prejudice or otherwise affect the rights of Holder and Lenders to application of Rents as provided in this Deed of Trust. Nothing herein is to be construed to deprive Holder or Lenders of any other right, remedy or privilege they may have under the law to have a receiver appointed. Any money advanced by Holder or Lenders in connection with any such receivership shall be a demand obligation (which obligation Borrower hereby promises to pay) owing by Borrower to Holder (for its own account or the account of Lenders, as applicable) pursuant to this Deed of Trust.

D.    The Borrower Parties each defaulted on their obligations to the Bank Group. As a result, the Bank Group delivered a default notice dated December 30, 2008. On March 23, 2009, the Bank Group caused notices of default to be recorded in the Los Angeles County Registrar-Recorder's Office. On or about April 3, 2009, the Bank Group filed a complaint for breach of the Guaranty, appointment of a receiver and judicial foreclosure on the Deeds of Trust in the Superior Court of the State of California for the County of Los Angeles, bearing case no. SC 102472 (the "Guaranty Litigation").

E.    On April 13, 2009, the Debtor filed a voluntary petition commencing a chapter 11 bankruptcy case in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), bearing case no. 1:09-bk-14214-GM (the "Bankruptcy Case").

F.    Greystar has acquired all of Lender's and the Bank Group's respective rights, title and interest in the Loan Agreement, Note, Deeds of Trust, Guaranty and Collateral, and

3

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LA\2268489.2

LNBYB000074

1   Greystar and Roosevelt have agreed that Greystar shall have the right to exercise all of Lender's

2   and the Bank Group's respective rights thereunder.

3           G.      Greystar and Roosevelt have agreed that this Court may enter the attached

4   Stipulated Order Appointing Receiver Ex Parte; Temporary Restraining Order In Aid Of the

5   Receiver ("Stipulated Receivership Order"); a copy of which is attached as Exhibit "A."  For

6   avoidance of doubt, for purposes of this Stipulation and the Stipulated Receivership Order, the

7   term Greystar shall include Greystar and any designee of Greystar.

8           G.      Greystar and Roosevelt have further agreed that Greystar shall post a bond in the

9   amount of $20,000.00, pursuant to Code of Civil Procedure Section 567(b), and a bond in the

10  amount of $10,000.00, pursuant to Code of Civil Procedure Section 529, and that such amounts

11  shall be considered sufficient.  Both bonds shall be from an admitted surety insurer.  The bonds

12  shall be filed with this Court no later than five court days after the issuance of this Court's

13  Order..

14                              **<u>AGREEMENT</u>**

15          Greystar and Roosevelt hereby stipulate that this Court should enter the accompanying

16  Stipulated Receivership Order attached hereto as Exhibit "A."

17  DATED:                                  LATHAM & WATKINS LLP

18
                                            By_____
19                                             ROBERT A. KLYMAN
                                               Attorneys for Plaintiff
20                                             GREYSTAR GP, LLP

21

22  DATED:

23                                          By_____
                                               Attorneys For Defendant
24                                             ROOSEVELT LOFTS, LLC (aka THE
                                               ROOSEVELT LOFTS, LLC), a Delaware
25                                             limited liability company

26  DATED:                                  THE ROOSEVELT LOFTS, INC.
                                            THE A/K/A THE ROOSEVELT LOFTS,
27                                          INC.

28
                                    4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2268489.2

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LNBYB000075

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By /s/ _____

Its /s/ _____

5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LNBYB000076

# EXHIBIT A

## [PROPOSED] STIPULATED ORDER APPOINTING RECEIVER EX PARTE AND TEMPORARY RESTRAINING ORDER IN AID OF THE RECEIVER

**GOOD CAUSE APPEARING, IT IS ORDERED** that, [                    ][1] (the "Receiver") is appointed as receiver to take possession, custody and control of all of the assets of Defendant Roosevelt Lofts, LLC (aka The Roosevelt Lofts, LLC, and hereinafter "Defendant") including the property commonly known as the "Roosevelt Building," located at 727 West 7th Street, Los Angeles, California, which secure its obligations to Lender[2] (the "Receivership Property").

1.    **Receiver's Appointment**.  The Receiver is to immediately take possession, custody and control of the Receivership Property and to maintain and conserve said Receivership Property pending further order of this Court.  The powers of the Receiver shall be all the usual and customary powers of a receiver to take control of and operate the Receivership Property, including the duties and powers enumerated below.

2.    **Receiver's Oath and Bond**.  Before performing his duties, the Receiver shall execute a receiver's oath and file a bond in the sum of $25,000, conditioned upon the faithful performance of the Receiver's duties.  The bond shall be from a surety approved by the Court and shall be filed in Department _____, by no later than 4:00 p.m., on _____, 20__.

3.    **Receiver's Duties and Powers**.  The Receiver shall be vested with the authority to do the following:

a.    Take possession, custody and control of, and operate, manage, control and conduct the Receivership Property;

b.    Collect all rents, issues, profits, and income resulting from the operation of the Receivership Property;

---

[1] Greystar GP, LLC or its designee (collectively, "Greystar") shall have the right to designate the identity of the person who will serve as the Receiver.

[2] For purposes of this Stipulated Order, the terms "Lender" and "Plaintiff" shall mean Greystar.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

STIPULATION FOR APPOINTMENT OF RECEIVER; AND [PROPOSED] ORDER

LA\2268489.2

LNBYB000077

c.      Care for, preserve, operate and maintain the Receivership Property and incur the expenses necessary for such care, preservation and maintenance of the Receivership Property;

d.      Hire and fire employees, including a manager or management company;

e.      The Receiver may, without further order of this court, terminate all contractor, subcontractor rental, property management sales agency and security company agreements in place related to the Receivership Property deemed by him to be burdensome to the Receivership Property subject to any restrictions within the OCIP insurance (if applicable);

f.      Enter into contracts as the Receiver reasonably believes necessary for the operation or completion of the Receivership Property;

g.      Rent or lease any part of the Receivership Property (including, individual units in the Receivership Property);

h.      Institute and prosecute all suits that the Receiver, upon obtaining permission of the Court, may reasonably believe to be necessary in connection with the operation of the Receivership Property, and defend all such suits and actions as may be instituted against the Receivership Property or the Receiver;

i.      Obtain and pay for any licenses or permits that the Receiver reasonably believes to be necessary for the operation of the Receivership Property;

j.      Obtain and pay for any insurance that the Receiver reasonably believes to be necessary for the operation of the Receivership Property;

k.      Issue subpoenas, conduct and participate in discovery, take depositions, pursue contempt actions, and otherwise pursue all remedies available by law to ensure compliance with the Receiver's authority granted herein; and

l.      Tender any suits or claims against the Receivership Property to any appropriate insurance company.

4.      **Operation of Receivership Property**.  The Receiver shall operate and manage the Receivership Property and may employ agents, employees, clerks, accountants, and property

7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2268489.2

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LNBYB000078

managers to administer the Receivership Property, purchase materials, supplies and services, and pay for them at the ordinary and usual rates out of the funds which shall come into the Receiver's possession and shall do all things and incur the risks and obligations ordinarily incurred by owners, managers and operators of similar businesses and enterprises.  No risk, obligation or expense so incurred shall be the personal risk or obligation of the Receiver, but shall be the risk, obligation and expense of the receivership estate established herein.

5.    **Completion of Construction and Obtaining Permits**.

a.    The Receiver is authorized to negotiate with government agencies regarding, among other things, completion of the construction on the Receivership Property and the satisfaction of the conditions and obligations related to the issuance of certificates of occupancy for the Receivership Property.  The Receiver may also enter into agreements with the City of Los Angeles or the County of Los Angeles to extend the permits currently in place on the project, if possible.

b.    The Receiver is further authorized to apply for, obtain and pay for any lawful license, permit, variance or other governmental approval or fee that the Receiver reasonably believes to be necessary for the subdivision, construction, operation, maintenance and preservation of the Receivership Property; to confirm the existence of, and to the extent permitted by law, exercise the privileges of any existing license, permit, variance or governmental approval relating to the Receivership Property; and to do all things necessary to protect and maintain those licenses, permits, variances and approvals, including, but not limited to, Department of Real Estate and county and city permits and approvals.

6.    **Equipment**.  The Receiver will take control of any modular units or trailers, equipment, inventory supplies and general intangibles pertaining to or related to the Property.

7.    **Utilities.**

a.    The Receiver is authorized to enter into agreements and negotiate with utility providers including but not limited to the LADWP or Southern California Edison for and

8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2268489.2

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LNBYB000079

on behalf of the Receivership Property including the control and right to any and all deposits in possession of such utility providers.

b.      The Receiver shall not be responsible for payment of any utility bills, unpaid payroll expenses or other unpaid invoices for services or utilities incurred by, or for the benefit of the Defendant or the Receivership Property prior to the Receiver's taking possession of the Receivership Property.  No utility (including LADWP and Southern California Edison) or other vendor may terminate service or the provision of other goods or services to the Receiver as a result of the non-payment of pre-receivership obligations, without prior order of this Court.

8.      **Receiver Certificates**.

a.      The Receiver may issue Receivership Certificates in increments of at least $50,000 bearing interest at 10 percent (10%) per annum for up to $1,000,000 to be funded by the Plaintiff herein, and if Plaintiff is unable to fund, to any third person(s) or party(ies).  All monies generated by the Receivership Property will remain in the Receivership to be used to carry out the duties and obligations of the Receiver as set forth herein.

b.      Funds loaned to the Receiver pursuant to Receivership Certificates are deemed liens of first priority, and, except as provided in the following sentence, shall be repaid prior to all other encumbrances and claims, other than costs of administration

9.      **Use of Funds**.  All monies coming into the Receiver's possession shall only be expended for the purposes herein authorized, and the balance of funds shall be held by the Receiver pending further order of this Court.

10.      **Receivership Fees and Costs**.  The Receiver may charge as interim fees his standard hourly billing rate, plus reimbursement of costs for the Receiver's services.  The Receiver's staff's billing rate varies between $50 and $225 per hour based on experience and skill set.  Where appropriate, the Receiver will have an appropriate staff member handle certain aspects of the Receivership as a cost saving measure.  The Receiver is also authorized to employ the services of accountants and attorneys without further Court order and pay for those services in the amount of the normal fees charged by those professionals.

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2268489.2

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LNBYB000080

11.     **Monthly Statements**.  The Receiver shall prepare and serve monthly statements reflecting the Receiver's fees and administrative expenses, including fees and costs of accountants and attorneys and other professionals authorized by the Court, incurred for each monthly period in the operation and administration of the Receivership Property.  Upon service of each statement, the Receiver may disburse from estate funds, if any, the amount of each statement.  Notwithstanding periodic payment of fees and expenses, all fees and expenses shall be submitted to the Court for its approval and confirmation, in the form of either a properly noticed interim request for fees, a stipulation of all parties, or in the Receiver's Final Account and Report.

12.     **Inventory**.  Within thirty (30) days after qualification hereunder, the Receiver shall file an inventory of all of the property of which he has taken possession pursuant to this Order.

13.     **Opening of Bank Accounts**.  The Receiver is empowered to establish bank accounts for the deposit of monies and funds collected and received in connection with the Receivership Property, at federally insured banking institutions or savings associations which are not parties to this case.  Monies coming into the possession of the Receiver and not expended for any purposes herein authorized shall be held by the Receiver in interest-bearing accounts.

14.     **Insurance**.  The Receiver shall determine upon taking possession of the Receivership Property whether in the Receiver's judgment there is sufficient insurance coverage. With respect to any insurance coverage, the Receiver shall be named as an additional insured on the policies for the period that the Receiver shall be in possession of the Receivership Property. If sufficient insurance coverage does not exist, the Receiver shall immediately notify the parties to this lawsuit and shall have thirty (30) calendar days to procure sufficient all risk and liability insurance for the Receivership Property; provided, however, that if the Receiver does not have sufficient funds to do so, the Receiver shall seek instructions from the Court with regard to whether insurance shall be obtained and how it is to be paid for.  If consistent with existing law,

10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LNBYB000081

the Receiver shall not be responsible for claims arising from the lack of procurement or inability to obtain insurance.

15. **Entry to Property**. The Receiver shall further be entitled to engage a locksmith for the purposes of gaining entry to any property that is the subject of this receivership and through any security system, in order to obtain any property or documents to which the Receiver is entitled pursuant to this Order, as well as giving any notices which may be required in performing the Receiver's duties. The Receiver may have locks or security codes changed, or have keys created that will work for the existing locks for doors, cabinets or other throughways.

16. **Tax Identification**. Defendants herein shall provide the Receiver with all tax identification numbers utilized in connection with the operation of the Receivership Property. The Receiver shall also be entitled to utilize the tax identification numbers during his operation of the Receivership Property or at the Receiver's discretion; the Receiver may obtain new tax identification numbers.

17. **Mail**. The Receiver is authorized to have all mail addressed to the Receivership Property forwarded to an address to be designated by him.

18. **Turnover of Bank Accounts**. All banks and financial institutions which hold any Receivership Property accounts shall turn over all such funds in any such accounts to the Receiver upon presentation of a copy of this Order, and shall provide copies of any requested records regarding any such accounts to the Receiver:

19. **Delivery of Revenues**. Defendants, on receipt of a copy of this Order, shall deliver to the Receiver immediate possession of all revenues and income generated from the business of the Receivership Property in Defendants' possession, custody or control. This delivery to the Receiver shall be completed within forty-eight (48) hours of receipt of the above-described documents.

20. **Documents in Receiver's Possession**. The parties to this action shall be entitled to have access to, and make copies of, documents in the Receiver's possession—including electronic records.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2268489.2

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LNBYB000082

21.    **Trustee's Sale**.  If applicable, in the event of a non judicial sale of the Receivership Property by the trustee under the Deed of Trust, the Receiver shall turn over possession, custody and control of the Receivership Property to the successful purchaser at such a sale, after which the Receiver shall prepare and file with the Court the Receiver's final account.

22.    **Further Instructions**.  The Receiver and the parties to this case may at any time apply to this Court for further or other instructions or orders and for further powers necessary to enable the Receiver to perform the Receiver's duties.

23.    **Discharge**.  Discharge of the Receiver shall require a court order after a properly noticed motion approving the Receiver's Final Report and Account.

24.    **Plaintiff's Notice to Receiver**.  Plaintiff shall promptly notify the Receiver in writing of the names, addresses, and telephone numbers of all parties who appear in the action and their counsel.  The parties to this action shall give notice to the Receiver and of all events that affect the receivership, including all court proceedings in this action.

25.    **Bankruptcy – Plaintiff's Duty to Give Notice**.  If any of the Defendants file a bankruptcy case during the receivership, Plaintiff shall give notice of the bankruptcy case to the Court, to all parties, and to the Receiver by the close of the next business day after the day on which Plaintiff receives notice of the bankruptcy filing.

26.    **Bankruptcy – Receiver's Duties**.  If the Receiver receives notice that a bankruptcy has been filed and part of the bankruptcy estate includes property that is the subject of this order, the Receiver shall have the following duties:

a.    The Receiver shall immediately contact the party who obtained the appointment of the Receiver and determine whether that party intends to move in the bankruptcy court for an order for (1) relief from the automatic stay, and (2) relief from the Receiver's obligation to turn over the property (11 U.S.C. §543).  If the party has no intention to make such a motion, the Receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession – and otherwise comply with Title 11 of the United States Code, section 543.

12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LA\2268489.2

LNBYB000083

b.      If the party who obtained the receivership intends to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the property, the Receiver may remain in possession and preserve the property pending the ruling on those motions (11 U.S.C. § 543(a)).  The Receiver's authority to preserve the property shall be limited as follows:

i.      The Receiver may continue to collect rents and other income;

ii.      The Receiver may make only those disbursements necessary to preserve and protect the property;

iii.      The Receiver shall not execute any new leases or other long-term contracts; and

iv.      The Receiver shall do nothing that would effect a material change in the circumstances of the property.

c.      If the party who obtained the receivership fails to file a motion within 10 court days after his or her receipt of notice of the bankruptcy filing, the Receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession and otherwise comply with 11 United States Code section 543,

d.      The Receiver may retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

## **STIPULATED INJUNCTIVE RELIEF AGAINST DEFENDANTS**

27.      **Turn Over and Cooperation by Defendants and Related Parties**.  Defendants, and their respective officers, directors, members, managers, agents, partners, property managers, employees, assignees, successors, attorneys, representatives, and all persons acting under, in concert with, or for them:

a.      Shall relinquish and turn over possession of the Receivership Property, including but not limited to all of its assets (including any cash) to the Receiver forthwith upon his appointment becoming effective;

13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LA\2268489.2

LNBYB000084

b.     Shall turn over to the Receiver and direct all other third parties in possession thereof to turn over all keys, leases, books, records, rent rolls, books of account, ledgers, operating statements, control and passwords to website(s) and/or web domains, budgets, tenant lease deposits, and all other Receivership Property records relating to the Receivership Property, wherever located, and in whatever mode maintained, including information contained on computers and any and all software relating thereto as well as all banking records, statements and cancelled checks;

c.     Shall turn over to the Receiver all documents which pertain to all licenses, permits, or government approvals relating to the Receivership Property and shall immediately advise the Receiver of any social security or taxpayer identification numbers used in connection with the operation of the Receivership Property;

d.     Shall turn over to the Receiver all contracts involving the Receivership Property;

e.     Shall immediately advise the Receiver as to the nature and extent of insurance coverage on the Receivership Property.  The parties shall immediately name the Receiver as an additional insured on the insurance policy(ies) for the period that the Receiver shall be in possession of the Receivership Property.  The parties and their agents and representatives are prohibited from canceling, reducing or modifying any and all insurance coverage currently in existence with respect to the Receivership Property;

f.      Shall cooperate with and reasonably assist the Receiver with respect to his operation of the Receivership Property, including but not limited to promptly responding to any inquiry by the Receiver for information.

28.     Pending further Order of this Court, Defendants and their respective officers, directors, members, managers, agents, partners, property managers and employees, and all other persons acting under, in concert with, or for them who have actual or constructive knowledge of this Order, and their agents and employees shall not in any manner, directly or indirectly:

14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2268489.2

LNBYB000085

a.     Commit or permit any waste of the Receivership Property or any part thereof, or suffer or commit or permit any act on the Receivership Property or any part thereof in violation of law, or remove, transfer, encumber or otherwise dispose of any of the property or of the Receivership Property or any part thereof;

b.     Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order or the Receiver's possession of and operation or management of the Receivership Property;

c.     Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal or in any manner whatsoever deal in or dispose of the whole or any part of the Receivership Property without prior specific Court Order;

d.     Withhold any Receivership Property assets, books, records, or funds from the Receiver;

e.     Destroy or conceal any records, documents, electronic data, electronic equipment or software, or any other medium that contains information related to the Receivership Property; and

f.     Do any act which will, or which will tend to impair, defeat, divert, prevent or prejudice the preservation of the Receivership Property.

**IT IS SO ORDERED**

Dated: _____, 2011

_____
JUDGE OF THE SUPERIOR COURT

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

STIPULATION FOR APPOINTMENT OF RECEIVER; AND
[PROPOSED] ORDER

LA\2268489.2

LNBYB000086

## **Exhibit F**

**Letter of Intent**

**(see attached)**

LNBYB000087

# GREYSTAR

May 23, 2011

M. Aaron Yashouafar
*Via email attachment*

Re: Roosevelt Lofts, LLC

Mr. Yashouafar:

This letter sets forth our current mutual intentions with respect to the acquisition by an affiliate of Greystar GP, LLC ("**Purchaser**") of the property ("**Property**") herein described. The Roosevelt Lofts, Inc., a California corporation owns one hundred percent of all of the membership interests of Roosevelt Lofts, LLC and serves as managing member of Roosevelt Lofts, LLC (the "**Seller**"). It is contemplated that Purchaser's acquisition of the Property shall be implemented through a plan of reorganization (the "**Plan**") in the bankruptcy case of *In re Roosevelt Lofts, LLC*, case no. 09-14214 GM, pending before the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Case**"). The Plan will be co-sponsored by Purchaser, Seller and Roosevelt Lofts, LLC. This is a letter of intent only and, except as provided in Sections 11, 12 and 14 below, does not constitute a binding agreement of the parties. The parties will be bound only at such time, if ever, as they execute a definitive purchase and sale agreement (as defined more fully below, the "**Definitive Agreement**"), either encompassed within or incorporated into the Plan, in each case evidencing all of the terms, provisions and conditions of the transaction generally outlined in this letter.

1.   PROPERTY DESCRIPTION.

    727 West 7th Street, Los Angeles, California

    Purchaser understands Property to contain 222 individually subdivided residential condominium units, a commercial retail component on the ground floor (the "Retail Component") and parking areas.

2.   PURCHASE PRICE AND PAYMENT TERMS.

   - Option A: $ 89,000,000 for the Property, excluding the Retail Component

   - Option B: $ 95,000,000 for the entirety of the Property

   - Purchaser shall select whether to pursue Option A or Option B on or before June 2, 2011.

   - Under either Option A or Option B:

       a.   Purchase is for 100%, fee simple, ownership interest in the Property, free and clear of all liens, claims, interests and encumbrances.

       b.   Purchase price will be reduced by any proceeds of insurance with respect to the Property received by Seller or Roosevelt Lofts, LLC on or prior to the effective date of the Plan (the "**Effective Date**") or as otherwise agreed to among Purchaser and Seller. In addition, Seller will cause any insurance claims and other of Roosevelt Lofts, LLC's claims and causes of action with respect to or involving the Property

to be transferred to Purchaser (excluding any causes of action against Purchaser, BofA or Seller, which shall be released under the Plan). Purchaser understands and agrees that any and all proceeds paid by the Title Company to Roosevelt Lofts, LLC, prior to the Effective Date as a result of pending claims for the mechanic's liens recorded against the Property, shall be used toward settlement and removal of recorded mechanic's liens (the "**Mechanics' Lien Insurance Payment**").

c.  Purchaser shall pay purchase price in cash to the estate of Roosevelt Lofts, LLC on the Effective Date; provided however that that for purposes of this offer only and as a compromise under FRE 408, the Purchase Price shall be reduced by (i) the amount of consideration paid by Purchaser for the senior secured bank claim held by Bank of America (the "**BofA Claim**") and (ii) the Mechanics' Lien Insurance Payment.

3.   TITLE/NOTICE OF COMPLETION.

- On the Effective Date, Purchaser shall receive good and marketable title to the Property, the associated improvements, all related personal property owned by Roosevelt Lofts, LLC, and any leases for space in the improvements at closing.

- The Property shall be free and clear of liens, claims, interests and encumbrances, except those specifically permitted by Purchaser.

- On the Effective Date, Seller shall cause Purchaser to receive an owner's policy of title insurance in form and substance acceptable to Purchaser, subject only to such exceptions as Purchaser approves during the review process. All existing insurance policies of any kind (including without limitation title insurance and property and casualty insurance) related to the Property shall be maintained in full force and assigned to Purchaser, except as provided in Section 2.b, above. Seller shall not do anything to impair coverage under any of the foregoing insurance policies.

- Promptly after the date hereof, Seller shall cause a notice of completion to be filed in the appropriate public records with respect to all work done on the Property to date, and shall cause all such work to stop prior to the filing date of the notice of completion.

- Conveyance of the Property shall be through the Plan and appropriate court order and instrument of conveyance.

4. REPRESENTATIONS AND WARRANTIES; CONDITIONS.   The Plan shall contain representations and warranties customary for real estate and bankruptcy transactions of this size and type, including, without limitation, authorization and power to convey, no knowledge of material defects in the improvements, accuracy of rent roll and other information provided, and no knowledge of failure of the property to comply with applicable laws. Purchaser is aware that the roof of the Property needs repair to eliminate leaking and that the parking stalls are non-conforming.   Representations and warranties shall not survive the Effective Date, except for those that were incorrect as a result of intentional misrepresentations. The Plan shall also contain conditions customary for real estate and bankruptcy transactions of this size and type.

LNBYB000089

5.. <u>TREATMENT OF CLAIMS AND INTERESTS IN THE PLAN</u>. Purchaser and Seller shall cooperate in the drafting of the Plan and related disclosure statement, and shall mutually agree on the treatment of claims and interests under the Plan.

6. <u>DELIVERY OF INFORMATION.</u> Promptly following the date hereof, Seller shall cause Purchaser to receive copies all policies of title insurance and all plans, specifications, surveys, reports, financial records and invoices relative to the Property and any other information reasonably requested by Purchaser to the extent any of the foregoing information and documentation is within the custody, possession or control of Seller, Roosevelt Lofts, LLC or any of their respective affiliates, employees, members, agents, officers, consultants or professionals.

7. <u>INSPECTION PERIOD</u>. Purchaser shall have the right to review the information delivered by Seller and all books and records pertaining to the ownership and operation of the Property, to conduct a phase I environmental audit of the Property, and to enter upon and inspect the Property.

8. <u>CLOSING DATE</u>. The Effective Date shall be defined as 90 days after the date hereof.

9. <u>BINDING AGREEMENT</u>.

(A)  By no later than June 2, 2011, (i) Seller and Purchaser shall enter into a definitive written agreement which memorializes the terms and conditions set forth herein with specificity (the "**Definitive Agreement**") and (ii) Seller and Purchaser shall enter into a definitive agreement with the holder of the BofA Claim ("BofA") to assign such claim to Purchasers for ▮▮▮▮▮▮▮ in cash (the "**BofA Assignment Agreement**"), subject to the terms herein and in the Definitive Agreement and the BofA Assignment Agreement. In the event that the Definitive Agreement and the BofA Assignment Agreement are not entered into by such date for any reason, neither Purchaser nor Seller shall have any obligation to proceed with the transaction contemplated by this letter of intent (and the liquidated damages described in Section 12, below, shall not be applicable). In the event that the Definitive Agreement and the BofA Assignment Agreement are entered into by June 2, 2011, then Purchaser shall have the exclusive right to acquire the BofA Claim for ▮▮▮▮▮▮ .

(B)  By no later than June 10, 2011, Purchaser will deposit $5 million into a third party escrow (the "**Escrow**") toward its acquisition of the BofA Claim (the "**$5 Million Deposit**"). The $5 Million Deposit will become irrevocable on the later of the date (the "**Irrevocable Escrow Date**") that the Bankruptcy Court enters a final order:

(i) approving Purchaser as a sponsor of the Plan (the "**Plan Sponsor Order**") that, among other things, (a) memorializes and implements the terms of the Definitive Agreement, (b) provides for either (x) payment in full in cash on the Effective Date of the BofA Claim in an amount equal to the face amount of the BofA Claim plus default interest and outstanding fees and expenses or (y) conversion of the BofA Claim into 100% of the equity interests of Roosevelt Lofts, LLC as reorganized (or such entity that holds, as of the Effective Date, such equity interests), (c) approves the BofA Claim as allowed, perfected, valid and duly enforceable (without any defense, counterclaim and right of offset) with first priority security against the Property subject only to any existing court approved settlement with holders of mechanics' liens against the Property and (d) provide for automatic relief from stay for Purchaser (as holder of the BofA Claim) on the Effective Date to foreclose on the Property on the tenth day following the Effective Date unless the Plan is performed according to its terms; and

LNBYB000090

(ii) approving the BofA Assignment Agreement (the "**BofA Assignment Order**").

(C)  On the date that is (x) 35 days after the execution and delivery of the "**Final Agreement**" referenced in that certain term sheet for Settlement Agreement Between the Bank Group, Roosevelt Lofts, LLC and Affiliates and Bank Guarantors (attached hereto as Exhibit 1), Purchaser will deposit another $10 million in the Escrow towards the consideration for the assignment of the BofA Claim to Purchaser (the "**$10 Million Deposit**") and (y) 65 days after the execution and delivery of the Final Agreement, Purchaser will deposit another $20 million into the Escrow towards the consideration for the assignment of the BofA Claim to Purchaser (collectively with the $5 Million Deposit and the $10 Million Deposit, the "**Escrow Deposits**").

(D)  the Escrow Deposits shall be (A) in immediately available funds and (B) non-refundable following the Irrevocable Escrow Date; provided however that upon the Effective Date (or earlier in the sole discretion of the Purchaser) the Escrow Deposits shall be applied to fund the consideration for the assignment of the BofA Claim to Purchaser.

10. CLOSING COSTS.  Each of the Purchaser and Seller shall be responsible for its fees and costs (including attorneys' fees) incurred in connection with the transactions contemplated by this agreement. Rents, taxes, and approved operating expenses will be prorated as of the Effective Date.  Purchaser shall have the right to terminate and/or reject any management and other service agreements affecting the Property concurrently with the confirmation of the Plan.

11. CONFIDENTIALITY.  Purchaser and Seller shall not disclose any of the terms, provisions, or conditions of this letter to any other person without the express written consent of the other party, except that Purchaser may disclose such information to its principals, counsel, accountants and potential financing sources in connection with evaluating the potential acquisition of the property by Purchaser.  Purchaser agrees that, in any discussion with BofA concerning the BofA Assignment Agreement, Purchaser shall not disclose the terms of this letter set forth in Paragraph 2, above.

12. EXCLUSIVITY.  From and after the date hereof, so long as Purchaser is willing to purchase the Property for the Purchase Price, Seller hereby agrees that it will not accept offers with respect to any transaction involving or relating to a potential acquisition of the BofA Claim, the Property, Roosevelt Lofts, LLC or the Seller (including, without limitation, through a plan of reorganization). Seller and Purchaser recognize that this agreement is not a solicitation of votes on the Plan or any other plan.  In the event Purchaser is willing to purchase the Property for the Purchase Price under the terms set forth herein and in the Definitive Agreement and the BofA Assignment Agreement and is not then in material breach of the Definitive Agreement or the BofA Assignment Agreement, but Seller does not agree to sell the Property to the Purchaser for the Purchase Price under the terms and conditions set forth herein and in the Definitive Agreement and the BofA Assignment Agreement (the "**Sale Breach**"), Seller promptly shall pay Purchaser the sum of $500,000 in cash as liquidated damages to compensate Purchaser for the Sale Breach.   Purchaser and Seller agree that it would be impracticable and difficult to estimate the actual damages which Purchaser may suffer as a result of the Sale Breach. Therefore, Purchaser and Seller agree that a reasonable estimate of the foregoing damages which Purchaser would suffer as a result of the Sale Breach is and shall be limited to the foregoing amount of liquidated damages.  All other remedies for the Sale Breach shall be waived by Purchaser. The Purchaser and Seller acknowledge that the payment of such

LA\2260780.6

4

liquidated damages is not intended as a forfeiture or penalty but is intended to constitute liquidated damages.  The Liquidated Damages described herein shall be personally guaranteed by M. Aaron Yashouafora and Simon Barlava.  Notwithstanding the foregoing, nothing contained herein shall impair or restrict Purchaser's right to foreclose on the Property as described in Section 9 hereof and the Plan Sponsor Order or the exercise of any remedies set forth in the Definitive Agreement and the BofA Assignment Agreement.

13. <u>ASSIGNMENT/NOMINATION</u>.  An affiliate or other designee of Purchaser may take title the Property on the Effective Date.

14. <u>CORPORATE AUTHORITY</u>.  By signing below, each signatory below represents and warrants that he has full corporate authority to enter into this letter and bind his respective party to the terms of Sections 11, 12 and 14 hereof.  In addition, by signing in the signature block below under "Accepted Effective As _____", the signatory represents that the entity set forth in such signature block owns all of the membership interests of and serves as managing member of Roosevelt Lofts, LLC.  The foregoing representations shall survive indefinitely.  Seller covenants that it will (a) not pledge, transfer, hypothecate, encumber or assign such membership interests unless such pledge, transfer, hypothecation, encumbrance or assignment is made expressly subject in writing to the terms and conditions set forth herein and (b) shall provide Purchaser with prompt notice of any of the actions described in Section 14(a) hereof.

LNBYB000092

Seller and Purchaser stipulate that the agreements set forth in Sections 11, 12 and 14 are supported by good and sufficient consideration, including Purchaser's undertaking activities with regard to evaluating the viability of the transaction herein described. Each party reserves the right to negotiate with respect to the transactions herein described in their own sole interest.

The parties again stipulate and acknowledge that this is a non-binding letter of intent only, and that except for the confidentiality agreements set forth in Section 11, the exclusivity agreements set forth in Section 12, and the representations and warranties and covenants in set forth in Section 14, this letter does not create any binding agreements between the parties hereto. No party shall be bound (except as set forth in Sections 11, 12 and 14), until such time as a Definitive Agreement is duly executed by all parties. If this proposal is not accepted by May 23, 2011, Purchaser's offer will become null and void.

If the foregoing sets forth your current understanding of our current mutual intent, please so indicate by signing one copy where indicated below.

Yours very truly,

GREYSTAR GP, LLC

By:_____
Name:__Kevin Kaberna_____
Title:___Investment Principal_____

ACCEPTED EFFECTIVE AS OF  5/23/11

By:_____
Name:_M. Aaron Yashouafar_
Title:_CEO_
On Behalf of:_The Roosevelt lofts, INC._

LNBYB000093

**Exhibit G**

**Inventory**

Due to its voluminous nature, this exhibit has not been attached hereto.  A copy of this exhibit is attached to the *Notice of Supplement To Motion Pursuant To Sections 105(a), 363(b) and 1125(b) of the Bankruptcy Code and Bankruptcy Rule 6004 For An Order Authorizing The Debtor and Other Parties Thereto To Enter Into Plan Support Agreement and Related Agreements* filed on June 9, 2011 as Docket No. 795, and will be provided upon written request.

LNBYB000094

**<u>Exhibit H</u>**


**[Intentionally Omitted]**

LNBYB000095

## Exhibit I

### Debtor Bank Accounts

City National Bank
Debtor In Possession Account
Account No. 210092560
Balance as of June 2, 2011:   $189,237.25

Bank of America
Litigation Reserve Account
Account No. 14590-60688
Balance as of June 2, 2011:   $1,500,000.00

LNBYB000096

# **Exhibit J**

## **Rent Roll**

**(see attached)**

LA\2263445.11

The Roosevelt Residences
Seventeen
Los Angeles, CA

Rent Roll
as of
June 2011

**Residential Tenants**

| SUITE | NAME | AREA | COMM DATE | EXP. DATE | MONTHLY RENT | CAM CHARGES | TOTAL | SECURITY DEPOSIT |
|-------|------|------|-----------|-----------|--------------|-------------|-------|------------------|
| RVLTR-310 | Occupied | 814 | 2/10/11 | 1/31/2012 | 1,950.00 | | | 2,925.00 |
| RVLTR-417 | Occupied | 1,310 | 5/15/11 | 4/30/2012 | 3,100.00 | | | 3,100.00 |
| RVLTR-419 | Occupied | 795 | 10/01/10 | 9/01/2011 | 2,000.00 | | | 3,500.00 |
| RVLTR-508 | Occupied | 940 | 4/01/11 | 3/31/2012 | 2,450.00 | | | 2,450.00 |
| RVLTR-313 | Occupied | 804 | 2/01/11 | 1/31/2012 | 1,850.00 | | | 2,000.00 |
| RVLTR-704 | Occupied | 1,366 | 7/01/10 | 6/30/2011 | 3,278.00 | | | 3,278.00 |
| RVLTR-509 | Occupied | 893 | 5/07/11 | 4/30/2012 | 2,400.00 | | | 2,400.00 |
| RVLTR-711 | Occupied | 1,332 | 2/10/11 | 1/31/2012 | 2,750.00 | | | 4,125.00 |
| RVLTR-816 | Occupied | 1,248 | 11/01/10 | 10/31/2011 | 2,775.00 | | | 2,775.00 |
| RVLTR-503 | Occupied | 1,328 | 6/29/10 | 5/31/2011 | 3,187.00 | | | 2,223.00 |
| RVLTR-712 | Occupied | 944 | 12/01/10 | 11/30/2011 | 2,250.00 | | | 2,250.00 |
| RVLTR-611 | Occupied | 1,332 | 12/01/10 | 11/30/2011 | 3,197.00 | | | 6,894.00 |
| RVLTR-312 | Occupied | 785 | 10/01/10 | 9/30/2011 | 1,900.00 | | | 1,900.00 |
| RVLTR-707 | Occupied | 950 | 4/15/11 | 3/31/2012 | 2,518.00 | | | 3,777.00 |
| RVLTR-305 | Occupied | 1,037 | 11/01/10 | 10/31/2011 | 2,400.00 | | | 2,900.00 |
| RVLTR-719 | Occupied | 1,532 | 11/01/09 | MTM | 3,165.00 | | | 3,165.00 |
| RVLTR-815 | Occupied | 883 | 2/01/11 | 1/31/2012 | 2,200.00 | | | 2,350.00 |
| RVLTR-525 | Occupied | 1,217 | 2/15/11 | 1/31/2012 | 2,600.00 | | | 3,000.00 |
| RVLTR-513 | Occupied | 934 | 6/07/11 | 5/31/2012 | 2,080.00 | | | 3,000.00 |
| RVLTR-708 | Occupied | 919 | 11/01/10 | 10/31/2011 | 2,150.00 | | | 2,150.00 |
| RVLTR-811 | Occupied | 1,332 | 4/08/11 | 3/31/2012 | 3,250.00 | | | 3,400.00 |
| RVLTR-505 | Occupied | 1,290 | 4/01/11 | 1/19/2012 | 2,825.00 | | | 2,800.00 |
| RVLTR-514 | Occupied | 942 | 8/01/10 | 7/31/2011 | 2,300.00 | | | 2,300.00 |
| RVLTR-810 | Occupied | 1,305 | 8/01/10 | 7/31/2011 | 3,000.00 | | | 3,000.00 |
| RVLTR-506 | Occupied | 863 | 5/01/11 | 4/30/2012 | 2,050.00 | | | 4,100.00 |
| RVLTR-823 | Occupied | 931 | 5/15/11 | 4/30/2012 | 2,400.00 | | | 2,400.00 |
| RVLTR-518 | Occupied | 1,453 | 1/08/11 | 12/31/2011 | 2,800.00 | | | 2,800.00 |
| RVLTR-410 | Occupied | 1,096 | 5/01/11 | 4/30/2012 | 2,750.00 | | | 3,500.00 |
| RVLTR-808 | Occupied | 932 | 12/01/10 | 11/30/2011 | 2,435.00 | | | 3,750.00 |
| RVLTR-607 | Occupied | 874 | 11/01/10 | 10/31/2011 | 2,150.00 | | | 2,150.00 |
| RVLTR-501 | Occupied | 940 | 3/26/11 | 2/29/2012 | 2,250.00 | | | 2,250.00 |
| RVLTR-415 | Occupied | 863 | 5/15/11 | 4/30/2012 | 1,950.00 | | | 1,950.00 |
| RVLTR-715 | Occupied | 1,030 | 5/15/11 | 4/30/2012 | 2,300.00 | | | 2,300.00 |
| RVLTR-616 | Occupied | 1,248 | 11/16/10 | 10/31/2011 | 2,500.00 | | | 2,500.00 |
| RVLTR-713 | Occupied | 958 | 6/01/11 | 11/30/2011 | 2,550.00 | | | 2,550.00 |
| RVLTR-510 | Occupied | 1,093 | 5/10/11 | 4/30/2012 | 2,650.00 | | | 2,650.00 |
| RVLTR-519 | Occupied | 1,532 | 2/01/11 | 1/31/2012 | 2,950.00 | | | 2,950.00 |
| RVLTR-302 | Occupied | 1,363 | 12/01/10 | 11/30/2011 | 2,975.00 | | | 3,475.00 |
| RVLTR-610 | Occupied | 1,090 | 1/01/11 | 12/31/2011 | 2,180.00 | | | 0.00 |
| RVLTR-716 | Occupied | 1,012 | 1/01/11 | 12/31/2011 | 2,275.00 | | | 2,425.00 |
| RVLTR-726 | Occupied | 1,115 | 4/09/11 | 3/31/2012 | 2,500.00 | | | 4,250.00 |
| RVLTR-423 | Occupied | 910 | 9/19/09 | 8/31/2010 | 2,350.00 | | | 0.00 |
| RVLTR-425 | Occupied | 1,219 | 4/01/09 | 3/31/2011 | 550.00 | | | 0.00 |
| RVLTR-822 | Occupied | 864 | 4/07/11 | 3/31/2012 | 2,150.00 | | | 2,150.00 |
| RVLTR-612 | Occupied | 921 | 4/01/11 | 3/31/2012 | 2,175.00 | | | 4,000.00 |
| RVLTR-426 | Occupied | 1,125 | 3/01/11 | 2/28/2012 | 2,550.00 | | | 2,550.00 |
| RVLTR-314 | Occupied | 1,619 | 10/01/10 | 8/31/2011 | 2,750.00 | | | 2,750.00 |
| RVLTR-613 | Occupied | 947 | 2/17/11 | 1/31/2012 | 2,225.00 | | | 2,225.00 |
| RVLTR-720 | Occupied | 875 | 3/01/11 | 2/29/2012 | 1,995.00 | | | 3,000.00 |
| RVLTR-309 | Occupied | 839 | 10/15/10 | 9/30/2011 | 1,950.00 | | | 1,950.00 |
| RVLTR-522 | Occupied | 868 | 2/20/11 | 1/31/2012 | 2,050.00 | | | 2,050.00 |
| RVLTR-307 | Occupied | 732 | 7/26/10 | 6/30/2011 | 2,000.00 | | | 2,000.00 |
| RVLTR-609 | Occupied | 885 | 6/01/10 | 5/31/2011 | 2,345.00 | | | 3,150.00 |
| RVLTR-412 | Occupied | 913 | 3/13/09 | MTM | 2,650.00 | | | 0.00 |
| RVLTR-812 | Occupied | 944 | 3/01/11 | 2/29/2012 | 2,400.00 | | | 2,400.00 |
| RVLTR-511 | Occupied | 1,332 | 10/15/10 | 9/30/2011 | 2,557.00 | | | 2,557.00 |

*Confidential and Privileged Information*

LNBYB000098

The Roosevelt Residences
1201 West Seventh Street
Los Angeles, CA

Rent Roll
as of
June 2011

| SUITE | NAME | AREA | COMM DATE | EXP. DATE | MONTHLY RENT | CAM CHARGES | TOTAL | SECURITY DEPOSIT |
|---|---|---|---|---|---|---|---|---|
| **Residential Tenants** | | | | | | | | |
| RVLTR-825 | Occupied | 1,226 | 5/01/11 | 4/30/2012 | 2,650.00 | | | 2,650.00 |
| RVLTR-304 | Occupied | 1,024 | 6/01/10 | MTM | 2,200.00 | | | 2,200.00 |
| RVLTR-813 | Occupied | 956 | 11/01/10 | 10/31/2011 | 2,350.00 | | | 2,350.00 |
| RVLTR-303 | Occupied | 1,042 | 2/25/11 | 1/31/2012 | 2,400.00 | | | 3,600.00 |
| RVLTR-701 | Occupied | 940 | 3/19/11 | 9/30/2011 | 2,600.00 | | | 2,600.00 |
| RVLTR-622 | Occupied | 875 | 6/02/11 | 5/31/2012 | 2,100.00 | | | 2,500.00 |
| RVLTR-723 | Occupied | 930 | 5/15/11 | 5/31/2012 | 2,400.00 | | | 0.00 |
| RVLTR-814 | Occupied | 951 | 4/01/11 | 3/31/2012 | 2,400.00 | | | 4,800.00 |
| RVLTR-714 | Occupied | 950 | 6/01/10 | MTM | 2,400.00 | | | 2,400.00 |
| RVLTR-722 | Occupied | 868 | 6/01/11 | 5/31/2012 | 1,950.00 | | | 3,500.00 |
| RVLTR-411 | Occupied | 1,265 | 4/15/09 | 3/14/2011 | 550.00 | | | 0.00 |
| RVLTR-516 | Occupied | 1,012 | 12/01/10 | 11/30/2011 | 2,250.00 | | | 3,375.00 |
| RVLTR-724 | Occupied | 808 | 5/01/11 | 4/30/2012 | 1,995.00 | | | 1,995.00 |
| RVLTR-706 | Occupied | 888 | 8/15/10 | 7/31/2011 | 2,200.00 | | | 2,200.00 |
| RVLTR-413 | Occupied | 931 | 3/07/11 | 2/29/2012 | 2,400.00 | | | 4,100.00 |
| RVLTR-623 | Occupied | 931 | 5/15/11 | 4/30/2012 | 2,200.00 | | | 2,200.00 |
| RVLTR-718 | Occupied | 1,453 | 3/15/11 | MTM | 2,790.00 | | | 0.00 |
| RVLTR-702 | Occupied | 1,462 | 2/01/11 | 1/31/2012 | 3,000.00 | | | 3,000.00 |
| RVLTR-705 | Occupied | 1,288 | 8/01/10 | 7/31/2011 | 3,136.00 | | | 3,136.00 |
| RVLTR-409 | Occupied | 884 | 2/01/11 | 1/31/2012 | 2,000.00 | | | 2,000.00 |
| RVLTR-709 | Occupied | 910 | 12/01/10 | 11/30/2011 | 2,300.00 | | | 2,500.00 |
| RVLTR-512 | Occupied | 918 | 5/09/11 | 4/30/2012 | 2,600.00 | | | 3,900.00 |
| RVLTR-614 | Occupied | 938 | 9/01/10 | 8/31/2011 | 2,496.00 | | | 2,500.00 |
| Total 83,068 | | | | | 189,304.00 | | | 205,950.00 |
| **Retail Tenants** | | | | | | | | |
| RVLTR-G723 | 727 WEST SEVENTH, LLC (SALVA | 2,750 | 06/01/11 | 05/31/11 | 7,975.00 | 2,639.29 | 10,614.29 | 0 |
| RVLTR-G729 | JANG ENTERPRISES, INC. | 4,276 | 3/01/09 | 4/30/2019 | 15,191.43 | 3,228.00 | 18,419.43 | 15,010.90 |
| RVLTR-G733 | HAO LAM | 1,505 | 10/01/09 | 9/30/2019 | 6,358.35 | 1,136.00 | 7,494.35 | 5,200.00 |
| RVLTR-G735 | FAMIMA CORPORATION | 1,633 | 3/24/09 | 6/30/2014 | 9,887.90 | 1,233.00 | 11,120.90 | 16,520.00 |
| Total | | | | | 31,437.68 | 5,597.00 | 37,034.68 | 20,210.78 |

*"The information in this rent roll is subject to verification and/or change at the time of closing, based on the actual in place tenancies and amounts paid by the tenants."*

**Confidential and Privileged Information**

# EXHIBIT "2"

LNBYB000100



1  DAVID L. NEALE (SBN 141225)
   JULIET Y. OH (SBN 211414)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone: (310) 229-1234
4  Facsimile: (310) 229-1244
   Email: dln@lnbyb.com, jyo@lnbyb.com
5
6  Attorneys for Chapter 11 Debtor
   and Debtor in Possession
7

FILED

JUN 1 0 2011

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

ENTERED

JUN 1 0 2011

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

8          UNITED STATES BANKRUPTCY COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10          SAN FERNANDO VALLEY DIVISION

11

12  In re                              )  Case No. 1:09-bk-14214-GM
                                       )
13  ROOSEVELT LOFTS, LLC, a            )  Chapter 11
    Delaware limited liability company,)
14                                     )  ORDER AUTHORIZING THE DEBTOR
                                       )  AND OTHER PARTIES THERETO TO
15              Debtor.                )  ENTER      INTO     PLAN    SUPPORT
                                       )  AGREEMENT        AND      RELATED
16                                     )  AGREEMENTS
                                       )
17                                     )
                                       )  Date:   June 10, 2011
18                                     )  Time:   9:00 a.m.
                                       )  Place:  Courtroom "303"
19                                     )          21041 Burbank Boulevard
                                       )          Woodland Hills, CA 91367
20                                     )
                                       )
21                                     )
                                       )
22                                     )
                                       )
23                                     )
                                       )
24                                     )
                                       )
25                                     )
                                       )
26                                     )
                                       )
27                                     )

28

                              1

LA\2267377.2

LNBYB000101

This Court, having considered the Motion of Roosevelt Lofts, LLC, a Delaware limited liability company, the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Debtor") for the entry of an order authorizing the Debtor and other parties thereto to enter into a plan support agreement (the "Plan Agreement") and related agreements (the "Motion"),[1] the arguments of counsel and other evidence presented at the hearing on the Motion on June 10, 2011, and having found that the Motion represents a core proceeding and venue for the Motion is appropriate before this Court, and good cause and adequate notice appearing therefore, hereby ORDERS:

1.     The Motion is granted, subject to the following.                                        GM

2.     The Plan Agreement is approved and shall constitute a legal, valid, and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms. The Debtor is authorized and directed to execute, deliver and implement the Plan Agreement and all exhibits and attachments thereto, and to take any and all actions necessary and proper to implement the terms of the Plan Agreement.

3.     The Borrower Parties Designation Agreement is approved and shall constitute a legal, valid, and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms.  The Debtor is authorized and directed to execute, deliver and implement the Borrower Parties Designation Agreement and all exhibits and attachments thereto, and to take any and all actions necessary and proper to implement the terms of the Borrower Parties Designation Agreement.  Subject to the terms of the Borrower Parties Designation Agreement, Greystar is irrevocably designated as the Purchaser under the BofA Settlement.

4.     The Escrow Agreement in the form attached hereto as Exhibit 1 is hereby approved and shall constitute a legal, valid, and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms. The Debtor is hereby authorized and directed to

---

[1] Any terms not specifically defined herein shall have the meanings ascribed to them in the Plan Agreement. In the event of any conflict between a material term in the Order and the Plan Agreement, the Plan Agreement shall govern.

2

execute the Escrow Agreement and take all steps necessary to implement the Escrow Agreement.

5.      The Greystar Receivership Stipulation in the form attached hereto as Exhibit 2 is approved and shall constitute a legal, valid, and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms.  The Debtor is authorized and directed to execute, deliver and implement the Greystar Receivership Stipulation to take all steps necessary and proper to enable Greystar to exercise its rights under the Greystar Receivership Stipulation.

6.      The Foreclosure Right is approved and shall constitute a legal, valid, and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms.  The Debtor is authorized and directed to take all steps necessary and proper to enable Greystar to exercise the Foreclosure Right.  Upon exercise of the Foreclosure Right and consummation of the foreclosure sale contemplated thereunder, Greystar will obtain fee simple title to all of the Property.

7.      The 363 Purchase Right is approved and shall constitute a legal, valid, and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms. The Debtor is authorized and directed to execute, deliver all documents and motions and to take all steps necessary and proper to implement the 363 Purchase Right, including without limitation, obtaining entry of (a) the Bidding Procedures Order and (b) the 363 Order on or before the 363 Sale Outside Date.  Upon entry of the 363 Order, Greystar (or the winning bidder in connection with the 363 Sale) will obtain fee simple title to all of the Property.

8.      The Debtor shall file the Plan and Disclosure Statement on or before June 20, 2011 (the "Plan and Disclosure Statement Filing Deadline").  The Plan shall contain terms and conditions substantially consistent with those described in the Term Sheet including, without limitation, (a) that Greystar shall receive, on the Plan Effective Date, 100% of the equity interests of Roosevelt Lofts, LLC as reorganized (or such entity that holds, as of the Plan Effective Date, such equity interests) free and clear of all liens, claims, encumbrances and interests and (b) provisions that approve and allow the BofA Claim as described below in Paragraph 10 of this Order.

3

LNBYB000103

9.     The hearing on the approval of the Disclosure Statement shall occur on July [6],

2011 at 10 a.m. The hearing on confirmation of the Plan shall occur on August [8], 2011 at 9   *GM*

a.m. *Objections to the Disclosure Statement shall be filed by 6/27/2011 at*

*5:00 p.m. Pacific Standard Time. Replies are due by 7/1/2011 at 5:00 p.m.*

10.     The BofA Claim is allowed (within the meaning of Section 502 of the Bankruptcy

Code) in the amount of $78,422,049.33 as of September 3, 2009, plus (a) interest accruing at the

default rate and (b) fees, charges and other expenses that accrued on and after September 3,

2009.  The Debtor shall reasonably cooperate with Greystar to determine the amount of such

interest, fees, charges and expenses. The BofA Claim is hereby ordered and found to be fully

perfected, valid, nonavoidable and duly enforceable (without any defense, counterclaim, right of

offset or subordination, or any other claim, surcharge or challenge by any party in interest) with

first priority security against the Property subject only to the Mechanics' Lien Claims as

described in the BofA/Mechanics' Lien Settlement Order. The BofA Claim shall not be subject

in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with

respect to the Property.

11.     The Debtor shall file the Bidding Procedures Motion and related motion to sell

the Property pursuant to Section 363 (the "363 Sale") of the Bankruptcy Code (the "363 Sale

Motion") on or before July 5, 2011 (the "363 Sale Motion Filing Date").  The hearing on the

Bidding Procedures Motion shall occur on July 12, 2011 at 10 a.m.  If Greystar, in its sole

discretion, elects to exercise the 363 Purchase Right, (a) the 363 Sale Hearing shall occur on

*GM* ~~September~~ *Aug 30* [ ], 2011] at *10* __ a.m. and (b) the Auction shall occur on the business day immediately

prior to the 363 Sale Hearing, commencing at 10 a.m. at the offices of Levene, Neale, Bender,

Yoo & Brill L.L.P.  In the event, the Debtor fails to file the Bidding Procedures Motion and the

363 Sale Motion (each in form and substance reasonably acceptable to Greystar) on or before the

363 Sale Motion Filing Date or use its best efforts to consummate the 363 Sale on or before the

363 Sale Outside Date, Greystar is authorized to file any and all documents and motions and

shall have standing to prosecute the 363 Motion on behalf of the Debtor and appear at any

hearing concerning the 363 Sale.  In connection with the 363 Sale and the exercise of the 363

4

Purchase Right, Greystar shall have the right to credit bid the full amount of the BofA Claim (as described above in Section 10 of this Order)

12.     If the Plan Effective Date has not occurred on or before the Outside Date, Greystar shall have automatic in rem relief from stay with respect to the Property (without further notice, hearing or order of this Court, and without any further limitation on such relief) for Greystar (as of and after the Outside Date) to, at Greystar's sole option:

     a.  foreclose on the Property (pursuant to the Foreclosure Right), with the foreclosure sale to commence as of the tenth day following the Outside Date. The foregoing timing for the foreclosure sale is hereby deemed to be commercially reasonable under applicable law for all notice purposes in connection with a foreclosure sale of the Property; or

     b.  promptly exercise the 363 Purchase Right and consummate the transactions contemplated in connection with the 363 Purchase Right.

The foregoing in rem relief shall be binding in any proceeding involving or purporting to affect the Property, whether such proceeding is before this Court or otherwise.

13.     If the Plan Agreement is terminated pursuant to Section 6 thereof, then all further obligations of the Parties thereunder shall be terminated without further liability related to the Agreement; provided that Greystar shall have the right to the Liquidated Damages; and provided further that (a) Greystar shall be unconditionally authorized to exercise, at its sole option, the Foreclosure Right and the 363 Purchase Right and (b) the provisions in the Plan Agreement and this Order related to the Foreclosure Right and the 363 Purchase Right shall remain in full force and effect; and provided further that in the event the Debtor fails to timely file the Bidding Procedures Motion or any other motion or document related to the exercise by Greystar of the 363 Purchase Right, Greystar shall be authorized to file any such motion or document in the name of the Debtor (as described further in Section 11 of this Order).

14.     The Plan Agreement and this Order shall be binding and inure to the benefit of the Parties and their respective successors, permitted assigns, heirs, executors, administrators and

5

LA\2267377.2

LNBYB000105

representatives responsible officer, estate administrator or representative, or similar person appointed in a case for any of the Debtors under any chapter of the Bankruptcy Code. The provisions of the Plan Agreement and this Order shall also be binding on all of the Debtor's creditors, equity holders, and all other parties in interest. For avoidance of doubt, Greystar reserves the right to assign the Plan Agreement to a designee or affiliate but, notwithstanding such assignment, shall remain liable for all of the obligations of Greystar under the Plan Agreement, the LOI and the Plan Term Sheet. Unless expressly stated herein, the Plan Agreement shall be solely for the benefit of the Parties hereto and no other Person or entity shall, or shall be deemed to, be a third party beneficiary hereof

15.    This Order and the Plan Agreement (a) shall be incorporated into any plan of reorganization or liquidation filed in the above-captioned Bankruptcy Case Agreement and (b) shall not be modified, altered or impaired in any manner by any subsequent plan or order (including a confirmation order). For avoidance of doubt, (x) Greystar (as holder of the BofA Claim) shall have the right to credit bid the full amount of the BofA Claim (in the amount referenced in Section 10 of this Order) in connection with any sales occurring pursuant to (A) section 363 of the Bankruptcy Code or included as part of any plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code and (B) in any foreclosure sale and (y) if Greystar acquires the BofA Claim, no plan of reorganization or liquidation may be confirmed in the above-captioned bankruptcy case unless, in connection and concurrently with the effective date of such plan, the plan provides for the indefeasible payment in full, in cash, and in complete satisfaction of the BofA Claim (in the amount referenced in Section 10 of this Order) or otherwise provides treatment of the BofA Claim that is satisfactory to Greystar in Greystar's sole discretion.

16.    So long as Greystar makes the Initial Deposit (as defined in the BofA Settlement) on or before June 13, 2011, Greystar shall be deemed to have standing to appear and be heard concerning any matter arising in the above-captioned bankruptcy case. The Debtor and Greystar reserve their respective rights with respect to Greystar's standing to so appear and be heard in the

6

LNBYB000106

1  event Greystar fails to make the Initial Deposit on or before June 13, 2011.

2      17.    The Plan Agreement, the Borrower Parties Designation Agreement, the Escrow

3  Agreement and the Greystar Receivership Stipulation (and all exhibits to any of the foregoing

4  documents) have been negotiated in good faith and at arm's-length by and among the Debtor,

5  Greystar and the other parties thereto.

6      18.    Without further order of the Court, the Debtor may enter into any non-material

7  amendments, consents, waivers or modifications to the Plan Agreement (and any document

8  referenced therein or attached thereto as an Exhibit) with the prior written consent of Greystar

9  which consent shall be granted or withheld in Greystar's sole discretion.

10      19.    The Debtor, the current holders of the BofA Claim and certain creditors of the estate

11  are parties to an agreement entitled "Stipulation Regarding Resolution of Priority Issues" ("the

12  Mechanics Lien Settlement Agreement"). The Mechanics Lien Settlement Agreement was

13  approved by the Court in an Order entered May 20, 2011 in adversary case number 1:10-ap-01031-

14  GM ("the Class Action Settlement Order"). This Order does not modify, supplement or affect, in

15  any way, the Mechanics Lien Settlement Agreement or the Class Action Settlement Order. If

16  Greystar succeeds to the BofA Claim, then it does so subject to the terms and conditions of the

17  Mechanics Lien Settlement Agreement and the Class Action Settlement Order. If Greystar acquires

18  the equity interests or Roosevelt Lofts, LLC or the assets of this estate, then it does so subject to the

19  terms and conditions of the Mechanics Lien Settlement Agreement and the Class Action Settlement

20  Order.

21      20.    The Debtor and Greystar contemplate a Plan of Reorganization which includes the

22  establishment and funding of an escrow in the amount of $16 million to be used to satisfy the

23  claims of creditors pursuant to the Mechanics Lien Settlement Agreement. That escrow shall be

24  maintained by an escrow holder satisfactory to Class Counsel for the Class of Mechanics Lien

25  claimholders (which consent shall not be unreasonably withheld). Any distributions from that

26  escrow account for, or on account of a claim asserted by a member of the Class of Mechanics Lien

27  claimholders shall be disbursed to Class Counsel in accordance with the terms and conditions of

28  the Mechanics Lien Settlement Agreement and the Class Action Settlement Order.

21.    Immediate entry of this Order is in the best interests of the Debtor's estate and all parties in interest as its implementation will, among other things, facilitate a prompt resolution of the above-captioned case. Therefore, notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7062 and 9013 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon entry.

22.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.



6/10/11

| In re  ROOSEVELT LOFTS, LLC | Chapter 11 |
| | Case No. 1:09-bk-14214-GM |
| Debtor(s). | |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:10250 Constellation Blvd., Ste. 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as **ORDER AUTHORIZING THE DEBTOR AND OTHER PARTIES THERETO TO ENTER INTO PLAN SUPPORT AGREEMENT AND RELATED AGREEMENTS** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 9, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

N/A

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On **June 9, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*None.*

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 9, 2011** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

***Served via Attorney Service***
Hon. Geraldine Mund
United States Bankruptcy Court
21041 Burbank Blvd., Ctrm, 303
Woodland Hills, CA 91367

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 9, 2011 | Stephanie Reichert | /s/ Stephanie Reichert |
| Date | Type Name | Signature |

8

LA\2267377.2

LNBYB000109

| | | Chapter 11 |
|---|---|---|
| In re ROOSEVELT LOFTS, LLC | | Case No. 1:09-bk-14214-GM |
| | Debtor(s). | |

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **ORDER AUTHORIZING THE DEBTOR AND OTHER PARTIES THERETO TO ENTER INTO PLAN SUPPORT AGREEMENT AND RELATED AGREEMENTS** was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (ANEF)** : Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **June 9, 2011** the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- John B Acierno    ecfcacb@piteduncan.com
- Carleton R Burch    crb@amclaw.com, amc@amclaw.com;jsh@amclaw.com;awh@amclaw.com;mav@amclaw.com;esf@amclaw.com;slc@amclaw.com;csh@amclaw.com
- Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
- L Dominic Chacon    ldominicchacon@yahoo.com
- Cynthia M Cohen    cynthiacohen@paulhastings.com
- Travis W Feuerbacher    tfeuerbacher@gglts.com
- Steven R Fox    emails@foxlaw.com
- Helen R Frazer    hfrazer@aalrr.com
- Varand Gourjian    vg@gourjianlaw.com, lucy@gourjianlaw.com;naz@gourjianlaw.com;art@gourjianlaw.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Herbert Hayden    herbert@ntlg.us
- Brian L Holman    b.holman@mpglaw.com
- Alexandra Kazhokin    akazhokin@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
- Mark J Krone    crb@amclaw.com, crs@amclaw.com;amc@amclaw.com
- Ian Landsberg    ilandsberg@landsberg-law.com, bgomelsky@landsberg-law.com;rbenitez@landsberg-law.com
- David L. Neale    dln@lnbrb.com
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- Russell H Rapoport    rrapoport@prllplaw.com, lgillis@prllplaw.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Bruce D Rudman    bdr@agrlaw.net
- William D Schuster    bills@allieschuster.org
- Marian K Selvaggio    selvaggio@huntortmann.com
- Daniel H Slate    dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com
- Lindsey L Smith    lls@lnbrb.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Marc Weinberg    marcweinberg@att.net
- Brandon J Witkow    bwitkow@lockelord.com
- Aimee Y Wong    aywong@mckennalong.com

9

II. **SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

*None.*

III. **TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

*None.*

**ADDITIONAL SERVICE INFORMATION** (if needed):

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                          **F 9021-1.1**

10

LA\2267377.2

LNBYB000111