DAVID L. NEALE (SBN 141225)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  dln@lnbyb.com, jyo@lnbyb.com

Attorneys for Chapter 11 Debtor and
Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | ) Case No. 1:09-bk-14214-GM |
| ROOSEVELT LOFTS, LLC, a Delaware limited liability company, | ) Chapter 11 |
| Debtor. | ) **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONFIRMATION OF DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION (DATED JUNE 20, 2011), AS MODIFIED** |
| | ) <u>Plan Confirmation Hearing:</u> |
| | ) Date:    August 8, 2011 |
| | ) Time:    9:00 a.m. |
| | ) Place:   Courtroom "303" |
| | )          21041 Burbank Boulevard |
| | )          Woodland Hills, California |

# I.

## **INTRODUCTION**

Roosevelt Lofts, LLC, a Delaware limited liability company, debtor and debtor in possession herein (the "Debtor") hereby submits its memorandum of points and authorities (the "Memorandum") in support of confirmation of the *Second Amended Chapter 11 Plan Of Reorganization (Dated June 20, 2011), As Modified* (as later amended after the hearing on July 6, 2011, the "Plan") [Docket No. 836], which has been jointly proposed by the Debtor and GS Roosevelt, LLC (with its designee, "Greystar"). As discussed below, those parties entitled to vote on the Plan have voted, or are anticipated to vote, unanimously in favor of confirming the Plan[1] and all legal requirements for confirmation of the Plan have been met. Any capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Plan.

Since this case was filed, the Debtor has been involved in disputes with most of its major creditor constituencies that have been extremely complex and vigorously disputed by numerous parties. Remarkably, as a result of the efforts of the Debtor and its principals, **the Plan contemplates payment in full or consensual satisfaction of all Allowed Claims and Interests**. A detailed recitation of the facts regarding the background of the Debtor, the events leading to the Debtor's bankruptcy filings, and the significant events that have transpired during the course of the Debtor's case is provided in the *Disclosure Statement Describing Second Amended Chapter 11 Plan Of Reorganization (Dated June 20, 2011), As Modified* (the "Disclosure Statement"), is incorporated herein by this reference, and will therefore not be repeated herein.

/ / /

/ / /

/ / /

---

[1] The Debtor, Greystar and Bank of America, N.A., individually and as agent for a group of lenders ("Bank of America") recently entered into a stipulation to extend the deadline for Bank of America, or Greystar as its successor, to return its ballot accepting or rejecting the Plan to 5:00 p.m. (PDT) on August 4, 2011. The Court entered an order on July 27, 2011 approving such stipulation [Docket No. 838]. The Debtor anticipates that Greystar will acquire the claim currently held by Bank of America and submit a ballot accepting the Plan by August 4, 2011.

## II.

## <u>THE REQUIREMENTS NECESSARY FOR PLAN CONFIRMATION ARE</u>

## <u>SATISFIED AND THE COURT SHOULD CONFIRM THE PLAN</u>

As described in more detail below, the Plan complies with all of the provisions of Section 1129(a) of 11 U.S.C. § 101 *et seq.* (the "<u>Bankruptcy Code</u>").[2]

1.    <u>Section 1129(a)(1).</u>

Section 1129(a)(1) provides that a court may confirm a plan only if "the plan complies with the applicable provisions of this title." The phrase "applicable provisions" has been interpreted to mean Sections 1122 and 1123, which govern the classification of claims and interests and the contents of a plan of reorganization. *Cane v. Johns-Manville Corp.*, 843 F.2d 636, 648-9 (2nd Cir. 1988); 5 *Collier on Bankruptcy* 1129.02 (15th ed. 1986); H.R. Rep. No. 95-595, 9th Cong., 1st Sess. 412 (1977).

1.1    <u>Section 1122.</u>

Section 1122 governs the classification of claims and interests. A plan proponent has broad discretion to classify claims in a plan of reorganization. *See Oxford Life Ins. Co. v. Tucson Self-Storage, Inc. (In re Tucson Self-Storage, Inc.)*, 166 B.R. 892, 897 (9th Cir. BAP 1994). In fact, the only restriction on the creation of classes imposed by the Bankruptcy Code is Section 1122(a), which provides that a plan may place a claim or an interest in a particular class only if the claim or interest is "substantially similar" to other claims or interests. Claims that are secured by different properties are entitled to separate classification. *Brady v. Andrew (In re Commercial Western Finance Corporation)*, 761 F.2d 1329, 1338 (9th Cir. 1985) (holding that separate classification of creditors' claims that were secured by different notes and deeds of trusts was valid). Furthermore, claims of the same nature may be classified separately if the claims are situated differently and not proposed to manipulate the vote of an impaired class of claims. *Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 326 and 328 (9th Cir. 1994).

In this case, the Plan has the following classes of claims and interests:

---

[2] All references to Sections herein, unless otherwise identified, shall be to the Bankruptcy Code.

Class 1 – Allowed Claim of Bank of America.

Class 2 – Allowed Mechanics' Lien Claims.

Class 3 – Allowed Other Secured Claims.

Class 4 – Allowed Priority Non-Tax Claims.

Class 5 – Allowed General Unsecured Claims.

Class 6 – Old Debtor LLC Interests.

The Debtor submits that the foregoing classifications are appropriate under Section 1122.  The Plan therefore complies with the provisions of Section 1122.

1.2    Section 1123(a).

The Plan complies with the seven (7) applicable mandatory provisions of Section 1123(a).

Section 1123(a)(1) requires that a plan of reorganization designate classes of claims other than claims of the kind specified in Sections 507(a)(2), (3) and (8).  The Plan satisfies the requirements of Section 1123(a)(1) by designating all classes of claims other than claims specified in Sections 507(a)(2), (3) and (8).

Section 1123(a)(2) requires that a plan of reorganization specify those classes of claims or interests that are not impaired and Section 1123(a)(3) requires that a plan specify those classes of claims or interests that are impaired.  The Plan satisfies this requirement by indicating whether each class under the Plan is impaired or not impaired and describing the treatment of all claims and interests.

Section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to less favorable treatment.  The Plan satisfies this requirement, as no claim holder or interest holder is receiving treatment under the Plan different from any other claim holder or interest holder in the same class.

Section 1123(a)(5) requires that a plan provide adequate means for the plan's implementation.  The Plan sets forth the means of implementation and execution of the Plan.  As

discussed below, as a result of the Greystar Contribution, the Debtor expects to have funds in the amount of $95 million available on the Effective Date[3], which is enough to pay in full and/or reserve for the payments required to be made and the reserves to be established as of the Effective Date under the Plan.

Section 1123(a)(6) requires that a plan provide for appropriate distribution of power among all voting equity classes.  Section 1123(a)(6) is inapplicable to this case as there is intended to be only one class of New Securities issued under the Reorganized Debtor LLC Agreement.  On the Effective Date, the Reorganized Debtor will issue the New Securities to Greystar Equity Partners VII, LLC or to an Intermediary Entity to be identified by Greystar prior to the Confirmation Hearing.

Section 1123(a)(7) requires that a plan contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee.  The Debtor is not aware of any provision in the Plan that is contrary to the best interests of creditors and equity holders or public policy.  Indeed, there have been no objections to confirmation of the Plan and, as discussed below, those parties entitled to vote have voted, or are anticipated to vote, unanimously in favor of accepting the Plan.  Based on the foregoing, the Debtor submits that this provision of the Bankruptcy Code is satisfied.

Section 1123(a)(8) is only applicable to cases involving individuals and, therefore, is inapplicable in this case.

       1.3    <u>Section 1123(b)</u>.

Section 1123(b) contains five (5) permissive provisions.

Section 1123(b)(1) provides that a plan may impair or leave unimpaired any class of claims, whether secured or unsecured, or of interests.  Here, Classes 1 and 6 are impaired.  All other classes are unimpaired.

---

[3] This amount may be reduced by a confidential sum that has been agreed to by the Debtor and Bank of America pursuant to the BofA/Debtor Settlement in the event that Greystar elects to acquire the Bank of America Claim prior to the Effective Date.

Section 1123(b)(2) specifies that, subject to Section 365, a plan may provide for the assumption, rejection or assignment of any executory contract or unexpired lease not previously rejected.  Here, on the Effective Date, all executory contracts and unexpired leases of the Debtor listed on the Contract/Lease Schedules are to be deemed assumed in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code. .

Section 1123(b)(3) specifies that a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate," and/or "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest."  Here, following the Effective Date, the Debtor shall retain the authority to file or continue to pursue objections to Claims, and to settle, compromise, withdraw or litigate to judgment objections to Claims.  Except as otherwise provided in the Plan or the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, on the Effective Date, the Reorganized Debtor shall retain all of the Debtor's Retained Litigation Rights that the Debtor may hold against any Person.  The Reorganized Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all such Retained Litigation Rights.  The Reorganized Debtor or its successor(s) may pursue such Retained Litigation Rights as appropriate, in accordance with the best interests of the Reorganized Debtor or its successor(s) who hold such rights in accordance with applicable law and consistent with the terms of the Plan.

Section 1123(b)(4) specifies that a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests."  Section 1123(b)(4) is inapplicable to the Plan.

Section 1123(b)(5) specifies that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."  Here, the Plan contemplates performance by the Debtor under the

BofA/Debtor Settlement, which technically constitutes an impairment of the rights of Bank of America, but does not otherwise provide for the impairment of the rights of any holders of secured claims.  On the Effective Date, the Debtor shall create a reserve in the amount of $16 million, which the Debtor believes to be sufficient to provide for payment in full of all Allowed Mechanics' Lien Claims.

　　　2.　　Section 1129(a)(2).

Section 1129(a)(2) provides that a court may confirm a plan only if "[t]the proponent of the plan complies with applicable provisions of this title."  The "principal purpose of 11 U.S.C. §1129(a)(2) is to insure that the proponents have complied with the requirements of 11 U.S.C. §1125 in the solicitation of acceptances to the plan," *In re Texaco, Inc.* 84 B.R. 893, 906-7 (Bankr. S.D. N.Y. 1988), and with the requirements of Sections 1121 and 1127, *In re Downtown Inv. Club III*, 89 B.R. 59, 65 (9th Cir. BAP 1988).

　　　2.1　　Section 1121.

Section 1121(c) of the Code provides that "[a]ny party in interest, including the debtor … [and] a creditors' committee ..., may file a plan ...."  Since the Debtor is the co-proponent of the Plan (along with GS Roosevelt, LLC), the requirements of Section 1121 have been satisfied.

　　　2.2　　Section 1125.

Section 1125(b) provides, in pertinent part, as follows:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at that time or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and hearing, by the Court as containing adequate information.

On July 8, 2011, the Court entered an order approving the Disclosure Statement as containing adequate information under Section 1125(b) and setting forth the solicitation

1    procedures to be followed by the Debtor.  The Debtor timely performed its obligations under the

2    foregoing order.  More specifically, as evidenced by the proof of service filed with the Court on

3    July 11, 2011 [Docket No. 829], copies of the Plan and the Disclosure Statement, together with

4    ballots for creditors to use to vote on the Plan (as applicable) were timely sent on July 11, 2011

5    to each known creditor and party in interest in the Debtor's case.  The Debtor has therefore

6    complied with the provisions of Section 1125.

7              2.3    Section 1127.

8              Section 1127 sets forth certain requirements that a plan proponent must satisfy in order

9    to modify a plan.  Section 1127(b) authorizes a plan proponent to modify the plan at any time

10    before confirmation of the plan provided the plan as modified satisfies the requirements of

11    Sections 1122 and 1123 of the Code.   A modification to a plan does not mandate "the

12    preparation of a new disclosure statement and resolicitation of the plan".  *In re American Solar*

13    *King Corp. ("American Solar")*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988).   Additional

14    disclosure to creditors is required "only when and to the extent that the debtor intends to solicit

15    votes from previously dissenting creditors or when the modification materially and adversely

16    impacts parties who previously voted for the plan."  At the July 6, 2011 hearing for the Court to

17    consider approval of the Disclosure Statement, the Debtor, Greystar and Bank of America

18    agreed to add certain language to the Plan which did not materially or adversely impact creditors

19    and parties in interest or result in a modification of the Plan.  There were no modifications to the

20    Plan after the July 6, 2011 hearing on the Disclosure Statement, so Section 1127 is inapplicable.

21              3.    Section 1129(a)(3).

22              Section 1129(a)(3) provides that a court may confirm a plan only if the plan is proposed

23    "in good faith and not by any means forbidden by law."  Bankruptcy Rule 3020(b)(2) provides

24    that the Court may determine that a plan proponent proposed a plan in good faith and not by any

25    means forbidden by law, without receiving evidence, if no party in interest has timely objected

26    to the plan proponent's good faith. *In re Warren*, 89 B.R. 87, 91 (9th Cir. BAP 1988).  Here, the

27    Debtor filed the Plan in good faith, after extensive consultations with Bank of America and

28

1    Class Action Counsel, and no party has objected to the good faith of the Debtor in proposing the

2    Plan.  In fact, there have been no objections to the confirmation of the Plan.

3         4.      Section 1129(a)(4).

4         Section 1129(a)(4) provides that a court may confirm a plan only if "[a]ny payment

5    made or to be made by the proponent, by the debtor, or by a person issuing securities or

6    acquiring property under the plan, for services or for costs and expenses in connection with the

7    case, or in connection with the plan and incident to the case, has been approved by, or is subject

8    to the approval of, the court as reasonable."  The post-petition, pre-confirmation professional

9    fees and expenses incurred by any of the estates' professionals (who were not employed under

10   Section 328 and/or approved for flat fee payments) will be paid on a final basis only after such

11   fees and expenses have been approved by the Court.  Based on the foregoing, the Plan satisfies

12   Section 1129(a)(4).

13        5.      Section 1129(a)(5).

14        Section 1129(a)(5)(A)(i) provides that a court may confirm a plan only if the plan

15   proponent discloses "the identity and affiliations of any individual proposed to serve, after

16   confirmation of the plan, as a director, officer of voting trustee of the debtor, an affiliate of the

17   debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan."

18        Section 1129(a)(5)(A)(ii) requires that the "appointment to, or continuance in, such

19   office [as specified in Section 1129(a)(5)(A)(i)] of such individual is consistent with the best

20   interests of creditors and equity holders and with public policy."  *See In re Produce Hawaii,*

21   *Inc.*, 41 B.R. 301, 304 (Bankr. D. Haw. 1984); *In re Parks Lumber Co., Inc.*, 19 B.R. 285, 291

22   (Bankr. W.D. La. 1982).

23        Section 1129(a)(5)(B) provides that a court may confirm a plan only if the plan

24   proponent discloses "the identity of any insider that will be employed or retained by the

25   reorganized debtor, and the nature of any compensation for such insider."

26        On July 5, 2011, the Debtor filed its "*Notice Identifying The Proposed Senior Officers Of

27   *Reorganized Debtor Pursuant To Second Amended Chapter 11 Plan Of Reorganization (Dated*

28

1  *June 20, 2011), As Modified*" [Docket No. 822], which disclosed the names and positions of

2  each of the proposed senior officers of the Reorganized Debtor.  Based on the foregoing, the

3  Plan satisfies any applicable requirements of Section 1129(a)(5).

4       6.    <u>Section 1129(a)(6)</u>.

5       Section 1129(a)(6) requires that after confirmation of a plan, any governmental

6  regulatory commission with jurisdiction "over the rates of the debtor has approved any rate

7  change provided for in the plan ..."

8       Section 1129(a)(6) is inapplicable to this case, because no government regulatory

9  commission has jurisdiction over the rates charged by the Debtor.

10       7.    <u>Section 1129(a)(7)</u>.

11       Section 1129(a)(7)(A) (commonly referred to as the "best interest of creditors test")

12  requires that, with respect to each impaired class under the Plan, each member of the class must

13  either accept the Plan or receive under the Plan property having a value, as of the Effective Date,

14  that is not less than the amount that such claim holder would receive if the Debtor's Chapter 11

15  case was converted to Chapter 7.  The Debtor submits that this requirement has been satisfied,

16  as more fully discussed in Section IV.L of the Disclosure Statement.

17       In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee.  Secured

18  creditors are paid first from the sales proceeds of properties on which the secured creditor has a

19  lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any

20  remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the

21  same priority share in proportion to the amount of their allowed claim in relationship to the

22  amount of total allowed unsecured claims.  Finally, interest holders receive the balance that

23  remains after all creditors are paid, if any.

24       For the Court to be able to confirm the Plan, the Court must find that all creditors and

25  interest holders who do not accept the Plan will receive at least as much under the Plan as such

26  holders would receive under a chapter 7 liquidation of the Debtor.  The Debtor maintains that

27

28

this requirement is clearly met since all Classes of Claims under the Plan are to be paid (or reserved for) in full and/or treated in accordance with terms acceptable to such Classes.

As described in the Disclosure Statement, the holder of the Class 1 Bank of America Claim will be paid the full amount of the Bank of America Payment in satisfaction of the Debtor's obligations under the BofA/Debtor Settlement pursuant to the BofA/Debtor Settlement Order. The holder of the Class 1 Bank of America Claim shall be paid according to the terms of the compromise previously approved by the Court. In the event the Debtor's case was converted to Chapter 7, the holder of the Bank of America Claim would have the right to foreclose upon the Property, with no guaranty as to the amount of its recovery. As such, in a Chapter 7 case, the recovery by Bank of America or its successor would be speculative and would be affected by the ability of Bank of America or its successor to sell or otherwise dispose of the Property at some point in the future (if ever). Given the uncertainties of the real estate market generally and the market for the Property in particular, the Plan provides for a recovery by the holder of the Bank of America Claim that is assured and that has previously been deemed acceptable to Bank of America, provided the terms and conditions of the BofA/Debtor Settlement are satisfied.

In the event the Debtor's case was converted to Chapter 7 and the holder of the Bank of America Claim was to foreclose upon the Property, unsecured creditors in Class 5 would likely receive no distribution on account of their Allowed Claims. In contrast, the Plan proposes to pay such Allowed Class 5 Claims in full on the Effective Date. Likewise, in the event the Debtor's case was converted to Chapter 7, the holders of Class 2 Allowed Mechanics' Lien Claims would likely be embroiled in litigation with the holder of the Bank of America Claim concerning the amount of their potential recovery from any disposition of the Property following foreclosure by the holder of the Bank of America Claim. Under the Plan, the Plan Proponents shall reserve up to $16 million to pay the Allowed Mechanics' Lien Claims in Class 2. The Debtor believes that this reserve is well in excess of the amount of properly allowable Class 2 Claims, and should be sufficient to pay such Allowed Class 2 Claims in full.

1       Based upon the foregoing, the Debtor believes the Plan satisfies the "best interests of

2  creditors" test of Section 1129(a)(7).

3       8.    <u>Section 1129(a)(8)</u>.

4       Section 1129(a)(8) provides that a court may confirm a plan only if "[w]ith respect to

5  each class of claims or interests:

6       (A)    such class has accepted the plan; or

7       (B)    such class is not impaired under the plan.

8       Section 1126(c) of the Code provides that "[a] class of claims has accepted a plan if such

9  plan has been accepted by creditors ... that hold at least two-thirds in amount and more than one-

10  half in number of the allowed claims of such class held by creditors ... that have accepted or

11  rejected such plan."

12       As set forth in the Ballot Analysis which has been filed concurrently herewith or will be

13  filed shortly, both impaired classes (*i.e.*, Class 1 and Class 6) have accepted or are anticipated to

14  accept the Plan.  There were no other impaired classes of Claims entitled to vote on the Plan.

15       9.    <u>Section 1129(a)(9)</u>.

16       Section 1129(a)(9) provides that a court may confirm a plan only if the plan complies

17  with the following:

18       a.    On the effective date, each holder of a claim under Sections 507(a)(2) or

19  507(a)(3) of the Code must receive cash equal to the allowed amount of such claim or agree to a

20  different treatment.

21       Here, Allowed Administrative Claims, other than Allowed Administrative Claims of

22  insiders,[4] shall be paid in full in Cash on the later of (a) 60 days after such claims are allowed or

23  (b) the Effective Date.  To the extent Allowed Administrative Claims are Allowed or payable

24  after the Effective Date, they shall be paid in full in Cash promptly after such claims are

25

26       [4] All claims asserted against the Debtor by insiders of the Debtor, including without limitation
RLI and Milbank Holding Corp., will be cancelled and no distribution shall be made under the Plan on

27  account of such claims (including any and all administrative, priority, secured or unsecured claims).  To
the extent any distributions must be made to any insiders of the Debtor, such distributions will be made

28  exclusively from the Greystar Contribution.

1    Allowed or payable out of a reserve established under or pursuant to the Plan from the Greystar

2    Contribution.   Professionals shall file final fee applications within 60 days after the Effective

3    Date.  Promptly after allowance, professional fees shall be paid in full in Cash.

4         There will be sufficient Cash on the Effective Date to pay, or reserve for, all Allowed

5    Administrative Claims in full.  There are no holders of claims under Section 507(a)(3).

6         b.    Except to the extent that the holder of a particular claim has agreed to

7    different treatment, each holder of a priority claim under Sections 507(a)(1), (4), (5), (6) or (7)

8    must receive, on account of such claim:

9         i.    deferred cash payments of a value, as of the effective date, equal

10   to the allowed amount of such claim, if such class has accepted the plan; or

11        ii.    cash on the effective date equal to the allowed amount of such

12   claim, if such class has not accepted the plan.

13        There will be sufficient Cash on the Effective Date to pay all Priority Non-Tax Claims in

14   full.

15        c.    Except to the extent that the holder of a particular claim has agreed to

16   different treatment, each holder of a priority claim under Section 507(a)(8) must receive, on

17   account of such claim, regular installment payments in cash

18        i. of a total value, as of the effective date, equal to the allowed amount of

19        such claim;

20        ii. over a period ending not later than five (5) years after the date of the

21        order for relief under Sections 301, 302, or 303 of the Code; and

22        iii. in a manner not less favorable than the most favored nonpriority

23        unsecured claim provided for by the plan.

24        There will be sufficient Cash on the Effective Date to pay all Priority Tax Claims in full.

25        d.    Each holder of a secured claim which would otherwise meet the

26   description of an unsecured claim of a governmental unit under Section 507(a)(8) of the Code,

27

28

but for the secured status of that claim, must receive cash payments in the same manner and over the same period proscribed directly above.

The Debtor is not aware of the existence of any Allowed Claims under Section 507(a)(8) of the Bankruptcy Code.

Based upon the foregoing, the Plan satisfies the requirements of Section 1129(a)(9).

10.    Section 1129(a)(10).

Section 1129(a)(10) provides that a court may confirm a plan only if "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."

Here, as set forth in the Ballot Analysis which has been filed concurrently herewith or will be filed shortly, Classes 1 and 6, both of which are impaired, have voted or are anticipated to vote to accept the Plan.

11.    Section 1129(a)(11).

Section 1129(a)(11) provides that a court may confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  In order to meet this feasibility standard, a debtor need only demonstrate that the plan has a "reasonable probability of success."  In re Acequia, Inc., 787 F.2d 1352, 1364 (9th Cir.1986); In re Pike's Peak Water Co., 779 F.2d 1456, 1460 (10th Cir. 1985); In re Apex Oil Co., 118 B.R. 683, 708 (Bankr. E.D. Mo. 1990).

There are at least two (2) important aspects of a feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date to pay all the Claims that are entitled to be paid on such date.  The Greystar Contribution of up to $95 million is more than sufficient to pay (or reserve for) the Debtor's best estimate of all unpaid Claims in this case.  As a result, the Debtor has satisfied this aspect of feasibility.

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments.  Because the Plan contemplates a one-time

distribution to holders of Allowed Claims on the Effective Date (including a payment to fully fund the Class Action Reserve), this aspect of feasibility is automatically satisfied by the Plan. The Debtor has not provided future financial projections since the Plan does not contemplate the future operation of any business by the Debtor.

Based on the foregoing, the Debtor has satisfied the feasibility requirements of Section 1129(a)(11).

12.      Section 1129(a)(12).

Section 1129(a)(12) provides that a court may confirm a plan only if "[a]ll fees payable under Section 1930, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." The Plan complies with this Section because the Plan provides for all such fees and costs to be paid in full by the Debtor.

13.      Section 1129(a)(13).

Section 1129(a)(13) provides that a court may confirm a plan only if "[t]he plan provides for the continuation after its effective date of payment of all retiree benefits ... for the duration of the period the debtor has obligated itself to provide such benefits."

This provision is inapplicable to this case, as the Debtor does not provide any retiree benefits.

14.      Section 1129(a)(14).

Section 1129(a)(14) provides that, if the debtor is required by judicial or administrative order, or by statute, to pay a domestic support obligation, a court may confirm a plan only if "the debtor has paid all amounts due under such order or such statute for such obligation that first become payable after the date of the filing of the petition."

This provision is inapplicable to this case, as the Debtor is not an individual and has no domestic support obligations.

/ / /

/ / /

15. <u>Section 1129(a)(15)</u>.

Section 1129(a)(15) provides that, if the debtor is an individual and the holder of an allowed secured claim objects to confirmation of the plan, the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim must not be less than the amount of such claim, or the value of the property to be distributed under the plan must not be less than the projected disposable income of the debtor to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during which the plan provides payments, whichever is longer.

This provision is inapplicable to this case, as the Debtor is not an individual.

16. <u>Section 1129(a)(16)</u>.

Section 1129(a)(16) provides that "all transfers of property of the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation trust."

Here, all payments under the Plan are being and will be made in accordance with "applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation trust."

///
///
///
///
///
///
///
///
///
///

### III.

### <u>CONCLUSION</u>

Based upon all of the foregoing, the Debtor submits that it has satisfied all of the requirements of Section 1129(a) necessary for confirmation of the Plan.  The Debtor believes that confirmation of the Plan is in the best interests of its creditors and equity interest holders. The Debtor therefore requests that the Court enter an order (i) confirming the Plan; and (ii) granting such further and other relief that the Court deems appropriate under the circumstances.

Dated: August 1, 2011                     ROOSEVELT LOFTS, LLC


                                          By:___*/s/ David L. Neale*_____
                                              DAVID L. NEALE
                                              JULIET Y.OH
                                              LEVENE, NEALE, BENDER, YOO
                                                  & BRILL L.L.P.
                                              Attorneys for Debtor and
                                              Debtor in Possession

### DECLARATION OF M. AARON YASHOUAFAR

I, M. Aaron Yashouafar, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify competently thereto.

2.      I am the President of Roosevelt Lofts, Inc., which is the Manager of Roosevelt Lofts, LLC, a Delaware limited liability company, debtor and debtor in possession herein (the "Debtor").  Accordingly, I am familiar with virtually all aspects of the Debtor's condominium and commercial space project located at 727 West 7th Street in Los Angeles, California.  Except where otherwise indicated, the statements made herein are of my own personal knowledge, and if called upon, I could and would testify to their truth.

3.      I make this Declaration in support of the memorandum of points and authorities (the "Memorandum") in support of confirmation of the *Second Amended Chapter 11 Plan Of Reorganization (Dated June 20, 2011), As Modified* (as later amended after the hearing on July 6, 2011, the "Plan"), which has been jointly proposed by the Debtor and GS Roosevelt, LLC (with its designee, "Greystar").  Any capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Plan.

4.      Since the Debtor's bankruptcy case was filed over two years ago, the Debtor has been involved in disputes with most of its major creditor constituencies that have been extremely complex and vigorously disputed by numerous parties.  Remarkably, as a result of the efforts of the Debtor and its principals, the Plan contemplates payment in full or consensual satisfaction of all Allowed Claims and Interests.  A detailed recitation of the facts regarding the background of the Debtor, the events leading to the Debtor's bankruptcy filings, and the significant events that have transpired during the course of the Debtor's case is provided in the Debtor's *Disclosure Statement Describing Second Amended Chapter 11 Plan Of Reorganization (Dated June 20, 2011), As Modified* (the "Disclosure Statement"), is incorporated herein by this reference, and will therefore not be repeated herein.

5.     At the July 6, 2011 hearing for the Court to consider approval of the Disclosure Statement, which I attended, the Debtor, Greystar and Bank of America agreed to add certain language to the Plan, the addition of which I do not believe materially or adversely impacted creditors and parties in interest nor resulted in a material modification of the Plan.  There were no modifications to the Plan after the July 6, 2011 hearing on the Disclosure Statement.

6.     As evidenced by the proof of service filed with the Court on July 11, 2011, the Debtor caused copies of the Plan and the Disclosure Statement, together with ballots for creditors to use to vote on the Plan (as applicable), to be sent on July 11, 2011 to each known creditor and party in interest in the Debtor's case.

7.     As indicated in the Plan, the Plan has the following classes of claims and interests:

Class 1 – Allowed Claim of Bank of America.

Class 2 – Allowed Mechanics' Lien Claims.

Class 3 – Allowed Other Secured Claims.

Class 4 – Allowed Priority Non-Tax Claims.

Class 5 – Allowed General Unsecured Claims.

Class 6 – Old Debtor LLC Interests.

8.     Pursuant to the Plan, the only Classes that are impaired and entitled to vote on the Plan are Class 1 (Allowed Claim of Bank of America) and Class 6 (Old Debtor LLC Interests). To be considered for purposes of determine the acceptance of rejection of the Plan, ballots were required to be submitted by not later than 5:00 p.m. (PDT) on July 25, 2011.

9.     On July 25, 2011, the Debtor, Greystar and Bank of America entered into a stipulation to extend the deadline for Bank of America (or its successor) to return its ballot accepting or rejecting the Plan to 5:00 p.m. (PDT) on August 4, 2011.  It is my understanding and belief that the Court approved the foregoing stipulation pursuant to its order entered on July 27, 2011.

10.     Based on my discussions with Greystar, I anticipate that Greystar will acquire the claim currently held by Bank of America and submit a ballot accepting the Plan by August 4, 2011.  Therefore, I anticipate that all parties entitled to vote on the Plan have voted, or will vote, unanimously in favor of confirming the Plan.

11.     The Plan sets forth the means of implementation and execution of the Plan.  As a result of the Greystar Contribution, I expect that the Debtor will have funds in the amount of $95 million available on the Effective Date[5], which is enough to pay in full and/or reserve for the payments required to be made and the reserves to be established as of the Effective Date under the Plan.

12.     On July 5, 2011, the Debtor filed its "*Notice Identifying The Proposed Senior Officers Of Reorganized Debtor Pursuant To Second Amended Chapter 11 Plan Of Reorganization (Dated June 20, 2011), As Modified*", which disclosed the names and positions of each of the proposed senior officers of the Reorganized Debtor.

13.     The Debtor filed the Plan in good faith, after extensive consultations with Bank of America and Class Action Counsel.  To the best of my knowledge, no party has objected to the good faith of the Debtor in proposing the Plan.

14.     I am not aware of any provision in the Plan that is contrary to the best interests of creditors and equity holders or public policy.  Indeed, there have been no objections to confirmation of the Plan by any creditor or other party in interest.

15.     I believe that, if the Debtor's case was converted to Chapter 7, the holder of the Bank of America Claim would have the right to foreclose upon the Property, with no guaranty as to the amount of its recovery.  As such, in a Chapter 7 case, I believe the recovery by Bank of America or its successor would be speculative and would be affected by the ability of Bank of America or its successor to sell or otherwise dispose of the Property at some point in the future (if ever).  Given the uncertainties of the real estate market generally and the market for the

---

[5] This amount may be reduced by a confidential sum which has been agreed to by the Debtor and Bank of America pursuant to the BofA/Debtor Settlement in the event that Greystar elects to acquire the Bank of America Claim prior to the Effective Date.

Property in particular, I believe the Plan provides for a recovery by the holder of the Bank of America Claim that is assured and that has previously been deemed acceptable to Bank of America, provided the terms and conditions of the BofA/Debtor Settlement are satisfied.

16.      I further believe that, if the Debtor's case was converted to Chapter 7 and the holder of the Bank of America Claim was to foreclose upon the Property, unsecured creditors in Class 5 would likely receive no distribution on account of their Allowed Claims.  In contrast, the Plan proposes to pay such Allowed Class 5 Claims in full on the Effective Date.  Likewise, I believe that, if the Debtor's case was converted to Chapter 7, the holders of Class 2 Allowed Mechanics' Lien Claims would likely be embroiled in litigation with the holder of the Bank of America Claim concerning the amount of their potential recovery from any disposition of the Property following foreclosure by the holder of the Bank of America Claim.  Under the Plan, the Plan Proponents will reserve up to $16 million to pay the Allowed Mechanics' Lien Claims in Class 2.  I believe that this reserve is well in excess of the amount of properly allowable Class 2 Claims, and should be sufficient to pay such Allowed Class 2 Claims in full.

17.      For all of the reasons set forth in the Memorandum, to which this Declaration is attached, I respectfully submit that confirmation of the Plan is in the best interests of the Debtor's creditors and equity interest holders, and I therefore support the Debtor's request that the Court enter an order confirming the Plan and granting such further and other relief as may be appropriate under the circumstances.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of August, 2011 at Los Angeles, California.

_/s/ M. Aaron Yashouafar_
M. AARON YASHOUAFAR

| In re: | CHAPTER 11 |
|---|---|
| ROOSEVELT LOFTS, LLC, | CASE NUMBER 1:09-bk-14214-GM |
| Debtor(s). | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067

A true and correct copy of the foregoing documents described **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONFIRMATION OF DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION (DATED JUNE 20, 2011), AS MODIFIED** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 1, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- John B Acierno    ecfcacb@piteduncan.com
- Carleton R Burch    crb@amclaw.com, amc@amclaw.com;jsh@amclaw.com;awh@amclaw.com;mav@amclaw.com;esf@amclaw.com;slc@amclaw.com;csh@amclaw.com
- Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
- L Dominic Chacon    ldominicchacon@yahoo.com
- Cynthia M Cohen    cynthiacohen@paulhastings.com
- Travis W Feuerbacher    tfeuerbacher@gglts.com
- Steven R Fox    emails@foxlaw.com
- Helen R Frazer    hfrazer@aalrr.com
- Varand Gourjian    vg@gourjianlaw.com, lucy@gourjianlaw.com;naz@gourjianlaw.com;art@gourjianlaw.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Herbert Hayden    herbert@ntlg.us
- Brian L Holman    b.holman@mpglaw.com
- Alexandra Kazhokin    akazhokin@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
- Mark J Krone    crb@amclaw.com, crs@amclaw.com;amc@amclaw.com
- Ian Landsberg    ilandsberg@landsberg-law.com, bgomelsky@landsberg-law.com;rbenitez@landsberg-law.com
- David L. Neale    dln@lnbrb.com
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- Russell H Rapoport    rrapoport@prllplaw.com, lgillis@prllplaw.com
- Ronald N Richards    ron@ronaldrichards.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Bruce D Rudman    bdr@agrlaw.net
- William D Schuster    bills@allieschuster.org
- Marian K Selvaggio    selvaggio@huntortmann.com
- Daniel H Slate    dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com
- Lindsey L Smith    lls@lnbyb.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Marc Weinberg    marcweinberg@att.net
- Brandon J Witkow    bwitkow@lockelord.com
- Aimee Y Wong    aywong@mckennalong.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*April 2010*

**F 9013-3.1**

| In re: | CHAPTER 11 |
|---|---|
| ROOSEVELT LOFTS, LLC,<br><br>Debtor(s). | CASE NUMBER 1:09-bk-14214-GM |

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On **August 1, 2011**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

*[X] Service list served by U.S. Mail attached*

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 1, 2011**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

***Served via Attorney Service***
Hon. Geraldine Mund
United States Bankruptcy Court
21041 Burbank Blvd., Ctrm 303
Woodland Hills, CA 91367

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 1, 2011 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*April 2010*                                                                                                    **F 9013-3.1**

**II. SERVED BY U.S. MAIL:**

U.S. Trustee
Attn:  S Margaux Ross, Esq.
21051 Warner Ctr Ln Ste 115
Woodland Hills, CA 91367

Homan Taghdiri, Esq.
Milbank
660 S. Figueroa St., 24th Floor
Los Angeles, CA 90017

*Counsel for Sidney Alter dba Alter Electric*
Bruce D. Rudman, Esq.
Abdulaziz, Grossbart & Rudman
PO Box 15458
North Hollywood, CA 91615

*Counsel for Infiniti Metals*
Law Ofcs Theodore A. Anderson
690 S. Brea Blvd.
Brea, CA 92821

*Counsel for ThyssenKrupp Elevator*
William C. Hernquist II
Wallace H. Sweet
8407 La Mesa Blvd.
La Mesa, CA 91942

*Committee Member*
A American Custom Flooring
Attn:  Richard S. Lauter
311 S. Wacker Drive
Chicago, IL 60066

Fred S. Pardes, Esq.
LAW OFFICES OF FRED S. PARDES
A Professional Corporation
34211 Pacific Coast Highway, Suite 103
Dana Point, Ca. 92629

PM Estrada Roofing
4257 W. 101st Street
Inglewood, CA 90304

Muir Chase Plumbing Co.
c/o Law Ofcs of David A. Tilem
206 N. Jackson Street, Ste 201
Glendale, CA 91206

*Counsel for Siemens Bldg Tech., Inc.*
Benjamin R. Trachtman, Esq.
Trachtman & Trachtman
27401 Los Altos, Suite 300
Mission Viejo, Ca 92691

Herbert Alfred Mayer
5360 Willow Oak Street
Simi Valley, CA 93063-4591

*Counsel for VGI*
Patrick J. Duffy III
Andrew W Hawthorne
Monteleone & McCrory
725 S. Figueroa St., Ste. 3200
Los Angeles, CA 90017

*Committee Member*
Kuetar Flooring
Attn:  Joseph Kember/Ed Sheats
2 Innovation Drive
Renfrew
Ontario, **CANADA** K7V4B1

*Counsel for American Gunite, Inc.*
Varand Gourjian, Esq.
Gourjian Law Group
101 N. Brand Blvd., Suite 1220
Glendale, CA 91203

*Counsel to Bank of America*
Seyfarth Shaw LLP
T. Larry Watts, Eric B. von Zeipel
2029 Century Park East, Suite 3500
Los Angeles, CA 90067-3021

S.E.C.
5670 Wilshire Blvd., Ste. 1100
Los Angeles, CA 90036

*Counsel for Thermalair Inc.*
Gerald W. Mouzis
The Mouzis Law Firm
13681 Newport Avenue, Suite 8-605
Tustin, CA  92780

Latham & Watkins, LLP
Attn: Robert Klyman & Robert Francis
355 South Grand Avenue
Los Angeles CA 90071-1560

Roosevelt Lofts, LLC
c/o Mr. M. Aaron Yashouafar, President
16661 Ventura Blvd., #600
Encino, CA 91436

*Counsel for HD Supply Construction*
William D. Schuster, Esq.
Allie & Schuster PC
2122 N Broadway
Santa Ana, CA 92706-2614

*Counsel for Bank of America*
Daniel H. Slate, Esq.
Buchalter, Nemer
1000 Wilshire Blvd., Ste 1500
Los Angeles, CA 90017

L.A. County Treasurer and Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

*Committee Counsel*
Ian Landsberg, Esq.
Landsberg Margulies LLP
16030 Ventura Blvd., Ste. 470
Encino, CA 91436

*Committee Member*
Bontempi USA
Attn:  Yeujye Chen
8919 Beverly Blvd.
West Hollywood, CA 90048

David Sherwood
CEO
Daniel's Jewelers
PO Box 3750
Culver City, CA 90231

*Attorney for Canon Financial Svcs*
Scott H. Marcus & Associates
121 Johnson Road
Turnersville, NJ 08012

Roosevelt Lofts
Secured Creditors and their agents

Bank of America, N.A.
333 S. Hope St.
11th Floor, CA9-193-11-07
Los Angeles, CA 90071
Attn: Daivd Kegaries

V.G.I. Corporation
5508 S. Santa Fe Avenue
Vernon, CA 90058

Wrightway Construction, Inc.
1070 E. Dominguez St.
Suite A
Carson, CA 90746

Thermalair
1140 Red Gum Street
Anaheim, CA 92806

American Gunite, Inc.
5042 Wilshire Blvd.
Suite 496
Los Angeles, CA 90036

Integrity Builders West, Inc.
25942 Via Marejada
Mission Viejo, CA 92691

Pfinish Koncepts Inc.
dba Stonecraft Enterprise
23901 Calabasas Road, Suite 2013
Calabasas, CA 91302

Westye Group - West, Inc.
dba Sub-Zero Wolf
145 W. 134th Street
Los Angeles, CA 90061

Lynn Safety, Inc.
367 Civic Drive
Suite 8
Pleasant Hill, CA 94523

Thyssenkrupp Elevator, Inc.
6087 Triangle Drive
Los Angeles, CA 90040

Purcell Murray Builder Sales Company, Inc.
2341 Jefferson Street
Suite 200
San Diego, CA 92110

Cal-State Steel Corporation
1801 W. Compton Boulevard
Compton, CA 90220

Commercial Glass Company
1577 Tierra Rejada Road
Simi Valley, CA 93065

Allsale Electric Inc.
7950 Deering Avenue
Canoga Park, CA 91304

EJ Reyes Corp.
6328 Roundhill Drive
Whittier, CA 90601

EFCO Corporation
1290 Carbide Drive
Corona, CA 92881

Addison Pools, Inc.
10835 Magnolia Boulevard
North Hollywood, CA 91601

SRS Fire Protection, Inc.
6829 Canoga Avenue #2
Canoga Park, CA 91303

CraneNetics, Inc.
4780 Cheyenne Way
Chino, CA 91710

Siemens Building Technologies, Inc.
10775 Business Center Drive
Cypress, CA 90630

Brewster Marble Co., Inc.
11818 Glenoaks Boulevard
San Fernando, CA 91340

HD Supply / White Cap Construction Supply
P.O. Box 1770
Costa Mesa, CA 92626

New World West
940 Challenger Street
Brea, CA 92821

PM Estrada Roofing
4257 W. 101st Street
Inglewood, CA 90304

American Concrete Cutting Inc.
dba American Demolition/Concrete Cutting
620 Poinsettia Street
Santa Ana, CA 92701

Dunn-Edwards Corporation
4885 E. 52nd Place
Los Angeles, CA 90040

Insul-Flow, Inc.
1911 N. Fine
Fresno, CA 93727

Robertson's Ready Mix
PO Box 3600
Corona, CA 92878

Glendale Plumbing & Fire Supply
c/o Kirk s. MacDonald, Esq.
Gill and Baldwin, P.C.
130 N. Brand Blvd., #405
Glendale, CA 91205

Frank's Disposal
PO Box 4271
Sunland, CA 91041

AB California Acquisition Corp.
dba Acoustical Material Services
10200 S. Pioneer Boulevard,
Suite 500
Santa Fe Springs, CA 90670

William F. McVey Sr.
Grif-Fab Corp.
1 Westlake Village
Council Bluffs, LA  51501

A Fence Company, Inc.
15205 Carretera Drive
Whittier, CA 90605

Agent for Bank of America
T. Larry Watts, Esq.
2029 Century Park East, Suite 3300
Los Angeles, CA 90067

Orco Construction Supply
477 N. Canyons Parkway, #A
Livermore, CA 94551

**Counsel for Bank of America**
Daniel H. Slate, Esq.
Buchalter, Nemer
1000 Wilshire Blvd., Ste 1500
Los Angeles, CA 90017

Agent for Wrightway Construction
E. Leonard Fruchter, Esq.
1609 Cravens Avenue
Torrance, CA90501

Arrow
7635 Burnet Avenue
Van Nuys, CA 91405

Agent for American Gunite
Bradley A. Raisin, Esq.
16055 Ventura Blvd., Suite 601
Encino, CA 91436

Agent for Pfinish Koncepts, Inc.
Alan J. Carnegie, Esq.
23901 Calabasas Road, Suite 2013
Calabasas, CA 91302

Agent for V.G.I. Corporation
Patrick J. Duffy, Esq.
725 S. Figueroa St., Suite 3200
Los Angeles, CA 90017

Agent for Westye Group – West, Inc.
Christopher W. Bayuk, Esq.
Bayuk & Associates
401 W. 'A' Street, Ste. 1400
San Diego, CA 92101

Agent for Cal State Steel Corp
Heather M. Kadeg, Esq.
30423 Canwood Street, Suite 131
Agoura Hills, CA 91301

Agent for Southland Exterior Building Svcs
Fred S. Pardes, Esq.
34211 Pacific Coast Hwy, Suite 103
Dana Point, CA 92629

Agent for Lynn Safety
Herbert Hayden, Esq.
40931 Fremont Boulevard
Fremont, CA 94538

Agent for Spectra Company
Beard Hobbs, Esq.
7844 La Mesa Boulevard
La Mesa, CA 91941

Agent for Purcell Murray Builder Sales
David J. Barnier, Esq.
2341 Jefferson Street, Suite 200
San Diego, CA 92110

Agent for EFCOCorp
Michael C. Brown, Esq.
23230 Chagrin Blvd., Suite 940
Cleveland, OH 44122

Agent for Robertson's Ready Mix
Robert M. Binam, Esq.
200 S. Main Street, Suite 200
Corona, CA 92882

Agent for EJ Reyes
Meyer S. Levitt, Esq.
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024

Agent for American Concrete Cutting
Ryan K. Hirota, Esq.
PO Box 19694
Irvine, CA 92623

**Counsel for Sidney Alter dba Alter Electric**
Bruce D. Rudman, Esq.
Abdulaziz, Grossbart & Rudman
PO Box 15458
North Hollywood, CA 91615

Agent for PM Estrada Roofing
J.J. Little, Esq.
1516 S. Bundy Dr., Suite 312
Los Angeles, CA 90025

Southland Exterior Bldg Svcs
27881 La Paz Rd., Ste G
Laguna Niguel, CA 92677

Spectra Company
2510 Supply Street
Pomona, CA 91767-2113

Agent for HD Supply
William D. Schuster, Esq.
2122 N. Broadway
Santa Ana, CA 92706

Thyssenkrupp Elevator Corp.
c/o William C. Hernquiset II
2404 Broadway, 2nd Floor
San Diego, CA 92102